# PDF №1: THE COMPLAINT

**Plaintiff: DENIEL SHUMEIKO**

**Defendant: DEUTSCHE BANK TRUST COMPANY AMERICAS**

## TABLE OF CONTENTS

**SUMMARY OF CLAIMS**.................................................................................... 3

**I. JURISDICTION AND VENUE**....................................................................... 4

**II. NATURE OF ACTION**.................................................................................. 4

**III. STATEMENT OF FACTS** ........................................................................... 5

- The Stolen Victory (The Swedish Precedent) **(Exhibit F)** ..................................... 5

- The $18.76 Billion Valuation and Plaintiff's Specific Loss **(Exhibit E)** ................. 5

- The 2018 Theft and Imminent 2026 Threat **(Exhibit H)** ....................................... 6

- Prior Verification of Ownership (GCG) **(Exhibit H)** .............................................. 6

- The Breach of the Custodial Shield and Conflict of Interest **(Exhibit C, D)** ......... 7

- Statutory Mandate (The Magnitsky Act) **(Exhibit G)** ……..…………………….... 7

**IV. CAUSES OF ACTION** ............................................................................... 8

- **COUNT I:** Breach of Fiduciary Duty ................................................................. 8

- **COUNT II:** Constructive Fraud and Fraudulent Concealment ……………..……………….. 8

- **COUNT III:** Gross Negligence .......................................................................... 8

- **COUNT IV:** Breach of the Deposit Agreement and Implied Covenant of Good Faith): …….. 8

**V. PRAYER FOR RELIEF** .............................................................................. 9

**JURY TRIAL DEMANDED** ............................................................................ 10

**INDEX OF EXHIBITS** ................................................................................... 11

# SUMMARY OF CLAIMS

**PLAINTIFF:** Deniel Shumeiko (Assignee of ILVEYS INC.)
**DEFENDANT:** Deutsche Bank Trust Company Americas (DBTCA)
**AMOUNT IN CONTROVERSY:** Approx. $12,950,000.00
**PRIMARY CAUSE OF ACTION:** Breach of Fiduciary Duty / Gross Negligence

### 1. THE ASSET AND THE FIDUCIARY RELATIONSHIP

Plaintiff is the beneficial owner of **50,000 ADRs of Yukos Oil Company (CUSIP 98849W108**). Defendant, as the depositary bank and sole record shareholder of the underlying assets (approx. 15% of Yukos), owes a fiduciary duty of loyalty and care to Plaintiff.

### 2. THE "STANDING TRAP" (THE SWEDISH PRECEDENT)

In 2016, the Supreme Court of Sweden finalized a ruling stating that ADR holders lack standing (*locus standi*) to sue the Russian Federation directly. This establishes the Defendant as the **exclusive entity** with the legal power to enforce claims. Defendant has willfully abandoned this duty, leaving Plaintiff without a remedy.

### 3. THE $18.76 BILLION GLOBAL CLAIM

The 2014 Hague Arbitral Award, finalized by the Dutch Supreme Court in 2025, established a global valuation for Yukos at **~$94,6 Billion**. Consequently, the 15% stake held by Defendant is valued at **~$14.43 Billion (Principal)** and **~$18.76 Billion (with Interest)** as of April 2026.

### 4. DEFENDANT'S CONFLICT OF INTEREST

Defendant's inaction is a result of an undisclosed conflict. In 2006, while acting as Plaintiff's fiduciary, Defendant acted as a petitioning creditor in the Yukos bankruptcy and facilitated the transfer of assets to Russian state entities (Gazprom / Rosneft), earning substantial fees from the very entities that expropriated Plaintiff's property.

### 5. THE MAGNITSKY ACT MANDATE

Defendant's failure to act violates the public policy of the United States. **Section 202 of the Magnitsky Act (P.L. 112-208) mandates the protection of U.S. investors in Yukos**. Defendant's silence effectively nullifies this federal mandate.

