# PDF №3:  EXHIBITS TO THE COMPLAINT.

**Plaintiff: DENIEL SHUMEIKO**

**Defendant: DEUTSCHE BANK TRUST COMPANY AMERICAS**

# INDEX OF EXHIBITS

| Exhibit | Document Description | Core Legal Purpose |
| --- | --- | --- |
| **A**<br>Pp. 3–43 | **Deed of Assignment of Claims** (Verified via DocuSign Audit Trail & Corporate Seal) | Establishes Plaintiff's legal standing and the valid transfer of rights from ILVEYS INC. |
| **B**<br>Pp. 44–52 | **Unanimous Shareholders' Resolution** of ILVEYS INC. | Proof of corporate authorization and family consensus for the asset distribution. |
| **C**<br>Pp. 53–61 | **Timeline of Conflict of Interest (2004–2026)** | Evidence of Defendant's dual role and "double play" with Russian state entities. |
| **D**<br>Pp. 62–73 | **Pre-Litigation Correspondence** | Proof of Plaintiff's good-faith efforts to resolve the dispute and Defendant's summary rejection. |
| **E**<br>Pp. 74–81 | **Valuation and Calculation Methodology** | Mathematical extrapolation of the ~$94.6B Hague Award to the Plaintiff's specific holdings. |
| **F**<br>Pp. 82–86 | **Judicial precedent on the "standing trap" and the annulment of the arbitral award** | Judicial proof of the "Standing Trap" and Defendant's exclusive power to act. |
| **G**<br>Pp. 87–91 | **Extracts from Public Law 112-208 (Magnitsky Act)** | Federal statutory mandate (Sections 202 & 402) for the protection of Yukos investors. |
| **H**<br>Pp. 92–111 | **Evidence of Systemic Discrimination, Bad Faith, and the Cost of Inaction (2015–2026)** | Documentation of discriminatory allocation schemes (2018) and imminent threat to assets (2026 distribution notice). |

3

Exhibit A:  **Deed of Assignment of Claims**

3

## EXHIBIT A: DEED OF ASSIGNMENT OF CLAIMS

**SUBJECT:** Formal transfer of legal standing and property rights from ILVEYS INC. to the Plaintiff.

### 1. DESCRIPTION OF DOCUMENT:

This is a **Deed of Assignment** duly executed and verified via **DocuSign**, a secure electronic signature platform compliant with the **U.S. ESIGN Act** and New York law.

### 2. PURPOSE OF TRANSFER:

The document memorializes the irrevocable transfer of all rights, titles, and interests in the claims against Deutsche Bank Trust Company Americas (DBTCA), and any other responsible parties from the corporate owner (ILVEYS INC.) to the individual Plaintiff (DENIEL SHUMEIKO).

### 3. LEGAL SIGNIFICANCE:

- **Standing:** This assignment establishes the Plaintiff as the **Real Party in Interest** under **Rule 17** of the Federal Rules of Civil Procedure.
- **Verification and Continuity:** The authenticity of the signatures is corroborated by the attached **DocuSign Certificate of Completion**. The transaction was initiated from the **Assignor's verified email address**, which has served as the official channel for all pre-litigation communications with DBTCA and the Yukos Claims Administrator. Furthermore, the **physical seal and ink signature** of the Assignor are consistent with corporate and brokerage records maintained since 2003, ensuring a continuous and verifiable chain of authority. Identity verification for the Assignee is provided via secure institutional email (**@sas.upenn.edu**).
- **Bona Fide Transaction:** The transfer is conducted as a **Distribution in Kind** and part of a bona fide family asset restructuring, ensuring the protection of investments held since 2003.
- **Valuation:** The document explicitly acknowledges the valuation of the assigned claims at **USD 12,950,000.00**, based on the judicially established valuation of Yukos Oil Company.

4

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

## DEED OF ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION

**DATE OF EXECUTION:** *April 23*, **2026**

### PARTIES:

**ASSIGNOR: ILVEYS INC.,** № **539118**, a company organized under the laws of the British Virgin Islands, operating exclusively as a **Family Investment Vehicle** for the management and protection of the Pridorogin family assets, represented by its Director, **VLADIMIR PRIDOROGIN**.

**ASSIGNEE: DENIEL SHUMEIKO**, a natural person residing at **3600 Chestnut St., Apt. 703, Philadelphia, PA, 19104**.

### 1. SUBJECT OF THE ASSIGNMENT.

Pursuant to the corporate authorizations described herein, the Assignor hereby irrevocably grants, transfers, and assigns to the Assignee **100% of its right, title, and interest** in and to any and all claims, causes of action, and demands whatsoever, arising out of or related to the ownership of **fifty thousand (50,000) American Depositary Receipts (ADRs) of Yukos Oil Company (CUSIP 98849W108).**

This Assignment includes, without limitation, the **full and exclusive power** to initiate, maintain, settle, or compromise any legal or administrative proceedings in any jurisdiction, to be recognized as the sole successor-in-interest, and to receive any and all recoveries and distributions therefrom. The Assignee is hereby fully authorized to act in his own name, and any recognition or payment afforded to the Assignee by any third party shall fully discharge such party's obligations to the Assignor.

**This Assignment is supported by the following documentation, which is attached hereto and incorporated herein by reference as an integral part of this Agreement:**

- **ANNEX A (Corporate Authorization):** The Unanimous Shareholders' Resolution dated April 14, 2026, confirming the collective intent of the Family Investment Vehicle's owners to distribute the Claims to the Assignee.

- **ANNEX B (Asset Ownership Records):** Twenty-seven (27) pages of brokerage statements and ownership records confirming the acquisition of the assets in 2004–2005 and continuous beneficial ownership through the liquidation of Yukos Oil Company.

### 2. CONSIDERATION AND VALUATION.

This Assignment is made as a **Distribution in Kind** from the Family Investment Vehicle to its beneficiary and as part of a **Bona Fide family asset restructuring**. The parties acknowledge and agree that the fair market value of the assigned Claims is established at approximately **USD 12,950,000.00**, based on the pro-rata extrapolation of the Hague Arbitral Award including accrued interest through April 2026.

### 3. COMPLIANCE AND SANCTIONS WARRANTY.

The Assignor and the Assignee represent and warrant that the beneficial owners of these assets are private individuals who are not "Politically Exposed Persons" (PEPs), are not affiliated with any

5

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

military or state security entities, and are not subject to any sanctions enforced by the U.S. OFAC, the European Union, or the United Kingdom.

### 4. REVERSION AND TERMINATION.

This Assignment is subject to a condition subsequent. All rights shall automatically and immediately revert to the Assignor (ILVEYS INC.) without further act upon the occurrence of: (i) the death or permanent legal incapacity of the Assignee; or (ii) any legal impediment that prevents the Assignee from effectively pursuing the Claims in the United States.

### 5. PARTIES; ELECTRONIC SIGNATURES.

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission (including DocuSign) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

### 6. GOVERNING LAW.

This Agreement shall be governed by and construed in accordance with the laws of the **State of New York**, USA.

### SIGNATURES:

We, **Vladimir Pridorogin** and **Deniel Shumeiko**, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that the signatures herein are authentic.

Executed on _April 23_, **2026**.

ASSIGNOR (ILVEYS INC.): _____ (Vladimir Pridorogin, Director)
Location: Moscow, Russia

(Company Seal)

ASSIGNEE: _____ (Deniel Shumeiko)
Location: Philadelphia, PA, USA

Docusign Envelope ID: 46F8272E-B7AF-851D-8240-D2611FEA298C

ANNEX A

**ACTION BY UNANIMOUS WRITTEN CONSENT OF THE SHAREHOLDERS OF ILVEYS INC.**

**DATED:** April 14, 2026

The undersigned, being all of the Shareholders of **ILVEYS INC.**, a company organized and existing under the laws of the British Virgin Islands (the "Company"), hereby waive any notice of a meeting and adopt the following resolutions by unanimous written consent:

**WHEREAS**, the Company was established and is operated exclusively as a **Family Investment Vehicle** for the purpose of managing, preserving, and protecting the financial assets and long-term investments of the Shareholders and their family members;

**WHEREAS**, in its capacity as a Family Investment Vehicle, the Company is the beneficial owner of **50,000 American Depositary Receipts (ADRs) of Yukos Oil Company (CUSIP 98849W108)** and possesses all legal claims and causes of action arising from the breach of fiduciary duties and gross negligence of the depositary bank, Deutsche Bank Trust Company Americas ("DBTCA");

**WHEREAS**, following the 2025 final rulings of the Dutch Supreme Court and the judicially recognized valuation of Yukos assets, the Company's claims are valued at approximately **USD 12,950,000.00** (the "Claims");

**WHEREAS**, the Shareholders have determined that it is in the best interests of the Company and the family interest it represents to transfer and assign all rights, titles, and interests in these Claims to **DENIEL SHUMEIKO**, a Shareholder of the Company and a resident of the United States, to ensure the effective legal enforcement and continued protection of these family assets;

**NOW, THEREFORE, BE IT RESOLVED THAT:**

**1. ASSIGNMENT OF CLAIMS:** The Company shall irrevocably assign and transfer 100% of its rights, titles, and interests in the Claims against DBTCA to **DENIEL SHUMEIKO**. This transfer is made as a **Distribution in Kind** in the ordinary course of managing the Family Investment Vehicle.

**2. REVERSIONARY INTEREST:** The assignment is subject to a condition subsequent. In the event of the Assignee's death or permanent legal incapacity, the assigned Claims shall automatically and immediately revert to the Company (ILVEYS INC.) to ensure the continued protection of the family's investment.

**3. REPRESENTATIONS ON COMPLIANCE:** Each Shareholder represents and warrants that they are private individuals, are not "Politically Exposed Persons" (PEPs), and are not subject to any sanctions administered by the U.S. OFAC, the European Union, or the United Kingdom.

**4. AUTHORIZATION:** Vladimir Pridorogin, in his capacity as Director of the Company, is hereby authorized and directed to execute a Deed of Assignment and any other documents necessary to give effect to this transfer.

**IN WITNESS WHEREOF**, the undersigned Shareholders have executed this Consent as of the date first written above.

**SIGNATURES OF SHAREHOLDERS:**

| | | Signed by: |
|---|---|---|
| _____ | _____ | _____ |
| **Vladimir Pridorogin** | **Sergey Pridorogin** | **Deniel Shumeiko** |
| (49.0%) | (50.0%) | (1.0%) |

7

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

**PCA Case No. AA 227**

**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED
IN ACCORDANCE WITH ARTICLE 26 OF THE ENERGY CHARTER TREATY
AND THE 1976 UNCITRAL ARBITRATION RULES**

- between -

**YUKOS UNIVERSAL LIMITED (ISLE OF MAN)**

- and -

**THE RUSSIAN FEDERATION**

---

**FINAL AWARD**

---

**18 July 2014**

*Tribunal*
The Hon. L. Yves Fortier PC CC OQ QC, Chairman
Dr. Charles Poncet
Judge Stephen M. Schwebel

Mr. Martin J. Valasek, Assistant to the Tribunal
Mr. Brooks W. Daly, Secretary to the Tribunal
Ms. Judith Levine, Assistant Secretary to the Tribunal

*Registry*
Permanent Court of Arbitration

| | |
|---|---|
| *Representing Claimant*: | *Representing Respondent*: |
| Professor Emmanuel Gaillard | Dr. Claudia Annacker |
| Dr. Yas Banifatemi | Mr. Lawrence B. Friedman |
| Ms. Jennifer Younan | Mr. David G. Sabel |
| SHEARMAN & STERLING LLP | Mr. Matthew D. Slater |
| | Mr. William B. McGurn |
| | Mr. J. Cameron Murphy |
| | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| | Mr. Michael S. Goldberg |
| | Mr. Jay L. Alexander |
| | Dr. Johannes Koepp |
| | Mr. Alejandro A. Escobar |
| | BAKER BOTTS LLP |

8

and the Tribunal [has] a corresponding margin of estimation."[2132]  However, the Tribunal, as other tribunals have done, must reach a decision and it has done so on the basis of all the evidence which it has reviewed.

