62

EXHIBIT D:  **Pre-Litigation Correspondence**

**EXHIBIT D: PRE-LITIGATION CORRESPONDENCE AND FORMAL DEMANDS**

**SUBJECT:** Evidence of Plaintiff's good-faith efforts to resolve the matter non-judicially and Defendant's summary rejection of fiduciary obligations.

### 1. THE INITIAL DEMAND (April 2026)

Prior to this action, a comprehensive legal memorandum (35 pages) and a formal **Demand Letter** were served upon the Defendant. These documents detailed the reactivation of the asset's value following the 2025 final Dutch Supreme Court ruling and established the Defendant's exclusive standing under the "Swedish Precedent."

### 2. DEFENDANT'S RESPONSE (April 6, 2026)

The response from **Sarah Schoenbach (Vice President & Senior Counsel)** is included herein. Defendant summarily rejected all claims by relying exclusively on a **"Worthless Notice" from December 18, 2007**. Defendant's response:

- Failed to address the $96 Billion valuation established by international tribunals.
- Ignored the legal findings of the Swedish Supreme Court regarding the Defendant's exclusive standing.
- Demonstrated a willful intent to abandon fiduciary assets belonging to U.S. investors.

### 3. PLAINTIFF'S FORMAL REBUTTAL (April 7, 2026)

Plaintiff served a formal rebuttal, notifying the Defendant that its reliance on the 2007 Notice was factually and legally unsustainable. Plaintiff provided a specific mathematical breakdown of the **$18.76 Billion** global claim and demanded immediate intervention in the D.D.C. proceedings.

### 4. NOTICE OF ASSIGNMENT (April 2026)

Included is the final notice from the current Plaintiff (Deniel Shumeiko), informing the Defendant of the legal assignment of claims and the imminent filing of this action in the Southern District of New York.

 Gmail

I I <ilveysinc@gmail.com>

## URGENT: NOTICE OF CLAIM $18.7B | ATTN: LEGAL DEPT - NEW YORK OFFICE | DELIVERY CONFIRMED 889975868394

1 письмо

I I <ilveysinc@gmail.com>    26 марта 2026 г. в 17:49
Кому: adr@db.com, db.ir@db.com, andrew.stemmer@db.com
Копия: lisa.mcgeough@db.com, robert.martello@db.com, corporate.governance@db.com

**Dear General Counsel and Head of Global Securities Services,**

I am writing to you in my capacity as **Director of ILVEYS INC.** to provide formal notice of our legal demand regarding the Yukos Oil Company ADR program.

Please be advised that a Formal Legal Demand and Notice of Claim **executed by our Authorized Representative in the United States** was dispatched via **FedEx Priority Overnight** to your New York office at 1 Columbus Circle. Our tracking records confirm that this package has been successfully delivered and signed for at your headquarters.

The FedEx package contains two (2) separate, bound, and sealed original copies of the demand, individually addressed to the General Counsel and the Head of Global Securities Services.

**Tracking Number:** 889975868394

This demand concerns the Depositary's mandatory duty to intervene in **Case No. 14-cv-1996 (D.D.C.).** While we recognize the jurisdictional limitations prior to the **final 2025 Dutch court rulings**, the conclusion of those proceedings, combined with the **2016 Svea Court of Appeal judgment** (which established the Depositary as the sole shareholder of record for Yukos assets in place of ADR holders), now mandates your immediate action. Following the commencement of the recognition process for the 2014 Hague awards in the U.S., Deutsche Bank is now uniquely positioned and **fiducially obligated** to act under the statutory protections of the **Magnitsky Act (P.L. 112-208).**

**URGENT NOTICE:** We also formally contest the ongoing discriminatory distribution by the Yukos Claims Administration (Epiq) scheduled for March 31, 2026. We demand that Deutsche Bank immediately halt or contest this distribution to prevent further material loss to U.S. ADR holders.

64

Due to the confidentiality of the sensitive financial and corporate data, the full evidentiary Annexes and the signed signature pages are provided exclusively via the secured physical package now in your possession. For your immediate record, I have attached:

**- The Affidavit of Service** (duly notarized via **Proof** online notary), which incorporates as **Exhibits A and B** the FedEx receipt and the visual confirmation of the two (2) separate copies being placed into the envelope before sealing.

As Director, I expect your formal response within **10 business days**.

**Sincerely,**

**Vladimir Pridorogin**
**Director, ILVEYS INC.**



**Affidavit260325.pdf**
1832K

# AFFIDAVIT OF SERVICE BY COMMERCIAL COURIER

**STATE OF** ____Texas____

**COUNTY OF** ___Collin___

I, DENIEL SHUMEIKO, being duly sworn, depose and say:

1.  I am over 18 years of age, I am a beneficial owner of **ILVEYS INC.**, Claimant herein, and I am authorized to serve legal process in this matter.

2.  On **March 25 , 2026**, at **3:02 PM**, I served two (2) identical bound and sealed copies of the **FORMAL LEGAL DEMAND** regarding Yukos Oil Company ADRs (Case No. 14-cv-1996), **including ANNEX 1, ANNEX 2 (22 pages), and ANNEX 3 (10 pages)**, upon:
    **DEUTSCHE BANK TRUST COMPANY AMERICAS**
    **Attn: General Counsel / Head of Global Securities Services**
    **1 Columbus Circle, New York, NY 10019**

3.  I served the aforementioned documents by depositing two (2) identical true, bound and sealed copies of the same, enclosed in a post-paid properly addressed wrapper, in a custody of **FedEx (Federal Express) for Priority Overnight Delivery with Direct Signature Required** at the FedEx Office located at: **3535 Market St, Philadelphia, PA 19104.**

4.  The specific FedEx Tracking Number for this shipment is: **8899 7586 8394**. A copy of the FedEx receipt and a photo of the two copies being enclosed in the envelope are attached hereto as Exhibits A and B and incorporated herein by reference.

5.  I knew the person/entity so served to be the designated Depositary and legal shareholder of record for the subject Yukos Oil Company ADRs.

*Deniel Shumeiko*
_____

*(Signature of Representative)*

**Sworn to before me this** __25th__ **day of March, 2026.**

_____
*(Notary Public Stamp & Signature)*

Notary Public State of Texas
Bruce Edward Denny
ID NUMBER
134256534
COMMISSION EXPIRES
March 16, 2027

Electronically signed and notarized online using the Proof platform.

**66**



3535 Market St Ste 10B
Philadelphia, PA 19104-3386
215.386.5679

March 25, 2026 3:02 PM
Receipt #: BBXKK00128548

PACKAGE DROPPED OFF

**FedEx Express**
889975868394

Total Packages: 1

Tell us how we're doing:
**fedex.com/welisten**

Terms and conditions apply, including
terms that limit FedEx's liability.
The estimated shipping charge may be
different than the actual charges for
your shipment. Differences may occur
based on actual weight, dimensions
and other factors. Shipment-related
terms and conditions and details on
how shipping charges are calculated
are available upon request or at
fedex.com/serviceguide.

Manually Weighed = (M), Weighed by
Scale = (S), Taxable Item = T.

Visit us at: fedex.com
Or call 1.800.GoFedEx
(1.800.463.3339)



BBXKK001202603252528548

67

ORIGINAL 2: FOR HEAD OF GLOBAL SECURITIES SERVICES

Tel.: +1(267)693-3824
Email: ilveysinc@gmail.com

Deutsche Bank Trust Company Americas
**Address:** 1 Columbus Circle, New York, NY 10019
**Attn:** General Counsel / Head of Global Securities Services

**RE: Mandatory Action Following Final Adjudication of Yukos Claims;** *Case No. 14-cv-1996 (D.D.C.) and [No. 23-7174 (D.C. Cir.)]* and Enforcement of the Magnitsky Act (P.L. 112-208)

... Trust Company Americas,

... Yukos Oil Company ADRs. We are writing to formally demand ... he "Depositary"), acting as the sole record shareholder for ... ned by the 2016 Swedish Court ruling), immediately intervene ... *erprises Ltd., et al. v. Russian Federation* in the U.S. District

... of Claims:

... of the Netherlands in October 2025, the 2014 Hague Arbitral ... While the Depositary was not a party to the original Energy ... States is not a signatory to the ECT—the legal findings of that ... liability of the parties are now conclusive.

... aw:

**112-208),** the U.S. government is mandated to advocate for the ... older of record for these American-based interests, the ... to realize these claims in U.S. courts.

... **Calculated as of March 2026 (Annex 1):** ... mandated interest rates (10-year U.S. Treasury bonds):

... DBTCA): ~$18.76 Billion

... ): ~$14.07 Billion

... ): ~$4.69 Billion

... nduct (Annex 3):
... uted a discriminatory "Plan of Allocation" in 2015-2018, ... resulted in our company receiving only ~8% of its legal ... urthermore, as of **March 16, 2026,** the Yukos Claims ... of distribution based on this same predatory scheme.

---

| ORIGINAL 1: FOR GENERAL COUNSEL |

Tel.: +1(267)693-3824
Email: ilveysinc@gmail.com

**To:** Deutsche Bank Trust Company Americas
**Address:** 1 Columbus Circle, New York, NY 10019
**Attn:** General Counsel / Head of Global Securities Services

**RE: Mandatory Action Following Final Adjudication of Yukos Claims;** *Case No. 14-cv-1996 (D.D.C.) and [No. 23-7174 (D.C. Cir.)]* and Enforcement of the Magnitsky Act (P.L. 112-208)

... Bank Trust Company Americas,

... 001 Yukos Oil Company ADRs. We are writing to formally demand ... ricas (the "Depositary"), acting as the sole record shareholder for ... s affirmed by the 2016 Swedish Court ruling), immediately intervene ... *iley Enterprises Ltd., et al. v. Russian Federation* in the U.S. District

... of Claims:

... Court of the Netherlands in October 2025, the 2014 Hague Arbitral ... pealable. While the Depositary was not a party to the original Energy ... United States is not a signatory to the ECT—the legal findings of that ... and the liability of the parties are now conclusive.

... er U.S. Law:

... t (P.L. 112-208), the U.S. government is mandated to advocate for the ... legal holder of record for these American-based interests, the ... *s standi* to realize these claims in U.S. courts.

