# PDF No. 3: EXHIBITS A–H TO PLAINTIFF'S AMENDED COMPLAINT

**Plaintiff: DENIEL SHUMEIKO**

**Defendant: DEUTSCHE BANK TRUST COMPANY AMERICAS**

# INDEX OF EXHIBITS


| Exhibit | Document Description | Core Legal Purpose |
|---|---|---|
| **A** Pp. 3–43 | DEED OF ASSIGNMENT AND SUPPORTING CORPORATE RECORDS | Documents the assignment of the Yukos ADR-related claims and the supporting corporate records. |
| **B** Pp. 44–52 | UNANIMOUS SHAREHOLDERS' RESOLUTION OF ILVEYS INC. | Documents unanimous shareholder authorization for the transfer of the Yukos ADR-related claims. |
| **C** Pp. 53–61 | TIMELINE OF INSTITUTIONAL CONFLICT AND CONTINUING CONDUCT (2004–2026) | Summarizes the institutional conflict and continuing conduct underlying Plaintiff's claims. |
| **D** Pp. 62–73 | PRE-LITIGATION CORRESPONDENCE AND FORMAL DEMANDS | Documents the pre-litigation demands, Defendant's refusal, and subsequent correspondence. |
| **E** Pp. 74–81 | VALUATION AND CALCULATION METHODOLOGY | Provides the valuation methodology and benchmarks supporting Plaintiff's ADR-related calculations. |
| **F** Pp. 82–86 | SWEDISH JUDICIAL ADJUDICATION AND ADR STRUCTURAL BARRIER | Documents the Swedish adjudication and the structural barrier arising from the ADR intermediary structure. |
| **G** Pp. 87–91 | EXTRACTS FROM PUBLIC LAW 112–208 (MAGNITSKY ACT) | Provides federal policy context expressly addressing the promotion of U.S. investor claims in Yukos. |
| **H** Pp. 92–111 | YUKOS CLAIMS ADMINISTRATION – DISTRIBUTION FRAMEWORK, CLAIM PROCESSING, AND CONTINUING RECOVERY (2015–2026) | Documents the Yukos distribution framework, ILVEYS INC.'s claim and payment history, and renewed distribution activity in 2026. |

# EXHIBIT A: DEED OF ASSIGNMENT AND SUPPORTING CORPORATE RECORDS

## EXHIBIT A: DEED OF ASSIGNMENT AND SUPPORTING CORPORATE RECORDS

**SUBJECT:** Transfer to Plaintiff of the claims, rights, and causes of action associated with ILVEYS INC.'s 50,000 Yukos ADR position.

This Exhibit contains the April 23, 2026 Deed of Assignment executed by ILVEYS INC. in favor of Plaintiff Deniel Shumeiko, together with supporting corporate, shareholder, brokerage, and ownership records.

The materials document ILVEYS INC.'s historical ownership of the Yukos ADR investment, Plaintiff's pre-existing shareholder relationship with ILVEYS INC., the corporate authorization for the transfer, and the assignment to Plaintiff of the Yukos ADR-related claims and enforcement rights asserted in this action.

The Exhibit supports Plaintiff's allegations concerning standing, chain of title, corporate authorization, and continuity of the underlying family investment interest.

# DEED OF ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION

**DATE OF EXECUTION:** April 23**, 2026**

**PARTIES:**

**ASSIGNOR: ILVEYS INC., № 539118**, a company organized under the laws of the British Virgin Islands, operating exclusively as a **Family Investment Vehicle** for the management and protection of the Pridorogin family assets, represented by its Director, **VLADIMIR PRIDOROGIN**.

**ASSIGNEE: DENIEL SHUMEIKO**, a natural person residing at **3600 Chestnut St., Apt. 703, Philadelphia, PA, 19104.**

## 1. SUBJECT OF THE ASSIGNMENT.

Pursuant to the corporate authorizations described herein, the Assignor hereby irrevocably grants, transfers, and assigns to the Assignee **100% of its right, title, and interest** in and to any and all claims, causes of action, and demands whatsoever, arising out of or related to the ownership of **fifty thousand (50,000) American Depositary Receipts (ADRs) of Yukos Oil Company (CUSIP 98849W108).**

This Assignment includes, without limitation, the **full and exclusive power** to initiate, maintain, settle, or compromise any legal or administrative proceedings in any jurisdiction, to be recognized as the sole successor-in-interest, and to receive any and all recoveries and distributions therefrom. The Assignee is hereby fully authorized to act in his own name, and any recognition or payment afforded to the Assignee by any third party shall fully discharge such party's obligations to the Assignor.

**This Assignment is supported by the following documentation, which is attached hereto and incorporated herein by reference as an integral part of this Agreement:**

- **ANNEX A (Corporate Authorization):** The Unanimous Shareholders' Resolution dated April 14, 2026, confirming the collective intent of the Family Investment Vehicle's owners to distribute the Claims to the Assignee.
- **ANNEX B (Asset Ownership Records):** Twenty-seven **(27)** pages of brokerage statements and ownership records confirming the acquisition of the assets in 2004–2005 and continuous beneficial ownership through the liquidation of Yukos Oil Company.

## 2. CONSIDERATION AND VALUATION.

This Assignment is made as a **Distribution in Kind** from the Family Investment Vehicle to its beneficiary and as part of a **Bona Fide family asset restructuring**. The parties acknowledge and agree that the fair market value of the assigned Claims is established at approximately **USD 12,950,000.00**, based on the pro-rata extrapolation of the Hague Arbitral Award including accrued interest through April 2026.

## 3. COMPLIANCE AND SANCTIONS WARRANTY.

The Assignor and the Assignee represent and warrant that the beneficial owners of these assets are private individuals who are not "Politically Exposed Persons" (PEPs), are not affiliated with any

military or state security entities, and are not subject to any sanctions enforced by the U.S. OFAC, the European Union, or the United Kingdom.

**4. REVERSION AND TERMINATION.**

This Assignment is subject to a condition subsequent. All rights shall automatically and immediately revert to the Assignor (ILVEYS INC.) without further act upon the occurrence of: (i) the death or permanent legal incapacity of the Assignee; or (ii) any legal impediment that prevents the Assignee from effectively pursuing the Claims in the United States.

**5. PARTIES; ELECTRONIC SIGNATURES.**

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. A signed copy of this Agreement delivered by facsimile, email, or other means of electronic transmission (including DocuSign) shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**6. GOVERNING LAW.**

This Agreement shall be governed by and construed in accordance with the laws of the **State of New York**, USA.

**SIGNATURES:**

We, **Vladimir Pridorogin** and **Deniel Shumeiko**, declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct, and that the signatures herein are authentic.

Executed on April 23, **2026**.

**ASSIGNOR (ILVEYS INC.):** ______________________ (Vladimir Pridorogin, Director)
Location: Moscow, Russia

ILVEYS INC. IBC № 539118 BRITISH VIRGIN ISLANDS

(Company Seal)

Signed by:
A5A1C7EF8232469...

**ASSIGNEE:** ______________________ (Deniel Shumeiko)
Location: Philadelphia, PA, USA

ANNEX A

**ACTION BY UNANIMOUS WRITTEN CONSENT OF THE SHAREHOLDERS OF ILVEYS INC.**

**DATED:** April 14, 2026

The undersigned, being all of the Shareholders of **ILVEYS INC.**, a company organized and existing under the laws of the British Virgin Islands (the "Company"), hereby waive any notice of a meeting and adopt the following resolutions by unanimous written consent:

**WHEREAS**, the Company was established and is operated exclusively as a **Family Investment Vehicle** for the purpose of managing, preserving, and protecting the financial assets and long-term investments of the Shareholders and their family members;

**WHEREAS**, in its capacity as a Family Investment Vehicle, the Company is the beneficial owner of **50,000 American Depositary Receipts (ADRs) of Yukos Oil Company (CUSIP 98849W108)** and possesses all legal claims and causes of action arising from the breach of fiduciary duties and gross negligence of the depositary bank, Deutsche Bank Trust Company Americas ("DBTCA");

**WHEREAS**, following the 2025 final rulings of the Dutch Supreme Court and the judicially recognized valuation of Yukos assets, the Company's claims are valued at approximately **USD 12,950,000.00** (the "Claims");

**WHEREAS**, the Shareholders have determined that it is in the best interests of the Company and the family interest it represents to transfer and assign all rights, titles, and interests in these Claims to **DENIEL SHUMEIKO**, a Shareholder of the Company and a resident of the United States, to ensure the effective legal enforcement and continued protection of these family assets;

**NOW, THEREFORE, BE IT RESOLVED THAT:**

**1. ASSIGNMENT OF CLAIMS:** The Company shall irrevocably assign and transfer 100% of its rights, titles, and interests in the Claims against DBTCA to **DENIEL SHUMEIKO**. This transfer is made as a **Distribution in Kind** in the ordinary course of managing the Family Investment Vehicle.

**2. REVERSIONARY INTEREST:** The assignment is subject to a condition subsequent. In the event of the Assignee's death or permanent legal incapacity, the assigned Claims shall automatically and immediately revert to the Company (ILVEYS INC.) to ensure the continued protection of the family's investment.

**3. REPRESENTATIONS ON COMPLIANCE:** Each Shareholder represents and warrants that they are private individuals, are not "Politically Exposed Persons" (PEPs), and are not subject to any sanctions administered by the U.S. OFAC, the European Union, or the United Kingdom.

**4. AUTHORIZATION:** Vladimir Pridorogin, in his capacity as Director of the Company, is hereby authorized and directed to execute a Deed of Assignment and any other documents necessary to give effect to this transfer.

**IN WITNESS WHEREOF**, the undersigned Shareholders have executed this Consent as of the date first written above.

**SIGNATURES OF SHAREHOLDERS:**

| | | |
|---|---|---|
| | | Signed by: A5A1C7EF8232469... |
| **Vladimir Pridorogin** | **Sergey Pridorogin** | **Deniel Shumeiko** |
| (49.0%) | (50.0%) | (1.0%) |

**PCA Case No. AA 227**

**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED IN ACCORDANCE WITH ARTICLE 26 OF THE ENERGY CHARTER TREATY AND THE 1976 UNCITRAL ARBITRATION RULES**

**- between -**

**YUKOS UNIVERSAL LIMITED (ISLE OF MAN)**

**- and -**

**THE RUSSIAN FEDERATION**

---

# FINAL AWARD

---

**18 July 2014**

*Tribunal*
The Hon. L. Yves Fortier PC CC OQ QC, Chairman
Dr. Charles Poncet
Judge Stephen M. Schwebel

Mr. Martin J. Valasek, Assistant to the Tribunal
Mr. Brooks W. Daly, Secretary to the Tribunal
Ms. Judith Levine, Assistant Secretary to the Tribunal

*Registry*
Permanent Court of Arbitration

*Representing Claimant*:

Professor Emmanuel Gaillard
Dr. Yas Banifatemi
Ms. Jennifer Younan
SHEARMAN & STERLING LLP

*Representing Respondent*:

Dr. Claudia Annacker
Mr. Lawrence B. Friedman
Mr. David G. Sabel
Mr. Matthew D. Slater
Mr. William B. McGurn
Mr. J. Cameron Murphy
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Mr. Michael S. Goldberg
Mr. Jay L. Alexander
Dr. Johannes Koepp
Mr. Alejandro A. Escobar
BAKER BOTTS LLP

and the Tribunal [has] a corresponding margin of estimation."[2132] However, the Tribunal, as other tribunals have done, must reach a decision and it has done so on the basis of all the evidence which it has reviewed.

1637. Having considered and weighed all the arguments which the Parties have presented to it in respect of this issue the Tribunal, in the exercise of its wide discretion, finds that, as a result of the material and significant mis-conduct by Claimants and by Yukos (which they controlled), Claimants have contributed to the extent of 25 percent to the prejudice which they suffered as a result of Respondent's destruction of Yukos. The resulting apportionment of responsibility as between Claimants and Respondent, namely 25 percent and 75 percent, is fair and reasonable in the circumstances of the present case.

## XI. INTEREST

1638. As will be seen in Part XII of the Award dealing with quantification of Claimants' damages for Respondent's breach of the ECT, one of the elements factored into the Tribunal's calculation of damages will be interest.[2133] Accordingly, the Tribunal, in the present Part XI will determine the applicable rate of such interest, whether it should be simple or compound and, if compound, the period of compounding.

### A. CLAIMANTS' POSITION

1639. Claimants request the Tribunal to award them pre- and post-award interest.[2134] In their Submission on Costs, Claimants also request interest on any costs awarded to them.[2135]

1640. According to Claimants, "payment of interest can be required to ensure full reparation."[2136] Claimants quote the tribunal in *Vivendi v. Argentina*, which stated that the purpose of the payment of interest is "to compensate the damage resulting from the fact that, during the period of non-payment by the debtor, the creditor is deprived of the use and disposition of that sum he

[2132] *MTD Equity Sdn Bhd. v. The Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Annulment, 21 March 2007 ¶ 101. *See also Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID, ARB/06/111, Award, 5 October 2012 ¶¶ 659–87.

[2133] In particular see paragraphs 1822–23 below on pre-award interest on the dividend streams that Claimants would have obtained in the absence of Respondent's breach.

[2134] Memorial ¶¶ 969–70; Reply ¶¶ 859, 1199; Claimants' Post-Hearing Brief ¶ 302.

[2135] Claimants' Submission on Costs ¶ 64.

[2136] Memorial ¶ 959, citing to ILC Articles on State Responsibility, Art. 38, Exh. C-1042.

## C. TABLES T1–T9 SHOWING THE TRIBUNAL'S DAMAGES CALCULATIONS

### 1. Table T1: Calculation of Total Damages of Claimants as of 19 December 2004 (Date of Expropriation) vs. 30 June 2014 (Date of Award for Valuation Purposes)

**19 December 2004**

| Damages component | Amount (in USD) |
|---|---|
| Yukos Equity Value | 21,175,832,823 |
| Dividends to end of 2004 | 2,417,808,219 |
| *Sum of Equity Value and Dividends* | *23,593,641,042* |
| Interest through 30 June 2014 | 7,596,090,702 |
| **Total** | **31,189,731,744** |

| | Outstanding Shares | % of Outstanding Shares | Damages (in USD) |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **31,189,731,744** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 17,570,439,964 |
| Claimant YUL | 50,340,995 | 2.60165 | 811,447,480 |
| Claimant VPL | 223,699,175 | 11.56089 | 3,605,811,362 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **21,987,698,805** |

**30 June 2014**

| Damages component | Amount (in USD) |
|---|---|
| Yukos Equity Value | 42,625,343,615 |
| Dividends and interest (through 30 June 2014) | 51,981,340,000 |
| **Total** | **94,606,683,615** |

| | Outstanding Shares | % of Outstanding Shares | Damages (in USD) |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **94,606,683,615** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 53,295,779,147 |
| Claimant YUL | 50,340,995 | 2.60165 | 2,461,334,249 |
| Claimant VPL | 223,699,175 | 11.56089 | 10,937,377,001 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **66,694,490,398** |

| **Damages After 25% Reduction** | |
|---|---|
| Claimant Hulley | 39,971,834,360 |
| Claimant YUL | 1,846,000,687 |
| Claimant VPL | 8,203,032,751 |
| **Claimants Total** | **50,020,867,798** |

Note: Claimants' shareholdings and total number of Outstanding Shares taken from Appendix C.5.b to First Kaczmarek Report

TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE INTERNATIONAL BUSINESS COMPANIES ACT
(CAP. 291)

CERTIFICATE OF INCORPORATION (SECTIONS 14 AND 15)

No. 539118

*The Registrar of Companies of the British Virgin Islands* HEREBY CERTIFIES *pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,*

ILVEYS INC.

is incorporated in the British Virgin Islands as an International Business Company this 26th day of March, 2003.

Given under my hand and seal at
Road Town, in the Territory of the
British Virgin Islands

REGISTRAR OF COMPANIES

CRTI001K

# BVI FINANCIAL SERVICES COMMISSION

Company No. : 539118

Company Name : ILVEYS INC.

Date : 29/11/2016

Register Type : Public

INDIVIDUAL DIRECTORS

| S/No. | Director No. | Director Type | Name | Personal Details | Service Address | Residential Address | Appointed Date | Cease Date |
|---|---|---|---|---|---|---|---|---|
| 1 | D4F04CE6 | Director | VLADIMIR VICTOROVICH PRIDOROGUINE | **Date of Birth:** 27/02/1971 **Place of Birth:** RUSSIAN FEDERATION **Nationality:** Russian | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY RUSSIAN FEDERATION | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY RUSSIAN FEDERATION | 26/03/2003 | |

REGISTRAR OF CORPORATE AFFAIRS REGISTERED BVI FINANCIAL SERVICES COMMISSION FSC

**BVI FINANCIAL SERVICES COMMISSION** **REGISTER OF MEMBERS**

Entity No. : 539118 Date : 22/04/2025

Entity Name : ILVEYS INC.

INDIVIDUAL MEMBERS

| S/No. | Member No. | Name | Address | Share Classification | No. of Shares | Date Entered | Date Ceased |
|---|---|---|---|---|---|---|---|
| 1 | 8DCC1344 | Deniel Shumeiko | Bld. 4 Snaiperskaya Str., apt. 267,<br>Moscow,<br>RUSSIAN FEDERATION | Ordinary | 250 | 28/08/2024 | |
| 2 | B5037C2C | Vladimir Pridorogin | Bld. 2, 14 Novogireevskaya Str., apt. 60,<br>Moscow,<br>RUSSIAN FEDERATION | Ordinary | 24750 | 28/08/2024 | |
| 3 | FFA635BE | Sergei Pridorogin | Bld. 2, 14 Novogireevskaya Str., apt. 60,<br>Moscow,<br>RUSSIAN FEDERATION | Ordinary | 25000 | 14/04/2014 | |

REGISTRAR OF CORPORATE AFFAIRS
REGISTERED
BVI FINANCIAL SERVICES COMMISSION

ANNEX B

TERRITORY OF THE BRITISH VIRGIN ISLANDS

THE INTERNATIONAL BUSINESS COMPANIES ACT
(CAP. 291)

CERTIFICATE OF INCORPORATION (SECTIONS 14 AND 15)

No. 539118

*The Registrar of Companies of the British Virgin Islands* HEREBY CERTIFIES *pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,*

ILVEYS INC.

is incorporated in the British Virgin Islands as an International Business Company this 26th day of March, 2003.

Given under my hand and seal at
Road Town, in the Territory of the
British Virgin Islands

REGISTRAR OF COMPANIES

CRTI001K

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# RESOLUTION OF THE SUBSCRIBER

# OF

# ILVEYS INC.

(the "Company")

The undersigned, being the Subscriber to the Memorandum & Articles of Association of Ilveys Inc., a company incorporated under the laws of the British Virgin Islands (the "Company"), hereby appoints:-

**VLADIMIR PRIDOROGUINE**

first Director(s) of the Company, to serve as such until his successor(s) shall have been elected or until his resignation(s) or removal; such election shall be effective immediately and without further qualification.

Dated this **26th day of March, 2003**.

Shirley Chalwell, Assistant Secretary
**MOSSACK FONSECA & CO. (B.V.I.) LTD.**
Subscriber

**AGREEMENT ON CLEARING BROKERAGE SERVICES**

**# 3NBCY-44/03**

This Agreement on Clearing Brokerage Services ("this Agreement) is made on this 14 day of May 2003 by and between

**Nikitas Brokerage Limited** (the "Agent"), incorporated and existing pursuant to the laws of the Republic of Cyprus, and

Ilvers Inc. (the "Client"), incorporated and existing pursuant to the laws of BVI.

For the purposes of this Agreement the Client and the Agent are each also hereinafter referred to as a Party, individually, and the Parties, collectively.

**RECITALS**

**WHEREAS** the Client desires, from time to time, to buy and sell, with Agent's assistance, securities of Issuers, identified by the Client to Agent, as well as use other services rendered by the Agent under this Agreement;

**WHEREAS** the Parties shall also act hereunder in accordance with business custom and usage, and in spirit of mutually beneficial partnership;

**WHEREAS** the Parties agree to treat business custom and usage as rules of fair and equitable trading developed or to be developed by the National Association of Participants of the Securities Market (NAUFOR), including those contained in the Trading Rules of "Non-Commercial "Trading System RTS", in accordance with which Agent shall act while executing relevant Transactions and performing the Client's Orders as defined below herein;

**WHEREAS** the concrete contents of the Clearing Broker Services shall be determined each time by the Parties in accordance with the Client's wishes, terms of a separate Transaction and Client's Order;

**NOW, THEREFORE, THE PARTIES HEREBY HAVE AGREED AS FOLLOWS:**

**PART 1. DEFINITIONS**

The following terms shall be used in this Agreement with the following meanings:

1.1. "Accepted Market Practice" shall mean, with respect to the penalty provisions hereunder, interest rates which are applied in the Russian Federation pursuant to the provisions of the Trade Agreement of the Non-Commercial Partnership "Trading System RTS", approved by its Board of Directors, which currently constitutes two tenth of one per cent (0,2%) of a Transaction's value per each calendar day of delay.

1.2. "Affiliate" shall mean in relation to any Person, any entity controlled, directly or indirectly, by the Person, any entity that controls, directly or indirectly, the Person or any entity directly or indirectly under common Control with the Persons.

1.3. "Authorised Person(s) of the Client" or "Authorised Person(s) of the Agent" or "Authorised Person(s)" shall mean (i) any officer, employee, manager or agent of either Party as has been authorised by notice in writing to the other Party to act on behalf of the first Party in the performance of any acts, elections or obligations under this Agreement, or (ii) any other person, firm or company holding a duly executed power of attorney from either Party which is in a form acceptable to the other Party;

1.4. "Business Day" shall mean a day (other than Saturday or Sunday) on which commercial banks and exchange markets are open for business in the City of New York, USA, the City of London, United Kingdom, and in the City of Moscow, Russian Federation;

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

15.4. Either Party shall have the right to assign or transfer any or all of its rights or obligations to an Affiliate of that Party and performance of any obligation by an Affiliate shall be deemed to constitute performance by the relevant Party. This Agreement shall be binding upon the Parties and their successors and permitted assignees.

**PART 16. ADDRESSES AND BANKING INSTRUCTIONS OF THE PARTIES**

AGENT: **Nikitas Brokerage Limited**

Seat: 2-4 Arch. Makarios III Avenue, 9th Floor, Capital Center, Nicosia, Cyprus

Banking Instructions: JPMorgan Chase Bank NY SWIFT CHASUS33 for credit to JPMorgan Chase Bank London SWIFT CHASGB2L for further credit to Nikitas Brokerage Limited acc. 22828601

Telephone: ______________________

Fax: ______________________

CLIENT: ______________________

Seat: ______________________

Banking instructions: ______________________

Telephone: ______________________

Fax:

**IN WITNESS WHEREOF** the Parties have caused this Agreement to be executed in two (2) original copies, having equal legal force, one (1) copy for each Party, at the above mentioned place and on the above mentioned date.

ILVEYS INC.
(name of the Client)

By: [signature]
Name: Vladimir Pridoroguine
Title: Director

ILVEYS INC. IBC № 539118 BRITISH VIRGIN ISLANDS
seal

**NIKITAS BROKERAGE LIMITED**

By: [signature]
Name: Despo Theodossiou
Title: Attorney-in-Fact

NIKITAS BROKERAGE LIMITED
seal

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# *Troika Dialog (Bermuda) Limited*

*Chancery Hall, 52 Reid Street, Hamilton HM 12,Bermuda*

July 12, 2005

To: Ilveys Inc.
Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI

Re: Agency Agreement On General Terms And Conditions Of Business With Fixed Terms Financial Notes dated 08/18/2003 (the "Agreement")

Dear Client,

As you know, the Russian government is moving rapidly toward creating a more open and unrestricted domestic equity market. Troika Dialog (Bermuda) Limited (hereinafter "Troika") strongly supports the evolution of the Russian capital markets. We are at the forefront of the resurgent RTS and will continue to strive toward the further and continued growth of our markets generally. The process that we are currently going through will aid in the advancement of a solid, reliable marketplace for many years to come.