### 6. RELIEF SOUGHT

Plaintiff seeks a Mandatory Injunction compelling Defendant to fulfill its fiduciary duties by intervening in **Case No. 14-cv-1996 (D.D.C.)** to protect the assets and ensuring protection against imminent discriminatory asset allocations (See Exhibit H); **or, in the alternative**, should Defendant refuse to act, a Mandatory Buyout of Plaintiff's ADRs at the judicially recognized value of **$259.00 per ADR** (totaling approx. **$12,950,000.00**).

3

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**DENIEL SHUMEIKO,**

Plaintiff,

**v.**

**DEUTSCHE BANK TRUST COMPANY AMERICAS,**

Defendant.

**Case No.:** _____

## COMPLAINT FOR BREACH OF FIDUCIARY DUTY, CONSTRUCTIVE FRAUD, GROSS NEGLIGENCE, AND BREACH OF CONTRACT

### I. JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(2). The amount in controversy exceeds $75,000, and the parties are citizens of different states and/or nations.

2. Venue is proper in this District under 28 U.S.C. § 1391(b) as Defendant is headquartered at 1 Columbus Circle, New York, NY 10019.

### II. NATURE OF ACTION

3. Plaintiff is a natural person and a resident of Philadelphia, Pennsylvania. **Plaintiff is the sole legal owner and assignee of all claims, rights, and causes of action** related to **50,000 Yukos Oil ADRs (CUSIP 98849W108)**. These assets were originally acquired and held by ILVEYS INC., a company established and operated exclusively as a Family Investment Vehicle for the management and protection of the Pridorogin family's financial assets since 2003. **By virtue of a formal Deed of Assignment (Exhibit A), Plaintiff possesses the exclusive right to enforce these claims in his own name.**

4. **Defendant**, acting as the sole record shareholder of the underlying assets, has willfully abandoned its duty to enforce a judicially recognized valuation of Yukos assets, effectively aiding the illegal expropriation of property belonging to U.S. investors.

5. **Pre-Litigation Notice:** Prior to the commencement of this action, Plaintiff's predecessor-in-interest provided Defendant with a comprehensive 35-page legal memorandum detailing the factual and legal basis for these claims, specifically arising from the acquisition of Yukos ADRs in 2004–2005 and continuous beneficial ownership through the liquidation of the company (delivered via courier **on March 26, 2026,** Tracking No: **889975868394**). **(See Exhibit D)** Defendant summarily rejected these claims without addressing the substantive evidence provided. Full documentation of this notice is available upon the Court's request.

4

### III. STATEMENT OF FACTS

6. **The Stolen Victory (The Swedish Precedent):** In 2012, ADR holders achieved a landmark victory when a Stockholm Arbitral Tribunal ruled that the Russian Federation had illegally expropriated their investments. However, in 2016, the Swedish Court of Appeals—in a decision later affirmed by the Supreme Court—vacated this award. The Swedish judiciary ruled that despite the clear merits of the case, ADR holders lacked standing to sue because the Defendant, as the sole record shareholder, is the only entity entitled to assert property claims arising from the underlying Yukos shares. **The ADR holders were stripped of a valid legal victory solely because the Defendant, as the mandatory "gatekeeper" of these rights, refused to participate in the proceedings.** This created a "legal vacuum" where property rights can only be protected through the active participation of the Defendant. **(See Exhibit F)**

7. **JUDICIALLY ESTABLISHED VALUATION AND LEGAL EXTRAPOLATION:**

   a. **The $18.76 Billion Valuation and Judicial Mandate:** The Hague Arbitral Tribunal (2014) and the Dutch Supreme Court (2025) established a definitive valuation of Yukos assets. Based on the judicially established Total Equity Value of **$94,606,683,615** (See Table T1, Exhibit E), plus the post-award interest mandated by the Tribunal through April 2026, the approximately 15% stake held by the Defendant is valued at approximately **$18.76 Billion.**

   b. **Post-Award Interest Mandate:** Pursuant to Section XIV, Paragraph **1888(i)** of the Final Award (**Page 578, Exhibit E**), the Tribunal mandated that post-award interest on the principal shall be determined as the yield on **10-year U.S. treasury bonds**, compounded annually. This judicial mandate serves as the legal basis for the 2026 valuation of the Plaintiff's assets, totaling **$259.00 per ADR unit.**