1637. Having considered and weighed all the arguments which the Parties have presented to it in respect of this issue the Tribunal, in the exercise of its wide discretion, finds that, as a result of the material and significant mis-conduct by Claimants and by Yukos (which they controlled), Claimants have contributed to the extent of 25 percent to the prejudice which they suffered as a result of Respondent's destruction of Yukos.  The resulting apportionment of responsibility as between Claimants and Respondent, namely 25 percent and 75 percent, is fair and reasonable in the circumstances of the present case.

## XI.    INTEREST

1638. As will be seen in Part XII of the Award dealing with quantification of Claimants' damages for Respondent's breach of the ECT, one of the elements factored into the Tribunal's calculation of damages will be interest.[2133]  Accordingly, the Tribunal, in the present Part XI will determine the applicable rate of such interest, whether it should be simple or compound and, if compound, the period of compounding.

### A.    CLAIMANTS' POSITION

1639. Claimants request the Tribunal to award them pre- and post-award interest.[2134]  In their Submission on Costs, Claimants also request interest on any costs awarded to them.[2135]

1640. According to Claimants, "payment of interest can be required to ensure full reparation."[2136]  Claimants quote the tribunal in *Vivendi v. Argentina*, which stated that the purpose of the payment of interest is "to compensate the damage resulting from the fact that, during the period of non-payment by the debtor, the creditor is deprived of the use and disposition of that sum he

---

[2132]    *MTD Equity Sdn Bhd. v. The Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Annulment, 21 March 2007 ¶ 101.  *See also Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID, ARB/06/111, Award, 5 October 2012 ¶¶ 659–87.

[2133]    In particular see paragraphs 1822–23 below on pre-award interest on the dividend streams that Claimants would have obtained in the absence of Respondent's breach.

[2134]    Memorial ¶¶ 969–70; Reply ¶¶ 859, 1199; Claimants' Post-Hearing Brief ¶ 302.

[2135]    Claimants' Submission on Costs ¶ 64.

[2136]    Memorial ¶ 959, citing to ILC Articles on State Responsibility, Art. 38, Exh. C-1042.

**C.**    TABLES T1–T9 SHOWING THE TRIBUNAL'S DAMAGES CALCULATIONS

1.    **Table T1:  Calculation of Total Damages of Claimants as of 19 December 2004 (Date of Expropriation) vs. 30 June 2014 (Date of Award for Valuation Purposes)**

| 19  December  2004 | |
| --- | --- |
| **Damages component** | **Amount** (in USD) |
| Yukos Equity Value | 21,175,832,823 |
| Dividends to end of 2004 | 2,417,808,219 |
| *Sum of Equity Value and Dividends* | *23,593,641,042* |
| Interest through 30 June 2014 | 7,596,090,702 |
| **Total** | **31,189,731,744** |

| | Outstanding Shares | % of Outstanding Shares | Damages (in USD) |
| --- | --- | --- | --- |
| **Yukos Total** | 1,934,964,578 | 100.00 | **31,189,731,744** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 17,570,439,964 |
| Claimant YUL | 50,340,995 | 2.60165 | 811,447,480 |
| Claimant VPL | 223,699,175 | 11.56089 | 3,605,811,362 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **21,987,698,805** |

| 30  June  2014 | |
| --- | --- |
| **Damages component** | **Amount** (in USD) |
| Yukos Equity Value | 42,625,343,615 |
| Dividends and interest (through 30 June 2014) | 51,981,340,000 |
| **Total** | **94,606,683,615** |

| | Outstanding Shares | % of Outstanding Shares | Damages (in USD) |
| --- | --- | --- | --- |
| **Yukos Total** | 1,934,964,578 | 100.00 | **94,606,683,615** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 53,295,779,147 |
| Claimant YUL | 50,340,995 | 2.60165 | 2,461,334,249 |
| Claimant VPL | 223,699,175 | 11.56089 | 10,937,377,001 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **66,694,490,398** |

| Damages After 25% Reduction | |
| --- | --- |
| Claimant Hulley | 39,971,834,360 |
| Claimant YUL | 1,846,000,687 |
| Claimant VPL | 8,203,032,751 |
| **Claimants Total** | **50,020,867,798** |

Note: Claimants' shareholdings and total number of Outstanding Shares taken from Appendix C.5.b to First Kaczmarek Report

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E



TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE INTERNATIONAL BUSINESS COMPANIES ACT
(CAP. 291)

CERTIFICATE OF INCORPORATION     (SECTIONS 14 AND 15)

No. 539118

The Registrar of Companies of the British Virgin Islands HEREBY CERTIFIES pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,

ILVEYS INC.

is incorporated in the British Virgin Islands as an International Business Company this 26th day of March, 2003.

Given under my hand and seal at Road Town, in the Territory of the British Virgin Islands

REGISTRAR OF COMPANIES

CRTI001K

11

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# BVI FINANCIAL SERVICES COMMISSION

| | | |
|---|---|---|
| Company No. | : | 539118 |
| Company Name | : | ILVEYS INC. |

| | | |
|---|---|---|
| Date | : | 29/11/2016 |
| Register Type | : | Public |

INDIVIDUAL DIRECTORS

| S/No. | Director No. | Director Type | Name | Personal Details | Service Address | Residential Address | Appointed Date | Cease Date |
|---|---|---|---|---|---|---|---|---|
| 1 | D4F04CE6 | Director | VLADIMIR VICTOROVICH PRIDOROGUINE | **Date of Birth:** 27/02/1971 <br> **Place of Birth:** RUSSIAN FEDERATION <br> **Nationality:** Russian | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY <br><br> RUSSIAN FEDERATION | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY <br><br> RUSSIAN FEDERATION | 26/03/2003 | |



Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

**BVI FINANCIAL SERVICES COMMISSION**                                      **REGISTER OF MEMBERS**

Entity No.                 :   539118                                                    Date   :   22/04/2025

Entity Name           :   ILVEYS INC.

INDIVIDUAL MEMBERS

| S/No. | Member No. | Name | Address | Share Classification | No. of Shares | Date Entered | Date Ceased |
|---|---|---|---|---|---|---|---|
| 1 | 8DCC1344 | Deniel  Shumeiko | Bld. 4 Snaiperskaya Str., apt. 267,<br><br>Moscow,<br><br>RUSSIAN FEDERATION | Ordinary | 250 | 28/08/2024 | |
| 2 | B5037C2C | Vladimir Pridorogin | Bld. 2, 14 Novogireevskaya Str.,  apt. 60,<br><br>Moscow,<br><br>RUSSIAN FEDERATION | Ordinary | 24750 | 28/08/2024 | |
| 3 | FFA635BE | Sergei  Pridorogin | Bld. 2, 14 Novogireevskaya Str., apt. 60,<br><br>Moscow,<br><br>RUSSIAN FEDERATION | Ordinary | 25000 | 14/04/2014 | |

Case 1:26-cv-03516-MKV    Document 1-1    Filed 04/27/26    Page 13 of 61

13

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

**ANNEX B**



# TERRITORY OF THE BRITISH VIRGIN ISLANDS

## THE INTERNATIONAL BUSINESS COMPANIES ACT
### (CAP. 291)

### CERTIFICATE OF INCORPORATION      (SECTIONS 14 AND 15)

No. 539118

The  Registrar of Companies  of the British Virgin Islands HEREBY CERTIFIES

pursuant to the International Business Companies Act, Cap. 291 that all

the requirements of the Act in respect of incorporation having been satisfied,

**ILVEYS INC.**

is incorporated in the British Virgin Islands as an International Business

Company this 26th day of March, 2003.

Given under my hand and seal at

Road Town, in the Territory of the

British Virgin Islands

**REGISTRAR OF COMPANIES**

CRTI001K

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# RESOLUTION OF THE SUBSCRIBER

## OF

## ILVEYS INC.

(the "Company")

The undersigned, being the Subscriber to the Memorandum & Articles of Association of Ilveys Inc., a company incorporated under the laws of the British Virgin Islands (the "Company"), hereby appoints:-

## VLADIMIR PRIDOROGUINE

first Director(s) of the Company, to serve as such until his successor(s) shall have been elected or until his resignation(s) or removal; such election shall be effective immediately and without further qualification.

Dated this **26th day of March, 2003**.

Shirley Chalwell, Assistant Secretary
**MOSSACK FONSECA & CO. (B.V.I.) LTD.**
Subscriber

15

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

Version 091101

## AGREEMENT ON CLEARING BROKERAGE SERVICES

# 3NBCY-_44_ /03

This Agreement on Clearing Brokerage Services ("this Agreement) is made on this _14_ day of ___May___ 2003 by and between

**Nikitas Brokerage Limited** (the "Agent"), incorporated and existing pursuant to the laws of the Republic of Cyprus, and

_Ilveys Inc._____ (the "Client"), incorporated and existing pursuant to the laws of _BVI_____.

For the purposes of this Agreement the Client and the Agent are each also hereinafter referred to as a Party, individually, and the Parties, collectively.

### RECITALS

**WHEREAS** the Client desires, from time to time, to buy and sell, with Agent's assistance, securities of Issuers, identified by the Client to Agent, as well as use other services rendered by the Agent under this Agreement;

**WHEREAS** the Parties shall also act hereunder in accordance with business custom and usage, and in spirit of mutually beneficial partnership;

**WHEREAS** the Parties agree to treat business custom and usage as rules of fair and equitable trading developed or to be developed by the National Association of Participants of the Securities Market (NAUFOR), including those contained in the Trading Rules of "Non-Commercial "Trading System RTS", in accordance with which Agent shall act while executing relevant Transactions and performing the Client's Orders as defined below herein;

**WHEREAS** the concrete contents of the Clearing Broker Services shall be determined each time by the Parties in accordance with the Client's wishes, terms of a separate Transaction and Client's Order;

### NOW, THEREFORE, THE PARTIES HEREBY HAVE AGREED AS FOLLOWS:

#### PART 1.    DEFINITIONS

The following terms shall be used in this Agreement with the following meanings:

1.1.    "Accepted Market Practice" shall mean, with respect to the penalty provisions hereunder, interest rates which are applied in the Russian Federation pursuant to the provisions of the Trade Agreement of the Non-Commercial Partnership "Trading System RTS", approved by its Board of Directors, which currently constitutes two tenth of one per cent (0,2%) of a Transaction's value per each calendar day of delay.