... bution (Calculated as of March 2026 (Annex 1):
... and the mandated interest rates (10-year U.S. Treasury bonds):

... older (DBTCA): ~$18.76 Billion

... (75%): ~$14.07 Billion

... ry Fault): ~$4.69 Billion

... ng Misconduct (Annex 3):
... usly executed a discriminatory "Plan of Allocation" in 2015-2018, ... ors. This resulted in our company receiving only ~8% of its legal ... 2018). Furthermore, as of **March 16, 2026,** the Yukos Claims ... tranche of distribution based on this same predatory scheme.

---

Align top of FedEx® shipping label here.

ORIGIN ID:ESPA    (267) 693-3824
DENIEL SHLIVEIKO
3600 CHESTNUT ST
PHILADELPHIA PA 19104
UNITED STATES US

SHIP DATE: 25MAR26
ACTWGT: 0.99 LB
CAD: 2873461301/NET4535

BILL SENDER

TO: ATTN: GEN. COUNSEL/GLOBAL SEC. SVCS
DEUTSCHE BANK TRUST CO. AMERICAS
1 COLUMBUS CIRCLE

NEW YORK NY 10019
(212) 250-2500

TRK# 8899 7586 8394
E3 QNYA

THU - 26 MAR 10:30A
PRIORITY OVERNIGHT
DSR
10019
NY-US    EWR

FedEx Express

Envelope
Recycle me

68

 Gmail

I I <ilveysinc@gmail.com>

## RE: URGENT: NOTICE OF CLAIM $18.7B | ATTN: LEGAL DEPT - NEW YORK OFFICE | DELIVERY CONFIRMED 889975868394

1 письмо

**Sarah Schoenbach** <sarah.schoenbach@db.com>                          6 апреля 2026 г. в 19:34
Кому: "ilveysinc@gmail.com" <ilveysinc@gmail.com>

Classification: Confidential

Dear Mr. Pridorogin,

I write concerning the below email and your related correspondence dated March 25, 2026. Please find attached a copy of a December 18, 2007 Liquidation / Worthless Notice concerning Yukos Corp / CUSIP 98849W108, which states as follows (emphasis added):

Deutsche Bank Trust Company Americas, as Depositary (the "Depositary"), has been notified by the Central United Registrar and the Federal Tax Service that Yukos Corp ordinary shares have been removed from the registrar and no longer exist.

As a result, the underlying ordinary shares and ADRs representing these ordinary shares are deemed to be worthless and will be cancelled off the Depositary's records and the ADR facility, and the Deposit Agreement related thereto, terminated effective immediately.

**As a result, the Depositary has ceased to provide any services with respect to the Yukos Corp. ADRs outstanding.**

As per the attached notice, Deutsche Bank Trust Company Americas ("DBTCA") has not had a role with respect to the Yukos Corp. ADRs since December 2007. DBTCA is thus unable to address the requests raised in your correspondence. DBTCA reserves all rights.

Kind regards,
Sarah Schoenbach

*With deep dedication.*



Sarah Schoenbach
Vice President | Senior Counsel

69

Deutsche Bank AG, Filiale New York
Litigation & Regulatory Enforcement
1 Columbus Circle, New York, NY, 10019-8735 USA

---

**From:** I I <ilveysinc@gmail.com>
**Sent:** Thursday, March 26, 2026 2:49:23 PM
**To:** adr@db.com <adr@db.com>; db ir <db.ir@db.com>; andrew.stemmer@db.com <andrew.stemmer@db.com>
**Cc:** Lisa McGeough <lisa.mcgeough@db.com>; Robert Martello <robert.martello@db.com>; corporate.governance@db.com <corporate.governance@db.com>
**Subject:** URGENT: NOTICE OF CLAIM $18.7B | ATTN: LEGAL DEPT - NEW YORK OFFICE | DELIVERY CONFIRMED 889975868394

**Dear General Counsel and Head of Global Securities Services,**

I am writing to you in my capacity as **Director of ILVEYS INC.** to provide formal notice of our legal demand regarding the Yukos Oil Company ADR program.

Please be advised that a Formal Legal Demand and Notice of Claim **executed by our Authorized Representative in the United States** was dispatched via **FedEx Priority Overnight** to your New York office at 1 Columbus Circle. Our tracking records confirm that this package has been successfully delivered and signed for at your headquarters.

The FedEx package contains two (2) separate, bound, and sealed original copies of the demand, individually addressed to the General Counsel and the Head of Global Securities Services.

**Tracking Number:** 889975868394

This demand concerns the Depositary's mandatory duty to intervene in **Case No. 14-cv-1996 (D.D.C.).** While we recognize the jurisdictional limitations prior to the **final 2025 Dutch court rulings**, the conclusion of those proceedings, combined with the **2016 Svea Court of Appeal judgment** (which established the Depositary as the sole shareholder of record for Yukos assets in place of ADR holders), now mandates your immediate action. Following the commencement of the recognition process for the 2014 Hague awards in the U.S., Deutsche Bank is now uniquely positioned and **fiducially obligated** to act under the statutory protections of the **Magnitsky Act (P.L. 112-208).**

**URGENT NOTICE:** We also formally contest the ongoing discriminatory distribution by the Yukos Claims Administration (Epiq) scheduled for March 31, 2026. We demand that Deutsche Bank immediately halt or contest this distribution to prevent further material loss to U.S. ADR holders.

# Deutsche Bank Trust Company Americas
Trust & Securities Services

## *DEPOSITARY RECEIPTS*

***Please be advised of the following Corporate Action:***

Issue:                    **Yukos Corp   / Cusip 98849W108**

Country:                **Russia**

Type:                    **Liquidation / Worthless Notice**

Effective Date:       **December 18, 2007**

Deutsche Bank Trust Company Americas, as Depositary (the "Depositary"), has been notified by the Central United Registrar and the Federal Tax Service that Yukos Corp ordinary shares have been removed from the registrar and no longer exist.

As a result, the underlying ordinary shares and ADRs representing these ordinary shares are deemed to be worthless and will be cancelled off the Depositary's records and the ADR facility, and the Deposit Agreement related thereto, terminated effective immediately.

As a result, the Depositary has ceased to provide any services with respect to the Yukos Corp. ADRs outstanding.

***For Further Information, contact:***



**Asst Vice President**
**Deutsche Bank - Depositary Receipts**

☎ : ███████████
Λ : ███████████



71

 Gmail

I I <ilveysinc@gmail.com>

## REPUTATION OF DEFENSE / FORMAL REBUTTAL: URGENT: NOTICE OF CLAIM $14.5B+ PRINCIPAL & INTEREST | CUSIP 98849W108

1 письмо

I I <ilveysinc@gmail.com>                                         7 апреля 2026 г. в 20:37
Кому: Sarah Schoenbach <sarah.schoenbach@db.com>, adr@db.com, db.ir@db.com
Копия: lisa.mcgeough@db.com, robert.martello@db.com

Dear Ms. Schoenbach,

I am in receipt of your email dated April 6, 2026. Your reliance on the "Liquidation / Worthless Notice" from December 18, 2007, as a basis for Deutsche Bank Trust Company Americas' (DBTCA) refusal to fulfill its fiduciary duties, is both factually incorrect and legally unsustainable.

Please consider this a formal rebuttal and a **final notice** before the commencement of litigation in the **U.S. District Court for the Southern District of New York (SDNY)**.

### 1. The 2016 Swedish Supreme Court Precedent Nullifies the 2007 Notice

Your assertion that DBTCA has had no role or legal standing since 2007 is directly contradicted by the final rulings of the Swedish judiciary. Specifically:

• **The Svea Court of Appeal (2016)**, subsequently affirmed by the **Supreme Court of Sweden (Högsta domstolen)**, ruled that ADR holders lack standing (*locus standi*) to pursue claims against the Russian Federation precisely because **DBTCA remains the sole legal record shareholder** of the underlying Yukos assets.

• **Estoppel by Silence:** DBTCA was fully aware of these proceedings and did not contest its status as the record shareholder at that time. Under the doctrine of Judicial Estoppel, DBTCA cannot now—when multi-billion dollar enforcement is imminent—claim its role ceased in 2007.

### 2. The $96 Billion Valuation and DBTCA's $14.5B Liability

The 2007 "Worthless Notice" was predicated on a false assumption of zero asset value. This assumption was legally shattered by the final $50 billion award against the Russian Federation, confirmed by the **Dutch Supreme Court in October 2025**.

• **Implied Valuation:** The Hague Tribunal awarded the majority shareholders (GML, 70% stake) approx. $50.5B after a 25% contributory fault reduction. This establishes an implied total company valuation of **approx. $96 Billion**.

• **Calculated Claim:** As the legal owner of record for **15% of Yukos shares** underlying the ADR program, DBTCA's interest is valued at **approx. $14.5 Billion in principal**.

• **Accrued Interest:** In accordance with the Hague ruling, this amount is subject to interest indexed to **10-year U.S. Treasury bonds**. As of 2026, the total claim significantly exceeds the principal, mirroring the growth of the GML award (now estimated at $66B+).

These assets are not "worthless"; they are liquidated, enforceable legal claims. As the sole record shareholder, DBTCA is the only entity with the legal standing to collect the $18.7B portion of this award belonging to ADR holders.

By remaining idle, DBTCA is effectively allowing both the Russian Federation and GML to unjustly enrich themselves at the expense of U.S. ADR holders.

### 3. Breach of Fiduciary Duty and Statutory Mandate (P.L. 112-208)

72

DBTCA's refusal to act violates **Section 202 of the Magnitsky Act**, which mandates the protection of U.S. investors in Yukos. By maintaining the ADR program for years after 2003 and collecting associated fees, DBTCA assumed an affirmative duty to act as a "gatekeeper." Your current refusal to enforce a validated $96B valuation interest constitutes **Bad Faith** and **Constructive Fraud**.

### Conclusion

We demand that DBTCA immediately retract its reliance on the obsolete 2007 Notice and acknowledge its mandatory duty to intervene in the ongoing enforcement proceedings in the United States (**Case No. 14-cv-1996, D.D.C.**) to protect the **$14.5B+** interest of its ADR holders.

Should we not receive a constructive proposal for action within **three (3) business days**, we will proceed with filing a formal Complaint in the **SDNY** for a mandatory injunction and damages, including punitive damages for intentional obstruction of justice.