And as the capital markets evolve so too will the requirements of both the brokerage and investment communities. To this end, we refer to the above mentioned Agreement between you and Nikitas Brokerage Limited (NBL) and to the Joint Notice of Assignment by NBL and Troika, whereby you were informed of the full assignment by NBL of all of its rights and obligations under the Agreement to Troika. Capitalized terms, other than those defined in this letter, shall have the meanings assigned to them in the Agreement.

By this letter we propose that you execute the attached Amendment Agreement introducing, in particular, (i) a new Applicable Tax Rate to be applied for the purpose of the Agreement as of September 12, 2005; (ii) a new Fee Schedule according to which our Fees for purchase and sale transactions shall be 0.5% (zero point five per cent) of the Purchase and Sale Price respectively and any extension of Roll-Over Period shall be free of charge. In addition, the Amendment Agreement excludes the possibility to perform Transactions under the Agreement with respect to Financial Notes linked to shares of Russian banks. In case you wish to deal in such Financial Notes the new agreement should be entered into between you and Troika. The new Applicable Tax Rate as well as other changes described hereinabove shall be deemed accepted by you if you countersign and fax to us a copy of the Amendment Agreement at 7 (095) 787-23-00 to Troika Audit LLC (for Troika Dialog (Bermuda) Limited). The original copy of the countersigned Amendment Agreement shall be sent by courier or express mail to Troika Audit LLC (for Troika Dialog (Bermuda) Limited) 4, Romanov pereulok, Moscow, 103009, Russian Federation.

If you decide not to countersign the attached Amendment Agreement or if, for any other reason, we do not receive from you a countersigned copy of the Amendment Agreement by September 12, 2005, this letter shall serve as a notice of termination by Troika in respect of the Agreement.

In such a case, the Agreement shall be terminated as of September 12, 2005 (the "Termination Date") and the following provisions shall apply.

1) If, at the date of your receipt of this letter you have Financial Notes outstanding in your Investment Brokerage Account, please provide us with the relevant Instructions to conduct a FN Purchase/Redemption Transaction with respect of such Financial Notes. If we do not receive such Instructions prior to the Termination Date, Troika, acting independently and without any further prior notice to you, shall execute the relevant FN Purchase/Redemption Transaction on such terms and conditions as Troika will determine at its reasonable discretion based on the current market conditions;

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E



2) The Net Sale Amount received from such Transaction(s) less relevant Fees, taxes and expenses due to Troika under the Agreement shall be credited to your Investment Brokerage Account and, together with all other Funds, if any, (i) shall be further accounted thereon until we receive your withdrawal Instruction(s), or (ii) may be used by you in settlements under other agreements between you and us.

Yours faithfully,

____________________

Ararat Gevorgyan
Troika Dialog (Bermuda) Limited

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

# 3TDB-401/06
dated 01 September 2006

# AGENCY AND SERVICES AGREEMENT

**between**

**TROIKA DIALOG (BERMUDA) LIMITED**

and

**Ilveys Inc.**

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

## 17. GOVERNING LAW AND DISPUTE SETTLEMENT

17.1. This Agreement and the rights of the Parties shall be governed by and construed in accordance with the substantive law of England. Any dispute arising out of or in connection with this Agreement, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the Rules of the LCIA, which Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be three. The seat, or legal place, of arbitration shall be London, Great Britain. The language to be used in the arbitration shall be English.

IN WITNESS WHEREOF the Parties have caused this Agreement to be executed in English in two (2) original copies, one (1) for each of the Parties on the above mentioned date.

**Troika Dialog (Bermuda) Limited**

By: [signature]
Name: Ruzanna Ghazaryan
Title: Alternative Director

**Ilveys Inc.**
(name of the Client)

By: [signature]
Name: Vladimir Pridorogine
Title: Director

[Stamp: ILVEYS INC. BVI BC № 5...18 BRITISH VIRGIN ISLANDS]

# *Troika Dialog (Bermuda) Limited*

**APPENDIX #1**
to the Agency And Services Agreement

## TRADE CONFIRMATION NNº ADR/1611/4

| | | | |
|---|---|---|---|
| **Client:** | Ilveys Inc. | **Date:** | 16/11/2004 |
| **Attention to:** | | **Telephone:** | 304-45-41 |
| **Address:** | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | **Fax:** | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 16/11/2004 | Yukos/ADR (US98849W1080) DR US98849W1080 | 10 000 | USD 11,65 | | USD 116 500,00 | | | 16/11/2004 | 16/11/2004 |

**Instruction for Securities** (debit or credit Investment Brokerage Account): credit
**Instruction for Funds** (debit or credit Investment Brokerage Account): debit
**Any other applicable terms:**

**Comments:** Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement.
Please notify us immediately of any problems with the receipt or accuracy of this fax transmission.

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**This Trade Confirmation is governed exclusively by the terms and conditions of the Agency And Services Agreement.**

**Signature for the Agent**



**Signature for the Client**



# *Troika Dialog (Bermuda) Limited*

**APPENDIX #1**
to the Agency And Services Agreement

## TRADE CONFIRMATION NNº ADR/2511/18

| | | | |
|---|---|---|---|
| **Client:** | Ilveys Inc. | **Date:** | 25/11/2004 |
| **Attention to:** | | **Telephone:** | 304-45-41 |
| **Address:** | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | **Fax:** | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 25/11/2004 | Yukos/ADR (US98849W1080) DR US98849W1080 | 10 000 | USD 4,00 | | USD 40 000,00 | | | 25/11/2004 | 25/11/2004 |

**Instruction for Securities** (debit or credit Investment Brokerage Account): credit
**Instruction for Funds** (debit or credit Investment Brokerage Account): debit
**Any other applicable terms:**

**Comments:** Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement.
Please notify us immediately of any problems with the receipt or accuracy of this fax transmission.

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**This Trade Confirmation is governed exclusively by the terms and conditions of the Agency And Services Agreement.**

**Signature for the Agent** **Signature for the Client**

# *Troika Dialog (Bermuda) Limited*

**APPENDIX #1**
to the Agency And Services Agreement

## TRADE CONFIRMATION NNº ADR/2911/13

| | | | |
|---|---|---|---|
| **Client:** | Ilveys Inc. | **Date:** | 29/11/2004 |
| **Attention to:** | | **Telephone:** | 304-45-41 |
| **Address:** | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | **Fax:** | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 29/11/2004 | Yukos/ADR (US98849W1080) DR US98849W1080 | 5 000 | USD 4,75 | | USD 23 750,00 | | | 29/11/2004 | 29/11/2004 |

**Instruction for Securities** (debit or credit Investment Brokerage Account): credit
**Instruction for Funds** (debit or credit Investment Brokerage Account): debit

**Any other applicable terms:**

**Comments:** Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement.
Please notify us immediately of any problems with the receipt or accuracy of this fax transmission.

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**This Trade Confirmation is governed exclusively by the terms and conditions of the Agency And Services Agreement.**

**Signature for the Agent** **Signature for the Client**

# *Troika Dialog (Bermuda) Limited*

**APPENDIX #1**
to the Agency And Services Agreement

## TRADE CONFIRMATION NNº R3003/6B

| | | | |
|---|---|---|---|
| **Client:** | Ilveys Inc. | **Date:** | 31/03/2005 |
| **Attention to:** | | **Telephone:** | 304-45-41 |
| **Address:** | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | **Fax:** | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 30/03/2005 | Yukos/ADR (US98849W1080) DR US98849W1080 | 25,000 | USD 2.25 | | USD 56,250.00 | | | 31/03/2005 | 31/03/2005 |

**Instruction for Securities** (debit or credit Investment Brokerage Account): credit
**Instruction for Funds** (debit or credit Investment Brokerage Account): debit
**Any other applicable terms:**

**Comments:** Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement.
Please notify us immediately of any problems with the receipt or accuracy of this fax transmission.

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**Signature for the Agent** **Signature for the Client**

# Troika Dialog (Bermuda) Limited

**APPENDIX #1**
to the Agency And Services Agreement

## TRADE CONFIRMATION NNº R2308/18

| | | | |
|---|---|---|---|
| **Client:** | Ilveys Inc. | **Date:** | 23/08/2005 |
| **Attention to:** | | **Telephone:** | 304-45-41 |
| **Address:** | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | **Fax:** | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Sell | 23/08/2005 | Yukos/ADR (US98849W1080) DR US98849W1080 | 20,000 | USD 2.30 | | USD 46,000.00 | | | 23/08/2005 | 23/08/2005 |

**Instruction for Securities** (debit or credit Investment Brokerage Account): debit
**Instruction for Funds** (debit or credit Investment Brokerage Account): credit
**Any other applicable terms:**

**Comments:** Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement.
Please notify us immediately of any problems with the receipt or accuracy of this fax transmission.

**The Payment Amount shall be transferred to the following bank account:**

JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**Signature for the Agent** **Signature for the Client**

# Troika Dialog (Bermuda) Limited

**APPENDIX #1**
to the Agency And Services Agreement

## TRADE CONFIRMATION NNº R2308/93

| | | | |
|---|---|---|---|
| **Client:** | Ilveys Inc. | **Date:** | 23/08/2005 |
| **Attention to:** | | **Telephone:** | 304-45-41 |
| **Address:** | Akara Bldg., 24 De Castro Street, Wickhams Cay I, Road Town, Tortola, BVI | **Fax:** | |

| Buy / Sell | Trade Date | Security Description | Qty/Total Nominal Value | Price (Currency of Instrument or % of nominal value) | Accrued Interest (Currency of Instrument) | Payment Amount (Currency of Instrument) | Exchange Rate | Payment Amount (Currency, if other than Currency of Instrument) | Value Date | Delivery Date |
|---|---|---|---|---|---|---|---|---|---|---|
| Buy | 23/08/2005 | Yukos/ADR (US98849W1080) DR US98849W1080 | 20,000 | USD 2.39 | | USD 47,800.00 | | | 23/08/2005 | 23/08/2005 |

**Instruction for Securities** (debit or credit Investment Brokerage Account): credit
**Instruction for Funds** (debit or credit Investment Brokerage Account): debit
**Any other applicable terms:**

**Comments:** Please sign and fax this confirmation back to us as soon as possible with a copy to Troika Audit LLC as set forth in the Agency and Services Agreement.
Please notify us immediately of any problems with the receipt or accuracy of this fax transmission.

**The Payment Amount shall be transferred to the following bank account:**
JP MORGAN CHASE BANK NY, ABA 021000021, SWIFT: CHASUS33
FOR CREDIT TO JP MORGAN CHASE BANK LONDON, A/C# 0010962009, SWIFT: CHASGB2L
FOR CREDIT TO TROIKA DIALOG (BERMUDA) LIMITED, ACC. 25480701

**Signature for the Agent** **Signature for the Client**

# Troika Dialog (Bermuda) Limited

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

## Statement of the Investment Brokerage Account

**Period: 01/08/2005 to 31/08/2005**

**Client:** *Ilveys Inc.*
**Account Number:** *ILVEY*
**Agreement Number:** *3NBCY-44/03* **Date:** *14/05/2003*
**For the attention of:** *Vladimir Pridorogine*

### I. ACCOUNT BALANCE (FUNDS) dated 31.08.2005 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 182,353.87 | 24,175.00 | 0.00 | 0.00 | 181,233.20 | 181,233.20 | 205,408.20 |

### II. ACCOUNT BALANCE (SECURITIES) dated 31.08.2005 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance | Currency of Instrument | Market price | Accrued Coupon | Portfolio evaluation | Rate | Portfolio evaluation, USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LUKOY | 0 | 0 | 500 | 0 | 0 | -500 | -500 | USD | 48.70 | 0.00 | 0.00 | 1.00 | 0.00 |
| YUKOY | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 | USD | 2.30 | 0.00 | 115,000.00 | 1.00 | 115,000.00 |

**Please settle all outstanding obligations** **115,000.00**

### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 04/08/2005 | DIV: MTL (Dividend Payment; ) 06/06/2005 [2500] | 182,353.87 | 3,402.76 | 0.00 | 185,756.63 |
| 10/08/2005 | Agency Services, ' (from 01.07.2005 to 31.07.2005)' | 185,756.63 | 0.00 | 443.43 | 185,313.20 |
| 12/08/2005 | R1307/18 | 185,313.20 | 40,000.00 | 0.00 | 225,313.20 |
| 12/08/2005 | R1108/14 | 225,313.20 | 0.00 | 43,550.00 | 181,763.20 |
| 18/08/2005 | R1708/276 | 181,763.20 | 45,550.00 | 0.00 | 227,313.20 |
| 18/08/2005 | R1808/134 | 227,313.20 | 0.00 | 44,550.00 | 182,763.20 |
| 19/08/2005 | R1908/187 | 182,763.20 | 42,675.00 | 0.00 | 225,438.20 |
| 19/08/2005 | R1808/200 | 225,438.20 | 0.00 | 42,405.00 | 183,033.20 |
| 23/08/2005 | R2308/18 | 183,033.20 | 46,000.00 | 0.00 | 229,033.20 |
| 23/08/2005 | R2308/93 | 229,033.20 | 0.00 | 47,800.00 | 181,233.20 |
| 30/08/2005 | R2908/50 | 181,233.20 | 47,950.00 | 0.00 | 229,183.20 |
| 30/08/2005 | R3008/200 | 229,183.20 | 0.00 | 47,950.00 | 181,233.20 |
| **TOTAL:** | | | **225,577.76** | **226,698.43** | |

## IV. SECURITIES FLOW:

| Date | Security Code | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|---|
| 12/08/2005 | LUKOY | R1108/14 | 0 | 1,000 | 0 | 1,000 |
| 12/08/2005 | LUKOY | R1307/18 | 1,000 | 0 | 1,000 | 0 |
| 18/08/2005 | LUKOY | R1808/134 | 0 | 1,000 | 0 | 1,000 |
| 18/08/2005 | LUKOY | R1708/276 | 1,000 | 0 | 1,000 | 0 |
| 30/08/2005 | LUKOY | R3008/200 | 0 | 1,000 | 0 | 1,000 |
| 30/08/2005 | LUKOY | R2908/50 | 1,000 | 0 | 1,000 | 0 |
| 19/08/2005 | MTL | R1808/200 | 0 | 1,500 | 0 | 1,500 |
| 19/08/2005 | MTL | R1908/187 | 1,500 | 0 | 1,500 | 0 |
| 23/08/2005 | YUKOY | R2308/93 | 50,000 | 20,000 | 0 | 70,000 |
| 23/08/2005 | YUKOY | R2308/18 | 70,000 | 0 | 20,000 | 50,000 |

## V. ORDER SECURITIES IN PROCESS:

| Date | Security Code | Number of transaction / Comment | Credit | Debit |
|---|---|---|---|---|
| 31/08/2005 | | | 0 | 0 |

## VI. TRADES:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment (COP) | Exchange Rate | Payment Amount, COP | Cash settlement date | Securities settlement date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/08/2005 | LUKOY | R1108/14 | BUY | USD | 1,000 | 43.55 | 43,550.00 | 0.00 | 43,550.00 | USD | 1.00 | 43,550.00 | 12/08/2005 | 12/08/2005 |
| 17/08/2005 | LUKOY | R1708/276 | SELL | USD | 1,000 | 45.55 | 45,550.00 | 0.00 | 45,550.00 | USD | 1.00 | 45,550.00 | 17/08/2005 | 17/08/2005 |
| 18/08/2005 | LUKOY | R1808/134 | BUY | USD | 1,000 | 44.55 | 44,550.00 | 0.00 | 44,550.00 | USD | 1.00 | 44,550.00 | 18/08/2005 | 18/08/2005 |
| 19/08/2005 | MTL | R1808/200 | BUY | USD | 1,500 | 28.27 | 42,405.00 | 0.00 | 42,405.00 | USD | 1.00 | 42,405.00 | 19/08/2005 | 19/08/2005 |
| 19/08/2005 | MTL | R1908/187 | SELL | USD | 1,500 | 28.45 | 42,675.00 | 0.00 | 42,675.00 | USD | 1.00 | 42,675.00 | 19/08/2005 | 19/08/2005 |
| 23/08/2005 | YUKOY | R2308/18 | SELL | USD | 20,000 | 2.30 | 46,000.00 | 0.00 | 46,000.00 | USD | 1.00 | 46,000.00 | 23/08/2005 | 23/08/2005 |
| 23/08/2005 | YUKOY | R2308/93 | BUY | USD | 20,000 | 2.39 | 47,800.00 | 0.00 | 47,800.00 | USD | 1.00 | 47,800.00 | 23/08/2005 | 23/08/2005 |
| 30/08/2005 | LUKOY | R2908/50 | SELL | USD | 1,000 | 47.95 | 47,950.00 | 0.00 | 47,950.00 | USD | 1.00 | 47,950.00 | 30/08/2005 | 30/08/2005 |
| 30/08/2005 | LUKOY | R3008/200 | BUY | USD | 1,000 | 47.95 | 47,950.00 | 0.00 | 47,950.00 | USD | 1.00 | 47,950.00 | 30/08/2005 | 30/08/2005 |
| 31/08/2005 | LUKOY | R3108/124 | SELL | USD | 500 | 48.35 | 24,175.00 | 0.00 | 24,175.00 | USD | 1.00 | 24,175.00 | 31/08/2005 | 31/08/2005 |

## VIa. TRADES IN PROCESS:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment, (COP) | Exchange Rate | Payment Amount, COP | Planned Cash settlement date | Planned Securities settlement date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 31/08/2005 | LUKOY | R3108/124 | SELL | USD | 500 | 48.35 | 24,175.00 | 0.00 | 24,175.00 | USD | 1.00 | 24,175.00 | 31/08/2005 | 31/08/2005 |

## VII. CURRENCY EXCHANGE TRANSACTIONS:

| Date | Trade # | Initial Amount | Initial Currency | Exchange Rate | Payment Amount | Payment Currency | Value Date |
|---|---|---|---|---|---|---|---|
| 31/08/2005 | | 0.00 | | 0.00 | 0.00 | | 31/08/2005 |

***Appendix. Security Codes:***

| Security Code | Security | Type |
|---|---|---|
| LUKOY | LUKOIL/ADR (US6778621044) | DR |
| YUKOY | Yukos/ADR (US98849W1080) | DR |

# Troika Dialog (Bermuda) Limited

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

## Statement of the Investment Brokerage Account

**Period: 01/08/2006 to 31/08/2006**

**Client:** *Ilveys Inc.*
**Account Number:** *ILVEY*
**Agreement Number:** *3NBCY-44/03* **Date:** *14/05/2003*
**For the attention of:** *Vladimir Pridorogine*

### I. ACCOUNT BALANCE (FUNDS) dated 31.08.2006 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 182,238.37 | 0.00 | 0.00 | 10,000.00 | 137,251.53 | 127,251.53 | 127,251.53 |

### II. ACCOUNT BALANCE (SECURITIES) dated 31.08.2006 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance | Currency of Instrument | Market price | Accrued Coupon | Portfolio evaluation | Rate | Portfolio evaluation, USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MTL | 0 | 0 | 0 | 0 | 2,000 | 2,000 | 2,000 | USD | 21.10 | 0.00 | 42,200.00 | 1.00 | 42,200.00 |
| YUKOY | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 | USD | 2.94 | 0.00 | 147,000.00 | 1.00 | 147,000.00 |
| | | | | | | | | | | | | | **189,200.00** |

### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 09/08/2006 | R0908/383 | 182,238.37 | 22,730.00 | 0.00 | 204,968.37 |
| 09/08/2006 | R0808/247 | 204,968.37 | 0.00 | 22,250.00 | 182,718.37 |
| 10/08/2006 | Agency Services, ' (from 01.07.2006 to 31.07.2006)' | 182,718.37 | 0.00 | 475.30 | 182,243.07 |
| 11/08/2006 | DIV: MBT (Dividend payment; including tax 15%) 05/05/2006 [2000] | 182,243.07 | 608.46 | 0.00 | 182,851.53 |
| 22/08/2006 | R2208/155 | 182,851.53 | 0.00 | 45,760.00 | 137,091.53 |
| 23/08/2006 | R2308/170 | 137,091.53 | 45,460.00 | 0.00 | 182,551.53 |
| 29/08/2006 | R2908/286 | 182,551.53 | 0.00 | 45,300.00 | 137,251.53 |
| **TOTAL:** | | | **68,798.46** | **113,785.30** | |

### IV. SECURITIES FLOW:

| Date | Security Code | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|---|
| 09/08/2006 | MTL | R0808/247 | 0 | 1,000 | 0 | 1,000 |
| 09/08/2006 | MTL | R0908/383 | 1,000 | 0 | 1,000 | 0 |

# Troika Dialog (Bermuda) Limited

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

## Statement of the Investment Brokerage Account

**Period: 01/09/2006 to 29/09/2006**

| | | | |
|---|---|---|---|
| **Client:** | **Ilveys Inc.** | | |
| **Account Number:** | **ILVEY** | | |
| **Agreement Number:** | **3TDB-401/06** | **Date:** | **01/09/2006** |
| **For the attention of:** | **Vladimir Pridorogine** | | |

### I. ACCOUNT BALANCE (FUNDS) dated 29.09.2006 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 137,251.53 | 0.00 | 0.00 | 0.00 | 80,801.53 | 80,801.53 | 80,801.53 |

### II. ACCOUNT BALANCE (SECURITIES) dated 29.09.2006 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance | Currency of Instrument | Market price | Accrued Coupon | Portfolio evaluation | Rate | Portfolio evaluation, USD |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| MTL | 2,000 | 0 | 0 | 0 | 4,000 | 4,000 | 4,000 | USD | 20.19 | 0.00 | 80,760.00 | 1.00 | 80,760.00 |
| YUKOY | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 | USD | 2.85 | 0.00 | 142,500.00 | 1.00 | 142,500.00 |
| | | | | | | | | | | | | | 223,260.00 |

### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 01/09/2006 | Outgoing transfer | 137,251.53 | 0.00 | 10,000.00 | 127,251.53 |
| 21/09/2006 | Outgoing transfer | 127,251.53 | 0.00 | 5,000.00 | 122,251.53 |
| 21/09/2006 | R2109/66 | 122,251.53 | 0.00 | 43,000.00 | 79,251.53 |
| 22/09/2006 | R2209/125 | 79,251.53 | 38,100.00 | 0.00 | 117,351.53 |
| 22/09/2006 | R2209/176 | 117,351.53 | 0.00 | 37,650.00 | 79,701.53 |
| 22/09/2006 | R2209/30 | 79,701.53 | 0.00 | 38,075.00 | 41,626.53 |
| 25/09/2006 | R2509/413 | 41,626.53 | 0.00 | 35,525.00 | 6,101.53 |
| 27/09/2006 | R2609/304 | 6,101.53 | 36,575.00 | 0.00 | 42,676.53 |
| 28/09/2006 | R2809/144 | 42,676.53 | 38,225.00 | 0.00 | 80,901.53 |
| 29/09/2006 | R2809/373 | 80,901.53 | 38,500.00 | 0.00 | 119,401.53 |
| 29/09/2006 | R2809/374 | 119,401.53 | 0.00 | 38,600.00 | 80,801.53 |
| TOTAL: | | | 151,400.00 | 207,850.00 | |