   c. **Legal Extrapolation to Minority Shareholders:** Although the Hague Award specifically adjudicated claims brought by the majority shareholders (GML), the Tribunal's finding of illegal expropriation and its 100% equity valuation established a universal per-share value for the entire share capital of Yukos Oil Company. The Plaintiff's right to recovery is based on the **logical and legal extrapolation** of these findings: since the expropriation was ruled illegal for the 70% stake, it is by definition illegal for the remaining 30%—including the stake held by the Defendant for the benefit of U.S. investors. The Defendant's failure to apply this precedent to protect the ADR program constitutes a fundamental breach of its fiduciary duty. **(See Exhibit E)**

8. **Plaintiff's Specific Loss:** Based on the aforementioned valuation, Plaintiff's holding of **50,000 ADRs** is valued at **$12,950,000.00**.   **(See Exhibit E)**

9. **The Double Threat (The Predatory Allocation):** Plaintiff is caught in a legal crossfire. While the Russian Federation refuses to pay, the **majority shareholder (GML)** utilizes its control over the Hague Award enforcement to implement discriminatory allocation schemes. Without the

5

Defendant's direct intervention as the Record Shareholder, Plaintiff is left defenseless against GML's "divide and conquer" strategy, which seeks to divert funds away from U.S. ADR holders. **(See Exhibit H)**

10. **Evidence of Past Discrimination and Imminent Peril (The 2018 Theft and 2026 Threat):** Plaintiff's demand for immediate judicial intervention is necessitated by a pattern of predatory behavior by the majority shareholders (GML) and the Defendant's continued failure to object to it. **(See Exhibit H)**

- **The 2018 Precedent (Coercion and Theft):** In 2018, during a distribution of approx. $337 million in Yukos settlement funds (originating from **Yukos Capital Sarl**), GML implemented a discriminatory "Plan of Allocation" via its agents (**Garden City Group**). Had this been conducted pro-rata based on share capital, Plaintiff's holding of 50,000 ADRs would have been entitled to approx. **$35,000.00**. Instead, Defendant permitted a scheme where Plaintiff received only **$2,499.16** — a loss of over **93% of its legal entitlement**. Crucially, the Distribution Agent explicitly threatened to nullify and reject the Plaintiff's entire claim if the discriminatory calculation was challenged, effectively forcing a "take it or leave it" ultimatum under economic duress. Defendant remained passive despite this procedural blackmail. **(See Exhibit H).**

- **The March 2026 Threat:** On March 16, 2026, Plaintiff received formal notice **(See Exhibit H)** from the current GML-controlled distribution agent **(Epiq)** that a new distribution of recovered funds is imminent. Without the Defendant's immediate intervention as the Record Shareholder to demand a strict pro-rata allocation, Plaintiff faces an immediate and irreparable repeat of the 2018 fraud. This imminent harm satisfies the requirements for urgent injunctive relief to prevent the final exhaustion of the recovery pool. **(See Exhibit H)**

11. **The Immediacy of Procedural Loss (D.D.C. and Yukos Capital Enforcement):** GML is currently finalizing the enforcement of the **$66B+** Hague awards in the U.S. District Court for the District of Columbia **(Case No. 14-cv-1996)**. Simultaneously, **Yukos Capital Sarl** (an entity controlled by the same majority interests) is actively pursuing the enforcement of a **$5 Billion** Swiss arbitral award within U.S. jurisdictions. Because the Defendant is the only party with legal standing for the 15% ADR stake, its continued absence from these concurrent U.S. enforcement proceedings ensures that the total recovery pool—including the multi-billion dollar Yukos Capital assets—will be exhausted by the majority owners via the same discriminatory framework used in 2018. The Defendant's systemic refusal to assert the Plaintiff's 15% stake in these specific proceedings permanently bars U.S. investors from any future compensation.