1.2.    "Affiliate" shall mean in relation to any Person, any entity controlled, directly or indirectly, by the Person, any entity that controls, directly or indirectly, the Person or any entity directly or indirectly under common Control with the Persons.

1.3.    "Authorised Person(s) of the Client" or "Authorised Person(s) of the Agent" or "Authorised Person(s)" shall mean (i) any officer, employee, manager or agent of either Party as has been authorised by notice in writing to the other Party to act on behalf of the first Party in the performance of any acts, elections or obligations under this Agreement, or (ii) any other person, firm or company holding a duly executed power of attorney from either Party which is in a form acceptable to the other Party;

1.4.    "Business Day" shall mean a day (other than Saturday or Sunday) on which commercial banks and exchange markets are open for business in the City of New York, USA, the City of London, United Kingdom, and in the City of Moscow, Russian Federation;

16

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

15.4. Either Party shall have the right to assign or transfer any or all of its rights or obligations to an Affiliate of that Party and performance of any obligation by an Affiliate shall be deemed to constitute performance by the relevant Party. This Agreement shall be binding upon the Parties and their successors and permitted assignees.

## PART 16.  ADDRESSES AND BANKING INSTRUCTIONS OF THE PARTIES

AGENT:                  **Nikitas Brokerage Limited**

Seat:                   2-4 Arch. Makarios III Avenue, 9th Floor, Capital Center, Nicosia, Cyprus

Banking Instructions:   JPMorgan Chase Bank NY SWIFT CHASUS33 for credit to JPMorgan Chase Bank London SWIFT CHASGB2L for further credit to Nikitas Brokerage Limited acc. 22828601

Telephone:              _____

Fax:                    _____


CLIENT:                 _____

Seat:                   _____

Banking instructions:   _____
                        _____
                        _____

Telephone:              _____

Fax:

**IN WITNESS WHEREOF** the Parties have caused this Agreement to be executed in two (2) original copies, having equal legal force, one (1) copy for each Party, at the above mentioned place and on the above mentioned date.

_ILVEYS INC._____
(name of the Client)

By: _____
Name: _Vladimir Pridoroguine_
Title: _Director_

**NIKITAS BROKERAGE LIMITED**

By: _____
Name:   Despo Theodossiou
Title:   Attorney-in-Fact

Agreement on Clearing Brokerage Services, Version 091101                                15

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

*Chancery Hall, 52 Reid Street, Hamilton HM 12,Bermuda*

July 12, 2005

To:    Ilveys Inc.
       Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI

Re:    Agency Agreement On General Terms And Conditions Of Business With Fixed Terms Financial
       Notes dated 08/18/2003 (the "Agreement")

Dear Client,

As you know, the Russian government is moving rapidly toward creating a more open and unrestricted domestic equity market.  Troika Dialog (Bermuda) Limited (hereinafter "Troika") strongly supports the evolution of the Russian capital markets.  We are at the forefront of the resurgent RTS and will continue to strive toward the further and continued growth of our markets generally.  The process that we are currently going through will aid in the advancement of a solid, reliable marketplace for many years to come.

And as the capital markets evolve so too will the requirements of both the brokerage and investment communities.  To this end, we refer to the above mentioned Agreement between you and Nikitas Brokerage Limited (NBL) and to the Joint Notice of Assignment by NBL and Troika, whereby you were informed of the full assignment by NBL of all of its rights and obligations under the Agreement to Troika. Capitalized terms, other than those defined in this letter, shall have the meanings assigned to them in the Agreement.

By this letter we propose that you execute the attached Amendment Agreement introducing, in particular, (i) a new Applicable Tax Rate to be applied for the purpose of the Agreement as of September 12, 2005; (ii) a new Fee Schedule according to which our Fees for purchase and sale transactions shall be 0.5% (zero point five per cent) of the Purchase and Sale Price respectively and any extension of Roll-Over Period shall be free of charge.  In addition, the Amendment Agreement excludes the possibility to perform Transactions under the Agreement with respect to Financial Notes linked to shares of Russian banks.  In case you wish to deal in such Financial Notes the new agreement should be entered into between you and Troika.  The new Applicable Tax Rate as well as other changes described hereinabove shall be deemed accepted by you if you countersign and fax to us a copy of the Amendment Agreement at 7 (095) 787-23-00 to Troika Audit LLC (for Troika Dialog (Bermuda) Limited).  The original copy of the countersigned Amendment Agreement shall be sent by courier or express mail to Troika Audit LLC (for Troika Dialog (Bermuda) Limited) 4, Romanov pereulok, Moscow, 103009, Russian Federation.

If you decide not to countersign the attached Amendment Agreement or if, for any other reason, we do not receive from you a countersigned copy of the Amendment Agreement by September 12, 2005, this letter shall serve as a notice of termination by Troika in respect of the Agreement.

In such a case, the Agreement shall be terminated as of September 12, 2005 (the "Termination Date") and the following provisions shall apply.

1) If, at the date of your receipt of this letter you have Financial Notes outstanding in your Investment Brokerage Account, please provide us with the relevant Instructions to conduct a FN Purchase/Redemption Transaction with respect of such Financial Notes. If we do not receive such Instructions prior to the Termination Date, Troika, acting independently and without any further prior notice to you, shall execute the relevant FN Purchase/Redemption Transaction on such terms and conditions as Troika will determine at its reasonable discretion based on the current market conditions;

18

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

Troika Dialog (Bermuda) Limited

2)  The Net Sale Amount received from such Transaction(s) less relevant Fees, taxes and expenses due to Troika under the Agreement shall be credited to your Investment Brokerage Account and, together with all other Funds, if any, (i) shall be further accounted thereon until we receive your withdrawal Instruction(s), or (ii) may be used by you in settlements under other agreements between you and us.

Yours faithfully,

_____

Ararat Gevorgyan
Troika Dialog (Bermuda) Limited

2

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# 3TDB - 401/06
dated 01 September 2006

# AGENCY AND SERVICES AGREEMENT

**between**

# TROIKA DIALOG (BERMUDA) LIMITED

and

# Ilveys Inc.

20

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

## 17.    GOVERNING LAW AND DISPUTE SETTLEMENT

17.1. This Agreement and the rights of the Parties shall be governed by and construed in accordance with the substantive law of England. Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the Rules of the LCIA, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be three. The seat, or legal place, of arbitration shall be London, Great Britain. The language to be used in the arbitration shall be English.

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed in English in two (2) original copies, one (1) for each of the Parties on the above mentioned date.

**Troika Dialog (Bermuda) Limited**

By:

Name:    Ruzanna Ghazaryan

Title:    Alternative Director

**Ilveys Inc.**
(name of the Client)

By:

Name:    Vladimir Pridorogine

Title:    Director

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

## TRADE CONFIRMATION NNº ADR/1611/4

| Client: | Ilveys Inc. | | Date: | 16/11/2004 |
|---|---|---|---|---|
| Attention to: | | | Telephone: | 304-45-41 |
| Address: | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | | Fax: | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 16/11/2004 | Yukos/ADR (US98849W1080) DR US98849W1080 | 10 000 | USD 11,65 | | USD 116 500,00 | | | 16/11/2004 | 16/11/2004 |

**Instruction for Securities** (debit or credit Investment Brokerage Account):  credit

**Instruction for Funds** (debit or credit Investment Brokerage Account):  debit

**Any other applicable terms:**

---

**Comments:**  Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement.
Please notify us immediately of any problems with the receipt or accuracy of this fax transmission.

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**This Trade Confirmation is governed exclusively by the terms and conditions of the Agency And Services Agreement.**

Signature for the Agent                                            Signature for the Client



22

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

## TRADE CONFIRMATION NNº ADR/2511/18

| Client: | Ilveys Inc. | | Date: | 25/11/2004 |
|---|---|---|---|---|
| Attention to: | | | Telephone: | 304-45-41 |
| Address: | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | | Fax: | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 25/11/2004 | Yukos/ADR (US98849W1080) DR US98849W1080 | 10 000 | USD 4,00 | | USD 40 000,00 | | | 25/11/2004 | 25/11/2004 |

**Instruction for Securities** (debit or credit Investment Brokerage Account):      credit

**Instruction for Funds** (debit or credit Investment Brokerage Account):      debit

**Any other applicable terms:**

| Comments: | Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement. Please notify us immediately of any problems with the receipt or accuracy of this fax transmission. |
|---|---|

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**This Trade Confirmation is governed exclusively by the terms and conditions of the Agency And Services Agreement.**

**Signature for the Agent**                                        **Signature for the Client**

23

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

## TRADE CONFIRMATION NNº ADR/2911/13

| Client: | Ilveys Inc. | | Date: | 29/11/2004 |
|---------|-------------|--|-------|------------|
| Attention to: | | | Telephone: | 304-45-41 |
| Address: | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | | Fax: | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 29/11/2004 | Yukos/ADR (US98849W1080) DR US98849W1080 | 5 000 | USD 4,75 | | USD 23 750,00 | | | 29/11/2004 | 29/11/2004 |

**Instruction for Securities** (debit or credit Investment Brokerage Account):    credit

**Instruction for Funds** (debit or credit Investment Brokerage Account):    debit

**Any other applicable terms:**

| Comments: | Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement. Please notify us immediately of any problems with the receipt or accuracy of this fax transmission. |
|---|---|

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**This Trade Confirmation is governed exclusively by the terms and conditions of the Agency And Services Agreement.**

Signature for the Agent                              Signature for the Client



Case 1:26-cv-03516-MKV    Document 1-1    Filed 04/27/26    Page 24 of 61

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

## TRADE CONFIRMATION NNº R3003/6B

| Client: | Ilveys Inc. | Date: | 31/03/2005 |
|---|---|---|---|
| Attention to: | | Telephone: | 304-45-41 |
| Address: | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | Fax: | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 30/03/2005 | Yukos/ADR (US98849W1080) DR US98849W1080 | 25,000 | USD 2.25 | | USD 56,250.00 | | | 31/03/2005 | 31/03/2005 |

**Instruction for Securities** (debit or credit Investment Brokerage Account):     credit

**Instruction for Funds** (debit or credit Investment Brokerage Account):     debit

**Any other applicable terms:**

| Comments: | Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement. Please notify us immediately of any problems with the receipt or accuracy of this fax transmission. |
|---|---|

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**Signature for the Agent**                              **Signature for the Client**

25

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

## TRADE CONFIRMATION NNº R2308/18

| Client: | Ilveys Inc. | | Date: | 23/08/2005 |
|---|---|---|---|---|
| Attention to: | | | Telephone: | 304-45-41 |
| Address: | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | | Fax: | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Sell | 23/08/2005 | Yukos/ADR (US98849W1080) DR US98849W1080 | 20,000 | USD 2.30 | | USD 46,000.00 | | | 23/08/2005 | 23/08/2005 |

**Instruction for Securities** (debit or credit Investment Brokerage Account):   debit

**Instruction for Funds** (debit or credit Investment Brokerage Account):   credit

**Any other applicable terms:**

| Comments: | Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement. Please notify us immediately of any problems with the receipt or accuracy of this fax transmission. |
|---|---|