Please govern yourselves accordingly.

Sincerely,

**Vladimir Pridorogin**
Director, ILVEYS INC.

пн, 6 апр. 2026 г. в 19:34, Sarah Schoenbach <sarah.schoenbach@db.com>:

Classification: Confidential

Dear Mr. Pridorogin,

I write concerning the below email and your related correspondence dated March 25, 2026. Please find attached a copy of a December 18, 2007 Liquidation / Worthless Notice concerning Yukos Corp / CUSIP 98849W108, which states as follows (emphasis added):

> Deutsche Bank Trust Company Americas, as Depositary (the "Depositary"), has been notified by the Central United Registrar and the Federal Tax Service that Yukos Corp ordinary shares have been removed from the registrar and no longer exist.

> As a result, the underlying ordinary shares and ADRs representing these ordinary shares are deemed to be worthless and will be cancelled off the Depositary's records and the ADR facility, and the Deposit Agreement related thereto, terminated effective immediately.

> **As a result, the Depositary has ceased to provide any services with respect to the Yukos Corp. ADRs outstanding.**

As per the attached notice, Deutsche Bank Trust Company Americas ("DBTCA") has not had a role with respect to the Yukos Corp. ADRs since December 2007. DBTCA is thus unable to address the requests raised in your correspondence. DBTCA reserves all rights.

73

EXHIBIT E: **Valuation and Calculation Methodology**

### EXHIBIT E: VALUATION AND CALCULATION METHODOLOGY

#### 1. Basis for Global Valuation

The methodology established by the Final Awards of the Hague Arbitral Tribunal (PCA) dated July 18, 2014, and finalized by the Dutch Supreme Court in 2025, serves as the benchmark for this calculation. Judicially Established Total Equity Value of Yukos Oil Company: **$94,606,683,615 (as of July 2014, per Hague Final Award, Table T1**).

#### 2. Consolidated Calculation Table:

| Category / Item | Calculation Basis / Data Source | Value as of June 30, 2014 | Estimated Value as of April 2026* |
|---|---|---|---|
| **Total Yukos Valuation (100%)** | 100% Equity Valuation based on Judicially Established Figures | $94.6 Billion | ~$125.6 Billion |
| **U.S. Shareholder Interest (DBTCA)** | ~15% of total Yukos share capital | **~$14.43 Billion** | **~$18.76 Billion** |
| **Liability of Russia (75%)** | 75% of damages to U.S. shareholders | ~$10.82 Billion | ~$14.07 Billion |
| **Liability of GML (25%)** | 25% Contributory fault of majority owners | ~$3.61 Billion | ~$4.69 Billion |

*Includes compound interest based on 10-year U.S. Treasury bond yields as mandated by the Hague Tribunal.*

#### 3. Methodology per Share / ADR Unit

- **Total Share Capital: 1,934,964,578** ordinary shares.

- **2014 Principal Value: Fixed at $48.89** per ordinary share.

- **April 2026 Value (incl. interest):** Approximately **$64.75.** per share.

- **April 2026 Value per ADR (4 shares):** Approximately **$259.00** per unit.

#### 4. Plaintiff's Specific Loss Claim

- **Plaintiff's Holding: 50,000** ADR units.

- **Total Claim Amount:** Based on the valuation of **~$259.00 per ADR**, Plaintiff's claim is valued at **approximately $12,950,000.00**.

#### 5. Final Demand

Plaintiff demands a mandatory buyout or compensatory damages based on the aforementioned judicially recognized valuation, ensuring parity with the recovery sought by majority shareholders in parallel U.S. proceedings.

**Note:** The per-share valuation is derived directly from the judicially established 100% equity value. The Plaintiff's claim for damages is based on the legal extrapolation of the liability findings in PCA Case No. AA 227, as the illegal destruction of the company's total assets creates an identical right to compensation for all record and beneficial shareholders proportional to their holdings.

75

**SUPPLEMENTAL EVIDENCE: JUDICIAL BASIS FOR CALCULATION METHODOLOGY**

**Source Document:** Final Award in PCA Case No. AA 227 (The Hague, July 18, 2014)
The following excerpts from the Final Award provide the definitive legal foundation for the consolidated calculation presented on the preceding page (Annex 1):

**1. On Liability Apportionment (75% / 25% Split):**
Section X.E.4, Paragraph 1637 (Page 510): *"The Tribunal finds that Claimants shall bear 25 percent of the responsibility for the destruction of Yukos and the related loss..."*

- **Plaintiff's Application:** This judicial finding justifies the apportionment of liability between the Russian Federation (75% for illegal expropriation) and GML (25% for contributory fault), which the Defendant is duty-bound to enforce to protect minority ADR holders from absorbing GML's losses.

**2. On Damages and Valuation Base:**
Annex C, Table T1 (Page A-6):

- This table confirms the total asset valuation base of approximately **$94.6 Billion** (before the 25% deduction), which serves as the anchor for Plaintiff's pro-rata calculation of **$259.00 per ADR unit**.

**3. On Post-Award Interest:**
Section XIV, Paragraph 1888(i), Clause 3 (Page 578):

- The Tribunal mandated post-award interest based on the yield of **10-year U.S. Treasury bonds**. This specific judicial mandate is the basis for the compounding of the claim to reach the **April 2026** valuation presented in this Exhibit.

76

**PCA Case No. AA 227**

**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED
IN ACCORDANCE WITH ARTICLE 26 OF THE ENERGY CHARTER TREATY
AND THE 1976 UNCITRAL ARBITRATION RULES**

**- between -**

**YUKOS UNIVERSAL LIMITED (ISLE OF MAN)**

**- and -**

**THE RUSSIAN FEDERATION**

**FINAL AWARD**

**18 July 2014**

*Tribunal*
The Hon. L. Yves Fortier PC CC OQ QC, Chairman
Dr. Charles Poncet
Judge Stephen M. Schwebel

Mr. Martin J. Valasek, Assistant to the Tribunal
Mr. Brooks W. Daly, Secretary to the Tribunal
Ms. Judith Levine, Assistant Secretary to the Tribunal

*Registry*
Permanent Court of Arbitration

| *Representing Claimant*: | *Representing Respondent*: |
|---|---|
| Professor Emmanuel Gaillard | Dr. Claudia Annacker |
| Dr. Yas Banifatemi | Mr. Lawrence B. Friedman |
| Ms. Jennifer Younan | Mr. David G. Sabel |
| SHEARMAN & STERLING LLP | Mr. Matthew D. Slater |
| | Mr. William B. McGurn |
| | Mr. J. Cameron Murphy |
| | CLEARY GOTTLIEB STEEN & HAMILTON LLP |
| | Mr. Michael S. Goldberg |
| | Mr. Jay L. Alexander |
| | Dr. Johannes Koepp |
| | Mr. Alejandro A. Escobar |
| | BAKER BOTTS LLP |

77

and the Tribunal [has] a corresponding margin of estimation." [2132]   However, the Tribunal, as other tribunals have done, must reach a decision and it has done so on the basis of all the evidence which it has reviewed.

1637. Having considered and weighed all the arguments which the Parties have presented to it in respect of this issue the Tribunal, in the exercise of its wide discretion, finds that, as a result of the material and significant mis-conduct by Claimants and by Yukos (which they controlled), Claimants have contributed to the extent of 25 percent to the prejudice which they suffered as a result of Respondent's destruction of Yukos.  The resulting apportionment of responsibility as between Claimants and Respondent, namely 25 percent and 75 percent, is fair and reasonable in the circumstances of the present case.

## XI.    INTEREST

1638. As will be seen in Part XII of the Award dealing with quantification of Claimants' damages for Respondent's breach of the ECT, one of the elements factored into the Tribunal's calculation of damages will be interest.[2133]   Accordingly, the Tribunal, in the present Part XI will determine the applicable rate of such interest, whether it should be simple or compound and, if compound, the period of compounding.

### A.    CLAIMANTS' POSITION

1639. Claimants request the Tribunal to award them pre- and post-award interest.[2134]   In their Submission on Costs, Claimants also request interest on any costs awarded to them.[2135]

1640. According to Claimants, "payment of interest can be required to ensure full reparation."[2136] Claimants quote the tribunal in *Vivendi v. Argentina*, which stated that the purpose of the payment of interest is "to compensate the damage resulting from the fact that, during the period of non-payment by the debtor, the creditor is deprived of the use and disposition of that sum he

---

[2132]   *MTD Equity Sdn Bhd. v. The Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Annulment, 21 March 2007 ¶ 101.  *See also Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID, ARB/06/111, Award, 5 October 2012 ¶¶ 659–87.

[2133]   In particular see paragraphs 1822–23 below on pre-award interest on the dividend streams that Claimants would have obtained in the absence of Respondent's breach.

[2134]   Memorial ¶¶ 969–70; Reply ¶¶ 859, 1199; Claimants' Post-Hearing Brief ¶ 302.

[2135]   Claimants' Submission on Costs ¶ 64.

[2136]   Memorial ¶ 959, citing to ILC Articles on State Responsibility, Art. 38, Exh. C-1042.

before taking into account any deductions necessary as a consequence of Claimants' contributory fault is USD 66.694 billion.

### 6. Deductions Due to Claimants' Contributory Fault

1827. As determined earlier,[2429] the Tribunal has concluded that the Claimants contributed to the extent of 25 percent to the prejudice they suffered at the hands of the Russian Federation. As a consequence, the amount of damages to be paid by Respondent to Claimants will be reduced by 25 percent to USD 50,020,867,798 and the Tribunal so finds.[2430]

### 7. Windfall and Double Recovery

1828. The Tribunal sees no reason to make any further deductions beyond those set out above. In particular, any advantages that Claimants may have obtained through their investments prior to Respondent's expropriatory actions can not have any impact on the damages they have suffered. The Tribunal sees no risk of "double-recovery" in this regard.

1829. Finally, the rate of return that Claimants may realize on their original investment in Yukos as a result of the damages that the Tribunal has awarded to them for the expropriation of their shares is irrelevant. It is the value of the expropriated investment on the date of the Award rather than the amount originally invested by Claimants that is the basis for the calculation of the damages awarded.