# Troika Dialog (Bermuda) Limited

*Chancery Hall 52 Reid Street*
*Hamilton HM 12 Bermuda*

## Statement of the Investment Brokerage Account

**Date: 22/01/2008**

| | | | |
|---|---|---|---|
| *Client:* | *Ilveys Inc.* | | |
| *Account Number:* | *ILVEY* | | |
| *Agreement Number:* | *3TDB-401/06* | *Date:* | *01/09/2006* |
| *For the attention of:* | *Vladimir Pridorogine* | | |

### I. ACCOUNT BALANCE (FUNDS) dated 22.01.2008 :

| Fund | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| USD | 29,923.13 | 28,700.00 | 0.00 | 0.00 | 6,123.13 | 6,123.13 | 34,823.13 |

### II. ACCOUNT BALANCE (SECURITIES) dated 22.01.2008 :

| Security Code | Opening balance | Trade orders to credit in process | Trade orders to debit in process | Blocked to be withdrawn | Closing balance | Available balance (closing) | Planned balance |
|---|---|---|---|---|---|---|---|
| ALCOIN | 1,000 | 0 | 0 | 0 | 1,000 | 1,000 | 1,000 |
| SGTZY | 0 | 0 | 0 | 0 | 500 | 500 | 500 |
| SNGSP | 50,000 | 0 | 0 | 0 | 50,000 | 50,000 | 50,000 |
| YUKOY | 50,000 | 0 | 0 | 0 | 0 | 0 | 0 |

Please settle all outstanding obligations

### III. CASH FLOW (USD):

| Date | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|
| 22/01/2008 | R2201/1047 | 29,923.13 | 23,750.00 | 0.00 | 53,673.13 |
| 22/01/2008 | R2201/1048 | 53,673.13 | 0.00 | 23,800.00 | 29,873.13 |
| 22/01/2008 | R2201/4 | 29,873.13 | 0.00 | 23,750.00 | 6,123.13 |
| TOTAL: | | | 23,750.00 | 47,550.00 | |

### IV. SECURITIES FLOW:

| Date | Security Code | Number of transaction / Comment | Opening balance | Credit | Debit | Closing balance |
|---|---|---|---|---|---|---|
| 22/01/2008 | SGTZY | R2201/1048 | 0 | 500 | 0 | 500 |
| 22/01/2008 | SGTZY | R2201/4 | 500 | 500 | 0 | 1,000 |
| 22/01/2008 | SGTZY | R2201/1047 | 1,000 | 0 | 500 | 500 |
| 22/01/2008 | YUKOY | Liquidation of the Issuer | 50,000 | 0 | 50,000 | 0 |

### V. ORDER SECURITIES IN PROCESS:

| Date | Security Code | Number of transaction / Comment | Credit | Debit |
|---|---|---|---|---|
| 22/01/2008 | | | 0 | 0 |

### VI. TRADES:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment (COP) | Exchange Rate | Payment Amount, COP | Cash settlement date | Securities settlement date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 22/01/2008 | SGTZY | R2201/1047 | SELL | USD | 500 | 47.50 | 23,750.00 | 0.00 | 23,750.00 | USD | 1.00 | 23,750.00 | 22/01/2008 | 22/01/2008 |
| 22/01/2008 | SGTZY | R2201/1048 | BUY | USD | 500 | 47.60 | 23,800.00 | 0.00 | 23,800.00 | USD | 1.00 | 23,800.00 | 22/01/2008 | 22/01/2008 |
| 22/01/2008 | SGTZY | R2201/4 | BUY | USD | 500 | 47.50 | 23,750.00 | 0.00 | 23,750.00 | USD | 1.00 | 23,750.00 | 22/01/2008 | 22/01/2008 |

### VIa. TRADES IN PROCESS:

| Date | Security Code | Trade # | Buy / Sell | Currency of Instrument (COI) | Quantity | Price, COI | Amount, COI | Coupon / Accrued Income, COI | Amount (Incl. coupon), COI | Currency of Payment, (COP) | Exchange Rate | Payment Amount, COP | Planned Cash settlement date | Planned Securities settlement date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 21/01/2008 | ALCOIN | F1801/160 | SELL | USD | 1,000 | 28.70 | 28,700.00 | 0.00 | 28,700.00 | USD | 1.00 | 28,700.00 | 25/01/2008 | 21/01/2008 |

### VII. CURRENCY EXCHANGE TRANSACTIONS:

| Date | Trade # | Initial Amount | Initial Currency | Exchange Rate | Payment Amount | Payment Currency | Value Date |
|---|---|---|---|---|---|---|---|
| 22/01/2008 | | 0.00 | | 0.00 | 0.00 | | 22/01/2008 |

### VIII. ASSETS IN OPTIONS COLLATERAL:

| Asset Description | Opening Balance (in Units) | Closing Balance (in Units) |
|---|---|---|
| | 0.00 | 0.00 |

### Appendix. Security Codes:

| Security Code | Security | Type | ISIN |
|---|---|---|---|
| ALCOIN | Alcoa Inc. | Ordinary shares | US0138171014 |
| SGTZY | Surgutneftegas ord/ADR (US8688612048) | DR | US8688612048 |
| SNGSP | Surgutneftegaz | Preferred shares | RU0009029524 |
| YUKOY | Yukos/ADR (US98849W1080) | DR | US98849W1080 |

**TROIKA DIALOG (BERMUDA)** TROIKA DIALOG

January 28, 2008

**To: ILVEYS INC.**

Dear Sirs,

according to our records the following securities were accounted on your Investment Brokerage Account with us:

securities: 50,000 (Fifty thousand) of Yukos ADR (US98849W1080)
accounting period: August 23, 2005 - January 22, 2008.

Yours sincerely,
TROIKA DIALOG (BERMUDA) LIMITED

By: ____________________

Name: Gevorg Khachatryan
Title: Alternate Director

**Yukos Claims Administration**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901**
**Info@YukosClaims.com**

YKO

| Claim number: | 92B37B5C27 |
|---|---|

| Control number: | 7A9EF6FBD5 |
|---|---|

ILVEYS INC.
AKARA BLDG., 24 DE CASTRO
STREET, WICKHAMS CAY 1
ROAD TOWN
TORTOLA
VIRGIN ISLANDS, BRITISH

## CONFIRMATION OF FILING OF A CLAIM ONLINE

THIS IS CONFIRMATION OF YOUR APPLICATION SUBMITTED. PRINT THIS PAGE AND KEEP IT FOR FUTURE REFERENCE. IF YOU HAVE NOT UPLOAD THE ACCOMPANYING DOCUMENTATION TO THE WEBSITE, PLEASE SEND A COPY OF THIS PAGE WITH ALL ACCOMPANYING DOCUMENTATION TO THE ADDRESS INSERT ABOVE.

| | | |
|---|---|---|
| SHARES OWNED (BEGINNING OF COMPENSATION PERIOD): The number of common shares and ADRs of Yukos that you owned as of the close of trading on July 1, 2003. If absent, enter "0". (If necessary, enter<br>(Please attach accompanying documentation.) | 0<br>Common Shares | 0<br>ADR |

ACQUISITION or RECEIPT: Acquisition or receipt of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of purchase or receipt (NUM/MON/YEAR) | Number of common shares or ADRs purchased or received |
|---|---|---|---|
| | Y | November 16, 2004 | 10000 |
| | Y | November 25, 2004 | 10000 |
| | Y | November 29, 2004 | 5000 |
| | Y | March 30, 2005 | 25000 |
| | Y | August 23, 2005 | 20000 |

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.

| Claim number statements: | 92B37B5C27 |
|---|---|

| Control number: | 7A9EF6FBD5 |
|---|---|

SALES: Sales of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of sale (DATE/MONTH/YEAR) | Number of common shares or ADRs sold |
|---|---|---|---|
| | Y | August 23, 2005 | 20000 |

| SHARES HOLDING (END OF COMPENSATION PERIOD): The number of shares of Yukos common stock and ADRs you owned as of the close of trading on November 28, 2007. If not indicated, enter 0 (Required). (Please attach accompanying documentation.) | 0 Ordinary shares | 50,000 ADRs |
|---|---|---|

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E



Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901

| | |
|---|---|
| Claim Number: | 92B37B5C27 |
| Check Number: | 00002756 |
| Check Date: | 01/09/18 |
| Check Amount: | $2,499.16 |

ILVEYS INC.
7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

Ref No.: 7A9EF6FBD5

**YUKOS OIL CLAIMS ADMINISTRATION**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901 USA**
**Distribution Agent**

Dear Claimant:

The attached check represents your pro rata share of the Distribution Fund in the ***Yukos Oil Claims Administration***. You are receiving this payment because you submitted an eligible claim for the purchase, acquisition or holding of Yukos Ordinary Shares or Yukos American Depositary Receipts during the Recovery Period, July 2, 2003 through and including November 28, 2007.

The funds available for distribution consist of a portion of the cash assets of certain former foreign subsidiaries of Yukos Oil Company (the "Yukos Group"), that have been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company. The total amount of the Distribution Fund available for this distribution is approximately $337 million and your payment was calculated in accordance with the Plan of Allocation set forth in the Notice of Distribution ("Notice"), which was previously sent to you and which is posted on the administration website at http://www.yukosclaims.com.

The tax treatment of this distribution varies based upon the recipient's tax status and treatment of his, her or its investments. Therefore, we cannot determine the appropriate tax reporting for all recipients and we cannot provide individual tax advice. The tax treatment of payments from the Yukos Distribution Fund is the responsibility of each recipient. **You should consult your tax advisor to determine the tax consequences, if any, of this payment to you.**

**Please cash this check promptly, as it becomes void and subject to re-distribution if not cashed by January 31, 2018.** If you have changed your address from the address on the accompanying check or if you have any questions, you may contact the Distribution Agent through email, at info@yukosclaims.com, by mail at the above mailing address or by calling one of the multi-national telephone numbers listed at the administration website and in the Notice.

Thank you.

Yukos Distribution Agent

Docusign Envelope ID: 8A370920-639D-8A80-8246-3BE87D4AD35E

Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901
USA

**Bank of America**

64-5/610 GA

**01/09/18** **00002756**

Pay *Two thousand four hundred ninety nine and 16/100 Dollars*

******$2,499.16

Pay to the order of
ILVEYS INC.
7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTIO
IF NOT CASHED BY 01/31/2018.

BY ______________________
AUTHORIZED SIGNATURE

⑈002756⑈ ⑆061000052⑆ 3340371244 76⑈

docusign

## Certificate Of Completion

Envelope Id: 8A370920-639D-8A80-8246-3BE87D4AD35E
Status: Completed
Subject: Complete with Docusign: DEED OF ASSIGNMENT OF CLAIMS AND CAUSES OF ACTION 260423.pdf
Source Envelope:

| | | |
|---|---|---|
| Document Pages: 36 | Signatures: 1 | Envelope Originator: |
| Certificate Pages: 3 | Initials: 0 | Vladimir Pridorogin |
| AutoNav: Enabled | | ilveysinc@gmail.com |
| EnvelopeId Stamping: Enabled | | IP Address: 192.142.48.21 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>4/23/2026 5:24:02 AM | Holder: Vladimir Pridorogin<br>ilveysinc@gmail.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Deniel Shumeiko<br>deniel24@sas.upenn.edu<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Drawn on Device<br>Using IP Address: 2600:387:15:2911::2<br>Signed using mobile | Sent: 4/23/2026 5:37:48 AM<br>Viewed: 4/23/2026 12:10:17 PM<br>Signed: 4/23/2026 12:10:40 PM |



**Electronic Record and Signature Disclosure:**
Accepted: 4/16/2026 12:36:11 PM
ID: 385f6259-be42-4e5f-a29d-346bfe373363

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | 4/23/2026 5:37:48 AM |
| Certified Delivered | Security Checked | 4/23/2026 12:10:17 PM |
| Signing Complete | Security Checked | 4/23/2026 12:10:40 PM |
| Completed | Security Checked | 4/23/2026 12:10:40 PM |

| Payment Events | Status | Timestamps |
|---|---|---|

## Electronic Record and Signature Disclosure

Electronic Record and Signature Disclosure created on: 4/12/2026 10:00:26 AM
Parties agreed to: Deniel Shumeiko

**ELECTRONIC RECORD AND SIGNATURE DISCLOSURE**

From time to time, Vladimir Pridorogin (we, us or Company) may be required by law to provide to you certain written notices or disclosures. Described below are the terms and conditions for providing to you such notices and disclosures electronically through the DocuSign system. Please read the information below carefully and thoroughly, and if you can access this information electronically to your satisfaction and agree to this Electronic Record and Signature Disclosure (ERSD), please confirm your agreement by selecting the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

**Getting paper copies**

At any time, you may request from us a paper copy of any record provided or made available electronically to you by us. You will have the ability to download and print documents we send to you through the DocuSign system during and immediately after the signing session and, if you elect to create a DocuSign account, you may access the documents for a limited period of time (usually 30 days) after such documents are first sent to you. After such time, if you wish for us to send you paper copies of any such documents from our office to you, you will be charged a $0.00 per-page fee. You may request delivery of such paper copies from us by following the procedure described below.

**Withdrawing your consent**

If you decide to receive notices and disclosures from us electronically, you may at any time change your mind and tell us that thereafter you want to receive required notices and disclosures only in paper format. How you must inform us of your decision to receive future notices and disclosure in paper format and withdraw your consent to receive notices and disclosures electronically is described below.

**Consequences of changing your mind**

If you elect to receive required notices and disclosures only in paper format, it will slow the speed at which we can complete certain steps in transactions with you and delivering services to you because we will need first to send the required notices or disclosures to you in paper format, and then wait until we receive back from you your acknowledgment of your receipt of such paper notices or disclosures. Further, you will no longer be able to use the DocuSign system to receive required notices and consents electronically from us or to sign electronically documents from us.

**All notices and disclosures will be sent to you electronically**

Unless you tell us otherwise in accordance with the procedures described herein, we will provide electronically to you through the DocuSign system all required notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you during the course of our relationship with you. To reduce the chance of you inadvertently not receiving any notice or disclosure, we prefer to provide all of the required notices and disclosures to you by the same method and to the same address that you have given us. Thus, you can receive all the disclosures and notices electronically or in paper format through the paper mail delivery system. If you do not agree with this process, please let us know as described below. Please also see the paragraph immediately above that describes the consequences of your electing not to receive delivery of the notices and disclosures electronically from us.

**How to contact Vladimir Pridorogin:**

You may contact us to let us know of your changes as to how we may contact you electronically, to request paper copies of certain information from us, and to withdraw your prior consent to receive notices and disclosures electronically as follows:
To contact us by email send messages to: ilveysinc@gmail.com

**To advise Vladimir Pridorogin of your new email address**

To let us know of a change in your email address where we should send notices and disclosures electronically to you, you must send an email message to us at ilveysinc@gmail.com and in the body of such request you must state: your previous

email address, your new email address. We do not require any other information from you to change your email address

If you created a DocuSign account, you may update it with your new email address through your account preferences.

**To request paper copies from Vladimir Pridorogin**

To request delivery from us of paper copies of the notices and disclosures previously provided by us to you electronically, you must send us an email to ilveysinc@gmail.com and in the body of such request you must state your email address, full name, mailing address, and telephone number. We will bill you for any fees at that time, if any.

**To withdraw your consent with Vladimir Pridorogin**

To inform us that you no longer wish to receive future notices and disclosures in electronic format you may:

i. decline to sign a document from within your signing session, and on the subsequent page, select the check-box indicating you wish to withdraw your consent, or you may;

ii. send us an email to ilveysinc@gmail.com and in the body of such request you must state your email, full name, mailing address, and telephone number. We do not need any other information from you to withdraw consent. The consequences of your withdrawing consent for online documents will be that transactions may take a longer time to process.

**Required hardware and software**

The minimum system requirements for using the DocuSign system may change over time. The current system requirements are found here: https://support.docusign.com/guides/signer-guide-signing-system-requirements.

**Acknowledging your access and consent to receive and sign documents electronically**

To confirm to us that you can access this information electronically, which will be similar to other electronic notices and disclosures that we will provide to you, please confirm that you have read this ERSD, and (i) that you are able to print on paper or electronically save this ERSD for your future reference and access; or (ii) that you are able to email this ERSD to an email address where you will be able to print on paper or save it for your future reference and access. Further, if you consent to receiving notices and disclosures exclusively in electronic format as described herein, then select the check-box next to 'I agree to use electronic records and signatures' before clicking 'CONTINUE' within the DocuSign system.

By selecting the check-box next to 'I agree to use electronic records and signatures', you confirm that:

- You can access and read this Electronic Record and Signature Disclosure; and
- You can print on paper this Electronic Record and Signature Disclosure, or save or send this Electronic Record and Disclosure to a location where you can print it, for future reference and access; and
- Until or unless you notify Vladimir Pridorogin as described above, you consent to receive exclusively through electronic means all notices, disclosures, authorizations, acknowledgements, and other documents that are required to be provided or made available to you by Vladimir Pridorogin during the course of your relationship with Vladimir Pridorogin.

# EXHIBIT B: UNANIMOUS SHAREHOLDERS' RESOLUTION OF ILVEYS INC.

**EXHIBIT B: UNANIMOUS SHAREHOLDERS' RESOLUTION OF ILVEYS INC.**

**SUBJECT:** Corporate authorization for the transfer of Yukos ADR-related claims to Plaintiff.

This Exhibit contains the April 14, 2026 unanimous written consent of all shareholders of ILVEYS INC.

The Resolution documents the shareholders' approval of the transfer to Deniel Shumeiko of the claims, rights, and interests associated with ILVEYS INC.'s 50,000 Yukos ADR position; authorizes the Company's Director to execute the necessary assignment documents; and identifies the transfer as a Distribution in Kind undertaken in the ordinary course of managing the family investment vehicle.

The Exhibit supports Plaintiff's allegations concerning corporate authorization, shareholder consent, and the non-arm's-length family-investment context of the assignment.

Docusign Envelope ID: 46F8272E-B7AF-851D-8240-D2611FEA298C

**ACTION BY UNANIMOUS WRITTEN CONSENT OF THE SHAREHOLDERS OF ILVEYS INC.**

**DATED:** April 14, 2026

The undersigned, being all of the Shareholders of **ILVEYS INC.**, a company organized and existing under the laws of the British Virgin Islands (the "Company"), hereby waive any notice of a meeting and adopt the following resolutions by unanimous written consent:

**WHEREAS**, the Company was established and is operated exclusively as a **Family Investment Vehicle** for the purpose of managing, preserving, and protecting the financial assets and long-term investments of the Shareholders and their family members;

**WHEREAS**, in its capacity as a Family Investment Vehicle, the Company is the beneficial owner of **50,000 American Depositary Receipts (ADRs) of Yukos Oil Company (CUSIP 98849W108)** and possesses all legal claims and causes of action arising from the breach of fiduciary duties and gross negligence of the depositary bank, Deutsche Bank Trust Company Americas ("DBTCA");

**WHEREAS**, following the 2025 final rulings of the Dutch Supreme Court and the judicially recognized valuation of Yukos assets, the Company's claims are valued at approximately **USD 12,950,000.00** (the "Claims");

**WHEREAS**, the Shareholders have determined that it is in the best interests of the Company and the family interest it represents to transfer and assign all rights, titles, and interests in these Claims to **DENIEL SHUMEIKO**, a Shareholder of the Company and a resident of the United States, to ensure the effective legal enforcement and continued protection of these family assets;

**NOW, THEREFORE, BE IT RESOLVED THAT:**

**1. ASSIGNMENT OF CLAIMS:** The Company shall irrevocably assign and transfer 100% of its rights, titles, and interests in the Claims against DBTCA to **DENIEL SHUMEIKO**. This transfer is made as a **Distribution in Kind** in the ordinary course of managing the Family Investment Vehicle.

**2. REVERSIONARY INTEREST:** The assignment is subject to a condition subsequent. In the event of the Assignee's death or permanent legal incapacity, the assigned Claims shall automatically and immediately revert to the Company (ILVEYS INC.) to ensure the continued protection of the family's investment.

**3. REPRESENTATIONS ON COMPLIANCE:** Each Shareholder represents and warrants that they are private individuals, are not "Politically Exposed Persons" (PEPs), and are not subject to any sanctions administered by the U.S. OFAC, the European Union, or the United Kingdom.

**4. AUTHORIZATION:** Vladimir Pridorogin, in his capacity as Director of the Company, is hereby authorized and directed to execute a Deed of Assignment and any other documents necessary to give effect to this transfer.

**IN WITNESS WHEREOF**, the undersigned Shareholders have executed this Consent as of the date first written above.

**SIGNATURES OF SHAREHOLDERS:**

| | | |
|---|---|---|
| | | Signed by: A5A1C7EE8232469... |
| **Vladimir Pridorogin** | **Sergey Pridorogin** | **Deniel Shumeiko** |
| (49.0%) | (50.0%) | (1.0%) |

**PCA Case No. AA 227**

**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED IN ACCORDANCE WITH ARTICLE 26 OF THE ENERGY CHARTER TREATY AND THE 1976 UNCITRAL ARBITRATION RULES**

**- between -**

**YUKOS UNIVERSAL LIMITED (ISLE OF MAN)**

**- and -**

**THE RUSSIAN FEDERATION**

---

# FINAL AWARD

---

**18 July 2014**

*Tribunal*
The Hon. L. Yves Fortier PC CC OQ QC, Chairman
Dr. Charles Poncet
Judge Stephen M. Schwebel

Mr. Martin J. Valasek, Assistant to the Tribunal
Mr. Brooks W. Daly, Secretary to the Tribunal
Ms. Judith Levine, Assistant Secretary to the Tribunal

*Registry*
Permanent Court of Arbitration

*Representing Claimant*:

Professor Emmanuel Gaillard
Dr. Yas Banifatemi
Ms. Jennifer Younan
SHEARMAN & STERLING LLP

*Representing Respondent*:

Dr. Claudia Annacker
Mr. Lawrence B. Friedman
Mr. David G. Sabel
Mr. Matthew D. Slater
Mr. William B. McGurn
Mr. J. Cameron Murphy
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Mr. Michael S. Goldberg
Mr. Jay L. Alexander
Dr. Johannes Koepp
Mr. Alejandro A. Escobar
BAKER BOTTS LLP

and the Tribunal [has] a corresponding margin of estimation."[2132] However, the Tribunal, as other tribunals have done, must reach a decision and it has done so on the basis of all the evidence which it has reviewed.

1637. Having considered and weighed all the arguments which the Parties have presented to it in respect of this issue the Tribunal, in the exercise of its wide discretion, finds that, as a result of the material and significant mis-conduct by Claimants and by Yukos (which they controlled), Claimants have contributed to the extent of 25 percent to the prejudice which they suffered as a result of Respondent's destruction of Yukos. The resulting apportionment of responsibility as between Claimants and Respondent, namely 25 percent and 75 percent, is fair and reasonable in the circumstances of the present case.

## XI. INTEREST

1638. As will be seen in Part XII of the Award dealing with quantification of Claimants' damages for Respondent's breach of the ECT, one of the elements factored into the Tribunal's calculation of damages will be interest.[2133] Accordingly, the Tribunal, in the present Part XI will determine the applicable rate of such interest, whether it should be simple or compound and, if compound, the period of compounding.

### A. Claimants' Position

1639. Claimants request the Tribunal to award them pre- and post-award interest.[2134] In their Submission on Costs, Claimants also request interest on any costs awarded to them.[2135]

1640. According to Claimants, "payment of interest can be required to ensure full reparation."[2136] Claimants quote the tribunal in *Vivendi v. Argentina*, which stated that the purpose of the payment of interest is "to compensate the damage resulting from the fact that, during the period of non-payment by the debtor, the creditor is deprived of the use and disposition of that sum he

---

2132 *MTD Equity Sdn Bhd. v. The Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Annulment, 21 March 2007 ¶ 101. *See also Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID, ARB/06/111, Award, 5 October 2012 ¶¶ 659–87.