12. **Prior Verification of Ownership:** Plaintiff's ownership and chain of title for the subject ADRs have already been rigorously vetted and verified by **Garden City Group (GCG),** a premier U.S.-based claims administrator, during the 2015–2018 distribution process. The acceptance of Plaintiff's claim by GCG at that time constitutes a definitive acknowledgement of Plaintiff's status as a bona fide investor by a recognized U.S. institutional authority.   **(See Exhibit H)**

6

13. **Rational Reliance on International Standards:** At the time of the ADR acquisition in 2004–2005, Plaintiff's predecessor-in-interest **(Plaintiff's parents)** viewed the legal actions in the Russian Federation against Yukos as a localized commercial dispute that, under no reasonable circumstances, could result in a total loss for international ADR holders. This confidence was rooted in the belief that the Russian authorities would remain within the bounds of international economic sanity and that the U.S. ADR structure provided a definitive legal "shield" for foreign participants.

14. **The Breach of the Custodial Shield:** While the ultimate political collapse in the Russian Federation was a subsequent development, the immediate cause of Plaintiff's total loss was the Defendant's failure to act as a fiduciary "gatekeeper." Plaintiff relied on the Defendant's status as a major New York-chartered institution to safeguard the assets against precisely this type of "misunderstanding" or overreach. The Defendant's "stab in the back"—prioritizing its own financing deals with the expropriating entities (Gazprom / Rosneft) over its duty to protect the ADR holders—transformed a manageable commercial risk into a total loss of investment. **(See Exhibit C)**

15. **Conflict of Interest:** In 2006, while acting as Plaintiff's fiduciary, Defendant acted as a petitioning creditor in the Russian bankruptcy of Yukos and facilitated the transfer of assets to state-controlled entities. Defendant's 2007 "Worthless Notice" was a misleading tool used to conceal this conflict and its own role in the destruction of the trust assets. **(See Exhibit C & D)**

16. **Judicial and Financial Inconsistency:** It is judicially and factually inconsistent for the Defendant to maintain that the ADR assets are "worthless" while majority shareholders (GML) and their controlled entities (Yukos Capital Limited) are simultaneously seeking to enforce claims in U.S. courts for over **$66 Billion** and **$5 Billion**, respectively, based on the exact same underlying equity and intercompany rights. The Defendant's continued reliance on the 2007 "Worthless Notice" in the face of these multi-billion dollar U.S. enforcement proceedings constitutes a deliberate and bad-faith misrepresentation of the asset's value to the detriment of U.S. investors. **(See Exhibit D, E & H)**

17. **Statutory Mandate:** Defendant's inaction violates the public policy of the United States as set forth in **Section 202 of the Magnitsky Act (P.L. 112-208)**, which mandates the protection of U.S. investors in Yukos assets.   (**See Exhibit G**)

18. **Purpose of Intervention (Recovery of Funds):** The mandatory intervention in the D.D.C. proceedings is essential for the recovery of funds from the parties held liable for the loss of ADR holders' investments. Per the Hague Arbitral Award, liability is apportioned as follows:

- **The Russian Federation (75%):** For the illegal expropriation and destruction of the company.

- **GML/Majority Shareholders (25%):** For contributory fault as established by the Tribunal.

    Defendant's refusal to participate effectively grants a **"liability holiday"** to both the Russian Federation and GML at the direct expense of U.S. ADR holders. **(See Exhibit E)**

7

## IV. CAUSES OF ACTION

19. **COUNT I  (Breach of Fiduciary Duty - Duty of Loyalty and Care):** Defendant breached its duty of undivided loyalty by prioritizing its own lucrative commercial interests in the Russian Federation over the property interests of its ADR holders. Despite being the only entity with legal standing to do so under the "Swedish Precedent," Defendant failed to enforce the judicially recognized claim. This breach constitutes a fundamental violation of the principle that a U.S. fiduciary acts as a safeguard for investors against foreign lawlessness and expropriation. Under New York law, a fiduciary cannot rely on the exculpatory language of a contract to shield itself from liability for gross negligence or acts taken in bad faith. The Defendant's systemic passivity constitutes a breach of the **implied covenant of good faith and fair dealing**, as it effectively destroyed the very purpose of the ADR program — to provide a secure, bank-guaranteed vehicle for international investment.