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**Signature for the Agent**                    **Signature for the Client**



Case 1:26-cv-03516-MKV   Document 1-1   Filed 04/27/26   Page 26 of 61

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

## TRADE CONFIRMATION NN№ R2308/93

| Client: | Ilveys Inc. | Date: | 23/08/2005 |
|---|---|---|---|
| Attention to: | | Telephone: | 304-45-41 |
| Address: | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | Fax: | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 23/08/2005 | Yukos/ADR (US98849W1080) DR US98849W1080 | 20,000 | USD 2.39 | | USD 47,800.00 | | | 23/08/2005 | 23/08/2005 |

**Instruction for Securities** (debit or credit Investment Brokerage Account):     credit

**Instruction for Funds** (debit or credit Investment Brokerage Account):     debit

**Any other applicable terms:**

| Comments: | Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement. Please notify us immediately of any problems with the receipt or accuracy of this fax transmission. |
|---|---|

**The Payment Amount shall be transferred to the following bank account:**

    JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33

    FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L

    FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**Signature for the Agent**                      **Signature for the Client**

Case 1:26-cv-03516-MKV    Document 1-1    Filed 04/27/26    Page 27 of 61

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

## *Statement of the Investment Brokerage Account*
### *Period: 01/08/2005 to 31/08/2005*

| | |
|---|---|
| **Client:** | *Ilveys Inc.* |
| **Account Number:** | *ILVEY* |
| **Agreement Number:** | *3NBCY-44/03*   **Date:**   *14/05/2003* |
| **For the attention of:** | *Vladimir Pridorogine* |

### I. ACCOUNT BALANCE (FUNDS) dated 31.08.2005 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 182,353.87 | 24,175.00 | 0.00 | 0.00 | 181,233.20 | 181,233.20 | 205,408.20 |

### II. ACCOUNT BALANCE (SECURITIES) dated 31.08.2005 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance | Currency of Instrument | Market price | Accrued Coupon | Portfolio evaluation | Rate | Portfolio evaluation, USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LUKOY | 0 | 0 | 500 | 0 | 0 | -500 | -500 | USD | 48.70 | 0.00 | 0.00 | 1.00 | 0.00 |
| YUKOY | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 | USD | 2.30 | 0.00 | 115,000.00 | 1.00 | 115,000.00 |

**Please settle all outstanding obligations**                                                                                                    **115,000.00**

### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 04/08/2005 | DIV: MTL (Dividend Payment; ) 06/06/2005 [2500] | 182,353.87 | 3,402.76 | 0.00 | 185,756.63 |
| 10/08/2005 | Agency Services, ' (from 01.07.2005 to 31.07.2005)' | 185,756.63 | 0.00 | 443.43 | 185,313.20 |
| 12/08/2005 | R1307/18 | 185,313.20 | 40,000.00 | 0.00 | 225,313.20 |
| 12/08/2005 | R1108/14 | 225,313.20 | 0.00 | 43,550.00 | 181,763.20 |
| 18/08/2005 | R1708/276 | 181,763.20 | 45,550.00 | 0.00 | 227,313.20 |
| 18/08/2005 | R1808/134 | 227,313.20 | 0.00 | 44,550.00 | 182,763.20 |
| 19/08/2005 | R1908/187 | 182,763.20 | 42,675.00 | 0.00 | 225,438.20 |
| 19/08/2005 | R1808/200 | 225,438.20 | 0.00 | 42,405.00 | 183,033.20 |
| 23/08/2005 | R2308/18 | 183,033.20 | 46,000.00 | 0.00 | 229,033.20 |
| 23/08/2005 | R2308/93 | 229,033.20 | 0.00 | 47,800.00 | 181,233.20 |
| 30/08/2005 | R2908/50 | 181,233.20 | 47,950.00 | 0.00 | 229,183.20 |
| 30/08/2005 | R3008/200 | 229,183.20 | 0.00 | 47,950.00 | 181,233.20 |
| **TOTAL:** | | | **225,577.76** | **226,698.43** | |

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

## IV. SECURITIES FLOW:

| Date | Security Code | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|---|
| 12/08/2005 | LUKOY | R1108/14 | 0 | 1,000 | 0 | 1,000 |
| 12/08/2005 | LUKOY | R1307/18 | 1,000 | 0 | 1,000 | 0 |
| 18/08/2005 | LUKOY | R1808/134 | 0 | 1,000 | 0 | 1,000 |
| 18/08/2005 | LUKOY | R1708/276 | 1,000 | 0 | 1,000 | 0 |
| 30/08/2005 | LUKOY | R3008/200 | 0 | 1,000 | 0 | 1,000 |
| 30/08/2005 | LUKOY | R2908/50 | 1,000 | 0 | 1,000 | 0 |
| 19/08/2005 | MTL | R1808/200 | 0 | 1,500 | 0 | 1,500 |
| 19/08/2005 | MTL | R1908/187 | 1,500 | 0 | 1,500 | 0 |
| 23/08/2005 | YUKOY | R2308/93 | 50,000 | 20,000 | 0 | 70,000 |
| 23/08/2005 | YUKOY | R2308/18 | 70,000 | 0 | 20,000 | 50,000 |

## V. ORDER SECURITIES IN PROCESS:

| Date | Security Code | Number of transaction / Comment | Credit | Debit |
|---|---|---|---|---|
| 31/08/2005 | | | 0 | 0 |

## VI. TRADES:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment (COP) | Exchange Rate | Payment Amount, COP | Cash settlement date | Securities settlement date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/08/2005 | LUKOY | R1108/14 | BUY | USD | 1,000 | 43.55 | 43,550.00 | 0.00 | 43,550.00 | USD | 1.00 | 43,550.00 | 12/08/2005 | 12/08/2005 |
| 17/08/2005 | LUKOY | R1708/276 | SELL | USD | 1,000 | 45.55 | 45,550.00 | 0.00 | 45,550.00 | USD | 1.00 | 45,550.00 | 17/08/2005 | 17/08/2005 |
| 18/08/2005 | LUKOY | R1808/134 | BUY | USD | 1,000 | 44.55 | 44,550.00 | 0.00 | 44,550.00 | USD | 1.00 | 44,550.00 | 18/08/2005 | 18/08/2005 |
| 19/08/2005 | MTL | R1808/200 | BUY | USD | 1,500 | 28.27 | 42,405.00 | 0.00 | 42,405.00 | USD | 1.00 | 42,405.00 | 19/08/2005 | 19/08/2005 |
| 19/08/2005 | MTL | R1908/187 | SELL | USD | 1,500 | 28.45 | 42,675.00 | 0.00 | 42,675.00 | USD | 1.00 | 42,675.00 | 19/08/2005 | 19/08/2005 |
| 23/08/2005 | YUKOY | R2308/18 | SELL | USD | 20,000 | 2.30 | 46,000.00 | 0.00 | 46,000.00 | USD | 1.00 | 46,000.00 | 23/08/2005 | 23/08/2005 |
| 23/08/2005 | YUKOY | R2308/93 | BUY | USD | 20,000 | 2.39 | 47,800.00 | 0.00 | 47,800.00 | USD | 1.00 | 47,800.00 | 23/08/2005 | 23/08/2005 |
| 30/08/2005 | LUKOY | R2908/50 | SELL | USD | 1,000 | 47.95 | 47,950.00 | 0.00 | 47,950.00 | USD | 1.00 | 47,950.00 | 30/08/2005 | 30/08/2005 |
| 30/08/2005 | LUKOY | R3008/200 | BUY | USD | 1,000 | 47.95 | 47,950.00 | 0.00 | 47,950.00 | USD | 1.00 | 47,950.00 | 30/08/2005 | 30/08/2005 |
| 31/08/2005 | LUKOY | R3108/124 | SELL | USD | 500 | 48.35 | 24,175.00 | 0.00 | 24,175.00 | USD | 1.00 | 24,175.00 | 31/08/2005 | 31/08/2005 |

## VIa. TRADES IN PROCESS:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment, (COP) | Exchange Rate | Payment Amount, COP | Planned Cash settlement date | Planned Securities settlement date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31/08/2005 | LUKOY | R3108/124 | SELL | USD | 500 | 48.35 | 24,175.00 | 0.00 | 24,175.00 | USD | 1.00 | 24,175.00 | 31/08/2005 | 31/08/2005 |

## VII. CURRENCY EXCHANGE TRANSACTIONS:

| Date | Trade # | Initial Amount | Initial Currency | Exchange Rate | Payment Amount | Payment Currency | Value Date |
|---|---|---|---|---|---|---|---|
| 31/08/2005 | | 0.00 | | 0.00 | 0.00 | | 31/08/2005 |

*Report date     08/09/2005 21:02:03*

*Statement of the Investment Brokerage Account - page 2 of 3*

**29**

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

## *Appendix. Security Codes:*

| Security Code | Security | Type |
|---|---|---|
| LUKOY | LUKOIL/ADR (US6778621044) | DR |
| YUKOY | Yukos/ADR (US98849W1080) | DR |

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

## Troika Dialog (Bermuda) Limited

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

### Statement of the Investment Brokerage Account
**Period: 01/08/2006 to 31/08/2006**

| | |
|---|---|
| **Client:** | Ilveys Inc. |
| **Account Number:** | ILVEY |
| **Agreement Number:** | 3NBCY-44/03    Date:   14/05/2003 |
| **For the attention of:** | Vladimir Pridorogine |

#### I. ACCOUNT BALANCE (FUNDS) dated 31.08.2006 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 182,238.37 | 0.00 | 0.00 | 10,000.00 | 137,251.53 | 127,251.53 | 127,251.53 |

#### II. ACCOUNT BALANCE (SECURITIES) dated 31.08.2006 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance | Currency of Instrument | Market price | Accrued Coupon | Portfolio evaluation | Rate | Portfolio evaluation, USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MTL | 0 | 0 | 0 | 0 | 2,000 | 2,000 | 2,000 | USD | 21.10 | 0.00 | 42,200.00 | 1.00 | 42,200.00 |
| YUKOY | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 | USD | 2.94 | 0.00 | 147,000.00 | 1.00 | 147,000.00 |
| | | | | | | | | | | | | | **189,200.00** |

#### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 09/08/2006 | R0908/383 | 182,238.37 | 22,730.00 | 0.00 | 204,968.37 |
| 09/08/2006 | R0808/247 | 204,968.37 | 0.00 | 22,250.00 | 182,718.37 |
| 10/08/2006 | Agency Services, ' (from 01.07.2006 to 31.07.2006)' | 182,718.37 | 0.00 | 475.30 | 182,243.07 |
| 11/08/2006 | DIV: MBT (Dividend payment; including tax 15%) 05/05/2006  [2000] | 182,243.07 | 608.46 | 0.00 | 182,851.53 |
| 22/08/2006 | R2208/155 | 182,851.53 | 0.00 | 45,760.00 | 137,091.53 |
| 23/08/2006 | R2308/170 | 137,091.53 | 45,460.00 | 0.00 | 182,551.53 |
| 29/08/2006 | R2908/286 | 182,551.53 | 0.00 | 45,300.00 | 137,251.53 |
| **TOTAL:** | | | **68,798.46** | **113,785.30** | |