## XIII. COSTS

### A. INTRODUCTION

1830. The Tribunal notes that Claimants and Respondent have each requested that the opposing party be ordered to pay the full costs of the arbitration.[2431]

1831. The Tribunal observes that the Treaty contains no provisions on the allocation of the costs of arbitration in the case of a dispute between an Investor and a Contracting Party.[2432]

---

[2429] *See* Section X.E.4.

[2430] Claimants shall be paid this amount in proportion to their shareholdings (as to which see n.2424 above) as follows: EUR 39,971,834,360 (Hulley), EUR 1,846,000,687 (YUL) and EUR 8,203,032,751 (VPL). As per paragraphs 1690–92 above, post-award interest will be due on any outstanding amounts not paid in full within 180 days.

[2431] Reply ¶ 1199(5); Rejoinder ¶ 1748(v).

## XIV.  DECISION

1888. For the reasons set forth above, the Tribunal unanimously:

(a)  DISMISSES the objections to jurisdiction and/or admissibility, based on Article 21 of the Energy Charter Treaty;

(b)  DISMISSES the objections to jurisdiction and/or admissibility, pertaining to Respondent's contentions concerning "unclean hands" and "illegal and bad faith conduct";

(c)  DISMISSES the renewed objections to jurisdiction and/or admissibility based on Article 26(3)(b)(i) of the Energy Charter Treaty;

(d)  HOLDS that the present dispute is admissible and within the Tribunal's jurisdiction;

(e)  DECLARES that Respondent has breached its obligations under Article 13(1) of the Energy Charter Treaty;

(f)  ORDERS Respondent to pay to Claimant Yukos Universal Limited damages in the amount of USD 1,846,000,687;

(g)  ORDERS Respondent to pay the amount of EUR 156,476 to Claimant Yukos Universal Limited as reimbursement for the costs of the arbitration;

(h)  ORDERS Respondent to pay the amount of USD 2,214,277 to Claimant Yukos Universal Limited for a portion of the costs of its legal representation and assistance in the arbitration proceedings; and

(i)  ORDERS Respondent to pay to Claimant Yukos Universal Limited, if within 180 days of the issuance of this Award Respondent fails to pay in full the amounts set forth in paragraphs (f), (g) and (h), above post-award interest on any outstanding amount starting from 15 January 2015, compounded annually. Post-award interest shall be determined as the yield on 10-year U.S. treasury bonds as of 15 January 2015 and then the dates of compounding yearly thereafter.

80

**C.    TABLES T1–T9 SHOWING THE TRIBUNAL'S DAMAGES CALCULATIONS**

**1.    Table T1:  Calculation of Total Damages of Claimants as of 19 December 2004 (Date of Expropriation) vs. 30 June 2014 (Date of Award for Valuation Purposes)**

| 19  December  2004 | |
|---|---|
| **Damages component** | **Amount** *(in USD)* |
| Yukos Equity Value | 21,175,832,823 |
| Dividends to end of 2004 | 2,417,808,219 |
| *Sum of Equity Value and Dividends* | *23,593,641,042* |
| Interest through 30 June 2014 | 7,596,090,702 |
| **Total** | **31,189,731,744** |

| | **Outstanding Shares** | **% of Outstanding Shares** | **Damages** *(in USD)* |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **31,189,731,744** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 17,570,439,964 |
| Claimant YUL | 50,340,995 | 2.60165 | 811,447,480 |
| Claimant VPL | 223,699,175 | 11.56089 | 3,605,811,362 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **21,987,698,805** |

| 30  June  2014 | |
|---|---|
| **Damages component** | **Amount** *(in USD)* |
| Yukos Equity Value | 42,625,343,615 |
| Dividends and interest (through 30 June 2014) | 51,981,340,000 |
| **Total** | **94,606,683,615** |

| | **Outstanding Shares** | **% of Outstanding Shares** | **Damages** *(in USD)* |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **94,606,683,615** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 53,295,779,147 |
| Claimant YUL | 50,340,995 | 2.60165 | 2,461,334,249 |
| Claimant VPL | 223,699,175 | 11.56089 | 10,937,377,001 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **66,694,490,398** |

| Damages After 25% Reduction | |
|---|---|
| Claimant Hulley | 39,971,834,360 |
| Claimant YUL | 1,846,000,687 |
| Claimant VPL | 8,203,032,751 |
| **Claimants Total** | **50,020,867,798** |

| Note: Claimants' shareholdings and total number of Outstanding Shares taken from Appendix C.5.b to First Kaczmarek Report |
|---|

A-6

81

EXHIBIT F: **JUDICIAL PRECEDENT ON THE "STANDING TRAP" AND THE ANNULMENT OF THE ARBITRAL AWARD**

**EXHIBIT F: JUDICIAL PRECEDENT ON THE "STANDING TRAP" AND THE ANNULMENT OF THE ARBITRAL AWARD**
**(Extracts from the Svea Court of Appeal Decision, Case No. T 9128-14)**

**SUBJECT:** Evidence of the legal barrier preventing ADR holders from direct enforcement against the Russian Federation, establishing Deutsche Bank Trust Company Americas (the Defendant) as the **sole entity** with the legal capacity to protect the underlying assets.

### 1. CRITICAL CONTEXT: THE VACATED VICTORY

This Exhibit serves as a "legal mirror" for the present dispute. In 2012, a group of Yukos ADR holders (Spanish investment funds) successfully proved the illegal expropriation of the company's assets before an international tribunal. However, in 2016, the Swedish judiciary **vacated and annulled that victory** on purely procedural grounds. The court ruled that despite the merits of the case, the ADR holders were not the "investors of record."

### 2. THE NON-DELEGABLE DUTY OF THE DEFENDANT

The Swedish precedent establishes that any attempt by the Defendant to delegate litigation rights to individual ADR holders is legally futile. The Russian Federation has already successfully weaponized the "Standing Trap" to strike down direct claims by ADR holders. Consequently:

- **The Defendant** is the only party that possesses the unassailable legal status to enforce the multi-billion dollar claims.
- **The Standing Trap:** The Defendant's refusal to participate in enforcement proceedings effectively guarantees that any recovery effort by ADR holders will be annulled by the courts.

### 3. Key Findings on the Nature of ADRs (Dissenting Opinion of Judge PS, as affirmed by the result of the Majority):

*"The acquisition of Yukos ADRs established a relationship between the Funds (ADR holders) and Deutsche Bank. It did not create any rights or obligations between the Funds and the company Yukos... The ADR holders' rights are towards Deutsche Bank and do not constitute an 'investment' or 'asset' in Yukos Oil Company..."*

### 4. Ruling on Jurisdictional Standing:

The Svea Court of Appeal affirmed that the arbitral tribunal lacked jurisdiction to decide the case brought by ADR holders because they were not "shareholders of record." Under the terms of the Deposit Agreement, the **Defendant (Deutsche Bank Trust Company Americas) remains the sole record shareholder** of the underlying Yukos shares.

### 5. Implication for the Present Action:

The Defendant is the only party capable of overcoming the jurisdictional barriers erected by the Russian Federation. By willfully refusing to intervene in the D.D.C. proceedings (Case No. 14-cv-1996), the Defendant is not merely "passive"—it is actively facilitating a second "stolen victory" by ensuring that the 15% stake it holds remains legally indefensible against the sovereign entity.

83

This is an unofficial translation from www.arbitration.sccinstitute.com.
Case 1:26-cv-03516-MKV    Document 1-2    Filed 04/27/26    Page 23 of 46
[UNOFFICIAL TRANSLATION. PLEASE CHECK AGAINST ORIGINAL.]

**JUDGMENT OF THE COURT OF APPEAL**

1. The Court of Appeal amends the judgment of the District Court in the following manner.

    a) The Court of Appeal affirms that the arbitral tribunal does not have jurisdiction to decide the case brought by GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. through their request for arbitration against the Russian Federation of 25 March 2007.

    b) The Court of Appeal discharges the Russian Federation from the obligation to compensate GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. for their litigation costs before the District Court.

    c) GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. are ordered, jointly and severally, to compensate the Russian Federation for its litigation costs before the District Court in the amounts of SEK 5,661,504 and USD 1,375,850, plus interest on the amounts pursuant to Section 6 of the Swedish Interest Act from the date of the District Court's judgment until the day of payment. The above amounts comprise costs for legal counsel in the amounts of SEK 5,630,173 and USD 1,216,858, respectively.

2. GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. are ordered, jointly and severally, to compensate the Russian Federation for its litigation costs before the Court of Appeal in the amounts of SEK 2,442,698, USD 402,489.91 and GBP 3,775.96, plus interest on the amounts pursuant to Section 6 of the Swedish Interest Act from the date of the District Court's judgment until the day of payment. The above amounts comprise costs for legal counsel in the amounts of SEK 2,345,367 and USD 394,778.50, respectively.

84

This is an unofficial translation from www.arbitration.sccinstitute.com.
[UNOFFICIAL TRANSLATION. PLEASE CHECK AGAINST ORIGINAL.]

**Dissenting grounds**

Appeals Judge PS dissents with respect to the grounds as follows.

The jurisdiction of the relevant arbitral tribunal may be based only on an arbitration agreement between the disputing parties, which are not the same as the contracting parties to the Treaty. In the present case, an arbitration agreement has arisen between the disputing parties through the Funds' acceptance of the Federation's offer to accept arbitration set out in the Treaty, in the form of the Funds' requesting arbitration against the Federation.

In the Treaty, the Federation has not offered arbitration for any forms of disputes that Spanish investors might want resolved. In article 10, the Federation has offered arbitration only for such disputes that relate to the amount and method of payment for compensation under article 6 ("relating to the amount or method of payment of the compensation due under article 6").

Thus, the Funds' request for arbitration must – in order for an arbitration agreement to arise between them and the Federation, which in its turn would grant the arbitral tribunal jurisdiction to decide the relevant dispute – correspond to the Federation's offer, i.e. relate to a dispute of such nature as the Federation has agreed to offer arbitration, in short disputes under article 6.

Article 6 governs expropriation and the like. It stipulates when expropriation is allowed, and the compensation that is due. It also provides that this relates to investments within the territory of the contracting party ("investments made within its territory").