2133 In particular see paragraphs 1822–23 below on pre-award interest on the dividend streams that Claimants would have obtained in the absence of Respondent's breach.

2134 Memorial ¶¶ 969–70; Reply ¶¶ 859, 1199; Claimants' Post-Hearing Brief ¶ 302.

2135 Claimants' Submission on Costs ¶ 64.

2136 Memorial ¶ 959, citing to ILC Articles on State Responsibility, Art. 38, Exh. C-1042.

## C. TABLES T1–T9 SHOWING THE TRIBUNAL'S DAMAGES CALCULATIONS

### 1. Table T1: Calculation of Total Damages of Claimants as of 19 December 2004 (Date of Expropriation) vs. 30 June 2014 (Date of Award for Valuation Purposes)

**19 December 2004**

| Damages component | Amount *(in USD)* |
|---|---|
| Yukos Equity Value | 21,175,832,823 |
| Dividends to end of 2004 | 2,417,808,219 |
| *Sum of Equity Value and Dividends* | *23,593,641,042* |
| Interest through 30 June 2014 | 7,596,090,702 |
| **Total** | **31,189,731,744** |

| | Outstanding Shares | % of Outstanding Shares | Damages *(in USD)* |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **31,189,731,744** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 17,570,439,964 |
| Claimant YUL | 50,340,995 | 2.60165 | 811,447,480 |
| Claimant VPL | 223,699,175 | 11.56089 | 3,605,811,362 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **21,987,698,805** |

**30 June 2014**

| Damages component | Amount *(in USD)* |
|---|---|
| Yukos Equity Value | 42,625,343,615 |
| Dividends and interest (through 30 June 2014) | 51,981,340,000 |
| **Total** | **94,606,683,615** |

| | Outstanding Shares | % of Outstanding Shares | Damages *(in USD)* |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **94,606,683,615** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 53,295,779,147 |
| Claimant YUL | 50,340,995 | 2.60165 | 2,461,334,249 |
| Claimant VPL | 223,699,175 | 11.56089 | 10,937,377,001 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **66,694,490,398** |

| **Damages After 25% Reduction** | |
|---|---|
| Claimant Hulley | 39,971,834,360 |
| Claimant YUL | 1,846,000,687 |
| Claimant VPL | 8,203,032,751 |
| **Claimants Total** | **50,020,867,798** |

Note: Claimants' shareholdings and total number of Outstanding Shares taken from Appendix C.5.b to First Kaczmarek Report

**TERRITORY OF THE BRITISH VIRGIN ISLANDS**

**THE INTERNATIONAL BUSINESS COMPANIES ACT**
**(CAP. 291)**

**CERTIFICATE OF INCORPORATION** **(SECTIONS 14 AND 15)**

**No. 539118**

*The Registrar of Companies of the British Virgin Islands* **HEREBY CERTIFIES** *pursuant to the International Business Companies Act, Cap. 291 that all the requirements of the Act in respect of incorporation having been satisfied,*

**ILVEYS INC.**

is incorporated in the British Virgin Islands as an International Business Company this 26th day of March, 2003.

Given under my hand and seal at
Road Town, in the Territory of the
British Virgin Islands

**REGISTRAR OF COMPANIES**

CRTI001K

## BVI FINANCIAL SERVICES COMMISSION

Company No. : 539118

Company Name : ILVEYS INC.

Date : 29/11/2016

Register Type : Public

INDIVIDUAL DIRECTORS

| S/No. | Director No. | Director Type | Name | Personal Details | Service Address | Residential Address | Appointed Date | Cease Date |
|---|---|---|---|---|---|---|---|---|
| 1 | D4F04CE6 | Director | VLADIMIR VICTOROVICH PRIDOROGUINE | **Date of Birth:** 27/02/1971<br>**Place of Birth:** RUSSIAN FEDERATION<br>**Nationality:** Russian | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY<br><br>RUSSIAN FEDERATION | BLDG.2, 14 NOVOGIREEVSKAYA STREET, APT. 60, MOSCOW CITY<br><br>RUSSIAN FEDERATION | 26/03/2003 | |

REGISTRAR OF CORPORATE AFFAIRS REGISTERED FSC BVI FINANCIAL SERVICES COMMISSION

**BVI FINANCIAL SERVICES COMMISSION**

**REGISTER OF MEMBERS**

Entity No. : 539118

Date : 22/04/2025

Entity Name : ILVEYS INC.

INDIVIDUAL MEMBERS

| S/No. | Member No. | Name | Address | Share Classification | No. of Shares | Date Entered | Date Ceased |
|---|---|---|---|---|---|---|---|
| 1 | 8DCC1344 | Deniel Shumeiko | Bld. 4 Snaiperskaya Str., apt. 267, Moscow, RUSSIAN FEDERATION | Ordinary | 250 | 28/08/2024 | |
| 2 | B5037C2C | Vladimir Pridorogin | Bld. 2, 14 Novogireevskaya Str., apt. 60, Moscow, RUSSIAN FEDERATION | Ordinary | 24750 | 28/08/2024 | |
| 3 | FFA635BE | Sergei Pridorogin | Bld. 2, 14 Novogireevskaya Str., apt. 60, Moscow, RUSSIAN FEDERATION | Ordinary | 25000 | 14/04/2014 | |

REGISTRAR OF CORPORATE AFFAIRS REGISTERED BVI FINANCIAL SERVICES COMMISSION FSC

# EXHIBIT C: TIMELINE OF INSTITUTIONAL CONFLICT AND CONTINUING CONDUCT (2004–2026)

## EXHIBIT C: TIMELINE OF INSTITUTIONAL CONFLICT AND CONTINUING CONDUCT (2004–2007)

**SUBJECT:** Chronology of publicly documented events relevant to Plaintiff's allegations that DBTCA's role as U.S. Depositary for Yukos ADR holders existed alongside broader Deutsche Bank commercial activity materially adverse to the preservation of Yukos and its assets.

| DATE | DOCUMENTED EVENT | RELEVANCE TO PLAINTIFF'S ALLEGATIONS |
|---|---|---|
| **Dec. 2004** | **Proposed Gazprom Financing.** Deutsche Bank was among the international banks intending to finance Gazprom's approximately $10–13 billion bid for Yuganskneftegaz, Yukos's principal production asset. The financing was suspended following the Houston bankruptcy court's emergency injunction. | Supports Plaintiff's allegation of a contemporaneous institutional conflict between Deutsche Bank's Russian commercial activities and DBTCA's position administering the Yukos ADR interests. **(See pp. 56–57.)** |
| **Dec. 28, 2004** | **Motion to Dismiss Yukos Chapter 11.** Deutsche Bank asked the U.S. Bankruptcy Court in Houston to dismiss Yukos's Chapter 11 proceeding, challenging Yukos's asserted Texas jurisdictional basis. | Documents Deutsche Bank taking an affirmative position in U.S. proceedings affecting Yukos while DBTCA remained the U.S. Depositary for the Yukos ADR program. **(See p. 58.)** |
| **Mar. 2006** | **Yukos Bankruptcy Petition.** A consortium of Western Banks, including Deutsche Bank, filed a petition in the Moscow Arbitrazh Court seeking Yukos's bankruptcy over outstanding bank debt. | Supports Plaintiff's allegation that the broader Deutsche Bank network participated directly in proceedings leading to Yukos's liquidation while ADR interests continued to be administered through the Deutsche Bank depositary structure. **(See p. 59.)** |
| **2006** | **Transfer of Bank Claims to Rosneft.** Contemporary reporting records that Rosneft acquired approximately $480 million of Yukos debt from the Western Banks before the bankruptcy liquidation proceeded. | Provides historical context for Plaintiff's allegations concerning Deutsche Bank's participation within the Western Banks structure subsequently described in greater detail in the Hague Final Award. **(See pp. 60–61; Exhibit I)** |
| **Dec. 18, 2007** | **"Worthless Notice."** DBTCA terminated the Yukos ADR program and represented the outstanding ADRs as "worthless." | Plaintiff alleges that this representation created the appearance that no continuing economic interest remained, notwithstanding the subsequent emergence of Yukos-related recovery and distribution mechanisms. **(See Exhibit D.)** |

**SUMMARY:**

Taken together, these events provide historical context for Plaintiff's allegation that DBTCA's administration of the Yukos ADR interests occurred within a broader Deutsche Bank corporate environment containing potentially conflicting commercial interests. Plaintiff relies upon this chronology as evidence of the alleged institutional conflict, not as a contention that each affiliated entity was legally identical to DBTCA.

## CONTINUING CONSEQUENCES AND RENEWED CONDUCT (2007–2026)

| DATE | DOCUMENTED EVENT | RELEVANCE TO PLAINTIFF'S ALLEGATIONS |
|---|---|---|
| **2007–2015** | **Post-Termination Information Barrier.** Following the "Worthless Notice," DBTCA did not assert an ADR-related institutional interest as Yukos-related recovery mechanisms subsequently developed outside the Russian liquidation process. | Plaintiff alleges that the 2007 representation reinforced the appearance that no continuing ADR-related economic interest remained to be protected or recovered. |
| **2015–Jan. 2016** | **Renewed Yukos Distributions and Direct Inquiry to Deutsche Bank.** After learning that distributions to former Yukos shareholders were being prepared, ILVEYS INC. expressly asked whether ADR-related payments would proceed through Deutsche Bank TCA or directly to ADR owners. Deutsche Bank later stated that it was "not involved in any Yukos claims process." | Supports Plaintiff's allegations concerning continued concealment of DBTCA's institutional position and active misrepresentation during an existing recovery process. **(See Exhibits K–L.)** |
| **2017–2018** | **Claims Administration Distribution.** ILVEYS INC.'s 50,000-ADR claim was accepted and ultimately paid $2,499.16 through the Yukos Claims Administration without DBTCA's participation. | Demonstrates that Yukos-related economic value remained capable of recovery after the 2007 termination and illustrates the practical consequences alleged from DBTCA's continued absence. **(See Exhibit H.)** |
| **Mar.–Apr. 2026** | **Renewed Distribution and Formal Demand.** Following notice of another Yukos distribution, ILVEYS INC. delivered a comprehensive written demand requesting DBTCA's action. On April 6, 2026, DBTCA declined and relied upon the December 2007 termination and "Worthless Notice." | Plaintiff alleges that the 2026 refusal constitutes renewed and continuing conduct while active Yukos recovery mechanisms remain available. **(See Exhibit D.)** |
| **2026–Present** | **Existing U.S. Enforcement Proceedings.** Recognition and enforcement proceedings concerning the Hague Yukos Awards remain pending in the United States. | Plaintiff seeks prospective equitable relief requiring DBTCA to employ its own historical Depositary and shareholding position to pursue the corresponding ADR-related recovery interests. |

**LEGAL SIGNIFICANCE:**

Plaintiff relies upon this chronology to support his allegations of a continuing institutional conflict, fraudulent concealment and active misrepresentation, breach of fiduciary and contractual obligations, and continuing or renewed conduct relevant to accrual and timeliness. The chronology is not offered as an independent adjudication of liability; the underlying documents and the allegations pleaded in the Amended Complaint provide the evidentiary and legal basis for those claims.

**DISCOVERY AND ACCOUNTING:**

Plaintiff seeks discovery and equitable accounting concerning fees, commissions, communications, institutional knowledge, conflicts of interest, and any economic benefits shown to be causally attributable to DBTCA's own alleged misconduct.

The New York Times | https://www.nytimes.com/2004/12/18/business/worldbusiness/banks-drop-support-of-bid-for-russian-oil-giants.html

# Banks Drop Support of Bid for Russian Oil Giant's Unit

**By Erin E. Arvedlund**

Dec. 18, 2004

MOSCOW, Dec. 17 - Russia brushed aside an American court's attempt to halt the auction of the oil giant Yukos' biggest production unit, but a consortium of international banks withdrew their support for a bid by the state gas monopoly Gazprom.

Gazprom on Friday said it still planned to bid on Yukos's prize asset, Yuganskneftegas, in an auction Sunday -- despite a last-minute decision by Deutsche Bank and others to pull out of a loan reported to be up to 10 billion euros ($13 billion). The starting price for Yuganskneftegas is $8.65 billion.

Alexander Stepanenko, a spokesman for the company's oil unit, said Gazprom had made the necessary deposit of $1.7 billion to take part, despite the fact that Deutsche Bank and other banks were delaying financing -- heeding an order issued late Thursday by a judge in Houston who told bidders and their banks not to take part in the auction.

"Gazprom will participate" in the auction, Mr. Stepanenko told the Rossiya television channel. In a statement late Friday, Gazprom, which is widely expected to win the auction, also said that after the sale it would decide whether to borrow money and how much it might need to borrow.

Russian government officials lashed out at the court decision. Russia's foreign minister, Sergei Lavrov, insisted on state television that the Yukos affair would be decided "under Russian law" and argued that the United States court ruling had no legal force in Russia.

**Want to stay updated on what’s happening in Russia?** Sign up for Your Places: Global Update, and we’ll send our latest coverage to your inbox.

The planned auction of Yuganskneftegas is an internal matter, Prime Minister Mikhail Fradkov said in remarks carried by Interfax news agency. "We follow our internal legislation, which is the determining factor."

Yukos supported the Houston bankruptcy judge's decision on Friday, as law enforcement agents yet again searched the company's headquarters in downtown Moscow.

"We remain realistic about the ruling's immediate effect," Yukos said in a statement published on its Web site. "While Russian authorities have stated their intention to proceed with the auction, we hope the ruling will lead international banks and other

parties to reconsider their participation."

The Kremlin-inspired campaign against Yukos and its founder, Mikhail B. Khodorkovsky, is widely perceived as punishment for his political ambitions and his lobbying for private oil pipelines. The tax claims against Yukos have mounted to more than $27 billion for the years 2000 through 2003. Yuganskneftegas is being auctioned to cover the tax bill.

A Deutsche Bank spokeswoman in London, Joanna McCulloth, declined to comment. But the syndicate of banks -- which included Deutsche, J.P. Morgan, ABN Amro, BNP Paribas, Calyon and Dresdner Kleinwort Benson -- will not be lending money to Gazprom in the next 10 business days or risk defying the judge in Houston.

Gazprom "strongly believes the decision was unfair and the filing of a bankruptcy proceeding by Yukos in the U.S. was an attempt to circumvent Russian law," said Nikolai Krylov, a partner at the Winston & Strawn law firm, which is representing Gazprom. "Their main assets were in Russia."

Christopher Granville, a strategist for the UFG brokerage firm, which is partly owned by Deutsche Bank, said that even without the Western bank syndicate, Gazprom "can find the money from somewhere else, possibly Russian banks or other sources."

Surgutneftegas, a Kremlin-friendly Russian oil company with $7.5 billion in cash, could be a source of money.

The Houston court's injunction lasts for 10 days, and if it is lifted the banks might still be able to provide Gazprom funds before the payment deadline of Jan. 2.

"There are options for Gazprom," said Adam Landes, an oil analyst covering Russia for Renaissance Capital out of London.

"The banks could lend to the government, which in turn could lend the money to Gazprom."

There was also a slim chance that the government could cancel the auction; on Friday, Yukos canceled a shareholders meeting set for Monday. The Sunday auction was widely believed to have been timed to trump the shareholders meeting, where bankruptcy and even liquidation would be on the agenda. Yukos also canceled another shareholders meeting, scheduled for Jan. 13.

The Russian authorities "can make this up as they go along," Mr. Granville of UFG said. "The legal environment in Russia allows for great flexibility. If there's a delay in pulling in financing because of the restraining order in Houston, that delay can be accommodated."

He added, however, "large international banks aren't going to take the risk of being in contempt of court -- they all have interests in the U.S."

The New York Times https://www.nytimes.com/2004/12/29/business/worldbusiness/bank-asks-court-to-dismiss-yukos-bankruptcy.html

# Bank Asks Court to Dismiss Yukos Bankruptcy

**By The Associated Press**

Dec. 29, 2004

HOUSTON, Dec. 28 - Deutsche Bank sought on Tuesday to have a federal judge dismiss the bankruptcy protection filing in Houston by the Russian oil giant Yukos.

In a court filing, Deutsche Bank said that Yukos had no Texas ties beyond a few million dollars in bank accounts and a displaced chief financial officer and should not be able to seek protection in Houston.

The bank contended that Yukos filed for bankruptcy protection earlier this month in Texas in a desperate, and unsuccessful, bid to stave off the Dec. 19 auction of its top subsidiary that stems from a tax dispute with the Russian government.

Deutsche Bank was one of a consortium of banks -- including ABN Amro and Dresdner Kleinwort Wasserstein -- that had intended to finance a $10 billion to $13 billion bid by Gazprom, a government-owned natural gas company, to buy Yuganskneftegaz, which produces 60 percent of Yukos's oil and 11 percent of Russia's oil.

The Russian government planned to sell the subsidiary to pay off some of the $27.5 billion in back taxes it contends it is owed by Yukos. The oil company disputes those figures.

The consortium froze the money after Letitia Z. Clark, a federal bankruptcy judge in Houston, granted an emergency injunction to block the auction on Dec. 16, two days after the oil company filed its Chapter 11 case.

Earlier Tuesday, Yukos missed interest payments on a $1 billion loan, leading Standard & Poor's to cut its grade on the company's debt to default. [Page W7.]

In its court filing Tuesday, the bank said, "This blatant attempt to artificially manufacture a basis for jurisdiction constitutes cause to dismiss this case."

Mike Lake, a spokesman for Yukos's lawyers, said that Yukos remained confident the jurisdiction of the Chapter 11 case was proper.

Yukos claimed the bankruptcy was properly filed in Texas because the chief financial officer, Bruce K. Misamore, was conducting company business from his home in Houston, having returned there earlier in December after learning that he might be targeted by the Russian authorities if he returned to Moscow.

Also, Yukos put $7 million in two Houston bank accounts to cover legal fees and Mr. Misamore's costs.

The New York Times https://www.nytimes.com/2006/03/10/business/worldbusiness/yukos-sued-by-banking-consortium.html

# *Yukos sued by banking consortium*

**By Andrew E. Kramer**

March 10, 2006

**MOSCOW —** A consortium of Western banks led by Société Générale of France filed a lawsuit in Moscow on Friday to declare the Yukos oil company bankrupt just over a year after the Kremlin seized its largest production asset amid a politically tinged tax dispute.

Also this week, managers in Moscow for what was once Russia's largest oil company were openly defying orders from the leadership - who are in self-imposed exile in London - raising concerns over whether the unusual arrangement could continue.

The company's former chairman, Mikhail Khodorkovsky, is serving a sentence in a Siberian penal colony.

The 14 Western banks, which are owed $482 million, filed suit in Moscow's arbitration court. The case was accepted immediately, although the court typically takes five days for such cases, said Claire Davidson, a Yukos spokeswoman in London.

The banks join a long list of creditors in Russia, led by the tax authorities, who have a claim of more than $6 billion. Russian law gives the state priority on any assets seized by a bankruptcy judge, Davidson said.

"We're really shocked by this and we don't understand" why they also acted in Russia, Davidson said. She said Yukos had been in talks with the banks to repay the loan from the proceeds of sales of foreign assets, including a refinery in Lithuania, a pipeline in Slovakia and offices in Britain and Switzerland.

The banks, including Deutsche Bank, ING, Citibank and BNP Paribas, have already registered claims to proceeds from sales of Yukos's foreign assets in a Dutch court, Davidson said.

The bankruptcy proceedings will probably run about three months, and Yukos will contest the filing, she said.

The legal action raises the possibility that Western financial companies will, paradoxically, become the final undoing of what was once considered a model of Western-style corporate development in the Russian oil sector.

Yukos also faces suits from tax authorities and from its former production unit, now owned by the state- owned company Rosneft.

Business

This article is more than **19 years old**

# The end comes for Yukos as oil firm declared bankrupt and auction ordered

**Tom Parfitt** *in Moscow,* **Terry Macalister**

Wed 2 Aug 2006 00.07 BST

Prefer the Guardian on Google

Yukos, the Russian oil company whose former owner dared to defy the Kremlin, was finally crushed yesterday as a court in Moscow declared it bankrupt and ordered its assets to be sold.

The Russian state-dominated companies Rosneft and Gazprom were circling last night, confirming their interest in a business expected to go for a knockdown price at auction. Rosneft and Gazprom are cash-rich, with the former having just raised $10.4bn (£5.7bn) through a flotation on the London stock market and Gazprom reporting a doubling in first-half profits to 177.06bn roubles (£3.5bn) yesterday.

Moscow's arbitration court upheld a vote by creditors to liquidate Yukos, which was once headed by the oligarch Mikhail Khodorkovsky, now serving eight years in a Siberian prison on politically tinged charges of fraud and tax evasion.

Drew Holliner, a Yukos lawyer, called the ruling "a death sentence" for the firm.

Before his arrest in 2003, Khodorkovsky clashed with President Vladimir Putin over energy policy and provoked the leader's ire by channelling funds to opposition parties. Yukos won plaudits from the west for good corporate governance but came under increasing scrutiny from the Kremlin and was presented with a series of multibillion-pound tax demands.

Before yesterday's hearing the company had argued it could restructure itself and pay off its debts without going into receivership but creditors rejected a rescue plan last week after a court-appointed administrator warned them that the company was insolvent. Yukos's chief executive, Steven Theede, resigned last month, calling the bankruptcy proceedings a "farce". Yukos's debts were estimated at $18.3bn, while its assets stood at $17.7bn.

Judge Pavel Markov ordered Yukos - once Russia's biggest oil company - to be broken up and auctioned to satisfy creditors, chiefly the tax authorities and Rosneft, which acquired $480m of Yukos's debt from western banks in April.

Artyom Konchin, an oil and gas analyst at the Aton brokerage in Moscow, predicted Yukos's assets would be valued well below market rates and sold to "state-owned or

quasi state-owned companies".

Rosneft and the gas monopoly Gazprom are heavily tipped as the buyers.

"Those companies will have a very close relation to the whole process," said Konstantin Batunin, an analyst at Alfa Bank, reflecting concerns that the auctions will not be transparent.

Rosneft and Gazprom's division of Yukos would be a huge boost to Mr Putin's crusade to strengthen the state by gathering hydrocarbon producers under state control. A university thesis written by Mr Putin in St Petersburg in the 1990s argued that Russia's revival as a world power relied on seizing oil and gas reserves.

Mr Konchin said: "The Kremlin wants to reduce the influence of politically independent or profit-oriented entities."

Rosneft's daily production leapt from 1m barrels of oil to 1.6m after it swallowed Yuganskneftegas, Yukos's main production unit. Now it is being groomed to rival the likes of Exxon Mobil. Gazprom has flexed its muscles by expanding in Britain and said it would like to buy a large utility here. But its decision to cut off gas to Ukraine in January was seen by many as a political move inspired by Mr Putin.

Yukos said it would appeal against yesterday's bankruptcy ruling. Gazprom has already offered to pay nearly $2bn for the 20% stake that Yukos owns in Gazprom Neft, formerly known as Sibneft.

## Most viewed

# EXHIBIT D: PRE-LITIGATION CORRESPONDENCE AND FORMAL DEMANDS

## EXHIBIT D: PRE-LITIGATION CORRESPONDENCE AND FORMAL DEMANDS

**SUBJECT:** Plaintiff's predecessor's efforts to obtain action from DBTCA concerning the surviving Yukos ADR-related recovery interests and Defendant's April 2026 refusal.