    Furthermore, the Defendant cannot escape liability by citing the 2007 liquidation of Yukos Oil Company. Under well-established fiduciary principles, the illegal destruction of a corporate entity by a foreign sovereign does not extinguish the Depositary's duties; rather, it transforms the underlying shares into an **active chose in action (right to sue).** The Defendant's failure to recognize and protect this right to sue—especially after the 2014 Hague Awards and the 2016 Swedish rulings confirmed its existence—constitutes a continuing breach of duty. The liquidation of the issuer in the context of an illegal expropriation imposes a **heightened duty of care** upon the Depositary to safeguard the remaining interests of the ADR holders, a duty which the Defendant has willfully ignored.

20. **COUNT II  (Constructive Fraud and Fraudulent Concealment):** Defendant intentionally misled Plaintiff by issuing a "Worthless Notice" in 2007. This notice was not a neutral administrative act but a tool of deception that ignored the existence of multi-billion dollar international arbitral claims and concealed Defendant's own conflict of interest as a petitioning creditor in the Yukos bankruptcy. The Defendant's fraudulent concealment continues into 2026, as it willfully ignores current judicial evidence to maintain the deception initiated in 2007.

21. **COUNT III   (Gross Negligence):** Defendant's total failure to intervene in the D.D.C. proceedings **(Case No. 14-cv-1996)** despite a final **$66B+** judgment in 2025 constitutes a reckless disregard for Plaintiff's rights. By remaining idle while the value of the assets was judicially restored, Defendant effectively abandoned the trust assets it was paid to safeguard.

22. **COUNT IV  (Breach of the Deposit Agreement and  Implied Covenant of Good Faith and Fair Dealing):**
    Defendant, as the depositary bank under the standard Deposit Agreement governing the Yukos ADRs (CUSIP 98849W108), owed Plaintiff not only the express administrative duties of custody

and distribution, but also the implied covenant of good faith and fair dealing that is inherent in every contract governed by New York law. By issuing the misleading 2007 "Worthless Notice" while possessing knowledge of ongoing international arbitral claims, by failing to intervene in the D.D.C. proceedings (Case No. 14-cv-1996) despite the Swedish precedent confirming its exclusive legal standing, and by permitting discriminatory non-pro-rata allocations in both 2018 and the imminent 2026 distribution, Defendant breached its contractual obligations and the implied covenant of good faith and fair dealing. These actions rendered the core purpose of the ADR program — to provide a secure, bank-guaranteed custodial vehicle for international investors — illusory and directly caused Plaintiff's loss of approximately **$12,950,000.00**.

## V. PRAYER FOR RELIEF

Plaintiff respectfully requests:

A. **Mandatory Injunction:** An Order compelling Defendant to fulfill its non-delegable fiduciary duties by **intervening in Case No. 14-cv-1996 (D.D.C.)** for the specific purpose of **recovering the proportional compensation owed** to ADR holders from the **Russian Federation (75% liability)** and **GML (25% contributory liability)**, as established by the Hague Arbitral Award and finalized by the Dutch Supreme Court; and further compelling Defendant to assert the Plaintiff's 15% stake in all related U.S. enforcement proceedings, including those involving the $5 Billion Yukos Capital Limited (formerly Yukos Capital Sàrl) award, and to immediately object to any non-pro-rata distribution schemes—such as those implemented in 2018 regarding the $337 million Yukos settlement funds—ensuring that Plaintiff's rights are protected according to the established share capital ratios. (**See Exhibit E & H**)

B. **Declaratory Judgment that Contractual Defenses are Inapplicable:** Plaintiff respectfully requests a Judgment declaring that the Defendant cannot discharge its liability by relying on exculpatory or termination clauses in the Deposit Agreement or by merely offering to assign individual litigation rights to the Plaintiff. Such defenses and actions must be rejected as a matter of law because:

1. **The Swedish Precedent Effect:** As judicially established in 2016, ADR holders are stripped of independent legal standing to sue, leaving the Defendant with a monopoly on the right to act. In this unique legal vacuum, the Defendant's fiduciary duty has transformed from a "passive" administrative role into an **"exclusive-active" obligation**.

2. **Public Policy Mandate:** Any attempt by the Defendant to evade this duty while possessing the sole legal title to the claims violates U.S. Public Policy as set forth in the **Magnitsky Act (P.L. 112-208)**, which mandates the protection of U.S. investors against foreign expropriation.