#### IV. SECURITIES FLOW:

| Date | Security Code | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|---|
| 09/08/2006 | MTL | R0808/247 | 0 | 1,000 | 0 | 1,000 |
| 09/08/2006 | MTL | R0908/383 | 1,000 | 0 | 1,000 | 0 |

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# Troika Dialog (Bermuda) Limited

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

## Statement of the Investment Brokerage Account

**Period: 01/09/2006 to 29/09/2006**

| | |
|---|---|
| *Client:* | **Ilveys Inc.** |
| *Account Number:* | *ILVEY* |
| *Agreement Number:* | **3TDB-401/06**  Date:  **01/09/2006** |
| *For the attention of:* | *Vladimir Pridorogine* |

### I. ACCOUNT BALANCE (FUNDS) dated 29.09.2006 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 137,251.53 | 0.00 | 0.00 | 0.00 | 80,801.53 | 80,801.53 | 80,801.53 |

### II. ACCOUNT BALANCE (SECURITIES) dated 29.09.2006 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance | Currency of Instrument | Market price | Accrued Coupon | Portfolio evaluation | Rate | Portfolio evaluation, USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MTL | 2,000 | 0 | 0 | 0 | 4,000 | 4,000 | 4,000 | USD | 20.19 | 0.00 | 80,760.00 | 1.00 | 80,760.00 |
| YUKOY | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 | USD | 2.85 | 0.00 | 142,500.00 | 1.00 | 142,500.00 |
| | | | | | | | | | | | | | 223,260.00 |

### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 01/09/2006 | Outgoing transfer | 137,251.53 | 0.00 | 10,000.00 | 127,251.53 |
| 21/09/2006 | Outgoing transfer | 127,251.53 | 0.00 | 5,000.00 | 122,251.53 |
| 21/09/2006 | R2109/66 | 122,251.53 | 0.00 | 43,000.00 | 79,251.53 |
| 22/09/2006 | R2209/125 | 79,251.53 | 38,100.00 | 0.00 | 117,351.53 |
| 22/09/2006 | R2209/176 | 117,351.53 | 0.00 | 37,650.00 | 79,701.53 |
| 22/09/2006 | R2209/30 | 79,701.53 | 0.00 | 38,075.00 | 41,626.53 |
| 25/09/2006 | R2509/413 | 41,626.53 | 0.00 | 35,525.00 | 6,101.53 |
| 27/09/2006 | R2609/304 | 6,101.53 | 36,575.00 | 0.00 | 42,676.53 |
| 28/09/2006 | R2809/144 | 42,676.53 | 38,225.00 | 0.00 | 80,901.53 |
| 29/09/2006 | R2809/373 | 80,901.53 | 38,500.00 | 0.00 | 119,401.53 |
| 29/09/2006 | R2809/374 | 119,401.53 | 0.00 | 38,600.00 | 80,801.53 |
| TOTAL: | | | 151,400.00 | 207,850.00 | |

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# Troika Dialog (Bermuda) Limited

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

## Statement of the Investment Brokerage Account

**Date: 22/01/2008**

| | |
|---|---|
| *Client:* | **Ilveys Inc.** |
| *Account Number:* | *ILVEY* |
| *Agreement Number:* | **3TDB-401/06**  Date: **01/09/2006** |
| *For the attention of:* | *Vladimir Pridorogine* |

### I. ACCOUNT BALANCE (FUNDS) dated 22.01.2008 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 29,923.13 | 28,700.00 | 0.00 | 0.00 | 6,123.13 | 6,123.13 | 34,823.13 |

### II. ACCOUNT BALANCE (SECURITIES) dated 22.01.2008 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| ALCOIN | 1,000 | 0 | 0 | 0 | 1,000 | 1,000 | 1,000 |
| SGTZY | 0 | 0 | 0 | 0 | 500 | 500 | 500 |
| SNGSP | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 |
| YUKOY | 50,000 | 0 | 0 | 0 | 0 | 0 | 0 |

Please settle all outstanding obligations

### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 22/01/2008 | R2201/1047 | 29,923.13 | 23,750.00 | 0.00 | 53,673.13 |
| 22/01/2008 | R2201/1048 | 53,673.13 | 0.00 | 23,800.00 | 29,873.13 |
| 22/01/2008 | R2201/4 | 29,873.13 | 0.00 | 23,750.00 | 6,123.13 |
| | TOTAL: | | 23,750.00 | 47,550.00 | |

### IV. SECURITIES FLOW:

| Date | Security Code | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|---|
| 22/01/2008 | SGTZY | R2201/1048 | 0 | 500 | 0 | 500 |
| 22/01/2008 | SGTZY | R2201/4 | 500 | 500 | 0 | 1,000 |
| 22/01/2008 | SGTZY | R2201/1047 | 1,000 | 0 | 500 | 500 |
| 22/01/2008 | YUKOY | Liquidation of the Issuer | 50,000 | 0 | 50,000 | 0 |

*Report date  23/01/2008 16:02:50*

*Statement of the Investment Brokerage Account - page 1 of 2*

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

## V. ORDER SECURITIES IN PROCESS:

| Date | Security Code | Number of transaction / Comment | Credit | Debit |
|------|---------------|--------------------------------|--------|-------|
| 22/01/2008 | | | 0 | 0 |

## VI. TRADES:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment (COP) | Exchange Rate | Payment Amount, COP | Cash settlement date | Securities settlement date |
|------|---------------|---------|------------|------------------------------|----------|-----------|-------------|------------------------------|----------------------------|---------------------------|---------------|---------------------|----------------------|----------------------------|
| 22/01/2008 | SGTZY | R2201/1047 | SELL | USD | 500 | 47.50 | 23,750.00 | 0.00 | 23,750.00 | USD | 1.00 | 23,750.00 | 22/01/2008 | 22/01/2008 |
| 22/01/2008 | SGTZY | R2201/1048 | BUY | USD | 500 | 47.60 | 23,800.00 | 0.00 | 23,800.00 | USD | 1.00 | 23,800.00 | 22/01/2008 | 22/01/2008 |
| 22/01/2008 | SGTZY | R2201/4 | BUY | USD | 500 | 47.50 | 23,750.00 | 0.00 | 23,750.00 | USD | 1.00 | 23,750.00 | 22/01/2008 | 22/01/2008 |

## VIa. TRADES IN PROCESS:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment, (COP) | Exchange Rate | Payment Amount, COP | Planned Cash settlement date | Planned Securities settlement date |
|------|---------------|---------|------------|------------------------------|----------|-----------|-------------|------------------------------|----------------------------|----------------------------|---------------|---------------------|------------------------------|------------------------------------|
| 21/01/2008 | ALCOIN | F1801/160 | SELL | USD | 1,000 | 28.70 | 28,700.00 | 0.00 | 28,700.00 | USD | 1.00 | 28,700.00 | 25/01/2008 | 21/01/2008 |

## VII. CURRENCY EXCHANGE TRANSACTIONS:

| Date | Trade # | Initial Amount | Initial Currency | Exchange Rate | Payment Amount | Payment Currency | Value Date |
|------|---------|----------------|------------------|---------------|----------------|------------------|------------|
| 22/01/2008 | | 0.00 | | 0.00 | 0.00 | | 22/01/2008 |

## VIII. ASSETS IN OPTIONS COLLATERAL:

| Asset Description | Opening Balance (in Units) | Closing Balance (in Units) |
|-------------------|----------------------------|----------------------------|
| | 0.00 | 0.00 |

## Appendix. Security Codes:

| Security Code | Security | Type | ISIN |
|---------------|----------|------|------|
| ALCOIN | Alcoa Inc. | Ordinary shares | US0138171014 |
| SGTZY | Surgutneftegas ord/ADR (US8688612048) | DR | US8688612048 |
| SNGSP | Surgutneftegaz | Preferred shares | RU0009029524 |
| YUKOY | Yukos/ADR (US98849W1080) | DR | US98849W1080 |

Case 1:26-cv-03516-MKV  Document 1-1  Filed 04/27/26  Page 34 of 61

# **TROIKA** DIALOG (BERMUDA)

 **TROIKA** DIALOG

January 28, 2008

To: **ILVEYS INC.**

Dear Sirs,

according to our records the following securities were accounted on your Investment Brokerage Account with us:

securities: 50,000 (Fifty thousand) of Yukos ADR (US98849W1080)
accounting period: August 23, 2005 - January 22, 2008.

Yours sincerely,
TROIKA DIALOG (BERMUDA) LIMITED

By: _____

Name: Gevorg Khachatryan
Title: Alternate Director

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

**Yukos Claims Administration**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901**
**Info@YukosClaims.com**



YKO



| Claim number: | 92B37B5C27 |
|---|---|



| Control number: | 7A9EF6FBD5 |
|---|---|

ILVEYS INC.
AKARA BLDG., 24 DE CASTRO
STREET, WICKHAMS CAY 1
ROAD TOWN
TORTOLA
VIRGIN ISLANDS, BRITISH

## CONFIRMATION OF FILING OF A CLAIM ONLINE

THIS IS CONFIRMATION OF YOUR APPLICATION SUBMITTED. PRINT THIS PAGE AND KEEP IT FOR FUTURE REFERENCE. IF YOU HAVE NOT UPLOAD THE ACCOMPANYING DOCUMENTATION TO THE WEBSITE, PLEASE SEND A COPY OF THIS PAGE WITH ALL ACCOMPANYING DOCUMENTATION TO THE ADDRESS INSERT ABOVE.

| SHARES OWNED (BEGINNING OF COMPENSATION PERIOD): The number of common shares and ADRs of Yukos that you owned as of the close of trading on July 1, 2003. If absent, enter "0". (If necessary, enter | 0 Common Shares | 0 ADR |
|---|---|---|
| (Please attach accompanying documentation.) | | |

ACQUISITION or RECEIPT: Acquisition or receipt of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of purchase or receipt (NUM/MON/YEAR) | Number of common shares or ADRs purchased or received |
|---|---|---|---|
| | Y | November 16, 2004 | 10000 |
| | Y | November 25, 2004 | 10000 |
| | Y | November 29, 2004 | 5000 |
| | Y | March 30, 2005 | 25000 |
| | Y | August 23, 2005 | 20000 |

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.

March 3, 2016, 12:28 PM

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

| Claim number statements: | 92B37B5C27 | | Control number: | 7A9EF6FBD5 |
|---|---|---|---|---|

SALES: Sales of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of sale (DATE/MONTH/YEAR) | Number of common shares or ADRs sold |
|---|---|---|---|
| | Y | August 23, 2005 | 20000 |

| SHARES HOLDING (END OF COMPENSATION PERIOD): The number of shares of Yukos common stock and ADRs you owned as of the close of trading on November 28, 2007. If not indicated, enter 0 (Required).<br><br>(Please attach accompanying documentation.) | **0**<br>Ordinary shares | 50,000<br>ADRs |
|---|---|---|

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E





Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901

| | |
|---|---|
| Claim Number: | 92B37B5C27 |
| Check Number: | 00002756 |
| Check Date: | 01/09/18 |
| Check Amount: | $2,499.16 |

ILVEYS INC.
7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

Ref No.: 7A9EF6FBD5

---

**YUKOS OIL CLAIMS ADMINISTRATION**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901 USA**

**Distribution Agent**

---

Dear Claimant:

The attached check represents your pro rata share of the Distribution Fund in the *Yukos Oil Claims Administration*. You are receiving this payment because you submitted an eligible claim for the purchase, acquisition or holding of Yukos Ordinary Shares or Yukos American Depositary Receipts during the Recovery Period, July 2, 2003 through and including November 28, 2007.