The Federation maintains that the Funds' acquisition of Yukos ADR's was not an investment under article 1(2) of the Treaty, nor was it an investment within its territory. The Funds maintain the opposite.

The Funds' acquisition of Yukos ADR's is characterized by the following, which is undisputed in the present case. The Funds acquired Yukos ADR's from the issuer of the securities, namely Deutsche Bank Trust Company Americas ("Deutsche Bank"), registered in New York. Deutsche Bank, in its turn, held shares in the company Yukos. The Funds' acquisition of Yukos ADR's established a relationship between the Funds and Deutsche

85

This is an unofficial translation from www.arbitration.sccinstitute.com.
[UNOFFICIAL TRANSLATION. PLEASE CHECK AGAINST ORIGINAL.]

Bank. The acquisition did not establish or entail any rights or obligations between the Funds and the Yukos company.

Compared to an acquisition of shares in Yukos, the Funds' acquisition of Yukos ADR's meant that the Funds put another party – Deutsche Bank – between themselves and the Yukos company. If the Funds alternative was to acquire shares in the Yukos company, it can be established that the Funds must have concluded that the advantages of acquiring Yukos ADR's outweighed the disadvantages.

The above leads to two conclusions. First, the rights that the Funds' acquisition of Yukos ADR's established for them in relation to Deutsche Bank is not an "asset" for the Funds in the sense set forth in article 1(2) of the Treaty, particularly not – due to the absence of rights and obligations between the Funds and the Yukos company – any kind of "participation" in the said company. Second, the Funds' acquisition of Yukos ADR's, due to the same absence, are not investments made within the Federation's territory in the sense set forth in article 6 of the Treaty.

The conclusion to be drawn from this is that the Federation's offer of arbitration does not cover investments of the kind the Funds' made by acquiring Yukos ADR's. Thus, the Funds' request for arbitration does not correspond to the Federation's offer of arbitration. The consequence is that the Funds' request for arbitration did not give rise to any arbitration agreement granting the arbitral tribunal jurisdiction to decide the dispute covered by the request.

Therefore, the claimant's motions shall be granted.

Concerning the question of litigation costs, I agree with the majority.

86

87

EXHIBIT G:  **Extracts from Public Law 112-208 (Magnitsky Act)**

EXHIBIT G: FEDERAL STATUTORY AUTHORITY REGARDING YUKOS INVESTORS

**(Extracts from Public Law 112-208, "Magnitsky Act")**

**SUBJECT:** U.S. Federal Law establishing the mandatory protection and promotion of claims held by United States investors in the Yukos Oil Company.

### 1. STATUTORY MANDATE TO ADVOCATE FOR YUKOS CLAIMS
**Source: Section 202(a)(1)(B)**

The Law explicitly mandates that the United States government shall report on measures taken regarding:

**"...advocating for United States investors in the Russian Federation, including by promoting the claims of United States investors in Yukos Oil Company;"**

### 2. CONGRESSIONAL FINDINGS ON ILLEGALITY OF YUKOS PROCEEDINGS
**Source: Section 402, Paragraph (13)**

The Congress officially recognizes the lack of due process and illegal nature of the actions taken against Yukos:

**"...The lack of credible charges, intimidation of witnesses, violations of due process and procedural norms, falsification or withholding of documents, denial of attorney-client privilege, and illegal detention in the Yukos case are highly troubling."**

### 3. LEGAL SIGNIFICANCE FOR THE PRESENT ACTION

- **Official Recognition:** The U.S. Congress has formally identified the expropriation of Yukos as a violation of the rule of law and procedural norms.
- **Mandatory Policy:** It is the official policy of the United States to "promote the claims" of Yukos investors.
- **Fiduciary Breach:** Defendant Deutsche Bank Trust Company Americas, as a U.S. financial institution, is acting in direct contradiction to U.S. federal policy and legislative intent by willfully refusing to enforce or acknowledge the multi-billion dollar claims belonging to its ADR holders.



PUBLIC LAW 112–208—DEC. 14, 2012

# RUSSIA AND MOLDOVA JACKSON-VANIK REPEAL AND SERGEI MAGNITSKY RULE OF LAW ACCOUNTABILITY ACT OF 2012

89

PUBLIC LAW 112–208—DEC. 14, 2012          126 STAT. 1499

(A) is classifiable under Executive Order No. 13526 (75 Fed. Reg. 707; relating to classified national security information) or a subsequent Executive order, the Trade Representative shall report that information to the Committee on Finance of the Senate and the Committee on Ways and Means of the House of Representatives by—

(i) including the information in a classified annex to the report required by paragraph (1); or

(ii) consulting with the Committee on Finance and the Committee on Ways and Means with respect to the information instead of including the information in the report or a classified annex to the report.

(3) PUBLIC COMMENTS.—

(A) IN GENERAL.—In developing the report required by paragraph (1), the Trade Representative shall provide an opportunity for the public to comment, including by holding a public hearing.

(B) PUBLICATION IN FEDERAL REGISTER.—The Trade Representative shall publish notice of the opportunity to comment and hearing required by subparagraph (A) in the Federal Register.

*Notice.*

(b) REPORT ON ENFORCEMENT ACTIONS TAKEN BY TRADE REPRESENTATIVE.—Not later than 180 days after the effective date under section 102(b) of the extension of nondiscriminatory treatment to the products of the Russian Federation, and annually thereafter, the United States Trade Representative shall submit to the Committee on Finance of the Senate and the Committee on Ways and Means of the House of Representatives a report describing the enforcement actions taken by the Trade Representative against the Russian Federation to ensure the full compliance of the Russian Federation with its obligations as a member of the World Trade Organization, including obligations under agreements with members of the Working Party on the accession of the Russian Federation to the World Trade Organization.

**SEC. 202. PROMOTION OF THE RULE OF LAW IN THE RUSSIAN FEDERATION TO SUPPORT UNITED STATES TRADE AND INVESTMENT.**

(a) REPORTS ON PROMOTION OF RULE OF LAW.—Not later than one year after the effective date under section 102(b) of the extension of nondiscriminatory treatment to the products of the Russian Federation, and annually thereafter, the United States Trade Representative and the Secretary of State shall jointly submit to the Committee on Finance of the Senate and the Committee on Ways and Means of the House of Representatives a report—

(1) on the measures taken by the Trade Representative and the Secretary and the results achieved during the year preceding the submission of the report with respect to promoting the rule of law in the Russian Federation, including with respect to—

(A) strengthening formal protections for United States investors in the Russian Federation, including through the negotiation of a new bilateral investment treaty;

(B) advocating for United States investors in the Russian Federation, including by promoting the claims of United States investors in Yukos Oil Company;

90

Russian law to independently monitor prison conditions, concluded on December 29, 2009, "A man who is kept in custody and is being detained is not capable of using all the necessary means to protect either his life or his health. This is a responsibility of a state which holds him captive. Therefore, the case of Sergei Magnitsky can be described as a breach of the right to life. The members of the civic supervisory commission have reached the conclusion that Magnitsky had been experiencing both psychological and physical pressure in custody, and the conditions in some of the wards of Butyrka can be justifiably called torturous. The people responsible for this must be punished.".

(12) Sergei Magnitsky's experience, while particularly illustrative of the negative effects of official corruption on the rights of an individual citizen, appears to be emblematic of a broader pattern of disregard for the numerous domestic and international human rights commitments of the Russian Federation and impunity for those who violate basic human rights and freedoms.

(13) The second trial, verdict, and sentence against former Yukos executives Mikhail Khodorkovsky and Platon Lebedev evoke serious concerns about the right to a fair trial and the independence of the judiciary in the Russian Federation. The lack of credible charges, intimidation of witnesses, violations of due process and procedural norms, falsification or withholding of documents, denial of attorney-client privilege, and illegal detention in the Yukos case are highly troubling. The Council of Europe, Freedom House, and Amnesty International, among others, have concluded that they were charged and imprisoned in a process that did not follow the rule of law and was politically influenced. Furthermore, senior officials of the Government of the Russian Federation, including First Deputy Prime Minister Igor Shuvalov, have acknowledged that the arrest and imprisonment of Khodorkovsky were politically motivated.

(14) According to Freedom House's 2011 report entitled "The Perpetual Battle: Corruption in the Former Soviet Union and the New EU Members", "[t]he highly publicized cases of Sergei Magnitsky, a 37-year-old lawyer who died in pretrial detention in November 2009 after exposing a multimillion-dollar fraud against the Russian taxpayer, and Mikhail Khodorkovsky, the jailed business magnate and regime critic who was sentenced at the end of 2010 to remain in prison through 2017, put an international spotlight on the Russian state's contempt for the rule of law * * *. By silencing influential and accomplished figures such as Khodorkovsky and Magnitsky, the Russian authorities have made it abundantly clear that anyone in Russia can be silenced.".

(15) The tragic and unresolved murders of Nustap Abdurakhmanov, Maksharip Aushev, Natalya Estemirova, Akhmed Hadjimagomedov, Umar Israilov, Paul Klebnikov, Anna Politkovskaya, Saihadji Saihadjiev, and Magomed Y. Yevloyev, the death in custody of Vera Trifonova, the disappearances of Mokhmadsalakh Masaev and Said-Saleh Ibragimov, the torture of Ali Israilov and Islam Umarpashaev, the near-fatal beatings of Mikhail Beketov, Oleg Kashin, Arkadiy Lander, and Mikhail Vinyukov, and the harsh and ongoing

91

**EXHIBIT H: Evidence of Systemic Discrimination, Bad Faith, and the Cost of Inaction (2015–2026)**

**EXHIBIT H: Evidence of Systemic Discrimination, Bad Faith,
and the Cost of Inaction (2015–2026)**

### I. The Discriminatory Framework (The "Scheme")

Attached hereto is the "Notice of Distribution" issued by the Yukos Oil Claims Administration. This document confirms that GML-controlled management implemented a "Plan of Allocation" that violated the fundamental corporate principle of pro-rata distribution.

- **The Penalty Scale:** GML imposed arbitrary "discounts" on shareholders based on their purchase dates.

- **The Result:** Legitimate U.S. ADR holders were branded as "speculators" and deprived of over **93%** of their legal recovery, while majority interests (GML) monopolized the recovery fund.