1. **FORMAL DEMAND — MARCH 26, 2026**

   ILVEYS INC., through Deniel Shumeiko, delivered to DBTCA a comprehensive written demand and supporting legal memorandum concerning the Yukos ADR interests, the renewed Yukos distribution process, and DBTCA's historical Depositary position. The submission requested that DBTCA take affirmative action to protect and pursue the corresponding ADR-related recovery interests.

2. **DBTCA RESPONSE — APRIL 6, 2026**

   DBTCA, through Vice President and Senior Counsel Sarah Schoenbach, declined the requested action and relied upon the December 18, 2007 termination of the Yukos ADR program and the accompanying "Worthless Notice."

3. **FOLLOW-UP RESPONSE — APRIL 7, 2026**

   ILVEYS INC. challenged DBTCA's continued reliance upon the 2007 termination position in light of subsequent Yukos-related recoveries and again requested Defendant's participation in the available recovery and enforcement mechanisms.

   **LEGAL SIGNIFICANCE:**

   This correspondence documents Defendant's renewed 2026 refusal to act while Yukos-related recovery mechanisms remained active. It supports Plaintiff's allegations concerning continuing conduct, the continued reliance upon the 2007 "Worthless Notice," and the present need for prospective equitable relief requiring DBTCA to use its own historical institutional position to protect and pursue the corresponding ADR-related interests.

Gmail **I I <ilveysinc@gmail.com>**

**URGENT: NOTICE OF CLAIM $18.7B | ATTN: LEGAL DEPT - NEW YORK OFFICE | DELIVERY CONFIRMED 889975868394**

1 письмо

**I I** <ilveysinc@gmail.com> 26 марта 2026 г. в 17:49
Кому: adr@db.com, db.ir@db.com, andrew.stemmer@db.com
Копия: lisa.mcgeough@db.com, robert.martello@db.com, corporate.governance@db.com

**Dear General Counsel and Head of Global Securities Services,**

I am writing to you in my capacity as **Director of ILVEYS INC.** to provide formal notice of our legal demand regarding the Yukos Oil Company ADR program.

Please be advised that a Formal Legal Demand and Notice of Claim **executed by our Authorized Representative in the United States** was dispatched via **FedEx Priority Overnight** to your New York office at 1 Columbus Circle. Our tracking records confirm that this package has been successfully delivered and signed for at your headquarters.

The FedEx package contains two (2) separate, bound, and sealed original copies of the demand, individually addressed to the General Counsel and the Head of Global Securities Services.

**Tracking Number:** 889975868394

This demand concerns the Depositary's mandatory duty to intervene in **Case No. 14-cv-1996 (D.D.C.)**. While we recognize the jurisdictional limitations prior to the **final 2025 Dutch court rulings**, the conclusion of those proceedings, combined with the **2016 Svea Court of Appeal judgment** (which established the Depositary as the sole shareholder of record for Yukos assets in place of ADR holders), now mandates your immediate action. Following the commencement of the recognition process for the 2014 Hague awards in the U.S., Deutsche Bank is now uniquely positioned and **fiducially obligated** to act under the statutory protections of the **Magnitsky Act (P.L. 112-208)**.

**URGENT NOTICE:** We also formally contest the ongoing discriminatory distribution by the Yukos Claims Administration (Epiq) scheduled for March 31, 2026. We demand that Deutsche Bank immediately halt or contest this distribution to prevent further material loss to U.S. ADR holders.

Due to the confidentiality of the sensitive financial and corporate data, the full evidentiary Annexes and the signed signature pages are provided exclusively via the secured physical package now in your possession. For your immediate record, I have attached:

**- The Affidavit of Service** (duly notarized via **Proof** online notary), which incorporates as **Exhibits A and B** the FedEx receipt and the visual confirmation of the two (2) separate copies being placed into the envelope before sealing.

As Director, I expect your formal response within **10 business days**.

**Sincerely,**

**Vladimir Pridorogin**
**Director, ILVEYS INC.**

---

**Affidavit260325.pdf**
1832K

# AFFIDAVIT OF SERVICE BY COMMERCIAL COURIER

**STATE OF** Texas

**COUNTY OF** Collin

I, DENIEL SHUMEIKO, being duly sworn, depose and say:

1. I am over 18 years of age, I am a beneficial owner of **ILVEYS INC.**, Claimant herein, and I am authorized to serve legal process in this matter.
2. On **March 25 , 2026**, at **3:02 PM**, I served two (2) identical bound and sealed copies of the **FORMAL LEGAL DEMAND** regarding Yukos Oil Company ADRs (Case No. 14-cv-1996), **including ANNEX 1, ANNEX 2 (22 pages), and ANNEX 3 (10 pages)**, upon:
   **DEUTSCHE BANK TRUST COMPANY AMERICAS**
   **Attn: General Counsel / Head of Global Securities Services**
   **1 Columbus Circle, New York, NY 10019**
3. I served the aforementioned documents by depositing two (2) identical true, bound and sealed copies of the same, enclosed in a post-paid properly addressed wrapper, in a custody of **FedEx (Federal Express) for Priority Overnight Delivery with Direct Signature Required** at the FedEx Office located at: **3535 Market St, Philadelphia, PA 19104.**
4. The specific FedEx Tracking Number for this shipment is: **8899 7586 8394**.
   A copy of the FedEx receipt and a photo of the two copies being enclosed in the envelope are attached hereto as Exhibits A and B and incorporated herein by reference.
5. I knew the person/entity so served to be the designated Depositary and legal shareholder of record for the subject Yukos Oil Company ADRs.

Deniel Shumeiko

*(Signature of Representative)*

**Sworn to before me this** 25th **day of March, 2026.**

[signature]

*(Notary Public Stamp & Signature)*

NOTARY PUBLIC ★ STATE OF TEXAS ★

Bruce Edward Denny

ID NUMBER
134256534
COMMISSION EXPIRES
March 16, 2027

Electronically signed and notarized online using the Proof platform.

FedEx® Office

3535 Market St Ste 10B
Philadelphia, PA 19104-3386
215.386.5679

March 25, 2026 3:02 PM
Receipt #: BBXKK00128548

PACKAGE DROPPED OFF

FedEx Express
889975868394

Total Packages: 1

Tell us how we're doing:
**fedex.com/welisten**

Terms and conditions apply, including terms that limit FedEx's liability. The estimated shipping charge may be different than the actual charges for your shipment. Differences may occur based on actual weight, dimensions and other factors. Shipment-related terms and conditions and details on how shipping charges are calculated are available upon request or at fedex.com/serviceguide.

Manually Weighed = (M), Weighed by Scale = (S), Taxable Item = T.

Visit us at: fedex.com
Or call 1.800.GoFedEx
(1.800.463.3339)

BBXKK0012026032528548


ORIGINAL 2: FOR HEAD OF GLOBAL SECURITIES SERVICES
ORIGINAL 1: FOR GENERAL COUNSEL
Tel.: +1(267)693-3824
Email: ilveysinc@gmail.com
To: Deutsche Bank Trust Company Americas
Address: 1 Columbus Circle, New York, NY 10019
Attn: General Counsel / Head of Global Securities Services
Pull to open.
Align top of FedEx® shipping label here.
ORIGIN ID:ESPA (267) 693-3824
DENIEL SHUMEIKO
3600 CHESTNUT ST
PHILADELPHIA, PA 19104
UNITED STATES US
SHIP DATE: 25MAR26
ACTWGT: 0.99 LB
BILL SENDER
TO ATTN: GEN. COUNSEL/GLOBAL SEC. SVCS
DEUTSCHE BANK TRUST CO. AMERICAS
1 COLUMBUS CIRCLE
NEW YORK NY 10019
(212) 250-2500
THU - 26 MAR 10:30A
PRIORITY OVERNIGHT
TRK# 0201 8899 7586 8394
DSR
10019
E3 QNYA
NY-US EWR
Envelope
Recycle me

Gmail **I I <ilveysinc@gmail.com>**

# RE: URGENT: NOTICE OF CLAIM $18.7B | ATTN: LEGAL DEPT - NEW YORK OFFICE | DELIVERY CONFIRMED 889975868394

1 письмо

**Sarah Schoenbach** <sarah.schoenbach@db.com> 6 апреля 2026 г. в 19:34
Кому: "ilveysinc@gmail.com" <ilveysinc@gmail.com>

Classification: Confidential

Dear Mr. Pridorogin,

I write concerning the below email and your related correspondence dated March 25, 2026. Please find attached a copy of a December 18, 2007 Liquidation / Worthless Notice concerning Yukos Corp / CUSIP 98849W108, which states as follows (emphasis added):

> Deutsche Bank Trust Company Americas, as Depositary (the “Depositary”), has been notified by the Central United Registrar and the Federal Tax Service that Yukos Corp ordinary shares have been removed from the registrar and no longer exist.
>
> As a result, the underlying ordinary shares and ADRs representing these ordinary shares are deemed to be worthless and will be cancelled off the Depositary’s records and the ADR facility, and the Deposit Agreement related thereto, terminated effective immediately.
>
> **As a result, the Depositary has ceased to provide any services with respect to the Yukos Corp. ADRs outstanding.**

As per the attached notice, Deutsche Bank Trust Company Americas (“DBTCA”) has not had a role with respect to the Yukos Corp. ADRs since December 2007. DBTCA is thus unable to address the requests raised in your correspondence. DBTCA reserves all rights.

Kind regards,
Sarah Schoenbach

*With deep dedication.*

---

Sarah Schoenbach
Vice President | Senior Counsel

Deutsche Bank AG, Filiale New York
Litigation & Regulatory Enforcement
1 Columbus Circle, New York, NY, 10019-8735 USA

---

**From:** I I <ilveysinc@gmail.com>
**Sent:** Thursday, March 26, 2026 2:49:23 PM
**To:** adr@db.com <adr@db.com>; db ir <db.ir@db.com>; andrew.stemmer@db.com <andrew.stemmer@db.com>
**Cc:** Lisa McGeough <lisa.mcgeough@db.com>; Robert Martello <robert.martello@db.com>; corporate.governance@db.com <corporate.governance@db.com>
**Subject:** URGENT: NOTICE OF CLAIM $18.7B | ATTN: LEGAL DEPT - NEW YORK OFFICE | DELIVERY CONFIRMED 889975868394

**Dear General Counsel and Head of Global Securities Services,**

I am writing to you in my capacity as **Director of ILVEYS INC.** to provide formal notice of our legal demand regarding the Yukos Oil Company ADR program.

Please be advised that a Formal Legal Demand and Notice of Claim **executed by our Authorized Representative in the United States** was dispatched via **FedEx Priority Overnight** to your New York office at 1 Columbus Circle. Our tracking records confirm that this package has been successfully delivered and signed for at your headquarters.

The FedEx package contains two (2) separate, bound, and sealed original copies of the demand, individually addressed to the General Counsel and the Head of Global Securities Services.

**Tracking Number:** 889975868394

This demand concerns the Depositary's mandatory duty to intervene in **Case No. 14-cv-1996 (D.D.C.)**. While we recognize the jurisdictional limitations prior to the **final 2025 Dutch court rulings**, the conclusion of those proceedings, combined with the **2016 Svea Court of Appeal judgment** (which established the Depositary as the sole shareholder of record for Yukos assets in place of ADR holders), now mandates your immediate action. Following the commencement of the recognition process for the 2014 Hague awards in the U.S., Deutsche Bank is now uniquely positioned and **fiducially obligated** to act under the statutory protections of the **Magnitsky Act (P.L. 112-208)**.

**URGENT NOTICE:** We also formally contest the ongoing discriminatory distribution by the Yukos Claims Administration (Epiq) scheduled for March 31, 2026. We demand that Deutsche Bank immediately halt or contest this distribution to prevent further material loss to U.S. ADR holders.

# Deutsche Bank Trust Company Americas

Trust & Securities Services

## *DEPOSITARY RECEIPTS*

***Please be advised of the following Corporate Action:***

| | |
|---|---|
| Issue: | **Yukos Corp / Cusip 98849W108** |
| Country: | **Russia** |
| Type: | **Liquidation / Worthless Notice** |
| Effective Date: | **December 18, 2007** |

Deutsche Bank Trust Company Americas, as Depositary (the "Depositary"), has been notified by the Central United Registrar and the Federal Tax Service that Yukos Corp ordinary shares have been removed from the registrar and no longer exist.

As a result, the underlying ordinary shares and ADRs representing these ordinary shares are deemed to be worthless and will be cancelled off the Depositary's records and the ADR facility, and the Deposit Agreement related thereto, terminated effective immediately.

As a result, the Depositary has ceased to provide any services with respect to the Yukos Corp. ADRs outstanding.

***For Further Information, contact:***

[redacted]
**Asst Vice President**
**Deutsche Bank - Depositary Receipts**

☎ : [redacted]
Λ : [redacted]

Deutsche Bank

Gmail

I I <ilveysinc@gmail.com>

**REPUTATION OF DEFENSE / FORMAL REBUTTAL: URGENT: NOTICE OF CLAIM $14.5B+ PRINCIPAL & INTEREST | CUSIP 98849W108**

1 письмо

I I <ilveysinc@gmail.com> 7 апреля 2026 г. в 20:37
Кому: Sarah Schoenbach <sarah.schoenbach@db.com>, adr@db.com, db.ir@db.com
Копия: lisa.mcgeough@db.com, robert.martello@db.com

Dear Ms. Schoenbach,

I am in receipt of your email dated April 6, 2026. Your reliance on the "Liquidation / Worthless Notice" from December 18, 2007, as a basis for Deutsche Bank Trust Company Americas' (DBTCA) refusal to fulfill its fiduciary duties, is both factually incorrect and legally unsustainable.

Please consider this a formal rebuttal and a **final notice** before the commencement of litigation in the **U.S. District Court for the Southern District of New York (SDNY)**.

**1. The 2016 Swedish Supreme Court Precedent Nullifies the 2007 Notice**

Your assertion that DBTCA has had no role or legal standing since 2007 is directly contradicted by the final rulings of the Swedish judiciary. Specifically:

- **The Svea Court of Appeal (2016)**, subsequently affirmed by the **Supreme Court of Sweden (Högsta domstolen)**, ruled that ADR holders lack standing (*locus standi*) to pursue claims against the Russian Federation precisely because **DBTCA remains the sole legal record shareholder** of the underlying Yukos assets.

- **Estoppel by Silence:** DBTCA was fully aware of these proceedings and did not contest its status as the record shareholder at that time. Under the doctrine of Judicial Estoppel, DBTCA cannot now—when multi-billion dollar enforcement is imminent—claim its role ceased in 2007.

**2. The $96 Billion Valuation and DBTCA's $14.5B Liability**

The 2007 "Worthless Notice" was predicated on a false assumption of zero asset value. This assumption was legally shattered by the final $50 billion award against the Russian Federation, confirmed by the **Dutch Supreme Court in October 2025**.

- **Implied Valuation:** The Hague Tribunal awarded the majority shareholders (GML, 70% stake) approx. $50.5B after a 25% contributory fault reduction. This establishes an implied total company valuation of **approx. $96 Billion**.

- **Calculated Claim:** As the legal owner of record for **15% of Yukos shares** underlying the ADR program, DBTCA's interest is valued at **approx. $14.5 Billion in principal**.

- **Accrued Interest:** In accordance with the Hague ruling, this amount is subject to interest indexed to **10-year U.S. Treasury bonds**. As of 2026, the total claim significantly exceeds the principal, mirroring the growth of the GML award (now estimated at $66B+).

These assets are not "worthless"; they are liquidated, enforceable legal claims. As the sole record shareholder, DBTCA is the only entity with the legal standing to collect the $18.7B portion of this award belonging to ADR holders.

By remaining idle, DBTCA is effectively allowing both the Russian Federation and GML to unjustly enrich themselves at the expense of U.S. ADR holders.

**3. Breach of Fiduciary Duty and Statutory Mandate (P.L. 112-208)**

DBTCA's refusal to act violates **Section 202 of the Magnitsky Act**, which mandates the protection of U.S. investors in Yukos. By maintaining the ADR program for years after 2003 and collecting associated fees, DBTCA assumed an affirmative duty to act as a "gatekeeper." Your current refusal to enforce a validated $96B valuation interest constitutes **Bad Faith** and **Constructive Fraud**.

**Conclusion**

We demand that DBTCA immediately retract its reliance on the obsolete 2007 Notice and acknowledge its mandatory duty to intervene in the ongoing enforcement proceedings in the United States (**Case No. 14-cv-1996, D.D.C.**) to protect the **$14.5B+** interest of its ADR holders.

Should we not receive a constructive proposal for action within **three (3) business days**, we will proceed with filing a formal Complaint in the **SDNY** for a mandatory injunction and damages, including punitive damages for intentional obstruction of justice.

Please govern yourselves accordingly.

Sincerely,

**Vladimir Pridorogin**
Director, ILVEYS INC.

пн, 6 апр. 2026 г. в 19:34, Sarah Schoenbach <sarah.schoenbach@db.com>:

> Classification: Confidential
>
> Dear Mr. Pridorogin,
>
> I write concerning the below email and your related correspondence dated March 25, 2026. Please find attached a copy of a December 18, 2007 Liquidation / Worthless Notice concerning Yukos Corp / CUSIP 98849W108, which states as follows (emphasis added):
>
> > Deutsche Bank Trust Company Americas, as Depositary (the "Depositary"), has been notified by the Central United Registrar and the Federal Tax Service that Yukos Corp ordinary shares have been removed from the registrar and no longer exist.
> >
> > As a result, the underlying ordinary shares and ADRs representing these ordinary shares are deemed to be worthless and will be cancelled off the Depositary's records and the ADR facility, and the Deposit Agreement related thereto, terminated effective immediately.
> >
> > **As a result, the Depositary has ceased to provide any services with respect to the Yukos Corp. ADRs outstanding.**
>
> As per the attached notice, Deutsche Bank Trust Company Americas ("DBTCA") has not had a role with respect to the Yukos Corp. ADRs since December 2007. DBTCA is thus unable to address the requests raised in your correspondence. DBTCA reserves all rights.

# EXHIBIT E: VALUATION AND CALCULATION METHODOLOGY

# EXHIBIT E: VALUATION AND CALCULATION METHODOLOGY

## 1. Hague Award Valuation Benchmark

Plaintiff uses the damages methodology contained in the July 18, 2014 Hague Final Award as an alternative valuation benchmark. Table T1 of the Final Award identifies a total Yukos equity value of **$94,606,683,615** as of June 30, 2014, based upon **1,934,964,578 outstanding ordinary shares**.

## 2. Plaintiff's Pro-Rata Calculation

| CATEGORY | CALCULATION BASIS | 2014 BENCHMARK | PLAINTIFF'S 2026 ESTIMATE* |
|---|---|---|---|
| Yukos Total Equity Value | Hague Award, Table T1 | $94.606B | ~$125.6B |
| Historical ADR-Related Position | Approx. 15% proportional benchmark | ~$14.19B | ~$18.84B |
| Russian Federation Portion | 75% after Tribunal's contributory-fault reduction | ~$10.64B | ~$14.13B |

*The 2026 figures are Plaintiff's extrapolations using the post-award interest methodology identified in the Hague Final Award and are not presented as amounts separately adjudicated in Plaintiff's favor.

## 3. Tribunal's 25% / 75% Allocation and Plaintiff's Application

In Paragraph 1637, the Tribunal found that the Claimants and Yukos, which they controlled, contributed **25%** to the prejudice suffered as a result of the Russian Federation's destruction of Yukos. The Tribunal therefore apportioned responsibility for that prejudice between the Claimants and the Russian Federation in the proportions of **25% and 75%**, respectively.

Plaintiff applies that adjudicated **25% / 75% allocation as a causal-responsibility benchmark** for losses arising from the destruction of Yukos across the company's equity base, including the economic interests represented by Yukos ADRs.

For purposes of Plaintiff's theory of recovery, the **25% component corresponds to the GML-controlled shareholder side**, while the **75% component corresponds to the Russian Federation**.

Plaintiff does not contend that the Hague Tribunal separately adjudicated a direct monetary obligation by GML to the Yukos ADR holders. Rather, Plaintiff relies upon the Tribunal's adjudicated allocation as the factual and analytical basis for apportioning responsibility for the loss of the underlying Yukos investment.

## 4. Per-Share and Per-ADR Valuation Benchmark

• Total Yukos ordinary shares outstanding: **1,934,964,578**

• Total Yukos equity valuation: **$94,606,683,615**

• 2014 value per ordinary share: approximately **$48.89**

• Historical ADR ratio: **4 ordinary Yukos shares per ADR**

• Plaintiff's estimated April 2026 value per ordinary share, including the asserted interest methodology: approximately **$64.75**

• Plaintiff's estimated April 2026 value per ADR: approximately **$259.00**

## 5. Plaintiff's 50,000-ADR Position

Plaintiff's assigned claims arise from a historical position of **50,000 Yukos ADRs**.

Applying the approximately **$259-per-ADR** alternative valuation benchmark produces an asserted value of approximately:

**50,000 ADRs × $259 = $12,950,000**

Plaintiff therefore identifies approximately **$12,950,000** as an alternative monetary valuation benchmark for the assigned 50,000-ADR position.

### 6. Purpose and Limitation of the Calculation

Plaintiff's principal requested relief is not an immediate monetary award based upon this calculation. Plaintiff principally seeks prospective equitable relief requiring DBTCA to use its own historical Depositary and shareholding position to pursue the proportional recovery interests corresponding to the Yukos ADR beneficiaries.

The approximately **$12.95 million** calculation is offered as an **alternative monetary valuation benchmark** if the principal equitable relief sought in the Amended Complaint is unavailable.

The calculation applies figures and methodologies derived from the Hague Final Award to the historical ADR position. Plaintiff does not represent that the Hague Tribunal separately adjudicated the individual claims of Plaintiff, ILVEYS INC., DBTCA, or the Yukos ADR holders.

---

## SUPPLEMENTAL EVIDENCE: JUDICIAL BASIS FOR PLAINTIFF'S VALUATION METHODOLOGY

**Source Document: Final Award, PCA Case No. AA 227 (The Hague, July 18, 2014)**

### 1. Total Yukos Valuation — Table T1

Table T1 identifies a total Yukos equity value of **$94,606,683,615**, representing **100% of Yukos equity** as of the June 30, 2014 valuation date.

The same Table identifies the Hague Claimants' collective shareholding as **70.49659%** and attributes approximately **$66.694 billion** of the total equity value to that position.

**Plaintiff's Application:**

Plaintiff uses the Tribunal's valuation of **100% of Yukos**, rather than only the Claimants' 70.49659% shareholding, as the starting point for calculating the proportional economic value represented by the historical ADR position.

### 2. Contributory Fault and Allocation of Responsibility — Paragraph 1637

The Tribunal found that the Claimants and Yukos, which they controlled, contributed **25%** to the prejudice suffered as a result of the Russian Federation's destruction of Yukos. The Tribunal determined that the resulting allocation of responsibility between the Claimants and the Russian Federation was **25% / 75%**.

The Tribunal subsequently applied that 25% reduction to the approximately **$66.694 billion** attributable to the Claimants' 70.49659% shareholding, reducing their damages to approximately **$50.021 billion**.

**Plaintiff's Application:**

Plaintiff relies upon the adjudicated **25% / 75% allocation as a causal-responsibility benchmark** for the destruction of the underlying Yukos investment. Plaintiff's theory attributes the 25% component to the GML-controlled shareholder side and the 75% component to the Russian Federation when analyzing the corresponding losses suffered by the Yukos ADR interests.

### 3. Post-Award Interest — Paragraph 1888(i)

The Final Award provides that unpaid awarded amounts accrue post-award interest beginning January 15, 2015, with annual compounding by reference to the yield on 10-year U.S. Treasury bonds.

**Plaintiff's Application:**

Plaintiff uses that interest methodology as the basis for estimating an updated April 2026 valuation benchmark for the historical Yukos equity and ADR positions.