9

3. **Prevention of Legal Futility:** Compelling a transfer of individual litigation rights to the Plaintiff at this stage would be legally futile, as the Russian Federation would successfully challenge the Plaintiff's standing. Therefore, the Defendant possesses a **non-delegable duty** to act directly as the only entity with unassailable legal status to ensure a valid and enforceable recovery for all ADR holders.

C. **COMPENSATORY DAMAGES AND MANDATORY BUYOUT (In the Alternative):** In the event Defendant refuses to comply with the mandatory injunction, a Judgment awarding Plaintiff compensatory damages in the form of a **mandatory buyout** of Plaintiff's ADR holdings by the Defendant. The buyout price shall be calculated based on the judicially recognized valuation established by the Hague Arbitral Award, which equates to **USD $64.75 per Yukos share (USD $259.00 per ADR unit)**, plus accrued interest from the date of the award, totaling **USD $12,950,000.00**.   (**See Exhibit E**)

D. **Punitive Damages:** For Defendant's willful misconduct, gross negligence, and undisclosed conflict of interest in aiding the illegal expropriation of Yukos assets.

E. **Discovery and Accounting:** An Order requiring Defendant to provide a full accounting and disclosure of:   (**See Exhibit C**)

1. All fees, commissions, and service income generated by Defendant from the Yukos ADR program since 2003;

2. All revenues, fees, and financial benefits received by Defendant or its affiliates from transactions with the Russian Federation, Gazprom, and Rosneft between 2004 and 2007 related to the financing of Yukos asset acquisitions;

3. All internal communications and risk assessments regarding the impact of said transactions on the value of the Yukos ADR program.

F. **Declaratory Relief on Indemnification:** A Judgment declaring that any costs incurred by the Defendant in fulfilling its fiduciary duties to intervene and recover funds shall be borne by the recovery pool or the parties held liable, and shall not serve as a basis for further fees or offsets against the Plaintiff's principal claim.

### JURY TRIAL DEMANDED

**Respectfully submitted,**

**/s/ Deniel Shumeiko**
**DENIEL SHUMEIKO, Pro Se Plaintiff**
3600 Chestnut St, Apt 703, Philadelphia, PA, 19104
(267) 693-3824
deniel24@sas.upenn.edu

**Dated: April 27, 2026**

10

# INDEX OF EXHIBITS

| Exhibit | Document Description | Core Legal Purpose |
|---|---|---|
| **A** <br> Pp. 3–43 | **Deed of Assignment of Claims** (Verified via DocuSign Audit Trail & Corporate Seal) | Establishes Plaintiff's legal standing and the valid transfer of rights from ILVEYS INC. |
| **B** <br> Pp. 44–52 | **Unanimous Shareholders' Resolution** of ILVEYS INC. | Proof of corporate authorization and family consensus for the asset distribution. |
| **C** <br> Pp. 53–61 | **Timeline of Conflict of Interest (2004–2026)** | Evidence of Defendant's dual role and "double play" with Russian state entities. |
| **D** <br> Pp. 62–73 | **Pre-Litigation Correspondence** | Proof of Plaintiff's good-faith efforts to resolve the dispute and Defendant's summary rejection. |
| **E** <br> Pp. 74–81 | **Valuation and Calculation Methodology** | Mathematical extrapolation of the ~$94.6B Hague Award to the Plaintiff's specific holdings. |
| **F** <br> Pp. 82–86 | **Judicial precedent on the "standing trap" and the annulment of the arbitral award** | Judicial proof of the "Standing Trap" and Defendant's exclusive power to act. |
| **G** <br> Pp. 87–91 | **Extracts from Public Law 112-208 (Magnitsky Act)** | Federal statutory mandate (Sections 202 & 402) for the protection of Yukos investors. |
| **H** <br> Pp. 92–111 | **Evidence of Systemic Discrimination, Bad Faith, and the Cost of Inaction (2015–2026)** | Documentation of discriminatory allocation schemes (2018) and imminent threat to assets (2026 distribution notice). |