The funds available for distribution consist of a portion of the cash assets of certain former foreign subsidiaries of Yukos Oil Company (the "Yukos Group"), that have been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company. The total amount of the Distribution Fund available for this distribution is approximately $337 million and your payment was calculated in accordance with the Plan of Allocation set forth in the Notice of Distribution ("Notice"), which was previously sent to you and which is posted on the administration website at http://www.yukosclaims.com.

The tax treatment of this distribution varies based upon the recipient's tax status and treatment of his, her or its investments. Therefore, we cannot determine the appropriate tax reporting for all recipients and we cannot provide individual tax advice. The tax treatment of payments from the Yukos Distribution Fund is the responsibility of each recipient. **You should consult your tax advisor to determine the tax consequences, if any, of this payment to you.**

**Please cash this check promptly, as it becomes void and subject to re-distribution if not cashed by January 31, 2018.** If you have changed your address from the address on the accompanying check or if you have any questions, you may contact the Distribution Agent through email, at info@yukosclaims.com, by mail at the above mailing address or by calling one of the multi-national telephone numbers listed at the administration website and in the Notice.

Thank you.

Yukos Distribution Agent

Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901
USA

**Bank of America**    64-5/610 GA

01/09/18    00002756

Pay    *Two thousand four hundred ninety nine and 16/100 Dollars*

******$2,499.16

Pay to the    ILVEYS INC.
order of    7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTIO
IF NOT CASHED BY 01/31/2018.

BY _____
AUTHORIZED SIGNATURE

⑆002756⑆ ⑈061000052⑈ 334037124476⑆

**Docusign**

## Certificate Of Completion

Envelope Id: 8A370920-639D-8A80-8246-3BE87D4AD35E    Status: Completed
Subject: Complete with Docusign: DEED OF ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION 260423.pdf
Source Envelope:

| Document Pages: 36 | Signatures: 1 | Envelope Originator: |
|---|---|---|
| Certificate Pages: 3 | Initials: 0 | Vladimir Pridorogin |
| AutoNav: Enabled | | ilveysinc@gmail.com |
| EnvelopeId Stamping: Enabled | | IP Address: 192.142.48.21 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | |

## Record Tracking

| Status: Original | Holder: Vladimir Pridorogin | Location: DocuSign |
|---|---|---|
| 4/23/2026 5:24:02 AM | ilveysinc@gmail.com | |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Deniel Shumeiko<br>deniel24@sas.upenn.edu<br>Security Level: Email, Account Authentication (None) | Signed by:<br>A5A1C7EF8232469...<br><br>Signature Adoption: Drawn on Device<br>Using IP Address: 2600:387:15:2911::2<br>Signed using mobile | Sent: 4/23/2026 5:37:48 AM<br>Viewed: 4/23/2026 12:10:17 PM<br>Signed: 4/23/2026 12:10:40 PM |
| **Electronic Record and Signature Disclosure:**<br>Accepted: 4/16/2026 12:36:11 PM<br>ID: 385f6259-be42-4e5f-a29d-346bfe373363 | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/23/2026 5:37:48 AM |
| Certified Delivered | Security Checked | 4/23/2026 12:10:17 PM |
| Signing Complete | Security Checked | 4/23/2026 12:10:40 PM |
| Completed | Security Checked | 4/23/2026 12:10:40 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

## Electronic Record and Signature Disclosure

41

Electronic Record and Signature Disclosure created on: 4/12/2026 10:00:26 AM
Parties agreed to: Deniel Shumeiko

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Vladimir Pridorogin (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Vladimir Pridorogin:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ilveysinc@gmail.com

**To advise Vladimir Pridorogin of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ilveysinc@gmail.com and in the body of such request you must state: your previous

email address, your new email address.  We do not require any other information from you to change your email address

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Vladimir Pridorogin**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ilveysinc@gmail.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Vladimir Pridorogin**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ilveysinc@gmail.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent.  The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Vladimir Pridorogin as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Vladimir Pridorogin during the course of your relationship with Vladimir Pridorogin.

43

Exhibit B:  **Unanimous Shareholders' Resolution**

# EXHIBIT B: UNANIMOUS SHAREHOLDERS' RESOLUTION

**SUBJECT:** Corporate authorization for the distribution and assignment of Yukos ADR claims.

### 1. DESCRIPTION OF DOCUMENT:

An **Action by Unanimous Written Consent** signed by all shareholders of **ILVEYS INC.** (British Virgin Islands).

### 2. KEY CORPORATE DECISIONS:

- **Ratification of Value:** The Shareholders formally recognize the **$12,950,000** valuation of the family's holding in Yukos ADRs (CUSIP 98849W108) following the 2025 Dutch Supreme Court confirmation.

- **Authorization of Assignment:** The Shareholders unanimously authorize the Director (Vladimir Pridorogin) to execute the assignment of these claims to **DENIEL SHUMEIKO**

- **Family Asset Protection:** The resolution confirms that this transfer is intended to facilitate the protection of family assets within the United States jurisdiction.

### 3. EVIDENCE OF CONSENT:

This document serves as proof that the assignment was not a unilateral act but a collective decision of all beneficial owners, eliminating any potential claims of internal corporate dispute or lack of authority.

45

Docusign Envelope ID: 46F8272E-B7AF-851D-8240-D2611FEA298C

**ACTION BY UNANIMOUS WRITTEN CONSENT OF THE SHAREHOLDERS OF ILVEYS INC.**

**DATED:** April 14, 2026

The undersigned, being all of the Shareholders of **ILVEYS INC.**, a company organized and existing under the laws of the British Virgin Islands (the "Company"), hereby waive any notice of a meeting and adopt the following resolutions by unanimous written consent:

**WHEREAS**, the Company was established and is operated exclusively as a **Family Investment Vehicle** for the purpose of managing, preserving, and protecting the financial assets and long-term investments of the Shareholders and their family members;

**WHEREAS**, in its capacity as a Family Investment Vehicle, the Company is the beneficial owner of **50,000 American Depositary Receipts (ADRs) of Yukos Oil Company (CUSIP 98849W108)** and possesses all legal claims and causes of action arising from the breach of fiduciary duties and gross negligence of the depositary bank, Deutsche Bank Trust Company Americas ("DBTCA");

**WHEREAS**, following the 2025 final rulings of the Dutch Supreme Court and the judicially recognized valuation of Yukos assets, the Company's claims are valued at approximately **USD 12,950,000.00** (the "Claims");

**WHEREAS**, the Shareholders have determined that it is in the best interests of the Company and the family interest it represents to transfer and assign all rights, titles, and interests in these Claims to **DENIEL SHUMEIKO**, a Shareholder of the Company and a resident of the United States, to ensure the effective legal enforcement and continued protection of these family assets;

**NOW, THEREFORE, BE IT RESOLVED THAT:**

**1. ASSIGNMENT OF CLAIMS:** The Company shall irrevocably assign and transfer 100% of its rights, titles, and interests in the Claims against DBTCA to **DENIEL SHUMEIKO**. This transfer is made as a **Distribution in Kind** in the ordinary course of managing the Family Investment Vehicle.

**2. REVERSIONARY INTEREST:** The assignment is subject to a condition subsequent. In the event of the Assignee's death or permanent legal incapacity, the assigned Claims shall automatically and immediately revert to the Company (ILVEYS INC.) to ensure the continued protection of the family's investment.

**3. REPRESENTATIONS ON COMPLIANCE:** Each Shareholder represents and warrants that they are private individuals, are not "Politically Exposed Persons" (PEPs), and are not subject to any sanctions administered by the U.S. OFAC, the European Union, or the United Kingdom.

**4. AUTHORIZATION:** Vladimir Pridorogin, in his capacity as Director of the Company, is hereby authorized and directed to execute a Deed of Assignment and any other documents necessary to give effect to this transfer.

**IN WITNESS WHEREOF**, the undersigned Shareholders have executed this Consent as of the date first written above.

**SIGNATURES OF SHAREHOLDERS:**

| | | |
|---|---|---|
| **Vladimir Pridorogin** | **Sergey Pridorogin** | **Deniel Shumeiko** |
| (49.0%) | (50.0%) | (1.0%) |

46

**PCA Case No. AA 227**

**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED
IN ACCORDANCE WITH ARTICLE 26 OF THE ENERGY CHARTER TREATY
AND THE 1976 UNCITRAL ARBITRATION RULES**

- between -

**YUKOS UNIVERSAL LIMITED (ISLE OF MAN)**

- and -

**THE RUSSIAN FEDERATION**

---

**FINAL AWARD**

---

**18 July 2014**

*Tribunal*
The Hon. L. Yves Fortier PC CC OQ QC, Chairman
Dr. Charles Poncet
Judge Stephen M. Schwebel

Mr. Martin J. Valasek, Assistant to the Tribunal
Mr. Brooks W. Daly, Secretary to the Tribunal
Ms. Judith Levine, Assistant Secretary to the Tribunal

*Registry*
Permanent Court of Arbitration

| *Representing Claimant*: | *Representing Respondent*: |
|---|---|
| Professor Emmanuel Gaillard | Dr. Claudia Annacker |
| Dr. Yas Banifatemi | Mr. Lawrence B. Friedman |
| Ms. Jennifer Younan | Mr. David G. Sabel |
| SHEARMAN & STERLING LLP | Mr. Matthew D. Slater |
| | Mr. William B. McGurn |
| | Mr. J. Cameron Murphy |
| | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| | |
| | Mr. Michael S. Goldberg |
| | Mr. Jay L. Alexander |
| | Dr. Johannes Koepp |
| | Mr. Alejandro A. Escobar |
| | BAKER BOTTS LLP |

47

and the Tribunal [has] a corresponding margin of estimation." [2132]  However, the Tribunal, as other tribunals have done, must reach a decision and it has done so on the basis of all the evidence which it has reviewed.

1637. Having considered and weighed all the arguments which the Parties have presented to it in respect of this issue the Tribunal, in the exercise of its wide discretion, finds that, as a result of the material and significant mis-conduct by Claimants and by Yukos (which they controlled), Claimants have contributed to the extent of 25 percent to the prejudice which they suffered as a result of Respondent's destruction of Yukos.  The resulting apportionment of responsibility as between Claimants and Respondent, namely 25 percent and 75 percent, is fair and reasonable in the circumstances of the present case.

## XI.   INTEREST

1638. As will be seen in Part XII of the Award dealing with quantification of Claimants' damages for Respondent's breach of the ECT, one of the elements factored into the Tribunal's calculation of damages will be interest.[2133]  Accordingly, the Tribunal, in the present Part XI will determine the applicable rate of such interest, whether it should be simple or compound and, if compound, the period of compounding.