### II. Strategic Exploitation during the Loss of Shareholder Recognition

This discriminatory plan, although formulated in 2015, was ultimately executed in 2018—a period during which ADR holders had ceased to be recognized as legal shareholders of Yukos in key jurisdictions (following the 2016 Swedish court rulings). GML-controlled management willfully exploited this legal disenfranchisement and the fragmented nature of the minority group. They correctly calculated that individual investors lacked the collective resources to challenge this "divide and conquer" strategy in international courts without the participation of the Depositary.

### III. Coerced Consent, Procedural Blackmail, and the Material Loss

To receive even a fraction of their funds, ADR holders were forced to sign a "Claim Form" under extreme economic duress, effectively consenting to illegal terms.

- **The Blackmail & Procedural Coercion:** The Distribution Agent explicitly threatened to nullify and reject the Plaintiff's entire claim if the Plaintiff questioned the lack of transparency or the accuracy of the calculations. (See attached email dated Dec 19, 2017: *"your statements negate the Release provisions... for this reason, your claim is rejected"*). (**See p.111 up to p.108**)

- **The Ultimatum:** Investors faced a predatory "take it or leave it" scenario: either accept a pittance and surrender all future legal rights, or face an immediate rejection of the claim and engage in a multi-million dollar legal battle against GML's vast resources.

- **The Fraudulent Math vs. Pro-Rata Reality:** In 2018, GML distributed a fund of **$337,000,000**. Based on Yukos' total share capital (approx. 1.934B shares), a lawful pro-rata payment should have been approx. **$0.70 per ADR**. For Plaintiff's 50,000 ADR stake, the legal entitlement was approximately **$35,000.00**.

- **The Material Loss:** Instead of the $35,000.00 owed by law, Plaintiff received only **$2,499.16** — a mere **7%** of the legal entitlement. Even the "corrected" calculation of $17,744 discussed at the time was a product of systemic discrimination. This demonstrates that the entire framework was designed to liquidate minority interests at an unconscionable discount. (See attached copies of the 2018 distribution check).

### IV. The Expansion of the Recovery Pool (Yukos Capital Sarl)

While majority interests (GML) continue to dominate the distribution process, they are simultaneously pursuing the enforcement of a $5 Billion Swiss arbitral award in U.S. jurisdictions through Yukos Capital Limited (formerly Yukos Capital Sarl). This entity was the source of the $337 million settlement funds distributed via the discriminatory framework in 2018.

- **The Risk:** These multi-billion dollar assets—which represent the recovered value of Yukos Oil Company's intercompany loans—are being funneled through the same GML-controlled "Stichting" framework that disenfranchised U.S. ADR holders in 2018.
- **The Necessity of Intervention:** Without the Defendant's immediate action to secure the 15% ADR stake in these specific Swiss-award proceedings, this additional $5 Billion recovery pool will be exhausted by majority owners, leaving U.S. investors with zero recovery.

### V. The Imminent 2026 Threat

On **March 16, 2026**, Plaintiff received formal notice (attached) that GML is initiating a new distribution of recovered assets. Without the Defendant's immediate intervention as the Record Shareholder to demand a strict pro-rata allocation, Plaintiff faces an immediate and irreparable repeat of the 2018 fraud.

### VI. Mandatory Notice to the Depositary Regarding Statutory Support

The 2015–2026 scheme serves as a stark warning. Deutsche Bank Trust Company Americas, as the sole recognized American Investor of record, currently possesses a powerful tool: **Section 202 of the Magnitsky Act (P.L. 112-208)**. We hereby demand that the Depositary immediately exercise its rights under this federal mandate to secure U.S. Government support for the protection of these assets. The Depositary's continued failure to invoke this statutory protection—thereby allowing a repeat of historic injustice—constitutes conclusive evidence of gross negligence and a willful breach of fiduciary duty.

94

 **Gmail**                                                     I I <ilveysinc@gmail.com>

## Payment Information Update - Yukos Claim Administration
1 message

**Yukos Claims Administration** <yukosclaims@e.epiqnotification.com>        ==16 march 2026,== 19:00
Reply-To: Info <info@yukosclaims.com>
To: "ilveysinc@gmail.com" <ilveysinc@gmail.com>

Click here to view this message in a browser window.

Dear Claimant,

We are Epiq, the Distribution Agent retained to assist with the administration of the Yukos Claim Administration. We are contacting you because you submitted an approved claim(s) in the Yukos Claim Administration.

This Distribution Agent is planning to distribute another tranche of funds. All payments will be made in US Dollars (USD). In preparation for the upcoming distribution, and to ensure payment is timely received, we are requesting an update to, or confirmation of, your preferred method of payment for your distribution payment(s).

If you do not respond by 3/31/2026, your payment will be sent via check to the most current address you have provided.

Please respond to this email with one of the below methods of payment:

- **Wire payment** – Payment for your claim submission will be made via a single wire.

    - If you choose this method of payment, **we will send you a template to complete with your wire payment instructions.**

- **Check payment** – Payment will be made via a single check per account, or claim, filed. If you choose this option, please provide the current addresses for each check to be mailed to.
- **Household checks** –If you are a 3rd party filer and submitted multiple claims and would like for all checks to be mailed to one address, please advise and your payments will be mailed together in one envelope to the address requested. If you choose this option, please confirm the correct address to which the checks should be mailed.

Sincerely,

Yukos Claim Administration
Distribution Agent
Email: Info@YukosClaims.com

Yukos Claims Administration
c/o Epiq
P.O. Box 2017

95

Portland, OR 97208-2017
USA

| COUNTRY | TOLL-FREE NUMBERS | TOLL NUMBERS |
|---|---|---|
| France | | 33 9 70 01 90 15 |
| Germany | 0 8001880934 | 69 257367384 |
| Netherlands | 0 8000232753 | 20 2170207 |
| Russia | 8 800 1006372 | 499 5044429 |
| Sweden | | 8 12410248 |
| Switzerland | 0 800802446 | 44 5083383 |
| United Kingdom | 0 8000966481 | 20 38070019 |
| United States | (888) 846-6410 | (210) 529-7539 |

Copyright © 2026 Yukos Claims Administration
Our address is Yukos Claims Administration c/o Epiq, P.O. Box 2017, Portland, OR 97208-2017, USA

If you do not wish to receive future email, click here.
(You can also send your request to **Customer Care** at the street address above.)

AM446 v.01

96

**YUKOS OIL CLAIMS ADMINISTRATION**
**NOTICE OF DISTRIBUTION**

TO:     ALL PERSONS WHO PURCHASED, ACQUIRED OR HELD SECURITIES OF YUKOS OIL COMPANY ("YUKOS") BETWEEN JULY 2, 2003 AND NOVEMBER 28, 2007, INCLUSIVE (the "RECOVERY PERIOD").

- PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.

- YOU MAY BE ELIGIBLE FOR A DISTRIBUTION.

- IN ORDER TO RECEIVE A DISTRIBUTION, YOU MUST SUBMIT A VALID PROOF OF CLAIM FORM ("CLAIM FORM") SO IT IS **RECEIVED BY** MAY 30, 2016.

- IF YOU RECEIVED THIS NOTICE ON BEHALF OF A FORMER YUKOS SHAREHOLDER WHO IS DECEASED, YOU SHOULD PROVIDE THIS NOTICE TO THE AUTHORIZED LEGAL REPRESENTATIVE OF THAT PERSON.

**YOU ARE HEREBY NOTIFIED AS FOLLOWS:**

You have received this Notice because you may have purchased, acquired or held Yukos Ordinary Shares or Yukos American Depositary Receipts ("ADRs") during the Recovery Period, July 2, 2003 through and including November 28, 2007, and you may be eligible to receive a distribution.  This Notice is designed to inform you of the manner in which the Distribution Fund will be distributed and how you can submit a Claim Form.  A copy of this Notice may be found at www.yukosclaims.com, the website maintained by Garden City Group, LLC, the Distribution Agent (the "Distribution Agent") retained to assist with the administration of this matter.

I.     **BACKGROUND OF THE DISTRIBUTION FUND**

Certain former foreign subsidiaries of Yukos Oil Company (the "Yukos Group") have been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company.  As each of the remaining Yukos Group assets is liquidated over time, a portion of the proceeds therefrom, as determined by the Yukos Group, will be deposited into a fund (the "Distribution Fund"), and will be distributed to former Yukos shareholders on a rolling basis.

The Distribution Fund consists of at least $337,000,000 USD.  Your recovery from the Distribution Fund will depend on a number of variables, including the number of Yukos Ordinary Shares and Yukos ADRs that you purchased, acquired or held during the Recovery Period, the timing of your purchases, acquisitions, and sales of said securities, and the total number of claimants who are either pre-approved ("Pre-Approved Claimants")[1] or who submit a timely claim that is finally determined by the Distribution Agent to be eligible for distribution pursuant to the Plan of Allocation attached hereto as Appendix A, and who are not Excluded Parties, as that term is defined below (collectively, "Eligible Claimants").  The initial distribution will be made from funds held in the structure controlled by Stichting Administratiekantoor Financial Performance Holdings, the ownership of which is no longer in dispute as a result of the settlement with Rosneft Oil Company.

Any questions regarding the Yukos Claims Administration should be directed to the Distribution Agent through email, at info@yukosclaims.com, by mail to Yukos Claims Administration, c/o GCG, P.O. Box 9601, Dublin, OH 43017-4901, USA (via First Class Mail within the United States or International Priority Mail outside the United States) or by calling one of the telephone numbers listed in Section III, below.

II.    **IMPORTANT INFORMATION**

A.     **What is the amount of the Distribution Fund?**

The Yukos Group has been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company. A portion of the proceeds therefrom, as determined by the Yukos Group, will be deposited into the Distribution Fund, and will be distributed to Eligible Claimants on a rolling basis. The Distribution Fund consists of at least $337 million USD.

B.     **How do I know if I am eligible to participate in the Distribution Fund?**

You are potentially eligible to receive a distribution if you purchased, acquired or held Yukos Ordinary Shares or Yukos ADRs during the Recovery Period, regardless of where you live or where those shares were purchased.  Former subsidiaries of Yukos Oil Company are excluded from participation ("Excluded Parties").