### 4. Limitation of Purpose

The portions of the Hague Final Award reproduced in this Exhibit establish the underlying Yukos valuation, the Claimants' 70.49659% shareholding position, the Tribunal's 25% / 75% allocation of responsibility, and the post-award interest methodology.

Plaintiff's application of those findings to the Yukos ADR position constitutes the valuation and causation methodology advanced in this action. Plaintiff does not contend that the Hague Tribunal itself separately adjudicated the monetary entitlement of the Yukos ADR beneficiaries.

**PCA Case No. AA 227**

**IN THE MATTER OF AN ARBITRATION BEFORE A TRIBUNAL CONSTITUTED IN ACCORDANCE WITH ARTICLE 26 OF THE ENERGY CHARTER TREATY AND THE 1976 UNCITRAL ARBITRATION RULES**

**- between -**

**YUKOS UNIVERSAL LIMITED (ISLE OF MAN)**

**- and -**

**THE RUSSIAN FEDERATION**

---

# FINAL AWARD

---

**18 July 2014**

*Tribunal*
The Hon. L. Yves Fortier PC CC OQ QC, Chairman
Dr. Charles Poncet
Judge Stephen M. Schwebel

Mr. Martin J. Valasek, Assistant to the Tribunal
Mr. Brooks W. Daly, Secretary to the Tribunal
Ms. Judith Levine, Assistant Secretary to the Tribunal

*Registry*
Permanent Court of Arbitration

*Representing Claimant*:

Professor Emmanuel Gaillard
Dr. Yas Banifatemi
Ms. Jennifer Younan
SHEARMAN & STERLING LLP

*Representing Respondent*:

Dr. Claudia Annacker
Mr. Lawrence B. Friedman
Mr. David G. Sabel
Mr. Matthew D. Slater
Mr. William B. McGurn
Mr. J. Cameron Murphy
CLEARY GOTTLIEB STEEN & HAMILTON LLP

Mr. Michael S. Goldberg
Mr. Jay L. Alexander
Dr. Johannes Koepp
Mr. Alejandro A. Escobar
BAKER BOTTS LLP

and the Tribunal [has] a corresponding margin of estimation."[2132] However, the Tribunal, as other tribunals have done, must reach a decision and it has done so on the basis of all the evidence which it has reviewed.

1637. Having considered and weighed all the arguments which the Parties have presented to it in respect of this issue the Tribunal, in the exercise of its wide discretion, finds that, as a result of the material and significant mis-conduct by Claimants and by Yukos (which they controlled), Claimants have contributed to the extent of 25 percent to the prejudice which they suffered as a result of Respondent's destruction of Yukos. The resulting apportionment of responsibility as between Claimants and Respondent, namely 25 percent and 75 percent, is fair and reasonable in the circumstances of the present case.

## XI. INTEREST

1638. As will be seen in Part XII of the Award dealing with quantification of Claimants' damages for Respondent's breach of the ECT, one of the elements factored into the Tribunal's calculation of damages will be interest.[2133] Accordingly, the Tribunal, in the present Part XI will determine the applicable rate of such interest, whether it should be simple or compound and, if compound, the period of compounding.

### A. CLAIMANTS' POSITION

1639. Claimants request the Tribunal to award them pre- and post-award interest.[2134] In their Submission on Costs, Claimants also request interest on any costs awarded to them.[2135]

1640. According to Claimants, "payment of interest can be required to ensure full reparation."[2136] Claimants quote the tribunal in *Vivendi v. Argentina*, which stated that the purpose of the payment of interest is "to compensate the damage resulting from the fact that, during the period of non-payment by the debtor, the creditor is deprived of the use and disposition of that sum he

---

2132 *MTD Equity Sdn Bhd. v. The Republic of Chile*, ICSID Case No. ARB/01/7, Decision on Annulment, 21 March 2007 ¶ 101. *See also Occidental Petroleum Corporation and Occidental Exploration and Production Company v. Republic of Ecuador*, ICSID, ARB/06/111, Award, 5 October 2012 ¶¶ 659–87.

2133 In particular see paragraphs 1822–23 below on pre-award interest on the dividend streams that Claimants would have obtained in the absence of Respondent's breach.

2134 Memorial ¶¶ 969–70; Reply ¶¶ 859, 1199; Claimants' Post-Hearing Brief ¶ 302.

2135 Claimants' Submission on Costs ¶ 64.

2136 Memorial ¶ 959, citing to ILC Articles on State Responsibility, Art. 38, Exh. C-1042.

before taking into account any deductions necessary as a consequence of Claimants' contributory fault is USD 66.694 billion.

#### 6. Deductions Due to Claimants' Contributory Fault

1827. As determined earlier,[2429] the Tribunal has concluded that the Claimants contributed to the extent of 25 percent to the prejudice they suffered at the hands of the Russian Federation. As a consequence, the amount of damages to be paid by Respondent to Claimants will be reduced by 25 percent to USD 50,020,867,798 and the Tribunal so finds.[2430]

#### 7. Windfall and Double Recovery

1828. The Tribunal sees no reason to make any further deductions beyond those set out above. In particular, any advantages that Claimants may have obtained through their investments prior to Respondent's expropriatory actions can not have any impact on the damages they have suffered. The Tribunal sees no risk of "double-recovery" in this regard.

1829. Finally, the rate of return that Claimants may realize on their original investment in Yukos as a result of the damages that the Tribunal has awarded to them for the expropriation of their shares is irrelevant. It is the value of the expropriated investment on the date of the Award rather than the amount originally invested by Claimants that is the basis for the calculation of the damages awarded.

## XIII. COSTS

### A. INTRODUCTION

1830. The Tribunal notes that Claimants and Respondent have each requested that the opposing party be ordered to pay the full costs of the arbitration.[2431]

1831. The Tribunal observes that the Treaty contains no provisions on the allocation of the costs of arbitration in the case of a dispute between an Investor and a Contracting Party.[2432]

---

[2429] *See* Section X.E.4.

[2430] Claimants shall be paid this amount in proportion to their shareholdings (as to which see n.2424 above) as follows: EUR 39,971,834,360 (Hulley), EUR 1,846,000,687 (YUL) and EUR 8,203,032,751 (VPL). As per paragraphs 1690–92 above, post-award interest will be due on any outstanding amounts not paid in full within 180 days.

[2431] Reply ¶ 1199(5); Rejoinder ¶ 1748(v).

## XIV. DECISION

1888. For the reasons set forth above, the Tribunal unanimously:

(a) DISMISSES the objections to jurisdiction and/or admissibility, based on Article 21 of the Energy Charter Treaty;

(b) DISMISSES the objections to jurisdiction and/or admissibility, pertaining to Respondent's contentions concerning "unclean hands" and "illegal and bad faith conduct";

(c) DISMISSES the renewed objections to jurisdiction and/or admissibility based on Article 26(3)(b)(i) of the Energy Charter Treaty;

(d) HOLDS that the present dispute is admissible and within the Tribunal's jurisdiction;

(e) DECLARES that Respondent has breached its obligations under Article 13(1) of the Energy Charter Treaty;

(f) ORDERS Respondent to pay to Claimant Yukos Universal Limited damages in the amount of USD 1,846,000,687;

(g) ORDERS Respondent to pay the amount of EUR 156,476 to Claimant Yukos Universal Limited as reimbursement for the costs of the arbitration;

(h) ORDERS Respondent to pay the amount of USD 2,214,277 to Claimant Yukos Universal Limited for a portion of the costs of its legal representation and assistance in the arbitration proceedings; and

(i) ORDERS Respondent to pay to Claimant Yukos Universal Limited, if within 180 days of the issuance of this Award Respondent fails to pay in full the amounts set forth in paragraphs (f), (g) and (h), above post-award interest on any outstanding amount starting from 15 January 2015, compounded annually. Post-award interest shall be determined as the yield on 10-year U.S. treasury bonds as of 15 January 2015 and then the dates of compounding yearly thereafter.

## C. TABLES T1–T9 SHOWING THE TRIBUNAL'S DAMAGES CALCULATIONS

### 1. Table T1: Calculation of Total Damages of Claimants as of 19 December 2004 (Date of Expropriation) vs. 30 June 2014 (Date of Award for Valuation Purposes)

**19 December 2004**

| Damages component | Amount *(in USD)* |
|---|---|
| Yukos Equity Value | 21,175,832,823 |
| Dividends to end of 2004 | 2,417,808,219 |
| *Sum of Equity Value and Dividends* | *23,593,641,042* |
| Interest through 30 June 2014 | 7,596,090,702 |
| **Total** | **31,189,731,744** |

| | Outstanding Shares | % of Outstanding Shares | Damages *(in USD)* |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **31,189,731,744** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 17,570,439,964 |
| Claimant YUL | 50,340,995 | 2.60165 | 811,447,480 |
| Claimant VPL | 223,699,175 | 11.56089 | 3,605,811,362 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **21,987,698,805** |

**30 June 2014**

| Damages component | Amount *(in USD)* |
|---|---|
| Yukos Equity Value | 42,625,343,615 |
| Dividends and interest (through 30 June 2014) | 51,981,340,000 |
| **Total** | **94,606,683,615** |

| | Outstanding Shares | % of Outstanding Shares | Damages *(in USD)* |
|---|---|---|---|
| **Yukos Total** | 1,934,964,578 | 100.00 | **94,606,683,615** |
| Claimant Hulley | 1,090,043,968 | 56.33405 | 53,295,779,147 |
| Claimant YUL | 50,340,995 | 2.60165 | 2,461,334,249 |
| Claimant VPL | 223,699,175 | 11.56089 | 10,937,377,001 |
| **Claimants Total** | 1,364,084,138 | 70.49659 | **66,694,490,398** |

| Damages After 25% Reduction | |
|---|---|
| Claimant Hulley | 39,971,834,360 |
| Claimant YUL | 1,846,000,687 |
| Claimant VPL | 8,203,032,751 |
| **Claimants Total** | **50,020,867,798** |

Note: Claimants' shareholdings and total number of Outstanding Shares taken from Appendix C.5.b to First Kaczmarek Report

# EXHIBIT F: SWEDISH JUDICIAL ADJUDICATION AND ADR STRUCTURAL BARRIER

## EXHIBIT F: SWEDISH JUDICIAL ADJUDICATION AND ADR STRUCTURAL BARRIER

*(Extracts from the Svea Court of Appeal Judgment, Case No. T 9128–14)*

**SUBJECT:** Judicial record concerning the inability of Yukos ADR investors to pursue the Russian Federation through the applicable Treaty arbitration mechanism on the basis of their ADR holdings, and the intermediary structure placing Deutsche Bank Trust Company Americas ("DBTCA") between the ADR investors and the underlying Yukos shares.

### 1. JUDICIAL RESULT

On January 18, 2016, the Svea Court of Appeal held that the arbitral tribunal lacked jurisdiction to decide the claims brought by the Yukos ADR investors against the Russian Federation. The attached judgment therefore documents the jurisdictional barrier encountered by ADR investors attempting to pursue the Russian Federation through that Treaty arbitration mechanism.

### 2. STRUCTURAL SIGNIFICANCE OF THE ADR ARRANGEMENT

In separate grounds addressing the same jurisdictional result, Appeals Judge PS identified as undisputed that the investors acquired Yukos ADRs from DBTCA in New York; that DBTCA, in turn, held shares in Yukos; and that acquisition of the ADRs created a legal relationship between the investors and DBTCA rather than between the investors and Yukos. Judge PS explained that, by acquiring ADRs rather than Yukos shares directly, the investors had placed "another party – Deutsche Bank – between themselves and the Yukos company."

Those grounds illustrate the structural consequence of the ADR arrangement relevant to the present action: the Beneficial Owners held their economic interests through an intermediary structure, while DBTCA occupied the intervening institutional position connected to the underlying Yukos shares.

### 3. RELEVANCE TO THE PRESENT ACTION

Plaintiff relies upon this Exhibit as evidence of the structural barrier confronting individual Yukos ADR beneficiaries. An individual ADR beneficiary cannot simply recreate DBTCA's historical position as Depositary and holder of the underlying shares by assignment, authorization, or independent litigation.

The Exhibit therefore supports Plaintiff's allegation that DBTCA's historical Depositary and shareholding position remains materially relevant to the protection and pursuit of the corresponding ADR-related recovery interests and to the prospective equitable relief sought in this action.

### 4. LIMITATION OF USE

Plaintiff does not contend that the Svea Court of Appeal adjudicated DBTCA's liability in this action, imposed upon DBTCA a duty to intervene in any particular United States proceeding, or established that DBTCA possesses exclusive standing to pursue every Yukos-related claim. Plaintiff relies upon the Swedish adjudication for the narrower proposition that the ADR structure created a legally consequential intermediation between the ADR investors and the underlying Yukos shares, and that the individual beneficiaries cannot independently recreate DBTCA's historical institutional position.

**Source:** Svea Court of Appeal, Case No. T 9128–14, Judgment dated January 18, 2016. Attached English text is identified in the source document as an unofficial translation.

This is an unofficial translation from www.arbitration.sccinstitute.com
[UNOFFICIAL TRANSLATION. PLEASE CHECK AGAINST ORIGINAL.]

**JUDGMENT OF THE COURT OF APPEAL**

1. The Court of Appeal amends the judgment of the District Court in the following manner.
   a) The Court of Appeal affirms that the arbitral tribunal does not have jurisdiction to decide the case brought by GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. through their request for arbitration against the Russian Federation of 25 March 2007.
   b) The Court of Appeal discharges the Russian Federation from the obligation to compensate GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. for their litigation costs before the District Court.
   c) GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. are ordered, jointly and severally, to compensate the Russian Federation for its litigation costs before the District Court in the amounts of SEK 5,661,504 and USD 1,375,850, plus interest on the amounts pursuant to Section 6 of the Swedish Interest Act from the date of the District Court's judgment until the day of payment. The above amounts comprise costs for legal counsel in the amounts of SEK 5,630,173 and USD 1,216,858, respectively.

2. GBI 9000 SICAV S.A., ALOS 34 S.L., Orgor de Valores SICAV S.A. and Quasar de Valors SICAV S.A. are ordered, jointly and severally, to compensate the Russian Federation for its litigation costs before the Court of Appeal in the amounts of SEK 2,442,698, USD 402,489.91 and GBP 3,775.96, plus interest on the amounts pursuant to Section 6 of the Swedish Interest Act from the date of the District Court's judgment until the day of payment. The above amounts comprise costs for legal counsel in the amounts of SEK 2,345,367 and USD 394,778.50, respectively.

This is an unofficial translation from www.arbitration.sccinstitute.com
[UNOFFICIAL TRANSLATION. PLEASE CHECK AGAINST ORIGINAL.]

**Dissenting grounds**

Appeals Judge PS dissents with respect to the grounds as follows.

The jurisdiction of the relevant arbitral tribunal may be based only on an arbitration agreement between the disputing parties, which are not the same as the contracting parties to the Treaty. In the present case, an arbitration agreement has arisen between the disputing parties through the Funds' acceptance of the Federation's offer to accept arbitration set out in the Treaty, in the form of the Funds' requesting arbitration against the Federation.

In the Treaty, the Federation has not offered arbitration for any forms of disputes that Spanish investors might want resolved. In article 10, the Federation has offered arbitration only for such disputes that relate to the amount and method of payment for compensation under article 6 ("relating to the amount or method of payment of the compensation due under article 6").

Thus, the Funds' request for arbitration must – in order for an arbitration agreement to arise between them and the Federation, which in its turn would grant the arbitral tribunal jurisdiction to decide the relevant dispute – correspond to the Federation's offer, i.e. relate to a dispute of such nature as the Federation has agreed to offer arbitration, in short disputes under article 6.

Article 6 governs expropriation and the like. It stipulates when expropriation is allowed, and the compensation that is due. It also provides that this relates to investments within the territory of the contracting party ("investments made within its territory").

The Federation maintains that the Funds' acquisition of Yukos ADR's was not an investment under article 1(2) of the Treaty, nor was it an investment within its territory. The Funds maintain the opposite.

The Funds' acquisition of Yukos ADR's is characterized by the following, which is undisputed in the present case. The Funds acquired Yukos ADR's from the issuer of the securities, namely Deutsche Bank Trust Company Americas ("Deutsche Bank"), registered in New York. Deutsche Bank, in its turn, held shares in the company Yukos. The Funds' acquisition of Yukos ADR's established a relationship between the Funds and Deutsche

This is an unofficial translation from www.arbitration.sccinstitute.com
[UNOFFICIAL TRANSLATION. PLEASE CHECK AGAINST ORIGINAL.]

Bank. The acquisition did not establish or entail any rights or obligations between the Funds and the Yukos company.

Compared to an acquisition of shares in Yukos, the Funds' acquisition of Yukos ADR's meant that the Funds put another party – Deutsche Bank – between themselves and the Yukos company. If the Funds alternative was to acquire shares in the Yukos company, it can be established that the Funds must have concluded that the advantages of acquiring Yukos ADR's outweighed the disadvantages.

The above leads to two conclusions. First, the rights that the Funds' acquisition of Yukos ADR's established for them in relation to Deutsche Bank is not an "asset" for the Funds in the sense set forth in article 1(2) of the Treaty, particularly not – due to the absence of rights and obligations between the Funds and the Yukos company – any kind of "participation" in the said company. Second, the Funds' acquisition of Yukos ADR's, due to the same absence, are not investments made within the Federation's territory in the sense set forth in article 6 of the Treaty.

The conclusion to be drawn from this is that the Federation's offer of arbitration does not cover investments of the kind the Funds' made by acquiring Yukos ADR's. Thus, the Funds' request for arbitration does not correspond to the Federation's offer of arbitration. The consequence is that the Funds' request for arbitration did not give rise to any arbitration agreement granting the arbitral tribunal jurisdiction to decide the dispute covered by the request.

Therefore, the claimant's motions shall be granted.

Concerning the question of litigation costs, I agree with the majority.

# EXHIBIT G: EXTRACTS FROM PUBLIC LAW 112–208 (MAGNITSKY ACT)

# EXHIBIT G: FEDERAL POLICY CONCERNING UNITED STATES YUKOS INVESTOR CLAIMS

*(Extracts from Public Law 112–208, Russia and Moldova Jackson–Vanik Repeal and Sergei Magnitsky Rule of Law Accountability Act of 2012)*

**SUBJECT:** Federal statutory policy context expressly addressing advocacy for United States investors in the Russian Federation, including promotion of the claims of United States investors in Yukos Oil Company, together with congressional findings concerning rule-of-law and due-process concerns arising from the Yukos matter.

## 1. EXPRESS REFERENCE TO UNITED STATES YUKOS INVESTOR CLAIMS

Section 202(a)(1)(B) directs the United States Trade Representative and the Secretary of State, in their reporting concerning promotion of the rule of law in the Russian Federation, to address measures taken and results achieved in:

**"…advocating for United States investors in the Russian Federation, including by promoting the claims of United States investors in Yukos Oil Company."**

The statute therefore expressly identifies the promotion of claims of United States investors in Yukos as a subject of federal governmental concern and reporting.

## 2. CONGRESSIONAL FINDINGS CONCERNING THE YUKOS MATTER

Public Law 112–208 separately records congressional concerns regarding the Yukos proceedings. Section 402(a)(13) states that the second trial, verdict, and sentence of former Yukos executives Mikhail Khodorkovsky and Platon Lebedev raised serious concerns regarding the right to a fair trial and judicial independence, and identifies alleged violations of due process and procedural norms among the matters described as "highly troubling."

These findings provide additional legislative context concerning the rule-of-law concerns associated by Congress with the Yukos matter.

## 3. RELEVANCE TO THE PRESENT ACTION

Plaintiff relies upon this Exhibit as federal policy context supporting the significance of protecting and promoting United States investor claims arising from Yukos. That policy context is relevant to Plaintiff's request that a United States court consider prospective equitable relief requiring DBTCA, a United States Depositary, to employ its historical Depositary and shareholding position to protect and pursue the corresponding Yukos ADR-related recovery interests.

## 4. LIMITATION OF USE

Plaintiff does not rely upon Public Law 112–208 as an independent cause of action, does not contend that the statute itself creates a private right of action against DBTCA, and does not contend that it independently imposes upon DBTCA a statutory duty to intervene in any particular proceeding. Plaintiff relies upon the statute solely as relevant federal policy context expressly recognizing governmental advocacy for United States investor claims in Yukos and congressional concern regarding the rule-of-law issues associated with the Yukos matter.

**Source:** Public Law 112–208, §§ 202(a)(1)(B), 402(a)(13), enacted December 14, 2012.

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

PUBLIC LAW 112–208—DEC. 14, 2012

# RUSSIA AND MOLDOVA JACKSON-VANIK REPEAL AND SERGEI MAGNITSKY RULE OF LAW ACCOUNTABILITY ACT OF 2012

(A) is classifiable under Executive Order No. 13526 (75 Fed. Reg. 707; relating to classified national security information) or a subsequent Executive order, the Trade Representative shall report that information to the Committee on Finance of the Senate and the Committee on Ways and Means of the House of Representatives by—

(i) including the information in a classified annex to the report required by paragraph (1); or

(ii) consulting with the Committee on Finance and the Committee on Ways and Means with respect to the information instead of including the information in the report or a classified annex to the report.

(3) PUBLIC COMMENTS.—

(A) IN GENERAL.—In developing the report required by paragraph (1), the Trade Representative shall provide an opportunity for the public to comment, including by holding a public hearing.

(B) PUBLICATION IN FEDERAL REGISTER.—The Trade Representative shall publish notice of the opportunity to comment and hearing required by subparagraph (A) in the Federal Register. Notice.

(b) REPORT ON ENFORCEMENT ACTIONS TAKEN BY TRADE REPRESENTATIVE.—Not later than 180 days after the effective date under section 102(b) of the extension of nondiscriminatory treatment to the products of the Russian Federation, and annually thereafter, the United States Trade Representative shall submit to the Committee on Finance of the Senate and the Committee on Ways and Means of the House of Representatives a report describing the enforcement actions taken by the Trade Representative against the Russian Federation to ensure the full compliance of the Russian Federation with its obligations as a member of the World Trade Organization, including obligations under agreements with members of the Working Party on the accession of the Russian Federation to the World Trade Organization.

**SEC. 202. PROMOTION OF THE RULE OF LAW IN THE RUSSIAN FEDERATION TO SUPPORT UNITED STATES TRADE AND INVESTMENT.**

(a) REPORTS ON PROMOTION OF RULE OF LAW.—Not later than one year after the effective date under section 102(b) of the extension of nondiscriminatory treatment to the products of the Russian Federation, and annually thereafter, the United States Trade Representative and the Secretary of State shall jointly submit to the Committee on Finance of the Senate and the Committee on Ways and Means of the House of Representatives a report—

(1) on the measures taken by the Trade Representative and the Secretary and the results achieved during the year preceding the submission of the report with respect to promoting the rule of law in the Russian Federation, including with respect to—

(A) strengthening formal protections for United States investors in the Russian Federation, including through the negotiation of a new bilateral investment treaty;

(B) advocating for United States investors in the Russian Federation, including by promoting the claims of United States investors in Yukos Oil Company;

Russian law to independently monitor prison conditions, concluded on December 29, 2009, “A man who is kept in custody and is being detained is not capable of using all the necessary means to protect either his life or his health. This is a responsibility of a state which holds him captive. Therefore, the case of Sergei Magnitsky can be described as a breach of the right to life. The members of the civic supervisory commission have reached the conclusion that Magnitsky had been experiencing both psychological and physical pressure in custody, and the conditions in some of the wards of Butyrka can be justifiably called torturous. The people responsible for this must be punished.”.