### A.   CLAIMANTS' POSITION

1639. Claimants request the Tribunal to award them pre- and post-award interest.[2134]  In their Submission on Costs, Claimants also request interest on any costs awarded to them.[2135]

1640. According to Claimants, "payment of interest can be required to ensure full reparation."[2136]  Claimants quote the tribunal in *Vivendi v. Argentina*, which stated that the purpose of the payment of interest is "to compensate the damage resulting from the fact that, during the period of non-payment by the debtor, the creditor is deprived of the use and disposition of that sum he

---

[2132]  *MTD Equity Sdn Bhd. v. The Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Annulment, 21 March 2007 ¶ 101.  *See also Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID, ARB/06/111, Award, 5 October 2012 ¶¶ 659–87.

[2133]  In particular see paragraphs 1822–23 below on pre-award interest on the dividend streams that Claimants would have obtained in the absence of Respondent's breach.

[2134]  Memorial ¶¶ 969–70; Reply ¶¶ 859, 1199; Claimants' Post-Hearing Brief ¶ 302.

[2135]  Claimants' Submission on Costs ¶ 64.

[2136]  Memorial ¶ 959, citing to ILC Articles on State Responsibility, Art. 38, Exh. C-1042.

C.    **TABLES T1–T9 SHOWING THE TRIBUNAL'S DAMAGES CALCULATIONS**

1.    **Table T1:  Calculation of Total Damages of Claimants as of 19 December 2004 (Date of Expropriation) vs. 30 June 2014 (Date of Award for Valuation Purposes)**

| 19  December  2004 | |
| --- | --- |
| **Damages component** | **Amount** *(in USD)* |
| Yukos Equity Value | 21,175,832,823 |
| Dividends to end of 2004 | 2,417,808,219 |
| *Sum of Equity Value and Dividends* | *23,593,641,042* |
| Interest through 30 June 2014 | 7,596,090,702 |
| **Total** | **31,189,731,744** |

| | Outstanding Shares | % of Outstanding Shares | Damages *(in USD)* |
| --- | --- | --- | --- |
| **Yukos Total** | 1,934,964,578 | 100.00 | **31,189,731,744** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 17,570,439,964 |
| Claimant YUL | 50,340,995 | 2.60165 | 811,447,480 |
| Claimant VPL | 223,699,175 | 11.56089 | 3,605,811,362 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **21,987,698,805** |

| 30  June  2014 | |
| --- | --- |
| **Damages component** | **Amount** *(in USD)* |
| Yukos Equity Value | 42,625,343,615 |
| Dividends and interest (through 30 June 2014) | 51,981,340,000 |
| **Total** | **94,606,683,615** |

| | Outstanding Shares | % of Outstanding Shares | Damages *(in USD)* |
| --- | --- | --- | --- |
| **Yukos Total** | 1,934,964,578 | 100.00 | **94,606,683,615** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 53,295,779,147 |
| Claimant YUL | 50,340,995 | 2.60165 | 2,461,334,249 |
| Claimant VPL | 223,699,175 | 11.56089 | 10,937,377,001 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **66,694,490,398** |

| Damages After 25% Reduction | |
| --- | --- |
| Claimant Hulley | 39,971,834,360 |
| Claimant YUL | 1,846,000,687 |
| Claimant VPL | 8,203,032,751 |
| **Claimants Total** | **50,020,867,798** |

Note: Claimants' shareholdings and total number of Outstanding Shares taken from Appendix C.5.b to First Kaczmarek Report

A-6

49

Docusign Envelope ID: 46F8272E-B7AF-851D-8240-D2611FEA298C



# TERRITORY OF THE BRITISH VIRGIN ISLANDS

## THE INTERNATIONAL BUSINESS COMPANIES ACT
### (CAP. 291)

### CERTIFICATE OF INCORPORATION      (SECTIONS 14 AND 15)

No. 539118

The  Registrar of Companies  of the British Virgin Islands HEREBY CERTIFIES

pursuant to the International Business Companies Act, Cap. 291 that all

the requirements of the Act in respect of incorporation having been satisfied,

   ILVEYS INC.

is incorporated in the British Virgin Islands as an International Business

Company this 26th day of March, 2003.

Given under my hand and seal at

Road Town, in the Territory of the

British Virgin Islands

REGISTRAR OF COMPANIES

CRTI001K

50

Docusign Envelope ID: 46F8272E-B7AF-851D-8240-D2611FEA298C

# BVI FINANCIAL SERVICES COMMISSION

| | |
|---|---|
| Company No. : 539118 | Date : 29/11/2016 |
| Company Name : ILVEYS INC. | Register Type : Public |

### INDIVIDUAL DIRECTORS

| S/No. | Director No. | Director Type | Name | Personal Details | Service Address | Residential Address | Appointed Date | Cease Date |
|---|---|---|---|---|---|---|---|---|
| 1 | D4F04CE6 | Director | VLADIMIR VICTOROVICH PRIDOROGUINE | Date of Birth: 27/02/1971 Place of Birth: RUSSIAN FEDERATION Nationality: Russian | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY RUSSIAN FEDERATION | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY RUSSIAN FEDERATION | 26/03/2003 | |

Case 1:26-cv-03516-MKV Document 1-1 Filed 04/27/26 Page 51 of 61

Docusign Envelope ID: 46F8272E-B7AF-851D-8240-D2611FEA298C

# BVI FINANCIAL SERVICES COMMISSION

## REGISTER OF MEMBERS

Entity No.        : 539118

Date   :  22/04/2025

Entity Name       :  ILVEYS INC.

## INDIVIDUAL MEMBERS

| S/No. | Member No. | Name | Address | Share Classification | No. of Shares | Date Entered | Date Ceased |
|---|---|---|---|---|---|---|---|
| 1 | 8DCC1344 | Deniel  Shumeiko | Bld. 4 Snaiperskaya Str., apt. 267, Moscow, RUSSIAN FEDERATION | Ordinary | 250 | 28/08/2024 | |
| 2 | B5037C2C | Vladimir Pridorogin | Bld. 2, 14 Novogireevskaya Str.,  apt. 60, Moscow, RUSSIAN FEDERATION | Ordinary | 24750 | 28/08/2024 | |
| 3 | FFA635BE | Sergei  Pridorogin | Bld. 2, 14 Novogireevskaya Str., apt. 60, Moscow, RUSSIAN FEDERATION | Ordinary | 25000 | 14/04/2014 | |

53

EXHIBIT C: **TIMELINE OF CONFLICT OF INTEREST AND FIDUCIARY BREACH (2004–2026)**

**EXHIBIT C: TIMELINE OF CONFLICT OF INTEREST AND FIDUCIARY BREACH (2004–2007)**

**SUBJECT:** Chronology of Deutsche Bank's ("DB") dual role as a Fiduciary for ADR holders and a petitioning creditor/facilitator in the destruction of Yukos Oil Company.

| DATE | ACTION BY DEUTSCHE BANK / AFFILIATES | FIDUCIARY IMPLICATION / CONFLICT |
|---|---|---|
| Dec 2004 | **Financing the Expropriation:** DB led a consortium to provide a **$10–13 Billion** loan to Gazprom for the acquisition of "Yuganskneftegaz" (Yukos's core asset). | **Direct Conflict:** DB financed the seizure of the very assets it was entrusted to protect for ADR holders. **(See pp. 56-57)** |
| Dec 21, 2004 | **Blocking U.S. Protection:** When Yukos sought Chapter 11 protection in Houston, TX, DB filed a motion to dismiss, arguing U.S. courts had **no jurisdiction**. | **Breach of Loyalty:** DB stripped its U.S. beneficiaries of legal protection to clear the way for the Gazprom loan. **(See p. 58)** |
| March 2006 | **Initiating Bankruptcy:** DB, as part of a bank syndicate, filed a petition in Moscow to declare Yukos bankrupt over a **$482 Million** debt. | **Self-Dealing:** The Fiduciary (DB) acted as the "executioner" of the company it co-owned on behalf of its clients. **(See p. 59)** |
| May 2006 | **Asset Transfer Facilitation:** DB sold its Yukos debt claims to Rosneft, allowing the state entity to become the dominant creditor and absorb Yukos's assets. | **Unjust Enrichment:** DB exited its credit position with profit while its ADR clients were left with "worthless" paper. **(See pp. 60-61)** |
| Dec 18, 2007 | **The "Worthless Notice":** DB issued a formal notice to ADR holders stating the assets were "worthless" due to liquidation. | **Constructive Fraud:** DB labeled the asset "worthless" only *after* it profited from the liquidation it helped initiate. |
| 10.2025 – Current | **Failure to Enforce:** Despite the $66B+ Hague Award, DB refused to intervene in U.S. courts to recover the 15% stake (~$18.76B). | **Gross Negligence:** DB continues to ignore the judicially established value of the assets to shield itself from its 2006 actions. |

**SUMMARY OF CONFLICT:**

The evidence demonstrates that Defendant's inaction was not a "business judgment" but a calculated effort to avoid legal scrutiny of its 2004–2007 conduct. Defendant chose the lucrative fees from Russian state entities (Gazprom/Rosneft) over its sacred fiduciary duties to U.S. investors.

**DEMAND:**

Plaintiff seeks full discovery (accounting) of all fees earned by Defendant from the aforementioned 2004–2007 transactions to establish the scale of the conflict of interest.

54

**2026: THE CONTINUING CONCEALMENT AND BREACH (THE "COVER-UP")**

55

| DATE | ACTION BY DEUTSCHE BANK | FIDUCIARY IMPLICATION / CONFLICT |
|---|---|---|
| March–April 2026 | **The Intentional Ghosting:** Despite receiving a comprehensive evidence packet regarding the judicially restored value of Yukos ($94.6B) and the imminent predatory threat from GML (Notice of March 16, 2026), DB chose total passivity and refused to provide a reasoned legal response. | **Active Concealment:** The Defendant's current silence is a deliberate tool to prevent judicial scrutiny of its 2004–2007 conduct. By failing to act in 2026, DB is actively protecting its past self-dealing at the direct expense of the Plaintiff. |

### LEGAL SIGNIFICANCE OF THE 2026 CONDUCT:

The Defendant's 2026 refusal to intervene in the D.D.C. proceedings is not a new or separate error, but a **continuation of the original breach**. The Defendant is using its "2007 Worthless Notice" as a fraudulent shield to block the recovery of assets that are now judicially proven to be worth billions. Under New York law, this **Fraudulent Concealment** and **Equitable Estoppel** prevent the Defendant from asserting any statute of limitations defense.

55

**The New York Times**

https://www.nytimes.com/2004/12/18/business/worldbusiness/banks-drop-support-of-bid-for-russian-oil-giants.html

# Banks Drop Support of Bid for Russian Oil Giant's Unit

By Erin E. Arvedlund

Dec. 18, 2004

MOSCOW, Dec. 17 - Russia brushed aside an American court's attempt to halt the auction of the oil giant Yukos' biggest production unit, but a consortium of international banks withdrew their support for a bid by the state gas monopoly Gazprom.

Gazprom on Friday said it still planned to bid on Yukos's prize asset, Yuganskneftegas, in an auction Sunday -- despite a last-minute decision by Deutsche Bank and others to pull out of a loan reported to be up to 10 billion euros ($13 billion). The starting price for Yuganskneftegas is $8.65 billion.