PLEASE NOTE: RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE DISTRIBUTION FUND.  IF YOU MEET THE ELIGIBILITY CRITERIA ABOVE AND YOU WISH TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE DISTRIBUTION FUND, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT

---

[1] Pre-Approved Claimants include shareholders known to Yukos who held Yukos Ordinary Shares throughout the entire Recovery Period, and who will not be required to file a claim in order to receive a distribution.

**IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN SO THAT IT IS <u>RECEIVED BY</u> MAY 30, 2016.**

### C. How can I file a claim?

You may file a claim in one of three ways: (i) by filing a claim online through the administration website, www.yukosclaims.com; (ii) by mailing a Claim Form to the Distribution Agent at the address located in Section III, below; or (iii) if you are an institutional filer, by submitting all transactions electronically through the Distribution Agent's proprietary institutional claim filing website.

If you file your claim online, use the claim number and control number printed on the first page of the Claim Form that was mailed to you.  Save both your claim number and control number, as they will be necessary for any further transactions and communication with the Distribution Agent.

The Distribution Agent shall have the right to request, and claimants shall have the burden of providing to the Distribution Agent, any additional information and/or documentation deemed relevant by the Distribution Agent.

THE DISTRIBUTION AGENT WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL OR EMAIL (TO THE EXTENT THAT YOU PROVIDED AN EMAIL ADDRESS ON THE CLAIM FORM), WITHIN 60 DAYS OF RECEIPT OF YOUR CLAIM. <u>YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT EMAIL OR POSTCARD</u>.  IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT EMAIL OR POSTCARD WITHIN 60 DAYS, PLEASE CONTACT THE DISTRIBUTION AGENT.

If you do not file a valid, timely claim, you will not receive a distribution.  The only exception pertains to Pre-Approved Claimants, who do not need to file a claim in order to be paid.

Copies of this Notice and the Claim Form included with this Notice can be obtained from the administration website, www.yukosclaims.com, by email at info@yukosclaims.com, or by calling one of the telephone numbers listed in Section III, below.  You may also file a claim online at the administration website.

### D. How much will my payment be?

The Plan of Allocation, attached as Appendix A, provides for distribution of the Distribution Fund. Each Eligible Claimant's claim will be calculated according to the Plan of Allocation.

### E. If my claim is approved, how will I be paid?

If you live in France, Germany, the Netherlands, Russia, Sweden, Switzerland, the United Kingdom or the United States (the "Target Countries"), on your Claim Form you may elect to receive payment by check or by electronic fund transfer ("EFT"). If you request payment by EFT, you MUST also provide a valid email address on the Claim Form; however, all residents of Russia must receive payments electronically, as explained below.  Prior to the first distribution, the Distribution Agent will notify you by email, at the email address you provide in your claim filing, requesting complete and accurate banking information.  If you timely respond to the email with complete and accurate banking information, you will receive your distribution by EFT in the official currency of your Target Country, if your claim is approved.

If you do not elect a payment method, or if your banking information is incorrect or incomplete, you will receive your payment by check sent via U.S. or international mail, and you will be paid in U.S. Dollars, unless you are domiciled in Russia, in which case your payment will be sent only via wire in Rubles, as discussed below.

Regardless of the method of payment requested, (a) if you do not reside in a Target Country, distributions will be paid by check or bank draft in U.S. Dollars; and (b) if you reside in Russia, distributions will be wired in Rubles after proper banking information is received. Prior to the first distribution, the Distribution Agent will notify you by email requesting your banking information.  Russian residents must provide valid and complete banking information in order to be paid. *If you live in Russia and you do not provide complete and accurate banking information, your claim will not be eligible for payment.*

### F. What If I bought Yukos Ordinary Shares or ADRs on someone else's behalf?

If you purchased, acquired or held Yukos Ordinary Shares or ADRs during the Recovery Period for the beneficial interest of another eligible claimant, you must either (a) send copies of the Notice and Claim Form to the beneficial owners of the shares or ADRs within five business days from the receipt of the Notice, and provide written confirmation to the Distribution Agent of such; or (2) provide the names and addresses of such persons or entities to Yukos Claims Administration, c/o GCG, P.O. Box 9601, Dublin, OH 43017-4901, USA (via First Class Mail within the United States or International Priority Mail outside the United States).  If you choose the second option, the Distribution Agent will send a copy of the Notice and the Claim Form to the beneficial owners. Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Distribution Agent with proper documentation supporting the out-of-pocket expenses for which reimbursement is sought.

Copies of this Notice and the Claim Form can be obtained from the administration website, www.yukosclaims.com, by email at info@yukosclaims.com, or by calling one of the telephone numbers listed in Section III, below.

98

G. **What should I do to make sure the Distribution Agent has my correct address?**

If your address changes from the address to which this Notice was directed, you must notify the Distribution Agent of your new address as soon as possible. Failure to keep the Distribution Agent informed of your address may result in the loss of any monetary award you might be eligible to receive. Please send your new contact information in writing to the Distribution Agent at the address listed below and include your old address, new address, new telephone number, your claim number and control number printed on the first page of the Claim Form that was mailed to you.

III. **GETTING MORE INFORMATION**

You may obtain additional information by contacting the Distribution Agent through email, at info@yukosclaims.com, by mail (via First Class Mail within the United States or International Priority Mail outside the United States) to

**Yukos Claims Administration**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901**
**USA**

or by calling one of the telephone numbers below:

| COUNTRY | TOLL FREE NUMBERS | TOLL NUMBERS |
|---|---|---|
| France | 0 800913918 | 170394943 |
| Germany | 0 8001880934 | 69 257367384 |
| Netherlands | 0 8000232753 | 20 2170207 |
| Russia | 8 800 1006372 | 499 5044429 |
| Sweden | 0 200120641 | 8 12410248 |
| Switzerland | 0 800802446 | 44 5083383 |
| United Kingdom | 0 8000966481 | 20 38070019 |
| United States | (888) 846-6410 | (210) 529-7539 |

99

## APPENDIX A
## PLAN OF ALLOCATION OF DISTRIBUTION FUND

1.    The objective of the Plan of Allocation is to distribute the Distribution Fund to former Yukos shareholders.  The Plan of Allocation reflects calculations undertaken by the Yukos Group's economic advisor to determine an Eligible Claimant's relative losses in Yukos Ordinary Shares and ADRs according to the agreed-upon formula.

2.    The calculations made pursuant to this Plan of Allocation are not intended to be estimates of the amounts that will be paid to Eligible Claimants.  The computations under the Plan of Allocation are only a method to weigh the claims of Eligible Claimants against one another for the purposes of making pro rata allocations of the Distribution Fund.

3.    In order to have a Recognized Loss (as calculated pursuant to the provisions below), a former Yukos shareholder must have held, purchased, or acquired Yukos Ordinary Shares or Yukos ADRs during the Recovery Period.

### CALCULATION OF RECOGNIZED LOSS AMOUNTS

4.    For purposes of determining whether a Claimant has a "Recognized Loss," purchases, acquisitions, and sales of Yukos Ordinary Shares and ADRs will first be matched on a Last In/First Out ("LIFO") basis as set forth in paragraph 7 below.

5.    A "Recognized Loss" will be calculated as set forth below for each Yukos Ordinary Share or ADR purchased, acquired, or held during the Recovery Period (i.e., July 2, 2003 through and including November 28, 2007), that is listed in the Claim Form and for which adequate documentation is provided.  A Recognized Loss does not reflect the amount an Eligible Claimant will be paid from the Distribution Fund; rather, it reflects the proportionate amount of the distribution that the Eligible Claimant will receive as compared to all Eligible Claimants.

6.    The distribution of available funds will be made on a pro rata basis based on each former Yukos shareholder's percentage share of aggregated "Recognized Losses" from all investors based on the following methodology:

A.    The Event Dates in Table 1 represent developments in the investigation of Yukos by the Russian government over the period July 2003 to August 2006.

B.    The total price reaction for each claim shall be calculated by aggregating the market-adjusted price reactions on the "Reaction Dates"  indicated in Table 1 that occur after the investor's purchase date, and before the investor's sale date (the "Holding Period").  Thus, the "Abnormal Price Reaction" indicated in Table 1 after every purchase date and prior to every sale date must be added together to derive the total loss per share.  For example, if a claimant bought Yukos Ordinary Shares prior to July 2, 2003 and never sold them, the total loss per share would be $14.45.[2]

C.    This total price reaction over each investor's Holding Period will be further discounted to arrive at the total Recognized Loss per share, with a larger discount for purchases made later in the period.  Table 1 shows the discount to be applied based on each claimant's purchase date.  The discount is calculated by starting at 0%, and increasing by equal increments (1/19, or approximately 5.26%) to 100% on each Event Date over the entire event window.

D.    Each investor's total Recognized Loss shall be calculated by multiplying the number of shares purchased by the Recognized Loss per share.

E.    The additional discounts on Recognized Loss calculations for purchases later in the period, as set forth in Table 1, result in lower Recognized Losses for individuals and entities who purchased Yukos Ordinary Shares or ADRs after continuing developments in the Russian government investigation gradually increased the speculative nature of the investment.

### ADDITIONAL PROVISIONS

7.    If an Eligible Claimant has more than one purchase, acquisition or sale of Yukos Ordinary Shares or ADRs during the Recovery Period, all purchases, acquisitions and sales shall be matched on a LIFO basis. The LIFO methodology dictates that any sales of Yukos Ordinary Shares or ADRs will be paired against the most recent purchase for the purposes of calculating the Recognized Loss.

8.    Purchases, acquisitions and sales of Yukos Ordinary Shares or ADRs shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date.  The receipt or grant by gift, inheritance or operation of law of Yukos Ordinary Shares or ADRs during the Recovery Period shall not be deemed a purchase, acquisition or sale of these Yukos Ordinary Shares or ADRs for the calculation of an Eligible Claimant's Recognized Loss, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Yukos Ordinary Shares or ADRs, unless (i) the donor or decedent purchased

---

[2] The ratio of ADRs to Yukos Ordinary Shares was 4 Yukos Ordinary Shares to 1 ADR throughout the Recovery Period.  Applicable "Abnormal Price Reactions" in Table 1 will be multiplied by 4 for each ADR held.  Please also note that the numbers listed in the "Abnormal Price Reaction" column of Table 1 are rounded.  Calculations made under the Plan of Allocation will use the precise numbers that are not rounded.