(12) Sergei Magnitsky’s experience, while particularly illustrative of the negative effects of official corruption on the rights of an individual citizen, appears to be emblematic of a broader pattern of disregard for the numerous domestic and international human rights commitments of the Russian Federation and impunity for those who violate basic human rights and freedoms.

(13) The second trial, verdict, and sentence against former Yukos executives Mikhail Khodorkovsky and Platon Lebedev evoke serious concerns about the right to a fair trial and the independence of the judiciary in the Russian Federation. The lack of credible charges, intimidation of witnesses, violations of due process and procedural norms, falsification or withholding of documents, denial of attorney-client privilege, and illegal detention in the Yukos case are highly troubling. The Council of Europe, Freedom House, and Amnesty International, among others, have concluded that they were charged and imprisoned in a process that did not follow the rule of law and was politically influenced. Furthermore, senior officials of the Government of the Russian Federation, including First Deputy Prime Minister Igor Shuvalov, have acknowledged that the arrest and imprisonment of Khodorkovsky were politically motivated.

(14) According to Freedom House’s 2011 report entitled “The Perpetual Battle: Corruption in the Former Soviet Union and the New EU Members”, “[t]he highly publicized cases of Sergei Magnitsky, a 37-year-old lawyer who died in pretrial detention in November 2009 after exposing a multimillion-dollar fraud against the Russian taxpayer, and Mikhail Khodorkovsky, the jailed business magnate and regime critic who was sentenced at the end of 2010 to remain in prison through 2017, put an international spotlight on the Russian state’s contempt for the rule of law * * *. By silencing influential and accomplished figures such as Khodorkovsky and Magnitsky, the Russian authorities have made it abundantly clear that anyone in Russia can be silenced.”.

(15) The tragic and unresolved murders of Nustap Abdurakhmanov, Maksharip Aushev, Natalya Estemirova, Akhmed Hadjimagomedov, Umar Israilov, Paul Klebnikov, Anna Politkovskaya, Saihadji Saihadjiev, and Magomed Y. Yevloyev, the death in custody of Vera Trifonova, the disappearances of Mokhmadsalakh Masaev and Said-Saleh Ibragimov, the torture of Ali Israilov and Islam Umarpashaev, the near-fatal beatings of Mikhail Beketov, Oleg Kashin, Arkadiy Lander, and Mikhail Vinyukov, and the harsh and ongoing

# EXHIBIT H: YUKOS CLAIMS ADMINISTRATION – DISTRIBUTION FRAMEWORK, CLAIM PROCESSING, AND CONTINUING RECOVERY (2015–2026)

## EXHIBIT H: YUKOS CLAIMS ADMINISTRATION — DISTRIBUTION FRAMEWORK, CLAIM PROCESSING, AND CONTINUING RECOVERY (2015–2026)

**SUBJECT:** Documentary record of the Yukos Claims Administration distribution framework, ILVEYS INC.'s participation and payment history, the dispute concerning calculation of its 50,000-ADR claim, and the renewed distribution activity confirmed in March 2026.

### 1. THE YUKOS DISTRIBUTION FRAMEWORK

The attached Notice of Distribution documents a recovery and distribution mechanism established for former holders of Yukos Ordinary Shares and Yukos American Depositary Receipts ("ADRs"). The Notice states that former Yukos subsidiaries were liquidating assets and pursuing legal claims with the objective of making a series of cash distributions to former Yukos shareholders, and that the initial Distribution Fund consisted of at least $337 million.

The Notice further provides that payments were determined pursuant to a Plan of Allocation rather than solely by each claimant's proportional ownership of Yukos equity. The methodology incorporated, among other variables, the number and type of securities held, acquisition and sale dates, event-based price reactions, and the aggregate Recognized Losses of Eligible Claimants.

### 2. ILVEYS INC.'S 50,000-ADR CLAIM AND CALCULATION DISPUTE

ILVEYS INC.'s claim based upon its 50,000 Yukos ADR position was accepted as eligible for payment. The Claims Administration ultimately determined the claim to be payable in the amount of $2,499.16.

ILVEYS INC. disputed that calculation and repeatedly requested a detailed written explanation. In its correspondence, ILVEYS INC. calculated that application of the published Plan of Allocation to its acquisition dates produced a substantially higher figure and requested clarification of how the $2,499.16 amount had been determined.

For purposes of the present action, Plaintiff separately identifies approximately $35,000 as a simple pro-rata benchmark that the same 50,000-ADR position would represent if a $337 million distribution were allocated according to proportional Yukos equity ownership. Plaintiff does not contend that this pro-rata benchmark was adjudicated or established by the Claims Administration as the amount legally payable to ILVEYS INC.

### 3. PAYMENT PROCESSING AND RELEASE CORRESPONDENCE

The attached correspondence documents the dispute concerning the calculation and payment of the approved claim. During that exchange, the Distribution Agent advised that further payment processing would not proceed while ILVEYS INC. appeared to reject the claim calculation, and later requested confirmation of the Release contained in the submitted Claim Form before restoring the claim to payable status.

ILVEYS INC. ultimately confirmed that it was not withdrawing its acceptance of the applicable rules and Release while continuing to request the promised calculation. The claim was thereafter restored to payable status, and ILVEYS INC. ultimately received the $2,499.16 distribution.

### 4. RENEWED DISTRIBUTION ACTIVITY IN 2026

On March 16, 2026, Epiq, acting as Distribution Agent for the Yukos Claims Administration, contacted ILVEYS INC. because it had previously submitted an approved claim and advised that the Distribution Agent was preparing to distribute another tranche of funds.

That notice documents that the Yukos recovery and claims-administration process remained active in 2026 and that additional recovered value continued to be available for distribution years after termination of the Yukos ADR program.

**5. RELEVANCE TO THE PRESENT ACTION**

Plaintiff relies upon these records to demonstrate the practical consequences of DBTCA's non-participation after representing that it was not involved in any Yukos claims process. The documents show that Yukos-related value survived, entered an organized recovery and distribution mechanism, and was actually distributed to Plaintiff's predecessor-in-interest while DBTCA did not assert the institutional position corresponding to the underlying Yukos shares administered through the ADR structure.

The records further support Plaintiff's allegation that the continuing absence of DBTCA left the individual ADR Beneficial Owner to present, dispute, and resolve its claim directly within the claims-administration framework without participation by the Depositary historically positioned between the ADR beneficiaries and the underlying Yukos shares.

**6. LIMITATION OF USE**

Plaintiff does not rely upon this Exhibit as establishing that the Plan of Allocation was judicially determined to be unlawful or discriminatory, that the approximately $35,000 pro-rata benchmark constituted an adjudicated entitlement, or that any particular recovery amount is presently owed by the Yukos Claims Administration or its managers. Plaintiff relies upon the attached records for the documented facts of the distribution methodology, claim-processing history, actual payment, continued recovery activity, and the resulting factual basis for Plaintiff's allegations concerning the consequences of DBTCA's absence.

**Sources:** Yukos Oil Claims Administration Notice of Distribution and Plan of Allocation; Claims Administration correspondence concerning ILVEYS INC.'s 50,000-ADR claim; payment records; and Epiq Distribution Agent notice dated March 16, 2026.

Gmail

I I <ilveysinc@gmail.com>

# Payment Information Update - Yukos Claim Administration

1 message

**Yukos Claims Administration** <yukosclaims@e.epiqnotification.com> 16 march 2026, 19:00
Reply-To: Info <info@yukosclaims.com>
To: "ilveysinc@gmail.com" <ilveysinc@gmail.com>

Click here to view this message in a browser window.

Dear Claimant,

We are Epiq, the Distribution Agent retained to assist with the administration of the Yukos Claim Administration. We are contacting you because you submitted an approved claim(s) in the Yukos Claim Administration.

This Distribution Agent is planning to distribute another tranche of funds. All payments will be made in US Dollars (USD). In preparation for the upcoming distribution, and to ensure payment is timely received, we are requesting an update to, or confirmation of, your preferred method of payment for your distribution payment(s).

If you do not respond by 3/31/2026, your payment will be sent via check to the most current address you have provided.

Please respond to this email with one of the below methods of payment:

- **Wire payment** – Payment for your claim submission will be made via a single wire.
    - If you choose this method of payment, **we will send you a template to complete with your wire payment instructions.**
- **Check payment** – Payment will be made via a single check per account, or claim, filed. If you choose this option, please provide the current addresses for each check to be mailed to.
- **Household checks** –If you are a 3rd party filer and submitted multiple claims and would like for all checks to be mailed to one address, please advise and your payments will be mailed together in one envelope to the address requested. If you choose this option, please confirm the correct address to which the checks should be mailed.

Sincerely,

Yukos Claim Administration
Distribution Agent
Email: Info@YukosClaims.com

Yukos Claims Administration
c/o Epiq
P.O. Box 2017

Portland, OR 97208-2017
USA

| COUNTRY | TOLL-FREE NUMBERS | TOLL NUMBERS |
|---|---|---|
| France | | 33 9 70 01 90 15 |
| Germany | 0 8001880934 | 69 257367384 |
| Netherlands | 0 8000232753 | 20 2170207 |
| Russia | 8 800 1006372 | 499 5044429 |
| Sweden | | 8 12410248 |
| Switzerland | 0 800802446 | 44 5083383 |
| United Kingdom | 0 8000966481 | 20 38070019 |
| United States | (888) 846-6410 | (210) 529-7539 |

Copyright © 2026 Yukos Claims Administration
Our address is Yukos Claims Administration c/o Epiq, P.O. Box 2017, Portland, OR 97208-2017, USA

If you do not wish to receive future email, click here.
(You can also send your request to **Customer Care** at the street address above.)

AM446 v.01

**YUKOS OIL CLAIMS ADMINISTRATION**
**NOTICE OF DISTRIBUTION**

**TO: ALL PERSONS WHO PURCHASED, ACQUIRED OR HELD SECURITIES OF YUKOS OIL COMPANY ("YUKOS") BETWEEN JULY 2, 2003 AND NOVEMBER 28, 2007, INCLUSIVE (the "RECOVERY PERIOD").**

- PLEASE READ THIS NOTICE CAREFULLY AND IN ITS ENTIRETY.
- YOU MAY BE ELIGIBLE FOR A DISTRIBUTION.
- IN ORDER TO RECEIVE A DISTRIBUTION, YOU MUST SUBMIT A VALID PROOF OF CLAIM FORM ("CLAIM FORM") SO IT IS **RECEIVED BY** MAY 30, 2016.
- IF YOU RECEIVED THIS NOTICE ON BEHALF OF A FORMER YUKOS SHAREHOLDER WHO IS DECEASED, YOU SHOULD PROVIDE THIS NOTICE TO THE AUTHORIZED LEGAL REPRESENTATIVE OF THAT PERSON.

**YOU ARE HEREBY NOTIFIED AS FOLLOWS:**

You have received this Notice because you may have purchased, acquired or held Yukos Ordinary Shares or Yukos American Depositary Receipts ("ADRs") during the Recovery Period, July 2, 2003 through and including November 28, 2007, and you may be eligible to receive a distribution. This Notice is designed to inform you of the manner in which the Distribution Fund will be distributed and how you can submit a Claim Form. A copy of this Notice may be found at www.yukosclaims.com, the website maintained by Garden City Group, LLC, the Distribution Agent (the "Distribution Agent") retained to assist with the administration of this matter.

## I. BACKGROUND OF THE DISTRIBUTION FUND

Certain former foreign subsidiaries of Yukos Oil Company (the "Yukos Group") have been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company. As each of the remaining Yukos Group assets is liquidated over time, a portion of the proceeds therefrom, as determined by the Yukos Group, will be deposited into a fund (the "Distribution Fund"), and will be distributed to former Yukos shareholders on a rolling basis.

The Distribution Fund consists of at least $337,000,000 USD. Your recovery from the Distribution Fund will depend on a number of variables, including the number of Yukos Ordinary Shares and Yukos ADRs that you purchased, acquired or held during the Recovery Period, the timing of your purchases, acquisitions, and sales of said securities, and the total number of claimants who are either pre-approved ("Pre-Approved Claimants")[1] or who submit a timely claim that is finally determined by the Distribution Agent to be eligible for distribution pursuant to the Plan of Allocation attached hereto as Appendix A, and who are not Excluded Parties, as that term is defined below (collectively, "Eligible Claimants"). The initial distribution will be made from funds held in the structure controlled by Stichting Administratiekantoor Financial Performance Holdings, the ownership of which is no longer in dispute as a result of the settlement with Rosneft Oil Company.

Any questions regarding the Yukos Claims Administration should be directed to the Distribution Agent through email, at info@yukosclaims.com, by mail to Yukos Claims Administration, c/o GCG, P.O. Box 9601, Dublin, OH 43017-4901, USA (via First Class Mail within the United States or International Priority Mail outside the United States) or by calling one of the telephone numbers listed in Section III, below.

## II. IMPORTANT INFORMATION

### A. What is the amount of the Distribution Fund?

The Yukos Group has been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company. A portion of the proceeds therefrom, as determined by the Yukos Group, will be deposited into the Distribution Fund, and will be distributed to Eligible Claimants on a rolling basis. The Distribution Fund consists of at least $337 million USD.

### B. How do I know if I am eligible to participate in the Distribution Fund?

You are potentially eligible to receive a distribution if you purchased, acquired or held Yukos Ordinary Shares or Yukos ADRs during the Recovery Period, regardless of where you live or where those shares were purchased. Former subsidiaries of Yukos Oil Company are excluded from participation ("Excluded Parties").

**PLEASE NOTE: RECEIPT OF THIS NOTICE DOES NOT MEAN THAT YOU WILL BE ENTITLED TO RECEIVE PROCEEDS FROM THE DISTRIBUTION FUND. IF YOU MEET THE ELIGIBILITY CRITERIA ABOVE AND YOU WISH TO PARTICIPATE IN THE DISTRIBUTION OF PROCEEDS FROM THE DISTRIBUTION FUND, YOU ARE REQUIRED TO SUBMIT THE CLAIM FORM THAT**

[1] Pre-Approved Claimants include shareholders known to Yukos who held Yukos Ordinary Shares throughout the entire Recovery Period, and who will not be required to file a claim in order to receive a distribution.

**IS BEING DISTRIBUTED WITH THIS NOTICE AND THE REQUIRED SUPPORTING DOCUMENTATION AS SET FORTH THEREIN SO THAT IT IS RECEIVED BY MAY 30, 2016.**

**C. How can I file a claim?**

You may file a claim in one of three ways: (i) by filing a claim online through the administration website, www.yukosclaims.com; (ii) by mailing a Claim Form to the Distribution Agent at the address located in Section III, below; or (iii) if you are an institutional filer, by submitting all transactions electronically through the Distribution Agent's proprietary institutional claim filing website.

If you file your claim online, use the claim number and control number printed on the first page of the Claim Form that was mailed to you. Save both your claim number and control number, as they will be necessary for any further transactions and communication with the Distribution Agent.

The Distribution Agent shall have the right to request, and claimants shall have the burden of providing to the Distribution Agent, any additional information and/or documentation deemed relevant by the Distribution Agent.

THE DISTRIBUTION AGENT WILL ACKNOWLEDGE RECEIPT OF YOUR CLAIM FORM BY MAIL OR EMAIL (TO THE EXTENT THAT YOU PROVIDED AN EMAIL ADDRESS ON THE CLAIM FORM), WITHIN 60 DAYS OF RECEIPT OF YOUR CLAIM. YOUR CLAIM IS NOT DEEMED FILED UNTIL YOU RECEIVE AN ACKNOWLEDGEMENT EMAIL OR POSTCARD. IF YOU DO NOT RECEIVE AN ACKNOWLEDGEMENT EMAIL OR POSTCARD WITHIN 60 DAYS, PLEASE CONTACT THE DISTRIBUTION AGENT.

If you do not file a valid, timely claim, you will not receive a distribution. The only exception pertains to Pre-Approved Claimants, who do not need to file a claim in order to be paid.

Copies of this Notice and the Claim Form included with this Notice can be obtained from the administration website, www.yukosclaims.com, by email at info@yukosclaims.com, or by calling one of the telephone numbers listed in Section III, below. You may also file a claim online at the administration website.

**D. How much will my payment be?**

The Plan of Allocation, attached as Appendix A, provides for distribution of the Distribution Fund. Each Eligible Claimant's claim will be calculated according to the Plan of Allocation.

**E. If my claim is approved, how will I be paid?**

If you live in France, Germany, the Netherlands, Russia, Sweden, Switzerland, the United Kingdom or the United States (the "Target Countries"), on your Claim Form you may elect to receive payment by check or by electronic fund transfer ("EFT"). If you request payment by EFT, you MUST also provide a valid email address on the Claim Form; however, all residents of Russia must receive payments electronically, as explained below. Prior to the first distribution, the Distribution Agent will notify you by email, at the email address you provide in your claim filing, requesting complete and accurate banking information. If you timely respond to the email with complete and accurate banking information, you will receive your distribution by EFT in the official currency of your Target Country, if your claim is approved.

If you do not elect a payment method, or if your banking information is incorrect or incomplete, you will receive your payment by check sent via U.S. or international mail, and you will be paid in U.S. Dollars, unless you are domiciled in Russia, in which case your payment will be sent only via wire in Rubles, as discussed below.

Regardless of the method of payment requested, (a) if you do not reside in a Target Country, distributions will be paid by check or bank draft in U.S. Dollars; and (b) if you reside in Russia, distributions will be wired in Rubles after proper banking information is received. Prior to the first distribution, the Distribution Agent will notify you by email requesting your banking information. Russian residents must provide valid and complete banking information in order to be paid. *If you live in Russia and you do not provide complete and accurate banking information, your claim will not be eligible for payment.*

**F. What If I bought Yukos Ordinary Shares or ADRs on someone else's behalf?**

If you purchased, acquired or held Yukos Ordinary Shares or ADRs during the Recovery Period for the beneficial interest of another eligible claimant, you must either (a) send copies of the Notice and Claim Form to the beneficial owners of the shares or ADRs within five business days from the receipt of the Notice, and provide written confirmation to the Distribution Agent of such; or (2) provide the names and addresses of such persons or entities to Yukos Claims Administration, c/o GCG, P.O. Box 9601, Dublin, OH 43017-4901, USA (via First Class Mail within the United States or International Priority Mail outside the United States). If you choose the second option, the Distribution Agent will send a copy of the Notice and the Claim Form to the beneficial owners. Upon full compliance with these directions, such nominees may seek reimbursement of their reasonable expenses actually incurred, by providing the Distribution Agent with proper documentation supporting the out-of-pocket expenses for which reimbursement is sought.

Copies of this Notice and the Claim Form can be obtained from the administration website, www.yukosclaims.com, by email at info@yukosclaims.com, or by calling one of the telephone numbers listed in Section III, below.

G. **<u>What should I do to make sure the Distribution Agent has my correct address?</u>**

If your address changes from the address to which this Notice was directed, you must notify the Distribution Agent of your new address as soon as possible. Failure to keep the Distribution Agent informed of your address may result in the loss of any monetary award you might be eligible to receive. Please send your new contact information in writing to the Distribution Agent at the address listed below and include your old address, new address, new telephone number, your claim number and control number printed on the first page of the Claim Form that was mailed to you.

## III. GETTING MORE INFORMATION

You may obtain additional information by contacting the Distribution Agent through email, at info@yukosclaims.com, by mail (via First Class Mail within the United States or International Priority Mail outside the United States) to

**Yukos Claims Administration**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901**
**USA**

or by calling one of the telephone numbers below:

| COUNTRY | TOLL FREE NUMBERS | TOLL NUMBERS |
|---|---|---|
| France | 0 800913918 | 170394943 |
| Germany | 0 8001880934 | 69 257367384 |
| Netherlands | 0 8000232753 | 20 2170207 |
| Russia | 8 800 1006372 | 499 5044429 |
| Sweden | 0 200120641 | 8 12410248 |
| Switzerland | 0 800802446 | 44 5083383 |
| United Kingdom | 0 8000966481 | 20 38070019 |
| United States | (888) 846-6410 | (210) 529-7539 |

## APPENDIX A

## PLAN OF ALLOCATION OF DISTRIBUTION FUND

1. The objective of the Plan of Allocation is to distribute the Distribution Fund to former Yukos shareholders. The Plan of Allocation reflects calculations undertaken by the Yukos Group's economic advisor to determine an Eligible Claimant's relative losses in Yukos Ordinary Shares and ADRs according to the agreed-upon formula.

2. The calculations made pursuant to this Plan of Allocation are not intended to be estimates of the amounts that will be paid to Eligible Claimants. The computations under the Plan of Allocation are only a method to weigh the claims of Eligible Claimants against one another for the purposes of making pro rata allocations of the Distribution Fund.

3. In order to have a Recognized Loss (as calculated pursuant to the provisions below), a former Yukos shareholder must have held, purchased, or acquired Yukos Ordinary Shares or Yukos ADRs during the Recovery Period.

### CALCULATION OF RECOGNIZED LOSS AMOUNTS

4. For purposes of determining whether a Claimant has a "Recognized Loss," purchases, acquisitions, and sales of Yukos Ordinary Shares and ADRs will first be matched on a Last In/First Out ("LIFO") basis as set forth in paragraph 7 below.

5. A "Recognized Loss" will be calculated as set forth below for each Yukos Ordinary Share or ADR purchased, acquired, or held during the Recovery Period (i.e., July 2, 2003 through and including November 28, 2007), that is listed in the Claim Form and for which adequate documentation is provided. A Recognized Loss does not reflect the amount an Eligible Claimant will be paid from the Distribution Fund; rather, it reflects the proportionate amount of the distribution that the Eligible Claimant will receive as compared to all Eligible Claimants.

6. The distribution of available funds will be made on a pro rata basis based on each former Yukos shareholder's percentage share of aggregated "Recognized Losses" from all investors based on the following methodology:

A. The Event Dates in Table 1 represent developments in the investigation of Yukos by the Russian government over the period July 2003 to August 2006.

B. The total price reaction for each claim shall be calculated by aggregating the market-adjusted price reactions on the "Reaction Dates" indicated in Table 1 that occur after the investor's purchase date, and before the investor's sale date (the "Holding Period"). Thus, the "Abnormal Price Reaction" indicated in Table 1 after every purchase date and prior to every sale date must be added together to derive the total loss per share. For example, if a claimant bought Yukos Ordinary Shares prior to July 2, 2003 and never sold them, the total loss per share would be $14.45.[2]

C. This total price reaction over each investor's Holding Period will be further discounted to arrive at the total Recognized Loss per share, with a larger discount for purchases made later in the period. Table 1 shows the discount to be applied based on each claimant's purchase date. The discount is calculated by starting at 0%, and increasing by equal increments (1/19, or approximately 5.26%) to 100% on each Event Date over the entire event window.

D. Each investor's total Recognized Loss shall be calculated by multiplying the number of shares purchased by the Recognized Loss per share.

E. The additional discounts on Recognized Loss calculations for purchases later in the period, as set forth in Table 1, result in lower Recognized Losses for individuals and entities who purchased Yukos Ordinary Shares or ADRs after continuing developments in the Russian government investigation gradually increased the speculative nature of the investment.

### ADDITIONAL PROVISIONS

7. If an Eligible Claimant has more than one purchase, acquisition or sale of Yukos Ordinary Shares or ADRs during the Recovery Period, all purchases, acquisitions and sales shall be matched on a LIFO basis. The LIFO methodology dictates that any sales of Yukos Ordinary Shares or ADRs will be paired against the most recent purchase for the purposes of calculating the Recognized Loss.