Alexander Stepanenko, a spokesman for the company's oil unit, said Gazprom had made the necessary deposit of $1.7 billion to take part, despite the fact that Deutsche Bank and other banks were delaying financing -- heeding an order issued late Thursday by a judge in Houston who told bidders and their banks not to take part in the auction.

"Gazprom will participate" in the auction, Mr. Stepanenko told the Rossiya television channel. In a statement late Friday, Gazprom, which is widely expected to win the auction, also said that after the sale it would decide whether to borrow money and how much it might need to borrow.

Russian government officials lashed out at the court decision. Russia's foreign minister, Sergei Lavrov, insisted on state television that the Yukos affair would be decided "under Russian law" and argued that the United States court ruling had no legal force in Russia.

> **Want to stay updated on what's happening in Russia?** Sign up for Your Places: Global Update, and we'll send our latest coverage to your inbox.

The planned auction of Yuganskneftegas is an internal matter, Prime Minister Mikhail Fradkov said in remarks carried by Interfax news agency. "We follow our internal legislation, which is the determining factor."

Yukos supported the Houston bankruptcy judge's decision on Friday, as law enforcement agents yet again searched the company's headquarters in downtown Moscow.

"We remain realistic about the ruling's immediate effect," Yukos said in a statement published on its Web site. "While Russian authorities have stated their intention to proceed with the auction, we hope the ruling will lead international banks and other

parties to reconsider their participation."

The Kremlin-inspired campaign against Yukos and its founder, Mikhail B. Khodorkovsky, is widely perceived as punishment for his political ambitions and his lobbying for private oil pipelines. The tax claims against Yukos have mounted to more than $27 billion for the years 2000 through 2003. Yuganskneftegas is being auctioned to cover the tax bill.

A Deutsche Bank spokeswoman in London, Joanna McCulloth, declined to comment. But the syndicate of banks -- which included Deutsche, J.P. Morgan, ABN Amro, BNP Paribas, Calyon and Dresdner Kleinwort Benson -- will not be lending money to Gazprom in the next 10 business days or risk defying the judge in Houston.

Gazprom "strongly believes the decision was unfair and the filing of a bankruptcy proceeding by Yukos in the U.S. was an attempt to circumvent Russian law," said Nikolai Krylov, a partner at the Winston & Strawn law firm, which is representing Gazprom. "Their main assets were in Russia."

Christopher Granville, a strategist for the UFG brokerage firm, which is partly owned by Deutsche Bank, said that even without the Western bank syndicate, Gazprom "can find the money from somewhere else, possibly Russian banks or other sources."

Surgutneftegas, a Kremlin-friendly Russian oil company with $7.5 billion in cash, could be a source of money.

The Houston court's injunction lasts for 10 days, and if it is lifted the banks might still be able to provide Gazprom funds before the payment deadline of Jan. 2.

"There are options for Gazprom," said Adam Landes, an oil analyst covering Russia for Renaissance Capital out of London.

"The banks could lend to the government, which in turn could lend the money to Gazprom."

There was also a slim chance that the government could cancel the auction; on Friday, Yukos canceled a shareholders meeting set for Monday. The Sunday auction was widely believed to have been timed to trump the shareholders meeting, where bankruptcy and even liquidation would be on the agenda. Yukos also canceled another shareholders meeting, scheduled for Jan. 13.

The Russian authorities "can make this up as they go along," Mr. Granville of UFG said. "The legal environment in Russia allows for great flexibility. If there's a delay in pulling in financing because of the restraining order in Houston, that delay can be accommodated."

He added, however, "large international banks aren't going to take the risk of being in contempt of court -- they all have interests in the U.S."

**The New York Times**

https://www.nytimes.com/2004/12/29/business/worldbusiness/bank-asks-court-to-dismiss-yukos-bankruptcy.html

# Bank Asks Court to Dismiss Yukos Bankruptcy

**By The Associated Press**

Dec. 29, 2004

HOUSTON, Dec. 28 - Deutsche Bank sought on Tuesday to have a federal judge dismiss the bankruptcy protection filing in Houston by the Russian oil giant Yukos.

In a court filing, Deutsche Bank said that Yukos had no Texas ties beyond a few million dollars in bank accounts and a displaced chief financial officer and should not be able to seek protection in Houston.

The bank contended that Yukos filed for bankruptcy protection earlier this month in Texas in a desperate, and unsuccessful, bid to stave off the Dec. 19 auction of its top subsidiary that stems from a tax dispute with the Russian government.

Deutsche Bank was one of a consortium of banks -- including ABN Amro and Dresdner Kleinwort Wasserstein -- that had intended to finance a $10 billion to $13 billion bid by Gazprom, a government-owned natural gas company, to buy Yuganskneftegaz, which produces 60 percent of Yukos's oil and 11 percent of Russia's oil.

The Russian government planned to sell the subsidiary to pay off some of the $27.5 billion in back taxes it contends it is owed by Yukos. The oil company disputes those figures.

The consortium froze the money after Letitia Z. Clark, a federal bankruptcy judge in Houston, granted an emergency injunction to block the auction on Dec. 16, two days after the oil company filed its Chapter 11 case.

Earlier Tuesday, Yukos missed interest payments on a $1 billion loan, leading Standard & Poor's to cut its grade on the company's debt to default. [Page W7.]

In its court filing Tuesday, the bank said, "This blatant attempt to artificially manufacture a basis for jurisdiction constitutes cause to dismiss this case."

Mike Lake, a spokesman for Yukos's lawyers, said that Yukos remained confident the jurisdiction of the Chapter 11 case was proper.

Yukos claimed the bankruptcy was properly filed in Texas because the chief financial officer, Bruce K. Misamore, was conducting company business from his home in Houston, having returned there earlier in December after learning that he might be targeted by the Russian authorities if he returned to Moscow.

Also, Yukos put $7 million in two Houston bank accounts to cover legal fees and Mr. Misamore's costs.

58

**The New York Times**

https://www.nytimes.com/2006/03/10/business/worldbusiness/yukos-sued-by-banking-consortium.html

# *Yukos sued by banking consortium*

By Andrew E. Kramer

March 10, 2006

MOSCOW — A consortium of Western banks led by Société Générale of France filed a lawsuit in Moscow on Friday to declare the Yukos oil company bankrupt just over a year after the Kremlin seized its largest production asset amid a politically tinged tax dispute.

Also this week, managers in Moscow for what was once Russia's largest oil company were openly defying orders from the leadership - who are in self-imposed exile in London - raising concerns over whether the unusual arrangement could continue.

The company's former chairman, Mikhail Khodorkovsky, is serving a sentence in a Siberian penal colony.

The 14 Western banks, which are owed $482 million, filed suit in Moscow's arbitration court. The case was accepted immediately, although the court typically takes five days for such cases, said Claire Davidson, a Yukos spokeswoman in London.

The banks join a long list of creditors in Russia, led by the tax authorities, who have a claim of more than $6 billion. Russian law gives the state priority on any assets seized by a bankruptcy judge, Davidson said.

"We're really shocked by this and we don't understand" why they also acted in Russia, Davidson said. She said Yukos had been in talks with the banks to repay the loan from the proceeds of sales of foreign assets, including a refinery in Lithuania, a pipeline in Slovakia and offices in Britain and Switzerland.

The banks, including Deutsche Bank, ING, Citibank and BNP Paribas, have already registered claims to proceeds from sales of Yukos's foreign assets in a Dutch court, Davidson said.

The bankruptcy proceedings will probably run about three months, and Yukos will contest the filing, she said.

The legal action raises the possibility that Western financial companies will, paradoxically, become the final undoing of what was once considered a model of Western-style corporate development in the Russian oil sector.

Yukos also faces suits from tax authorities and from its former production unit, now owned by the state- owned company Rosneft.

59

**Business**

🕐 This article is more than **19 years old**

# The end comes for Yukos as oil firm declared bankrupt and auction ordered

**Tom Parfitt** *in Moscow,* **Terry Macalister**

Wed 2 Aug 2006 00.07 BST

 Prefer the Guardian on Google

Yukos, the Russian oil company whose former owner dared to defy the Kremlin, was finally crushed yesterday as a court in Moscow declared it bankrupt and ordered its assets to be sold.

The Russian state-dominated companies Rosneft and Gazprom were circling last night, confirming their interest in a business expected to go for a knockdown price at auction. Rosneft and Gazprom are cash-rich, with the former having just raised $10.4bn (£5.7bn) through a flotation on the London stock market and Gazprom reporting a doubling in first-half profits to 177.06bn roubles (£3.5bn) yesterday.

Moscow's arbitration court upheld a vote by creditors to liquidate Yukos, which was once headed by the oligarch Mikhail Khodorkovsky, now serving eight years in a Siberian prison on politically tinged charges of fraud and tax evasion.

Drew Holliner, a Yukos lawyer, called the ruling "a death sentence" for the firm.

Before his arrest in 2003, Khodorkovsky clashed with President Vladimir Putin over energy policy and provoked the leader's ire by channelling funds to opposition parties. Yukos won plaudits from the west for good corporate governance but came under increasing scrutiny from the Kremlin and was presented with a series of multibillion-pound tax demands.

Before yesterday's hearing the company had argued it could restructure itself and pay off its debts without going into receivership but creditors rejected a rescue plan last week after a court-appointed administrator warned them that the company was insolvent. Yukos's chief executive, Steven Theede, resigned last month, calling the bankruptcy proceedings a "farce". Yukos's debts were estimated at $18.3bn, while its assets stood at $17.7bn.

Judge Pavel Markov ordered Yukos - once Russia's biggest oil company - to be broken up and auctioned to satisfy creditors, chiefly the tax authorities and Rosneft, which acquired $480m of Yukos's debt from western banks in April.

Artyom Konchin, an oil and gas analyst at the Aton brokerage in Moscow, predicted Yukos's assets would be valued well below market rates and sold to "state-owned or

60

quasi state-owned companies".

Rosneft and the gas monopoly Gazprom are heavily tipped as the buyers.

"Those companies will have a very close relation to the whole process," said Konstantin Batunin, an analyst at Alfa Bank, reflecting concerns that the auctions will not be transparent.

Rosneft and Gazprom's division of Yukos would be a huge boost to Mr Putin's crusade to strengthen the state by gathering hydrocarbon producers under state control. A university thesis written by Mr Putin in St Petersburg in the 1990s argued that Russia's revival as a world power relied on seizing oil and gas reserves.

Mr Konchin said: "The Kremlin wants to reduce the influence of politically independent or profit-oriented entities."

Rosneft's daily production leapt from 1m barrels of oil to 1.6m after it swallowed Yuganskneftegas, Yukos's main production unit. Now it is being groomed to rival the likes of Exxon Mobil. Gazprom has flexed its muscles by expanding in Britain and said it would like to buy a large utility here. But its decision to cut off gas to Ukraine in January was seen by many as a political move inspired by Mr Putin.

Yukos said it would appeal against yesterday's bankruptcy ruling. Gazprom has already offered to pay nearly $2bn for the 20% stake that Yukos owns in Gazprom Neft, formerly known as Sibneft.

# Most viewed

61