100

or otherwise acquired such Yukos Ordinary Shares or ADRs during the Recovery Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Yukos Ordinary Shares or ADRs; and (iii) it is specifically so provided in the instrument of gift or assignment.

9.    Yukos Ordinary Shares and ADRs are the only securities eligible for recovery under the Plan of Allocation.

10.    An Eligible Claimant's Recognized Loss shall be the amount used to calculate the Eligible Claimant's pro rata share of the Distribution Fund.  If the sum total of Recognized Losses of all Eligible Claimants entitled to receive payment out of the Distribution Fund is greater than the Distribution Fund, each Eligible Claimant shall receive his, her, or its pro rata share of the Distribution Fund. The pro rata share shall be the Eligible Claimant's Recognized Loss divided by the total Recognized Losses of all Eligible Claimants, multiplied by the total amount in the Distribution Fund.

11.    The Distribution Fund will be allocated among all Eligible Claimants whose prorated payment is $25.00 USD or greater.  If the prorated payment to any Eligible Claimant calculates to less than $25.00 USD, it will not be included in the calculation and no distribution will be made to that Eligible Claimant.

12.    If the Distribution Fund exceeds the sum total amount of the Recognized Losses of all Eligible Claimants entitled to receive payment out of the Distribution Fund, the excess amount in the Distribution Fund shall be distributed pro rata to all Eligible Claimants entitled to receive payment.  The Distribution Agent will distribute the funds in several tranches. The initial distribution will be comprised of payments to Pre-Approved Claimants on a rolling basis. After all timely submitted Claim Forms have been processed and all claimants whose claims have been rejected or disallowed have been provided with the opportunity to cure, funds will be distributed to claimants whose claims have been approved. The funds distributed in this second tranche will be allocated in the same proportion as the first tranche of payments, so that all claimants with approved claims are in parity with the Pre-Approved Claimants.

13.    If any funds remain in the Distribution Fund by reason of uncashed distributions or additional funds become available for distribution after the completion of the Initial Distribution, the Distribution Agent, in consultation with the Yukos Group, can at its discretion, pay late claims, and/or, if the amount available is sufficient to warrant an additional distribution, then anyone who received an electronic payment or cashed a check in the Initial Distribution and who would receive at least $25.00 USD, may receive a second payment on a pro-rata basis after payment of any unpaid costs or fees incurred in administering the Distribution Fund, including costs for fees for such redistribution.  The Distribution Agent, in consultation with the Yukos Group, may make further redistributions of balances remaining in the Distribution Fund to such Eligible Claimants to the extent such redistributions are cost-effective.

14.    The Plan of Allocation may be modified without further notice. Any modifications to the Plan of Allocation will be posted on the Distribution Agent's website at www.yukosclaims.com.

## TABLE 1

| Yukos Oil Company Claim Calculation Inputs (US$) | | | |
|---|---|---|---|
| Event Date Month/Day/Year | Reaction Date Month/Day/Year | Abnormal Price Reaction* | % Discount if Purchase Occurs on or after Reaction Date |
| 7/2/2003 | 7/3/2003 | $ (0.76) | 5.3% |
| 7/9/2003 | 7/10/2003 | $ (0.92) | 10.5% |
|  | 7/11/2003 | $ (0.91) | 10.5% |
| 10/25/2003 | 10/27/2003 | $ (2.00) | 15.8% |
| 12/5/2003 | 12/5/2003 | $ (0.60) | 21.1% |
| 4/20/2004 | 4/20/2004 | $ (0.72) | 26.3% |
| 4/26/2004 | 4/26/2004 | $ (0.93) | 31.6% |
| 7/1/2004 | 7/1/2004 | $ (1.15) | 36.8% |
| 7/20/2004 | 7/20/2004 | $ (1.25) | 42.1% |
|  | 7/21/2004 | $ (0.84) | 42.1% |
|  | 7/22/2004 | $ (0.63) | 42.1% |
| 11/2/2004 | 11/2/2004 | $ (0.58) | 47.4% |
|  | 11/3/2004 | $ (0.39) | 47.4% |
| 11/19/2004 | 11/19/2004 | $ (0.76) | 52.6% |
| 12/28/2004 | 12/28/2004 | $ (0.18) | 57.9% |
|  | 12/30/2004 | $ (0.08) | 57.9% |
| 2/24/2005 | 2/25/2005 | $ (0.08) | 63.2% |
| 1/18/2006 | 1/19/2006 | $ (0.47) | 68.4% |
| 3/13/2006 | 3/13/2006 | $ (0.69) | 73.7% |
| 3/29/2006 | 3/29/2006 | $ (0.21) | 78.9% |
| 7/25/2006 | 7/25/2006 | $ (0.22) | 84.2% |
| 7/27/2006 | 7/27/2006 | $ 0.25 | 89.5% |
| 8/1/2006 | 8/2/2006 | $ (0.17) | 94.7% |
| Last Day of Trading | 11/28/2007 | $ (0.14) | 100.0% |

*Figures after the decimal points indicate cents of US Dollars.

DATED: December 2, 2015

5

101

**Yukos Claims Administration**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901**
**Info@YukosClaims.com**



YKO



| Claim number: | 92B37B5C27 |
|---|---|



| Control number: | 7A9EF6FBD5 |
|---|---|

ILVEYS INC.
AKARA BLDG., 24 DE CASTRO
STREET, WICKHAMS CAY 1
ROAD TOWN
TORTOLA
VIRGIN ISLANDS, BRITISH

## CONFIRMATION OF FILING OF A CLAIM ONLINE

THIS IS CONFIRMATION OF YOUR APPLICATION SUBMITTED. PRINT THIS PAGE AND KEEP IT FOR FUTURE REFERENCE. IF YOU HAVE NOT UPLOAD THE ACCOMPANYING DOCUMENTATION TO THE WEBSITE, PLEASE SEND A COPY OF THIS PAGE WITH ALL ACCOMPANYING DOCUMENTATION TO THE ADDRESS INSERT ABOVE.

| SHARES OWNED (BEGINNING OF COMPENSATION PERIOD): The number of common shares and ADRs of Yukos that you owned as of the close of trading on July 1, 2003. If absent, enter "0". (If necessary, enter | 0 Common Shares | 0 ADR |
|---|---|---|
| (Please attach accompanying documentation.) | | |

ACQUISITION or RECEIPT: Acquisition or receipt of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of purchase or receipt (NUM/MON/YEAR) | Number of common shares or ADRs purchased or received |
|---|---|---|---|
| | Y | November 16, 2004 | 10000 |
| | Y | November 25, 2004 | 10000 |
| | Y | November 29, 2004 | 5000 |
| | Y | March 30, 2005 | 25000 |
| | Y | August 23, 2005 | 20000 |

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.

| Claim number statements: | 92B37B5C27 | | Control number: | 7A9EF6FBD5 |
|---|---|---|---|---|

SALES: Sales of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of sale (DATE/MONTH/YEAR) | Number of common shares or ADRs sold |
|---|---|---|---|
|  | Y | August 23, 2005 | 20000 |

| SHARES HOLDING (END OF COMPENSATION PERIOD): The number of shares of Yukos common stock and ADRs you owned as of the close of trading on November 28, 2007. If not indicated, enter 0 (Required). <br><br> (Please attach accompanying documentation.) | 0 <br> Ordinary shares | 50,000 <br> ADRs |
|---|---|---|

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.





Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901

| | |
|---|---|
| Claim Number: | 92B37B5C27 |
| Check Number: | 00002756 |
| Check Date: | 01/09/18 |
| Check Amount: | $2,499.16 |

ILVEYS INC.
7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

Ref No.: 7A9EF6FBD5

---

**YUKOS OIL CLAIMS ADMINISTRATION**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901 USA**

**Distribution Agent**

---

Dear Claimant:

The attached check represents your pro rata share of the Distribution Fund in the *Yukos Oil Claims Administration*. You are receiving this payment because you submitted an eligible claim for the purchase, acquisition or holding of Yukos Ordinary Shares or Yukos American Depositary Receipts during the Recovery Period, July 2, 2003 through and including November 28, 2007.

The funds available for distribution consist of a portion of the cash assets of certain former foreign subsidiaries of Yukos Oil Company (the "Yukos Group"), that have been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company. The total amount of the Distribution Fund available for this distribution is approximately $337 million and your payment was calculated in accordance with the Plan of Allocation set forth in the Notice of Distribution ("Notice"), which was previously sent to you and which is posted on the administration website at http://www.yukosclaims.com.

The tax treatment of this distribution varies based upon the recipient's tax status and treatment of his, her or its investments. Therefore, we cannot determine the appropriate tax reporting for all recipients and we cannot provide individual tax advice. The tax treatment of payments from the Yukos Distribution Fund is the responsibility of each recipient. **You should consult your tax advisor to determine the tax consequences, if any, of this payment to you.**

**Please cash this check promptly, as it becomes void and subject to re-distribution if not cashed by January 31, 2018.** If you have changed your address from the address on the accompanying check or if you have any questions, you may contact the Distribution Agent through email, at info@yukosclaims.com, by mail at the above mailing address or by calling one of the multi-national telephone numbers listed at the administration website and in the Notice.

Thank you.

Yukos Distribution Agent

**105**

Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901
USA

**Bank of America**

64-5/610 GA

01/09/18        00002756

Pay        *Two thousand four hundred ninety nine and 16/100 Dollars*

******$2,499.16

Pay to the    ILVEYS INC.
order of    7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTIO
IF NOT CASHED BY 01/31/2018.

BY

AUTHORIZED SIGNATURE

⑈002756⑈ ⑆061000052⑆ 33403712447 6⑈

106

To: Bank of Cyprus, PCL, IBU Limassol, 388

From: Mr Vladimir Pridorogin on behalf of ILVEYS INC.

Date: 23.01.2018

Dear Sirs,

Please, find attached a draft check no. 00002756 dated 01/09/18 (January 9, 2018) signed for the clearing. Please, accept funds indicated in the provided check to the following USD account of our company ILVEYS INC.:

Acc.: 357012953416

If any commission, please, charge the same account of us: 357012953416

Best regards,

Mr Vladimir Pridorogin

on behalf of ILVEYS INC.

107