8. Purchases, acquisitions and sales of Yukos Ordinary Shares or ADRs shall be deemed to have occurred on the "contract" or "trade" date as opposed to the "settlement" or "payment" date. The receipt or grant by gift, inheritance or operation of law of Yukos Ordinary Shares or ADRs during the Recovery Period shall not be deemed a purchase, acquisition or sale of these Yukos Ordinary Shares or ADRs for the calculation of an Eligible Claimant's Recognized Loss, nor shall the receipt or grant be deemed an assignment of any claim relating to the purchase/acquisition of such Yukos Ordinary Shares or ADRs, unless (i) the donor or decedent purchased

[2] The ratio of ADRs to Yukos Ordinary Shares was 4 Yukos Ordinary Shares to 1 ADR throughout the Recovery Period. Applicable "Abnormal Price Reactions" in Table 1 will be multiplied by 4 for each ADR held. Please also note that the numbers listed in the "Abnormal Price Reaction" column of Table 1 are rounded. Calculations made under the Plan of Allocation will use the precise numbers that are not rounded.

or otherwise acquired such Yukos Ordinary Shares or ADRs during the Recovery Period; (ii) no Claim Form was submitted by or on behalf of the donor, on behalf of the decedent, or by anyone else with respect to such Yukos Ordinary Shares or ADRs; and (iii) it is specifically so provided in the instrument of gift or assignment.

9. Yukos Ordinary Shares and ADRs are the only securities eligible for recovery under the Plan of Allocation.

10. An Eligible Claimant's Recognized Loss shall be the amount used to calculate the Eligible Claimant's pro rata share of the Distribution Fund. If the sum total of Recognized Losses of all Eligible Claimants entitled to receive payment out of the Distribution Fund is greater than the Distribution Fund, each Eligible Claimant shall receive his, her, or its pro rata share of the Distribution Fund. The pro rata share shall be the Eligible Claimant's Recognized Loss divided by the total Recognized Losses of all Eligible Claimants, multiplied by the total amount in the Distribution Fund.

11. The Distribution Fund will be allocated among all Eligible Claimants whose prorated payment is $25.00 USD or greater. If the prorated payment to any Eligible Claimant calculates to less than $25.00 USD, it will not be included in the calculation and no distribution will be made to that Eligible Claimant.

12. If the Distribution Fund exceeds the sum total amount of the Recognized Losses of all Eligible Claimants entitled to receive payment out of the Distribution Fund, the excess amount in the Distribution Fund shall be distributed pro rata to all Eligible Claimants entitled to receive payment. The Distribution Agent will distribute the funds in several tranches. The initial distribution will be comprised of payments to Pre-Approved Claimants on a rolling basis. After all timely submitted Claim Forms have been processed and all claimants whose claims have been rejected or disallowed have been provided with the opportunity to cure, funds will be distributed to claimants whose claims have been approved. The funds distributed in this second tranche will be allocated in the same proportion as the first tranche of payments, so that all claimants with approved claims are in parity with the Pre-Approved Claimants.

13. If any funds remain in the Distribution Fund by reason of uncashed distributions or additional funds become available for distribution after the completion of the Initial Distribution, the Distribution Agent, in consultation with the Yukos Group, can at its discretion, pay late claims, and/or, if the amount available is sufficient to warrant an additional distribution, then anyone who received an electronic payment or cashed a check in the Initial Distribution and who would receive at least $25.00 USD, may receive a second payment on a pro-rata basis after payment of any unpaid costs or fees incurred in administering the Distribution Fund, including costs for fees for such redistribution. The Distribution Agent, in consultation with the Yukos Group, may make further redistributions of balances remaining in the Distribution Fund to such Eligible Claimants to the extent such redistributions are cost-effective.

14. The Plan of Allocation may be modified without further notice. Any modifications to the Plan of Allocation will be posted on the Distribution Agent's website at www.yukosclaims.com.

**TABLE 1**

| **Yukos Oil Company Claim Calculation Inputs (US$)** | | | |
|---|---|---|---|
| **Event Date** ***Month/Day/Year*** | **Reaction Date** ***Month/Day/Year*** | **Abnormal Price Reaction*** | **% Discount if Purchase Occurs on or after Reaction Date** |
| 7/2/2003 | 7/3/2003 | $ (0.76) | 5.3% |
| 7/9/2003 | 7/10/2003 | $ (0.92) | 10.5% |
| | 7/11/2003 | $ (0.91) | 10.5% |
| 10/25/2003 | 10/27/2003 | $ (2.00) | 15.8% |
| 12/5/2003 | 12/5/2003 | $ (0.60) | 21.1% |
| 4/20/2004 | 4/20/2004 | $ (0.72) | 26.3% |
| 4/26/2004 | 4/26/2004 | $ (0.93) | 31.6% |
| 7/1/2004 | 7/1/2004 | $ (1.15) | 36.8% |
| 7/20/2004 | 7/20/2004 | $ (1.25) | 42.1% |
| | 7/21/2004 | $ (0.84) | 42.1% |
| | 7/22/2004 | $ (0.63) | 42.1% |
| 11/2/2004 | 11/2/2004 | $ (0.58) | 47.4% |
| | 11/3/2004 | $ (0.39) | 47.4% |
| 11/19/2004 | 11/19/2004 | $ (0.76) | 52.6% |
| 12/28/2004 | 12/28/2004 | $ (0.18) | 57.9% |
| | 12/30/2004 | $ (0.08) | 57.9% |
| 2/24/2005 | 2/25/2005 | $ (0.08) | 63.2% |
| 1/18/2006 | 1/19/2006 | $ (0.47) | 68.4% |
| 3/13/2006 | 3/13/2006 | $ (0.69) | 73.7% |
| 3/29/2006 | 3/29/2006 | $ (0.21) | 78.9% |
| 7/25/2006 | 7/25/2006 | $ (0.22) | 84.2% |
| 7/27/2006 | 7/27/2006 | $ 0.25 | 89.5% |
| 8/1/2006 | 8/2/2006 | $ (0.17) | 94.7% |
| Last Day of Trading | 11/28/2007 | $ (0.14) | 100.0% |

*Figures after the decimal points indicate cents of US Dollars.

DATED: December 2, 2015

Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901
Info@YukosClaims.com

YKO

| Claim number: | 92B37B5C27 |
|---|---|

| Control number: | 7A9EF6FBD5 |
|---|---|

ILVEYS INC.
AKARA BLDG., 24 DE CASTRO
STREET, WICKHAMS CAY 1
ROAD TOWN
TORTOLA
VIRGIN ISLANDS, BRITISH

# CONFIRMATION OF FILING OF A CLAIM ONLINE

THIS IS CONFIRMATION OF YOUR APPLICATION SUBMITTED. PRINT THIS PAGE AND KEEP IT FOR FUTURE REFERENCE. IF YOU HAVE NOT UPLOAD THE ACCOMPANYING DOCUMENTATION TO THE WEBSITE, PLEASE SEND A COPY OF THIS PAGE WITH ALL ACCOMPANYING DOCUMENTATION TO THE ADDRESS INSERT ABOVE.

| | | |
|---|---|---|
| SHARES OWNED (BEGINNING OF COMPENSATION PERIOD): The number of common shares and ADRs of Yukos that you owned as of the close of trading on July 1, 2003. If absent, enter "0". (If necessary, enter<br><br>(Please attach accompanying documentation.) | 0<br>Common Shares | 0<br>ADR |

ACQUISITION or RECEIPT: Acquisition or receipt of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of purchase or receipt (NUM/MON/YEAR) | Number of common shares or ADRs purchased or received |
|---|---|---|---|
| | Y | November 16, 2004 | 10000 |
| | Y | November 25, 2004 | 10000 |
| | Y | November 29, 2004 | 5000 |
| | Y | March 30, 2005 | 25000 |
| | Y | August 23, 2005 | 20000 |

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.

| Claim number statements: | 92B37B5C27 |
|---|---|

| Control number: | 7A9EF6FBD5 |
|---|---|

SALES: Sales of ordinary shares and ADRs of YUKOS between July 2, 2003 and November 28, 2007, inclusive. (Supporting documentation must be attached.)

| Ordinary shares | ADR | Date(s) of sale (DATE/MONTH/YEAR) | Number of common shares or ADRs sold |
|---|---|---|---|
| | Y | August 23, 2005 | 20000 |

| | | |
|---|---|---|
| SHARES HOLDING (END OF COMPENSATION PERIOD): The number of shares of Yukos common stock and ADRs you owned as of the close of trading on November 28, 2007. If not indicated, enter 0 (Required).<br><br>(Please attach accompanying documentation.) | 0<br>Ordinary shares | 50,000<br>ADRs |

If you are sending supporting documentation by mail, do not send the original documents. Please send photocopies on 8 1/2 x 11 inch (216 x 279 mm) paper.


FedEx
Page 1 of 1
BILL SENDER
TO ATTN: PRIDOROGIN VLADIMIR
ILVEYS INC
7 LEWIS CIRCLE
STE 703444
WILMINGTON DE 19804
WED - 10 JAN 3:00P
STANDARD OVERNIGHT
7711 7202 6390
19804
DE-US PHL
EE ILGA
415
9
5
15:00
A
earthsmart
FedEx carbon-neutral
envelope shipping
TO EXPOSE ADHESIVE REMOVE LINER
Align bottom of peel-and-stick airbill or pouch here.
Align top of FedEx Express® shipping label here.

Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901

| | |
|---|---|
| Claim Number: | 92B37B5C27 |
| Check Number: | 00002756 |
| Check Date: | 01/09/18 |
| Check Amount: | $2,499.16 |

ILVEYS INC.
7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

Ref No.: 7A9EF6FBD5

**YUKOS OIL CLAIMS ADMINISTRATION**
**c/o GCG**
**P.O. Box 9601**
**Dublin, OH 43017-4901 USA**

**Distribution Agent**

Dear Claimant:

The attached check represents your pro rata share of the Distribution Fund in the ***Yukos Oil Claims Administration***. You are receiving this payment because you submitted an eligible claim for the purchase, acquisition or holding of Yukos Ordinary Shares or Yukos American Depositary Receipts during the Recovery Period, July 2, 2003 through and including November 28, 2007.

The funds available for distribution consist of a portion of the cash assets of certain former foreign subsidiaries of Yukos Oil Company (the "Yukos Group"), that have been liquidating assets and pursuing various legal claims with the ultimate goal of making a series of cash distributions to former shareholders of Yukos Oil Company. The total amount of the Distribution Fund available for this distribution is approximately $337 million and your payment was calculated in accordance with the Plan of Allocation set forth in the Notice of Distribution ("Notice"), which was previously sent to you and which is posted on the administration website at http://www.yukosclaims.com.

The tax treatment of this distribution varies based upon the recipient's tax status and treatment of his, her or its investments. Therefore, we cannot determine the appropriate tax reporting for all recipients and we cannot provide individual tax advice. The tax treatment of payments from the Yukos Distribution Fund is the responsibility of each recipient. **You should consult your tax advisor to determine the tax consequences, if any, of this payment to you.**

**Please cash this check promptly, as it becomes void and subject to re-distribution if not cashed by January 31, 2018.** If you have changed your address from the address on the accompanying check or if you have any questions, you may contact the Distribution Agent through email, at info@yukosclaims.com, by mail at the above mailing address or by calling one of the multi-national telephone numbers listed at the administration website and in the Notice.

Thank you.

Yukos Distribution Agent

Yukos Claims Administration
c/o GCG
P.O. Box 9601
Dublin, OH 43017-4901
USA

**Bank of America**

64-5/610 GA

01/09/18 00002756

Pay *Two thousand four hundred ninety nine and 16/100 Dollars*

******$2,499.16

Pay to the order of ILVEYS INC.
7 LEWIS CIRCLE
STE 703444
WILMINGTON, DE 19804

CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTIO
IF NOT CASHED BY 01/31/2018.

BY
AUTHORIZED SIGNATURE

⑈002756⑈ ⑆061000052⑆ 3340371244 76⑈

To: Bank of Cyprus, PCL, IBU Limassol, 388

From: Mr Vladimir Pridorogin on behalf of ILVEYS INC.

Date: 23.01.2018

Dear Sirs,

Please, find attached a draft check no. 00002756 dated 01/09/18 (January 9, 2018) signed for the clearing. Please, accept funds indicated in the provided check to the following USD account of our company ILVEYS INC.:

Acc.: 357012953416

If any commission, please, charge the same account of us: 357012953416

Best regards,

Mr Vladimir Pridorogin__________

on behalf of ILVEYS INC.

# RE: Yukos Claims Administration - NOTICE OF ELIGIBILITY

**Info@yukosclaims.com** <Info@yukosclaims.com> **Dec 26, 2017** at **23:49**
To: Me

Dear Sir or Madam,
We are not aware that any representative of the Distribution Agent promised to provide you with a written calculation of the payment amount. However, be now agreed with the payment amount, and re-confirmed the release provisions in the claim form, which are also set forth in part in the email below, we will payment into a payable status.
Regards,
Yukos Distribution Agent

**From:** I I [mailto:ilveysinc@gmail.com]
**Sent:** Tuesday, December 19, 2017 11:45 AM
**To:** Info@yukosclaims.com
**Subject:** Re: Yukos Claims Administration - NOTICE OF ELIGIBILITY

Hello!
I agree with the rules, I agree with the discount, I do not cancel my signature.
In August, you promised to give us a written calculation of the amount.
You do not give us your calculation and accuse me of disagreeing with the calculation! It is not right.
I gave you a bank account. You think your amount is right, well - pay.

2017-12-19 18:20 GMT+03:00 Info@yukosclaims.com <Info@yukosclaims.com>:
Dear Sir or Madam,

Thank you for your email regarding Claim Number 92B37B5C27 filed on behalf of Ilveys Inc. in the Yukos Claims Administration. Please be advised that t agree with the calculation of your claim, your statements negate the Release provisions in the Proof of Claim form and therefore nullify the signature on you

For this reason, your claim is rejected.

**This is the last notification you will receive in connection with your claim.**

Regards,

Yukos Distribution Agent [MRM]

**From:** I I [mailto:ilveysinc@gmail.com]
**Sent:** Wednesday, November 08, 2017 5:08 AM

**To:** Info@yukosclaims.com
**Subject:** Re: Yukos Claims Administration - NOTICE OF ELIGIBILITY

Hello!
How can I tell you that I have no claim to you? You did not give me a written report on the specified amount, which we agreed by the phone on August 15.
You made a mistake in the calculations. You have to pay us $17,750.
If you do not agree with our amount, please give us a written report about how you formed the specified amount of $ 2,500.

2017-11-03 21:54 GMT+03:00 Info@yukosclaims.com <Info@yukosclaims.com>:
Dear Sir or Madam,

We would be happy to issue your payment forthwith. However, given your prior comments, we need you to confirm your release, as provided below and which was cop form that was submitted.

> I agree that under no circumstances shall Stichting Administratiekantoor Financial Performance Holdings, any of its affiliates, any other entity making a distributi herewith or any of their respective officers, directors employees or agents, including the Distribution Agent, incur any liability to me or to any other person if it n in accordance with the Notice and Plan of Allocation.

Once we receive your confirmation, we will update the claim to a payable status.

Regards,
Yukos Distribution Agent (MRM)

**From:** I I [mailto:ilveysinc@gmail.com]
**Sent:** Monday, October 23, 2017 5:44 PM

**To:** Info@yukosclaims.com
**Subject:** Re: Yukos Claims Administration - NOTICE OF ELIGIBILITY

Hello!
You wrote to me that you provided a calculation of the amount. No, we agreed by phone on August 19 that you will give us a written estimate of the amount us anything.
And what do you care what we think. In any case, whatever I thought, you should pay to us our share of Yukos money. I gave you the bank details. If you w please notify me of this and give the tracking number.

2017-10-05 19:42 GMT+03:00 Info@yukosclaims.com <Info@yukosclaims.com>:
Dear Sir or Madam,

As noted below on September 26, 2017 it appears that you do not accept the calculation of your claim. If you can kindly confirm that you agree with your claim calculatio the future with your distribution.
Regards,
Yukos Distribution Agent [MRM]

**From:** I I [mailto:ilveysinc@gmail.com]
**Sent:** Tuesday, September 26, 2017 1:01 PM

**To:** Info@yukosclaims.com
**Subject:** Re: Yukos Claims Administration - NOTICE OF ELIGIBILITY

Are you going to misappropriate even these little money?

2017-09-26 18:09 GMT+03:00 Info@yukosclaims.com <Info@yukosclaims.com>:
Dear Sir or Madam,

Thank you for your email regarding claim number 92B37B5C27 filed on behalf of Ilveys Inc. in the Yukos Claims Administration. As you requested, we explained how c calculated via email on July 19, 2017. In addition, we explained the calculation on August 15, 2017 via telephone. Based on your email correspondence, it appears that yo calculation and as a result no further processing of your payment will take place.

Regards,

Yukos Distribution Agent [KH]

**From:** I I [mailto:ilveysinc@gmail.com]
**Sent:** Monday, September 11, 2017 3:45 PM

**To:** Info@yukosclaims.com
**Subject:** Re: Yukos Claims Administration - NOTICE OF ELIGIBILITY

Please answer the question!
When are you going to pay money? Will you pay to the bank account? Or send a check? If you send a check, will you inform me that you sent the check?

2017-09-08 14:17 GMT+03:00 I I <ilveysinc@gmail.com>:
Please answer the question!
When are you going to pay money? Will you pay to the bank account? Or send a check? If you send a check, will you inform me that you sent the check?

2017-09-02 12:23 GMT+03:00 I I <ilveysinc@gmail.com>:
Hello!
You do not want to answer us. Good.
Well, when are you going to pay money? Will you pay to the bank account? Or send a check? If you send a check, will you tell me that you sent the check?

2017-07-19 19:16 GMT+03:00 I I <ilveysinc@gmail.com>:
This answer is not accepted( Many words, but nothing is clear. We absolutely do not understand anything!
You determined the amount to the nearest cent. 2499 dollars and 16 cents. Sixteen cents!!!
Please provide us a detailed calculation of this amount.
You required from us a complete set of documents, We require a detailed calculation. We do not need empty words,
Please provide a detailed calculation!!!

2017-07-19 17:32 GMT+03:00 Info@yukosclaims.com <Info@yukosclaims.com>:

Dear Sir or Madam,

Thank you for your e-mail. To understand how your payment was calculated, please review the methodology set forth in the Notice, which is posted on the website, at http://www.yukosclaims.com/. In particular, please review the Plan of Allocation, which appears in Appendix A of the Notice.

Briefly, your documented shares will be used to calculate your "Recognized Loss." Using Table 1 in the Plan of Allocation, the total price reaction per share aggregating "Abnormal Price Reactions" according to the acquisition and trade dates. All of the "Abnormal Price Reactions" after each purchase and prior added together to determine the total abnormal price reaction. The abnormal price reaction per share is further discounted based on the 19 events. For exam Yukos Ordinary Shares on July 1, 2003 and never sold them, the total loss for each share would be $14.45, there is no further discount since there are no adv took place. All purchases and acquisitions are matched against sales on a LIFO basis (please see the Notice for additional information on LIFO matching).

It is important to note that all Eligible Claimants' total Recognized Losses exceed the amount in the Distribution Fund. Accordingly, each investor's Recog be paid on a pro rata basis, as long as the amount equals or exceeds $25 USD. The pro rata is determined by taking your total Recognized Losses, dividing the total Recognized Losses of all Eligible Claimants, and multiplying by the total amount in the Distribution Fund. The pro rata for all Eligible Claimants i the Recognized Loss.

If you have any further questions, please do not hesitate to contact us.

Regards,

Yukos Distribution Agent [JT]

**From:** I I [mailto:ilveysinc@gmail.com]
**Sent:** Tuesday, July 18, 2017 2:11 AM
**To:** Info@yukosclaims.com
**Subject:** Re: Yukos Claims Administration - NOTICE OF ELIGIBILITY

Hello!

You did not answer our question about the payment of 2499.16 US dollars.

We present you our calculation:

Shareholders who bought shares before 02.07.2003. received $ 0.20566 per share.

We bought ADRs (See app.):

1) 10'000 ADR - 16.11.2004.
According to your table, the discount from the purchase on this date is 47.4%. Thus, the amount of payment from this purchase is 0.108177 $ per share or 0 ADR. Total with this purchase: 4'327.08 $.

2) 10'000 ADR - 25.11.2004.
According to your table, the discount from the purchase on this date is 52.6%. Thus, the amount of payment from this purchase is 0.097483 $ per share or 0 ADR. Total with this purchase: 3'899.31 $.

3) 5'000 ADR - 29.11.2004.
According to your table, the discount from the purchase on this date is 52.6%. Thus, the amount of payment from this purchase is 0.097483 $ per share or 0 ADR. Total with this purchase: 1'949.66 $.

4) 25'000 ADR - 30.03.2005.
According to your table, the discount from the purchase on this date is 63.2%. Thus, the amount of payment from this purchase is 0.075683 $ per share or 0 ADR. Total with this purchase: 7'568.29 $.

According to your rules, the total payment to us for 50'000 ADRs should be 17'744.34 US dollars.

How did you determine the amount of 2'499.16 US dollars?

We categorically disagree with your calculation.
We ask you to provide a detailed calculation of the above amount.

Sincerely, Director of ILVEYS INC.

**ПРИОБРЕТЕНИЕ или ПОЛУЧЕНИЕ:** Приобретение или получение обыкновенных акций и АДР компании «ЮКОС» в период со 2 июля 2003 г. по 28 ноября 2007 г. включительно. (Необходимо приложить сопроводительную документацию.)

| Обыкновенные акции | АДР | Дата (-ы) приобретения или получения (ЧИС/МЕСЯЦ/ГОД) | Количество приобретенных или полученных обыкновенных акций или АДР |
|---|---|---|---|
| | Y | 16 Ноябрь 2004 | 10000 |
| | Y | 25 Ноябрь 2004 | 10000 |
| | Y | 29 Ноябрь 2004 | 5000 |
| | Y | 30 Март 2005 | 25000 |
| | Y | 23 Август 2005 | 20000 |

В случае отправки сопроводительной документации по почте не высылайте оригиналы документов. Прилагайте копии на бумаге формата 8 ½ x 11 дюймов (216 x 279 мм)

03.03.2016 12:28 Страница 1 из 2

| Номер искового заявления | 92B37B5C27 | Контрольный номер | 7A9EF6FBD5 |
|---|---|---|---|

**ПРОДАЖИ:** Продажи обыкновенных акций и АДР компании «ЮКОС» в период со 2 июля 2003 г. по 28 ноября 2007 г. включительно. (Необходимо приложить сопроводительную документацию.)

| Обыкновенные акции | АДР | Дата (-ы) продажи (ЧИС/МЕСЯЦ/ГОД) | Количество проданных обыкновенных акций или АДР |
|---|---|---|---|
| | Y | 23 Август 2005 | 20000 |

| | | |
|---|---|---|
| **АКЦИИ ВО ВЛАДЕНИИ (КОНЕЦ ПЕРИОДА ВОЗМЕЩЕНИЯ):** Количество обыкновенных акций и АДР компании «ЮКОС», которые находились в вашем владении по состоянию на момент закрытия торгов 28 ноября 2007 г. При отсутствии поставьте «0». (Необходимо приложить сопроводительную документацию.) | 0 Обыкновенные акции | 50000 АДР |

2017-06-16 2:45 GMT+03:00 <info@yukosclaims.com>:

Claim Number: 92B37B5C27

Dear Claimant,

We are pleased to inform you that your claim in the Yukos Claims Administration has been determined to be eligible for payment in the amount of $2,499.1
will be mailed to you at the address you provided to the Yukos Claims Administration.

If you have any questions, please review the FAQs on the administration website or email the Distribution Agent at info@yukosclaims.com.

Regards,

Yukos Distribution Agent

If you wish to UNSUBSCRIBE from future email messages from the Claims Administrator with regard to this administration, please click on this link.