**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DENIEL SHUMEIKO,
Plaintiff,

v.

DEUTSCHE BANK TRUST COMPANY AMERICAS,

Defendant.

Case No. 1:26-cv-3516-MKV

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE AMENDED COMPLAINT

# TABLE OF CONTENTS


I. PRELIMINARY STATEMENT ....... 1

II. FACTUAL BACKGROUND ....... 2

III. ARGUMENT ....... 6

A. Plaintiff's Claims Are Time-Barred ....... 7

1. Breach of Fiduciary Duty (Count I) ....... 7

2. The Fraud Claims (Count II) ....... 9

3. Gross Negligence (Count III) ....... 12

4. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (Count IV) ....... 12

5. Unjust Enrichment (Count V) ....... 13

6. The Continuing Wrong Doctrine Does Not Extend the Limitations Period ....... 13

B. The Amended Complaint Fails To State A Claim ....... 15

1. Breach of Fiduciary Duty (Count I) ....... 15

2. The Fraud Claims (Count II) ....... 17

3. Gross Negligence (Count III) ....... 20

4. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (Count IV) ....... 21

5. Unjust Enrichment (Count V) ....... 24

C. The Amended Complaint Should Be Dismissed With Prejudice ....... 25

IV. CONCLUSION ....... 25

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*,
2012 WL 4174862 (E.D.N.Y. Sep. 18, 2012)....................19

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
404 F.3d 566 (2d Cir. 2005)....................17

*Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*,
580 F. Supp. 2d 285 (S.D.N.Y. 2008)....................17

*Am. Tel. & Tel. Co. v. City of New York*,
83 F.3d 549 (2d Cir. 1996)....................20

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)....................19

*Bailey v. New York L. Sch.*,
2017 WL 6611582 (S.D.N.Y. Dec. 27, 2017), *aff'd*, 2021 WL 5500078 (2d Cir. Nov. 24, 2021)....................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................6, 7

*Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*,
259 F. Supp. 3d 16 (S.D.N.Y. 2017), *aff'd,* 712 F. App'x 85 (2d Cir. 2018)....................24

*Bermudez v. Colgate-Palmolive Co.*,
667 F. Supp. 3d 24 (S.D.N.Y. 2023)....................25

*Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*,
355 F. App'x 516 (2d Cir. 2009)....................15

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*,
373 F.3d 296 (2d Cir. 2004)....................24

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002)....................2

*Ciccone v. Hersh*,
530 F. Supp. 2d 574 (S.D.N.Y. 2008), *aff'd*, 320 F. App'x 48 (2d Cir. 2009)....................7

*Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*,
70 N.Y.2d 382 (1987) ....................................................................................20, 24

*Cohen v. S.A.C. Trading Corp.*,
711 F.3d 353 (2d Cir. 2013)................................................................................13

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*,
81 N.Y.2d 821 (1993) ..........................................................................................20

*Coombs v. Jervier*,
74 A.D.3d 724 (2d Dep't 2010) ...........................................................................13

*Corsello v. Verizon New York, Inc.*,
18 N.Y.3d 777 (2012) ..........................................................................................25

*Craig v. Bank of New York*,
169 F. Supp. 2d 202 (S.D.N.Y. 2001), *aff'd*, 59 F. App'x 388 (2d Cir. 2003)..........................8

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010)................................................................................10

*DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*,
2021 WL 3141672 (S.D.N.Y. July 26, 2021) .................................................11, 14

*Est. of Hammond v. Fuchs*,
804 F. Supp. 3d 440 (S.D.N.Y. 2025)..................................................................12

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
12 N.Y.3d 553 (2009) ..........................................................................................17

*Ezra v. Weitz & Luxenberg, P.C.*,
794 F. App'x 27 (2d Cir. 2019) ...........................................................................12

*Fernandez v. UBS AG*,
222 F. Supp. 3d 358 (S.D.N.Y. 2016)..................................................................10

*Ferring B.V. v. Allergan, Inc.*,
932 F. Supp. 2d 493 (S.D.N.Y. 2013)...........................................................12, 25

*Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*,
552 F. App'x 13 (2d Cir. 2014) ...........................................................................16

*Frankel v. U.S. Healthcare, Inc.*,
2019 WL 4450640 (S.D.N.Y. Sep. 17, 2019)......................................................20

*Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*,
722 F. App'x 12 (2d Cir. 2018) ...........................................................................16

*Glover v. Bob's Disc. Furniture, LLC*,
621 F. Supp. 3d 442 (S.D.N.Y. 2022)........................................22

*Golden Pacific Bancorp v. FDIC*,
273 F.3d 509 (2d Cir. 2001)........................................8

*Harsco Corp. v. Segui*,
91 F.3d 337 (2d Cir. 1996)........................................18

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016)........................................19

*In re Mid-Island Hosp., Inc.*,
276 F.3d 123 (2d Cir. 2002)........................................16

*In re Platinum-Beechwood Litig.*,
2019 WL 1570808 (S.D.N.Y. Apr. 11, 2019)........................................18

*In Touch Concepts, Inc. v. Cellco P'ship*,
788 F.3d 98 (2d Cir. 2015)........................................23

*Jordan v. Verizon Corp.*,
2008 WL 5209989 (S.D.N.Y. Dec. 10, 2008)........................................24

*Kampuries v. Am. Honda Motor Co.*,
204 F. Supp. 3d 484 (E.D.N.Y. 2016)........................................9

*Krumme v. WestPoint Stevens Inc.*,
238 F.3d 133 (2d Cir. 2000)........................................7

*Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*,
52 F. Supp. 3d 601 (S.D.N.Y. 2014), *aff'd sub nom. Maria Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015)........................................23

*Matana v. Merkin*,
957 F. Supp. 2d 473 (S.D.N.Y. 2013)........................................12, 13, 24

*Meyer v. Seidel*,
89 F.4th 117 (2d Cir. 2023)........................................10

*Mindspirit, LLC v. Evalueserve Ltd.*,
346 F. Supp. 3d 552 (S.D.N.Y. 2018)........................................14

*Murphy v. Morlitz*,
751 F. App'x 28 (2d Cir. 2018)........................................8, 9

*MyPlayCity, Inc. v. Conduit Ltd.*,
2012 WL 1107648 (S.D.N.Y. Mar. 30, 2012), *adhered to on reconsideration*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012) ..........21

*N. Shipping Funds I, LLC v. Icon Cap. Corp.*,
921 F. Supp. 2d 94 (S.D.N.Y. 2013)..........17

*Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*,
830 F.3d 152 (2d Cir. 2016)..........25

*Orr v. Kinderhill Corp.*,
991 F.2d 31 (2d Cir. 1993)..........9

*Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*,
585 F. Supp. 3d 540 (S.D.N.Y. 2022), *aff'd sub nom. Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365 (2d Cir. 2023) ..........15

*S.W. ex rel. Marquis-Abrams v. City of New York*,
46 F. Supp. 3d 176 (E.D.N.Y. 2014) ..........12

*Saltz v. First Frontier, LP*,
782 F. Supp. 2d 61 (S.D.N.Y. 2010), *aff'd sub nom.* 485 F. App'x 461 (2d Cir. 2012) ..........17, 20

*Salvador v. Adirondack Park Agency of N.Y.*,
35 F. App'x 7 (2d Cir. 2002) ..........7

*San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*,
75 F.3d 801 (2d Cir. 1996)..........3

*Snyder v. Wells Fargo Bank, N.A.*,
594 F. App'x 710 (2d Cir. 2014) ..........16

*Spinelli v. Nat'l Football League*,
903 F.3d 185 (2d Cir. 2018)..........15

*Spinnato v. Unity of Omaha Life Ins. Co.*,
322 F. Supp. 3d 377 (E.D.N.Y. 2018) ..........8, 18

*Tevdorachvili v. Chase Manhattan Bank*,
103 F. Supp. 2d 632 (E.D.N.Y. 2000) ..........21

*Thompson v. Mun. Credit Union*,
2022 WL 2717303 (S.D.N.Y. July 13, 2022)..........25

*Wall St. Sys. Sweden AB v. Hertz Glob. Holdings, Inc.*,
2015 WL 158887 (S.D.N.Y. Jan. 13, 2015) ..........21

*Wallert v. Atlan*,
141 F. Supp. 3d 258 (S.D.N.Y. 2015)....................22

*Weiss v. TD Waterhouse*,
45 A.D.3d 763 (2d Dep't 2007)....................7

*Willensky v. Lederman*,
2015 WL 327843 (S.D.N.Y. Jan. 23, 2015)....................8

**RULES**

N.Y. C.P.L.R. § 213(8)....................9

## I. PRELIMINARY STATEMENT

This case concerns an American Depositary Receipts ("ADR") program that ended nearly twenty years ago. In March 2001, Yukos Oil Company ("Yukos") established a program for ADRs, which are securities that are tradeable in the United States and represent an interest in ordinary shares of Yukos that traded overseas. Following a series of actions by the Russian Federation to effectively nationalize Yukos during the mid-2000s, Yukos was liquidated and then struck from Russia's register of legal entities on November 21, 2007. On December 18, 2007, Defendant Deutsche Bank Trust Company Americas ("DBTCA"), as the depositary bank for the Yukos stock underlying the ADRs, notified ADR holders that the underlying Yukos shares no longer existed, that the ADRs were therefore "deemed to be worthless and will be cancelled," and that the Deposit Agreement was "terminated effective immediately." ILVEYS INC. ("ILVEYS"), a beneficial owner of Yukos ADRs, later submitted its own claim in a third-party distribution of Yukos-related assets, and the claim was accepted and paid in January 2018. More than eight years later, ILVEYS requested that DBTCA participate in a third-party lawsuit attempting to recover assets from the Russian Federation. When DBTCA declined to do so because its role as depositary ended nearly two decades prior, ILVEYS assigned its claim to Plaintiff, who filed this suit a few days later.

The Amended Complaint asserts five claims, each resting on DBTCA's role as depositary under the Deposit Agreement. Each should be dismissed.

*First*, every claim is time-barred. The conduct at issue ended in December 2007, when DBTCA terminated the Deposit Agreement and ceased providing services for the ADRs. The longest applicable limitations period expired many years ago. No tolling doctrine changes that result: the 2007 Worthless Notice openly repudiated any relationship, the alleged "conflicts" were

publicly reported years ago, and DBTCA's later statements only reiterated the position it took in 2007. A demand letter cannot revive claims that expired many years ago.

*Second*, each claim fails on the merits. DBTCA could not breach an agreement that had been terminated, and Plaintiff identifies no provision of the Deposit Agreement requiring the conduct he faults DBTCA for not undertaking. The Deposit Agreement limits the depositary's obligations to those "specifically set forth" in it, and it expressly provides that the depositary has no obligation to appear in or prosecute any proceeding absent a satisfactory indemnity. And because the Deposit Agreement governs the parties' relationship, Plaintiff's fiduciary duty, gross negligence, and unjust enrichment theories, each of which rests on the same alleged conduct and seeks the same relief, are duplicative of the contract claim. The fraud claims fail because Plaintiff identifies no false statement, no duty to disclose, and no detrimental reliance.

*Finally*, dismissal should be with prejudice. The Court already informed Plaintiff that amendment would be "his last opportunity" to cure the deficiencies DBTCA identified, and the Amended Complaint does not cure them. No new allegation can overcome Plaintiff's statute of limitations issue or the clear language of the governing documents.

## II. FACTUAL BACKGROUND

This case arises out of an ADR program established under a Deposit Agreement dated March 12, 2001 between Yukos, Bankers Trust Company—DBTCA's predecessor—as depositary, and all Holders and Beneficial Owners of American Depositary Shares. Dkt. 17-2, Ex. Q at 125.[1] An ADR is an instrument issued by a U.S. depositary bank that allows U.S.

---

[1] On a motion to dismiss, the Court may consider documents that are attached to a complaint, incorporated by reference, or otherwise "integral" to it because the complaint relies heavily upon their terms and effect. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–54 (2d Cir. 2002). Every document DBTCA cites herein satisfies this standard. Plaintiff attaches an excerpt of the Deposit Agreement to the Amended Complaint. Dkt. 17-2, Ex. Q. DBTCA attaches a non-

investors to hold an interest in shares of a foreign company. The foreign shares are deposited with the depositary bank or its custodian, and the depositary bank issues ADRs representing those shares to investors. Holders and beneficial owners of ADRs are parties to, and bound by, the Deposit Agreement. *Id.* § 7.04; Dkt. 17 ("Amended Complaint" or "AC") ¶ 14. ILVEYS, a company the Amended Complaint describes as a "family investment vehicle," acquired 50,000 Yukos ADRs in 2004-2005 as a beneficial owner. AC ¶¶ 3, 20–22.

The Deposit Agreement defines the depositary's role in narrow, administrative terms. The depositary "assumes no obligation nor shall it be subject to any liability" to holders or beneficial owners "except that it agrees to perform its obligations specifically set forth in this Deposit Agreement without negligence or bad faith." Dkt. 17-2, Ex. Q § 5.03. The Deposit Agreement explicitly states that the depositary is not "under any obligation to appear in, prosecute or defend any action, suit or other proceeding" concerning the deposited securities, absent a satisfactory indemnity. *Id.* The Form of the ADR, Exhibit A to the Deposit Agreement, warns that "Russia's system of share registration and custody creates risks of loss that are not normally associated with investments in other securities markets," and that the depositary "will not be liable for the unavailability of shares or for the failure to make any distribution of cash or property with respect thereto as a result of such unavailability." Spendley Decl. Ex. A at A-1; *see also* Dkt. 17-2, Ex. Q § 5.03. Plaintiff contends that other provisions of the Deposit Agreement, including Sections 2.01, 5.01, 5.03, and 6.02, impose broader obligations. AC ¶¶ 13–17. As discussed further below, they do not.

---

excerpted copy of the same (Spendley Decl. Ex. A), which the Court can consider given that the Deposit Agreement is integral to the Amended Complaint. *See San Leandro Emergency Med. Grp. Profit Sharing Plan v. Philip Morris Companies, Inc.*, 75 F.3d 801, 808–09 (2d Cir. 1996).

Yukos was dismantled through a series of Russian state actions in the mid-2000s, and Yukos was ultimately liquidated and struck from the Russian register of legal entities in 2007. This left the shares underlying the ADRs effectively worthless. *See* Dkt. 17-2, Ex. I ¶¶ 63, 102, 1099; AC ¶¶ 5, 68–70. On December 18, 2007, DBTCA, as depositary, issued a notice (the "Worthless Notice") informing ADR holders that (1) the underlying Yukos shares had been "removed from the registrar and no longer exist;" (2) the ADRs were "deemed to be worthless and will be cancelled;" (3) the Deposit Agreement was "terminated effective immediately;" and (4) the depositary had "ceased to provide any services with respect to the Yukos Corp. ADRs." Dkt. 17-1, Ex. D at 71. In short, by the end of 2007, the ADRs were backed by nothing because the underlying Yukos shares did not exist, the ADRs were worthless, and the depositary relationship had ended.

Plaintiff alleges that, during and leading up to this period, DBTCA had purportedly undisclosed conflicts of interest because other Deutsche Bank entities did business with Russian state-controlled companies and took part in transactions connected to Yukos's bankruptcy. AC ¶¶ 34–55. Yet Plaintiff submits an entire compendium of what he said is "contemporaneous financial-media reporting and market data concerning . . . . Plaintiff's allegations concerning institutional conflict." Dkt. 17-2, Ex. P at 103. For example, in November 2003, *The Times* reported a Deutsche Bank entity's investment in a Moscow investment bank. *Id.* at 104. In December 2004 and March 2006, *The New York Times* reported a Deutsche Bank entity's role in proceedings concerning Yukos's bankruptcy. Dkt. 17-1, Ex. C at 58–59.

Plaintiff also cites a December 2005 Confidential Sale Agreement under which a group of Western bank creditors of Yukos, including a Deutsche Bank entity, sold their rights under a defaulted loan to Yukos to a Russian oil company in exchange for repayment of the outstanding

balance, and agreed to pursue collection of that debt, including through a bankruptcy petition. AC ¶¶ 37–39; Dkt. 17-2, Ex. I ¶¶ 1063–1065 & n.1305. The banks filed that petition on March 6, 2006, were paid in full eight days later, and were replaced as creditors before the bankruptcy proceedings began. *Id.* ¶¶ 1069, 1071, 1075. That agreement was described in a Hague tribunal's 2014 award. *Id.* ¶ 101.

Several proceedings arose from the liquidation and nationalization of Yukos's assets. Yukos's former majority shareholders arbitrated against the Russian Federation in The Hague and obtained awards in 2014. AC ¶¶ 121, 123; Dkt. 17-2, Ex. I. After years of litigation, the Supreme Court of the Netherlands rejected Russia's final challenge to those awards in 2025. AC ¶¶ 121, 151. Enforcement of the awards is being pursued in *Hulley Enterprises Ltd. v. Russian Federation*, No. 1:14-cv-01996 (D.D.C.) (the "D.D.C. Action"). AC ¶¶ 121, 140. A separate group of Yukos ADR investors brought an arbitration against Russia and obtained an award in 2012. AC ¶ 23. But in January 2016, a Swedish court of appeal held that the tribunal lacked jurisdiction, and the Supreme Court of Sweden denied leave to appeal later that year. AC ¶¶ 23–24.

In addition to those arbitrations, certain former foreign subsidiaries of Yukos liquidated assets and pursued legal claims with the goal of making distributions to former Yukos shareholders. AC ¶¶ 79–80; Dkt. 17-1, Ex. H at 97. These distributions were administered by a third-party distribution agent through the Yukos Claims Administration. AC ¶¶ 79–80, 107; Dkt. 17-1, Ex. H at 97. According to the Amended Complaint, ILVEYS learned of the planned distribution in September 2015. AC ¶ 80. In December 2015, it asked a Depositary Receipts employee of Deutsche Bank Ltd. in Moscow about DBTCA's role in the distribution. AC ¶¶ 84–87; Dkt. 17-2, Ex. K at 75. In January 2016, that employee explained that "Deutsche Bank is not involved in any Yukos claims process." AC ¶ 88; Dkt. 17-2, Ex. K at 63. ILVEYS then submitted

its claim directly to the distribution agent, the claim was accepted, and ILVEYS was paid in January 2018 in an amount Plaintiff alleges was determined under the administrator's Plan of Allocation. AC ¶¶ 97–105.

In March 2026, the claims administrator announced another distribution. AC ¶ 107. Ten days later—and ***more than 18 years*** after the Worthless Notice—ILVEYS demanded that DBTCA intervene as a litigant in the D.D.C. Action. AC ¶ 109. DBTCA responded on April 6, 2026, enclosed the Worthless Notice, and explained that it "has not had a role with respect to the Yukos Corp. ADRs since December 2007." AC ¶ 110; Dkt. 17-1, Ex. D at 69. On April 14, 2026, ILVEYS's shareholders resolved to transfer the company's claims against DBTCA to Plaintiff, Deniel Shumeiko, who held a 1% interest in ILVEYS. AC ¶ 114; Dkt. 17-1, Ex. A at 7. On April 23, 2026, ILVEYS assigned its claims to Plaintiff. AC ¶ 115; Dkt. 17-1, Ex. A at 5. Four days later, Plaintiff filed this action. *See generally* Dkt. 1.

After DBTCA submitted a pre-motion letter identifying deficiencies in the original complaint, the Court granted Plaintiff leave to amend and explained that it "will be [Plaintiff's] last opportunity to amend the complaint to cure any deficiency identified in the pre-motion letter." Dkt. 16 at 1. Plaintiff filed the Amended Complaint on October 12, 2026. Dkt. 17. The Amended Complaint asserts five claims: breach of fiduciary duty (Count I); fraudulent misrepresentation and concealment, and constructive fraud (Count II); gross negligence (Count III); breach of the Deposit Agreement and the implied covenant of good faith and fair dealing (Count IV); and unjust enrichment (Count V). AC ¶¶ 159–219. Each claim rests on DBTCA's role as depositary bank under the Deposit Agreement.

## III. ARGUMENT

To survive a motion to dismiss, a complaint must allege a "plausible" factual basis supporting the claims asserted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). The

"pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555. To present a plausible claim, the complaint must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Salvador v. Adirondack Park Agency of N.Y.*, 35 F. App'x 7, 11 (2d Cir. 2002) (explaining that courts cannot accept "unsupported conclusions [or] unwarranted inferences . . . cast in the form of factual allegations").

### A. Plaintiff's Claims Are Time-Barred

Every claim is time-barred. Each rests on conduct that occurred in December 2007, nearly twenty years before Plaintiff brought this lawsuit. No tolling or extension doctrine revives these claims, and the Amended Complaint should be dismissed.[2]

#### 1. Breach of Fiduciary Duty (Count I)

The applicable statute of limitations period for Plaintiff's breach of fiduciary duty claim is, at most, six years.[3] *See Weiss v. TD Waterhouse*, 45 A.D.3d 763, 764 (2d Dep't 2007). The claim "accrues, and the statute begins to run, upon the date of the alleged breach." *Ciccone v. Hersh*, 530 F. Supp. 2d 574, 579 (S.D.N.Y. 2008), *aff'd*, 320 F. App'x 48 (2d Cir. 2009). The core alleged breach is DBTCA's purported nondisclosure of alleged conflicts while it administered the ADR program from 2005 to 2007, culminating in the December 2007 Worthless Notice. AC ¶¶ 160–

---

[2] New York law governs because the Deposit Agreement is governed by New York law. Dkt. 17-2, Ex. Q § 7.06. Plaintiff pleads as such, *see, e.g.*, AC ¶¶ 14, 194, and the parties' reliance on New York law is also sufficient to establish that it applies. *See, e.g.*, *Krumme v. WestPoint Stevens Inc.*, 238 F.3d 133, 138 (2d Cir. 2000).

[3] The applicable period is either three or six years depending on the substantive relief sought. *Weiss v. TD Waterhouse*, 45 A.D.3d 763, 764 (2d Dep't 2007). DBTCA does not concede that the six-year limitations period applies to Plaintiff's breach of fiduciary duty claim, but applies the longer six-year period here solely to demonstrate that even under the longer limitations period, Plaintiff's claim is untimely.

163. Although Plaintiff fails to plead that DBTCA owed ILVEYS any fiduciary duties as discussed further below, any claim for breach of these non-existent duties expired at the latest in December 2013.

Plaintiff cannot avoid that result by alleging "further breach[es]" in 2016, 2017-2018, and 2026. AC ¶¶ 164–166. Those later events are not new breaches, *see infra* § III.A.6, and in any event under the fiduciary tolling doctrine, the limitations period begins when "the fiduciary has openly repudiated his or her obligation or the relationship has been otherwise terminated." *Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 518 (2d Cir. 2001) (citation omitted).[4] The repudiation "must be clear and made known to the plaintiff." *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 397–99 (E.D.N.Y. 2018) (cleaned up, citation omitted). The Worthless Notice met that standard. It terminated the Deposit Agreement—the only alleged source of any fiduciary duty—"effective immediately" and announced that DBTCA "has ceased to provide any services with respect to the Yukos Corp. ADRs." Dkt. 17-1, Ex. D at 71. That was an open repudiation, made known to ILVEYS, *see* AC ¶¶ 75, 157, and it started the limitations clock. *See Craig v. Bank of New York*, 169 F. Supp. 2d 202, 208–09 (S.D.N.Y. 2001) (holding open repudiation doctrine did not toll claims where the fiduciary sent a letter that was "clear and unambiguous" that the fiduciary "resigned" and no longer had obligations), *aff'd*, 59 F. App'x 388 (2d Cir. 2003); *see also Willensky v. Lederman*, 2015 WL 327843, at *10–11 (S.D.N.Y. Jan. 23, 2015).[5]

---

[4] The open repudiation doctrine only applies to claims seeking equitable relief, not to claims seeking monetary damages. Therefore, to the extent Plaintiff is seeking monetary damages for his fiduciary duty claim, he cannot invoke the open repudiation doctrine in the first place. *See, e.g.*, *Willensky v. Lederman*, 2015 WL 327843, at *10 n.21 (S.D.N.Y. Jan. 23, 2015).

[5] Nor can Plaintiff invoke the discovery rule to revive his untimely fiduciary duty claim. New York applies the fraud-based discovery rule to a breach of fiduciary duty claim only where the claim sounds in fraud—not where, as here, the fraud allegations are "incidental" to the fiduciary duty claim and the plaintiff alleges "no fraud damages distinct from the damages allegedly attributable to the breach of fiduciary duty." *See Murphy v. Morlitz*, 751 F. App'x 28, 30

### 2. The Fraud Claims (Count II)

Count II similarly alleges that DBTCA concealed an institutional conflict of interest from 2005 to 2007, and that subsequent communication with DBTCA created "the false appearance that no continuing institutional role remained for DBTCA in connection with surviving Yukos recovery interests." AC ¶¶ 177–178. Plaintiff pleads these theories as fraudulent misrepresentation and concealment and, in the alternative, constructive fraud. Each theory is time-barred.

#### a. Constructive Fraud

A constructive fraud claim must be brought within six years of the alleged fraudulent act, regardless of when the fraud was discovered. *Orr v. Kinderhill Corp.*, 991 F.2d 31, 35 (2d Cir. 1993); *Murphy v. Morlitz*, 751 F. App'x 28, 31 n.1 (2d Cir. 2018) (discovery-based accrual rule is reserved for actual fraud claims, not constructive fraud claims). Any constructive fraud claim based on the 2005-2007 conduct and the Worthless Notice expired by December 2013. Any claim based on the January 2016 statement expired in January 2022. And DBTCA's April 2026 response cannot support a timely claim because it merely restated DBTCA's 2007 position. *See infra* § III.A.6.

#### b. Fraudulent Misrepresentation and Concealment

Actual fraud claims must be asserted within the later of "six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it." *Kampuries v. Am. Honda Motor Co.*, 204 F. Supp. 3d 484, 489 (E.D.N.Y. 2016) (quoting N.Y. C.P.L.R. § 213(8)). The six-year period here expired in

---

(2d Cir. 2018). Plaintiff alleges the same injury under both theories: the "materially impaired" recovery. AC ¶¶ 171, 179; *see also* AC, Prayer for Relief at 67 ¶ 1 (seeking a single award of compensatory damages for all counts). In any event, even if a fraud-discovery rule applied to Count I, the claim would still be untimely. As discussed below, Plaintiff's own pleading shows that any alleged "conflict" was reported in the press at the time it arose or was described in the 2014 Hague award on which Plaintiff relies. *See infra* § III.A.2.b.

2013 and 2022, as discussed above. Plaintiff must therefore show that ILVEYS could not have reasonably discovered the alleged fraud before April 2024. By Plaintiff's own account, it could have—and long before 2024.

The "conflict" Plaintiff claims DBTCA concealed is that other Deutsche Bank entities did business with Russian state-controlled companies and took part in transactions connected to Yukos's bankruptcy. *See, e.g.*, AC ¶¶ 34–55. Public reporting can put a plaintiff on notice where its contents are sufficiently widespread and directly related to the alleged misrepresentations or omissions to suggest the probability of fraud. *See Meyer v. Seidel*, 89 F.4th 117, 135–36 (2d Cir. 2023). Here, the articles Plaintiff attaches to the Amended Complaint reported many of those "conflicts" as they occurred. *The Times* reported a Deutsche Bank entity's investment in a Moscow investment bank in November 2003. Dkt. 17-2, Ex. P at 104–105. In December 2004, the *New York Times* reported that a Deutsche Bank entity had moved to dismiss Yukos's bankruptcy filing in Houston on the ground that Yukos lacked ties to Texas. Dkt. 17-1, Ex. C at 58 (explaining that a consortium of banks objected to the bankruptcy because it would have precluded a sale of certain Yukos assets for which they had agreed to provide financing); *see also* Dkt. 17-2, Ex. P at 107-08 (*Financial News* article explaining that a Deutsche Bank entity was advising Gazprom on its bid to buy certain Yukos assets that ultimately went to a different bidder). In March 2006, *The New York Times* reported that a consortium of creditor banks, including a Deutsche Bank entity, commenced proceedings in Russian and Dutch courts to recover on a loan for which Yukos defaulted. Dkt. 17-1, Ex. C at 59.[6] The remaining transaction on which Plaintiff relies, the

---

[6] The Court may consider these news articles because they were appended to Plaintiff's Amended Complaint, *see DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010), and because, particularly when evaluating a statute of limitations defense, "[t]he Court may take judicial notice of the fact that press coverage . . . contained certain information, without regard to the truth of the contents," *Fernandez v. UBS AG*, 222 F. Supp. 3d 358, 380 (S.D.N.Y. 2016).

December 2005 Confidential Sale Agreement, has been public since at least 2014, when the Hague tribunal described it in its award. AC ¶¶ 37–39; Dkt. 17-2, Ex. I ¶ 101. Plaintiff calls these events "evidence discovered after commencement of this action," AC ¶ 9, but they have been public for more than a decade. Whether measured from the press reports of 2003-2006 or the Hague award of 2014, Plaintiff's two-year discovery period expired at least a decade before this suit was filed.

The alleged "false appearance" that DBTCA had no continuing role with the Yukos ADRs fares no better. AC ¶ 178. What Plaintiff calls concealment is DBTCA's alleged failure to act on behalf of ADR holders after the Deposit Agreement was terminated. But DBTCA announced that decision in the Worthless Notice in December 2007. Dkt. 17-1, Ex. D at 71. And ILVEYS understood it: a Deutsche Bank representative repeated in January 2016 that Deutsche Bank was "not involved in any Yukos claims process," and by Plaintiff's own allegations, ILVEYS proceeded to pursue its claim without DBTCA. AC ¶¶ 88, 97. In short, Plaintiff's allegations show not only that ILVEYS could have known of the facts underlying his claim more than a decade ago, but also that ILVEYS had actual knowledge of that information by no later than January 2016. *See DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*, 2021 WL 3141672, at *13–14 (S.D.N.Y. July 26, 2021) (holding fraud claims time-barred, explaining that "inquiry notice is triggered when the plaintiff could with reasonable diligence have discovered the fraud . . . which turns on whether the plaintiff was possessed of knowledge of facts from which the fraud could be reasonably inferred" (cleaned up, citation omitted)).

Finally, Plaintiff cannot salvage his claim by alleging that DBTCA "renewed" its concealment in April 2026. AC ¶ 180. DBTCA's response restated the position it had taken since 2007, and the reiteration of a prior position is not a new fraudulent act. *See infra* § III.A.6.

### 3. Gross Negligence (Count III)

A gross negligence claim must be brought within three years, and the claim accrues when the plaintiff is injured—not when the plaintiff later discovers the harm. *See Matana v. Merkin*, 957 F. Supp. 2d 473, 494 (S.D.N.Y. 2013); *S.W. ex rel. Marquis-Abrams v. City of New York*, 46 F. Supp. 3d 176, 190–91 (E.D.N.Y. 2014). Plaintiff alleges that DBTCA failed to protect the ADR holders' interests during the 2015-2018 distribution and that this failure "materially impaired" ILVEYS's recovery. AC ¶¶ 184–185, 190. Any such injury occurred no later than January 2018, when ILVEYS received its distribution. AC ¶ 105. The claim therefore expired no later than January 2021. Nor can Plaintiff revive the claim by pointing to DBTCA's alleged failure to intervene in the long-pending D.D.C. Action, or to DBTCA's April 2026 refusal of ILVEYS's demand. AC ¶¶ 186–187. All of these alleged failures to act merely repeat or reflect what DBTCA first declared in the Worthless Notice in December 2007. *See infra* § III.A.6.

### 4. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (Count IV)

Claims for breach of contract and breach of the implied covenant of good faith and fair dealing are subject to a six-year limitations period. *Ferring B.V. v. Allergan, Inc.*, 932 F. Supp. 2d 493, 508 (S.D.N.Y. 2013); *Est. of Hammond v. Fuchs*, 804 F. Supp. 3d 440, 456 (S.D.N.Y. 2025). The claims accrue at the time of the breach even if "the injured party is ignorant of the breach." *Ezra v. Weitz & Luxenberg, P.C.*, 794 F. App'x 27, 28–29 (2d Cir. 2019). Plaintiff alleges that DBTCA breached the Deposit Agreement by administering it in bad faith from 2005 to 2007 and by issuing the Worthless Notice. AC ¶ 200. He also alleges breaches in 2016, 2017-2018, and 2026. AC ¶¶ 201–203.

All of these theories fail on the same threshold ground: the Deposit Agreement was terminated on December 18, 2007. Dkt. 17-1, Ex. D at 71. Any breach therefore necessarily

occurred on or before that date; DBTCA cannot have breached an agreement that no longer existed. *See infra* § III.B.4. The six-year period therefore expired no later than December 2013. And even if any obligation survived termination, any later events are not independent breaches but the continuing effects of DBTCA's 2007 decision. *See infra* § III.A.6.

#### 5. Unjust Enrichment (Count V)

"Under New York law, the six-year limitations period for unjust enrichment accrues 'upon the occurrence of the wrongful act giving rise to a duty of restitution and not from the time the facts constituting the fraud are discovered.'" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 364 (2d Cir. 2013) (quoting *Coombs v. Jervier*, 74 A.D.3d 724, 724 (2d Dep't 2010)).[7] Plaintiff alleges that DBTCA was unjustly enriched by the "fees, charges, commissions, and other economic benefits" it obtained "[d]uring its administration of the Yukos ADR program." AC ¶¶ 211–212. That administration ended in 2007 when DBTCA terminated the Deposit Agreement and ceased providing services. Any claim to recover those benefits therefore expired no later than December 2013. Plaintiff's allegations that DBTCA's later "passivity" continued to "preserve[]" benefits for its affiliates, AC ¶¶ 213–216, describe only the continuing effects of conduct that ended in 2007. *See infra* § III.A.6.

#### 6. The Continuing Wrong Doctrine Does Not Extend the Limitations Period

Plaintiff tries to avoid the statute of limitations by treating DBTCA's post-Worthless Notice conduct as a series of new wrongs. That conduct consists of the January 2016 statement, DBTCA's absence from the 2017-2018 distribution, its non-participation in the D.D.C. Action,

---

[7] Equitable unjust enrichment claims are subject to a six-year limitations period, whereas claims for money damages are subject to a three-year period. *Matana*, 957 F. Supp. 2d at 494. Although DBTCA does not concede that the six-year period applies here, it addresses that longer period for purposes of its argument.

and its April 2026 refusal of ILVEYS's demand. *E.g.*, AC ¶¶ 117–118, 153–155. For example, he calls the 2026 refusal a "fresh and independent wrongful act." AC ¶ 153.

Black-letter law forecloses that theory. The continuing wrong doctrine "may only be predicated on continuing unlawful acts and not on the continuing effects of earlier unlawful conduct." *DuBuisson*, 2021 WL 3141672, at *7 (citation omitted). "The continuing wrong exception is narrow . . . and only extends the statute of limitations when a contract imposes a continuing duty that is repeatedly breached." *Mindspirit, LLC v. Evalueserve Ltd.*, 346 F. Supp. 3d 552, 593 (S.D.N.Y. 2018) (cleaned up, citation omitted).

Plaintiff's own allegations show there is no new, independent wrong here. Every later event Plaintiff identifies reflects one decision, which DBTCA made and announced in December 2007: to terminate the Deposit Agreement and "cease[] to provide any services with respect to the Yukos Corp. ADRs." Dkt. 17-1, Ex. D at 71; *see Mindspirit*, 346 F. Supp. 3d at 593 (explaining that continuing wrong doctrine would not apply where later-alleged wrongs all related back to the original breach, or constituted a failure to cure the breach, rather than an independent breach). And the Amended Complaint says as much. It describes the sequence from the Worthless Notice through the April 2026 refusal as demonstrating DBTCA's "continuing institutional position." AC ¶ 118. Plaintiff also alleges that in 2026, DBTCA "continued . . . to rely upon the same 2007 termination position." AC ¶ 111. And DBTCA's April 2026 response said exactly that: it attached the Worthless Notice and explained that DBTCA "has not had a role with respect to the Yukos Corp. ADRs since December 2007." Dkt. 17-1, Ex. D at 69. The January 2016 statement likewise reiterated that Deutsche Bank was not involved in the claims process. AC ¶ 88. Plaintiff's demand letter cannot revive claims that expired more than a decade ago. Otherwise, any time-barred claim could be revived simply by asking the defendant to reconsider.

DBTCA's "decision to take no action" was a "single, discrete decision," and any harm Plaintiff alleges was "caused by that decision." *Phoenix Light SF Ltd. v. Deutsche Bank Nat'l Tr. Co.*, 585 F. Supp. 3d 540, 578 (S.D.N.Y. 2022), *aff'd sub nom. Phoenix Light SF Ltd. v. Bank of New York Mellon*, 66 F.4th 365 (2d Cir. 2023). "To hold otherwise would eviscerate the statute of limitations in these circumstances by allowing the clock to perpetually restart even though any alleged injury is traceable to a decision . . . to do nothing." *Id.*[8]

### B. The Amended Complaint Fails To State A Claim

Plaintiff's claims also fail because none state a claim upon which relief can be granted.

#### 1. Breach of Fiduciary Duty (Count I)

Plaintiff's breach of fiduciary duty claim fails for two independent reasons.

To state a claim for breach of fiduciary duty, Plaintiff must plead "(i) the existence of a fiduciary duty; (ii) a knowing breach of that duty; and (iii) damages resulting therefrom." *Spinelli v. Nat'l Football League*, 903 F.3d 185, 207 (2d Cir. 2018) (citation omitted). A fiduciary relationship does not arise automatically from a commercial or contractual relationship; a plaintiff must plead a relationship of higher trust and confidence than is normally present. *See Boccardi Cap. Sys., Inc. v. D.E. Shaw Laminar Portfolios, L.L.C.*, 355 F. App'x 516, 519 (2d Cir. 2009) ("When parties deal at arm's length in a commercial transaction, no relation of confidence or trust sufficient to find the existence of a fiduciary relationship will arise absent extraordinary

---

[8] Plaintiff's reliance on fraudulent concealment and/or equitable estoppel to avoid the statute of limitations, AC ¶¶ 142, 155, 158, fails for the reasons discussed below: Plaintiff pleads no concealment, and ILVEYS knew the relevant facts years before Plaintiff sued. *See infra* § III.B.2. Plaintiff's allegations of diligence, AC ¶¶ 156–157, confirm the point. ILVEYS learned of the distributions in 2015, was told in January 2016 that Deutsche Bank was not involved, pursued its claim and was paid in January 2018, and then ***waited more than eight years to sue DBTCA***. AC ¶¶ 80, 88, 105.

circumstances." (cleaned up, quoting *In re Mid-Island Hosp., Inc.*, 276 F.3d 123, 130 (2d Cir. 2002))).

*First*, Plaintiff pleads no fiduciary relationship. The relationship between DBTCA and ILVEYS was created by the Deposit Agreement, and that Agreement limits the depositary's obligations to those specifically set forth therein. Dkt. 17-2, Ex. Q § 5.03 (the depositary "assumes no obligation nor shall it be subject to any liability under this Deposit Agreement or the Receipts to any Holder or Beneficial Owner . . . except that it agrees to perform its obligations specifically set forth in this Deposit Agreement without negligence or bad faith"); *see also Fillmore E. BS Fin. Subsidiary LLC v. Capmark Bank*, 552 F. App'x 13, 17 (2d Cir. 2014) (explaining that a plaintiff "must allege that, apart from the terms of the contract, the parties created a relationship of higher trust than would arise from their contracts alone . . . ." (cleaned up, citation omitted)).

Ignoring this language, Plaintiff characterizes DBTCA as having a "central intermediary position," and "superior institutional knowledge," and alleges that the ADR holders were "dependen[t]" on DBTCA. AC ¶ 160. None of that creates a fiduciary duty. *See Galvstar Holdings, LLC v. Harvard Steel Sales, LLC*, 722 F. App'x 12, 15 (2d Cir. 2018) ("[M]ere assertions of 'trust and confidence' are insufficient to support a claim of a fiduciary relationship."). Plaintiff also invokes DBTCA's purported "representative and attorney-in-fact powers," AC ¶ 160, presumably referencing Section 2.01 of the Deposit Agreement. But that section appoints the depositary as attorney-in-fact to take actions "as the Depositary in its sole discretion may deem necessary or appropriate to carry out the purposes of this Deposit Agreement." Dkt. 17-2, Ex. Q § 2.01. This provision does not authorize, much less command, DBTCA to exercise authority beyond what is expressly provided for in the Deposit Agreement and, therefore, does not establish a fiduciary relationship with any ADR holders. *See Snyder v. Wells Fargo Bank, N.A.*, 594 F.

App'x 710, 712–13 (2d Cir. 2014) (explaining that a contract affording bank "considerable discretion" created a contractual duty, but did not support an independent fiduciary duty claim).[9]

*Second*, Count I is duplicative of Count IV. It rests on the same relationship, the same conduct, and the same alleged injury as Plaintiff's contract claim. *See* AC ¶¶ 159–174, 192–208. A fiduciary claim that merely restates a contract claim must be dismissed. *N. Shipping Funds I, LLC v. Icon Cap. Corp.*, 921 F. Supp. 2d 94, 106 (S.D.N.Y. 2013) (finding fiduciary duty claim duplicative where "[b]oth claims are premised upon the same facts and seek the same damages for the alleged conduct"); *Alitalia Linee Aeree Italiane, S.p.A. v. Airline Tariff Pub. Co.*, 580 F. Supp. 2d 285, 294 (S.D.N.Y. 2008) ("Where a fiduciary duty is based upon a comprehensive written contract between the parties, a claim for breach of fiduciary duty is duplicative of a claim for breach of contract.").

**2. The Fraud Claims (Count II)**

Count II also must be dismissed. Count II asserts three theories: fraudulent misrepresentation, fraudulent concealment, and, in the alternative, constructive fraud. AC ¶¶ 176–180. Fraud requires a material misrepresentation or omission, scienter, intent to induce reliance, justifiable reliance, and injury. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009). Fraudulent concealment also requires "a relationship between the contracting parties that creates a duty to disclose." *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 582 (2d Cir. 2005). Constructive fraud replaces scienter with a fiduciary relationship. *See Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 82–83 (S.D.N.Y. 2010), *aff'd sub nom.* 485 F.

---

[9] To the extent Plaintiff's reference to DBTCA's "representative" powers invokes Section 5.01, AC ¶ 160, that provision addresses only claims against the depositary's agent in Russia for that agent's conduct, Dkt. 17-2, Ex. Q §§ 1.10, 5.01, and Plaintiff concedes it is not "a universal claims provision," AC ¶ 196.

App'x 461 (2d Cir. 2012). Each theory must satisfy the particularity standard under Rule 9(b). *See In re Platinum-Beechwood Litig.*, 2019 WL 1570808, at *13, *15 (S.D.N.Y. Apr. 11, 2019) (Rule 9(b) applies to actual and constructive fraud claims). Rule 9(b) requires a plaintiff to: "(1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Spinnato*, 322 F. Supp. 3d at 391 (quoting *Harsco Corp. v. Segui*, 91 F.3d 337, 347 (2d Cir. 1996)).

*First*, the misrepresentation theory fails because Plaintiff identifies no false statement. The Worthless Notice reported that the Yukos shares "no longer exist," that the ADRs "are deemed to be worthless and will be cancelled off the Depositary's records," and that the Deposit Agreement was terminated. Dkt. 17-1, Ex. D at 71. Plaintiff does not allege facts showing that any statement in the Worthless Notice was untrue. Plaintiff labels the January 2016 statement that "Deutsche Bank is not involved in any Yukos claims process" as "false or materially misleading," AC ¶ 178, but pleads no facts showing that it was. To the contrary, his own allegations confirm that the claims process was run by third-party administrators and that ILVEYS's claim was accepted without any involvement from DBTCA. AC ¶¶ 97–105, 149. The April 2026 response merely reiterated a position first stated decades earlier and added no new information. Dkt. 17-1, Ex. D at 69. Because Plaintiff has not pled a false statement (much less one made with scienter), this claim fails as a matter of law. *See Bailey v. New York L. Sch.*, 2017 WL 6611582, at *11 (S.D.N.Y. Dec. 27, 2017) ("[T]he statement was true and . . . cannot serve as a premise for her fraud claim."), *aff'd*, 2021 WL 5500078 (2d Cir. Nov. 24, 2021).

*Second*, the concealment theory fails because Plaintiff never explains how the business of other Deutsche Bank entities in Russia conflicted with any obligation DBTCA owed under the

Deposit Agreement. *See* AC ¶¶ 34–55. He concedes those entities are not "legally identical to DBTCA." Dkt. 17-1, Ex. C at 54. And Plaintiff does not (because he cannot) allege how commercial lending by a different entity somehow impaired any obligation DBTCA had under the Deposit Agreement, much less fraudulently so. In any event, as discussed above, the transactions Plaintiff cites were publicly reported years ago, *e.g.*, Dkt. 17-1, Ex. C at 58–59; Dkt. 17-2, Ex. P at 104–105; Dkt. 17-2, Ex. I ¶¶ 1063–64, and a party cannot conceal what is already public, *see 246 Sears Rd. Realty Corp. v. Exxon Mobil Corp.*, 2012 WL 4174862, at *14 (E.D.N.Y. Sep. 18, 2012) (finding no duty to disclose because a "plaintiff cannot establish justifiable reliance or a duty to disclose where the information at issue was a matter of public record that could have been discovered through the exercise of ordinary diligence" (collecting cases)).

*Third*, neither actual fraud theory (misrepresentation or concealment) pleads scienter or detrimental reliance. Plaintiff's allegation that DBTCA acted "intentionally, actively, and in bad faith," AC ¶ 176, is conclusory—as are his allegations regarding a purported "motive," AC ¶¶ 94–96. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) ("Allegations that are conclusory or unsupported by factual assertions are insufficient."). Reliance fares no better. Plaintiff identifies nothing ILVEYS did, or refrained from doing, because of any purportedly false statement or misleading omission by DBTCA. *In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 313 (S.D.N.Y. 2014) ("Courts in this district have consistently held that reliance does not simply involve a state of mind; it involves specific action or inaction, and therefore must be pleaded with particularity."), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Cos. L.L.C.*, 829 F.3d 173 (2d Cir. 2016).

*Fourth*, the constructive fraud theory fails because Plaintiff pleads no fiduciary relationship. *See Saltz*, 782 F. Supp. 2d at 82; *see supra* § III.B.1. It also fails for the same lack of a false statement and detrimental reliance discussed above. *See supra*.

**3. Gross Negligence (Count III)**

Plaintiff's gross negligence claim also fails.

*First*, Count III impermissibly recasts Plaintiff's contract claim as a tort. A gross negligence claim between contracting parties requires the breach of a legal duty *independent* of the contract. *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 389 (1987) ("It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated."). A tort claim that merely enforces contractual obligations must be dismissed as duplicative. *Frankel v. U.S. Healthcare, Inc.*, 2019 WL 4450640, at *4–5 (S.D.N.Y. Sep. 17, 2019). Plaintiff identifies no independent duty. Instead, he relies on "the same entrusted institutional relationship described in Count I," AC ¶ 182, which arises solely from the Deposit Agreement. And Plaintiff concedes that if the duty is contractual, Count III rests on the same conduct and seeks the same recovery as his contract claim (Count IV). AC ¶¶ 181–191, 192–208. Thus, by Plaintiff's own admission these claims are duplicative.

*Second*, Plaintiff comes nowhere close to pleading gross negligence. Gross negligence requires a plaintiff to show "conduct that evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing." *Am. Tel. & Tel. Co. v. City of New York*, 83 F.3d 549, 556 (2d Cir. 1996) (citing *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*, 81 N.Y.2d 821, 823–24 (1993)). It requires an "extreme departure" from the standards of ordinary care. *Saltz*, 782 F. Supp. 2d at 75–76. Plaintiff alleges that DBTCA declined to take steps it was never obligated to take, including "approaching the recovery managers, asserting the corresponding institutional interest, or lodging a protective objection," and intervening in the D.D.C. Action. AC

¶¶ 185–187. The Deposit Agreement imposes none of those obligations. Failing to go above and beyond contractual requirements cannot constitute an "extreme departure" from any standard of care, nor does Plaintiff's fact-free assertion that this conduct "evinced reckless disregard," AC ¶ 188, supply any basis to suggest negligence of any kind, much less gross negligence. *See Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp. 2d 632, 644 (E.D.N.Y. 2000) (dismissing gross negligence claim because "a cause of action based on harm suffered due to reckless conduct must be supported by specific and particular allegations of extreme wrongdoing").

*Third*, any duty ended in 2007. Every breach Plaintiff alleges in Count III occurred after DBTCA terminated the Deposit Agreement in December 2007. AC ¶¶ 184–187. For the reasons stated below, any duty DBTCA owed ended with that termination. *See infra* § III.B.4.

**4. Breach of Contract and Implied Covenant of Good Faith and Fair Dealing (Count IV)**

Plaintiff's breach of contract and implied covenant claim fails for four independent reasons.

*First*, DBTCA cannot breach a terminated agreement. Except for the 2005-2007 conduct (which is plainly time-barred), every breach Plaintiff alleges took place after December 2007,[10] when the Deposit Agreement was "terminated effective immediately." Dkt. 17-1, Ex. D at 71. "[A] contract cannot be breached after it has been terminated." *Wall St. Sys. Sweden AB v. Hertz Glob. Holdings, Inc.*, 2015 WL 158887, at *3 (S.D.N.Y. Jan. 13, 2015); *see also MyPlayCity, Inc. v. Conduit Ltd.*, 2012 WL 1107648, at *16 (S.D.N.Y. Mar. 30, 2012) ("[Defendant] simply could not have breached contracts that did not exist (the terminated Agreements)."), *adhered to on reconsideration*, 2012 WL 2929392 (S.D.N.Y. July 18, 2012). Plaintiff tries to look past termination by alleging that Section 6.02 of the Deposit Agreement preserved "continuing

[10] Those alleged breaches are the January 2016 statement, DBTCA's absence from the 2017-2018 distribution, and its April 2026 refusal. AC ¶¶ 201–203.

economic consequence[s]" of the depositary relationship. AC ¶¶ 198, 206. Although it is not entirely clear what Plaintiff believes that means, that provision says nothing of the sort. Section 6.02 merely provides that, if any ADRs remain outstanding after termination, the depositary "shall not give any further notices or perform any further acts under this Deposit Agreement," except for certain administrative tasks involving the underlying common stock, like collecting lagging distributions and delivering them to holders who surrender their ADRs. Dkt. 17-2, Ex. Q § 6.02. Put another way, those tasks are tied to the securities underlying the ADRs, which the Worthless Notice explained "no longer exist," so there was nothing left for DBTCA to do with respect to those securities. Dkt. 17-1, Ex. D at 71; *see* AC ¶ 69. And, to be sure, nothing in Section 6.02 requires DBTCA to do anything close to negotiating with independent claims administrators or intervening in judgment enforcement proceedings, which is the conduct Plaintiff faults DBTCA for not undertaking.

*Second*, even setting aside the termination of the Deposit Agreement, Plaintiff does not identify any specific provision of the Deposit Agreement that DBTCA breached. "[A] plaintiff must 'identify, in non-conclusory fashion, the specific terms of the contract that a defendant has breached.'" *Glover v. Bob's Disc. Furniture, LLC*, 621 F. Supp. 3d 442, 451 (S.D.N.Y. 2022) (quoting *Wallert v. Atlan*, 141 F. Supp. 3d 258, 286 (S.D.N.Y. 2015)). Plaintiff cites several provisions, AC ¶¶ 194–198, but essentially admits that two of them do not support his claim. He does "not rely upon Section 5.03 as creating an unconditional contractual duty to litigate," AC ¶ 197, and "does not rely upon Section 5.01 as a universal claims provision," AC ¶ 196. Section 2.01 authorizes the depositary to act as it "in its sole discretion may deem necessary or appropriate to carry out the purposes of this Deposit Agreement." Dkt. 17-2, Ex. Q § 2.01. And Plaintiff never explains how DBTCA breached it. In any event, a grant of discretion is not a

promise to exercise it in a specific way, and the Deposit Agreement disclaims liability "by reason of any exercise of, or failure to exercise, any discretion provided for in this Deposit Agreement." *Id.* § 5.02. Plaintiff's fallback allegation that DBTCA acted "negligently or in bad faith," AC ¶ 199, does not help him. Section 5.03 imposes that standard only on obligations "specifically set forth in this Deposit Agreement," Dkt. 17-2, Ex. Q § 5.03, and Plaintiff identifies none that DBTCA breached.

*Third*, Plaintiff cannot use the implied covenant of good faith and fair dealing to invent obligations that do not appear in the Deposit Agreement. "[T]he covenant 'does not create obligations that go beyond those intended and stated in the language of the contract.'" *Mariah Re Ltd. v. Am. Fam. Mut. Ins. Co.*, 52 F. Supp. 3d 601, 611 (S.D.N.Y. 2014) (citation omitted), *aff'd sub nom. Maria Re Ltd. ex rel. Varga v. Am. Fam. Mut. Ins. Co.*, 607 F. App'x 123 (2d Cir. 2015). Plaintiff disclaims any attempt to "rewrite Section 5.03 into an unconditional obligation to litigate." AC ¶ 204. But that is what his theory requires. He alleges that DBTCA acted in bad faith by "exercising [its] authority, discretion, and termination position" without approaching recovery managers or intervening in enforcement proceedings. AC ¶¶ 199, 203–204. As to intervening, the Deposit Agreement never obligated DBTCA to bring or join a lawsuit unless it received a satisfactory indemnity, even while the Agreement was still in effect. Dkt. 17-2, Ex. Q § 5.03. Plaintiff does not allege an indemnity has been offered, but instead asks the Court to excuse the indemnity requirement on equitable grounds. AC ¶¶ 130, 197. The implied covenant, however, cannot impose a duty the contract expressly disclaims. *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 102 (2d Cir. 2015) ("[T]he implied covenant of good faith and fair dealing cannot be used to impose an obligation that is inconsistent with express contractual terms."). As to any other steps Plaintiff alleges should have been taken, they fall within DBTCA's discretion

under Section 2.01, and the Deposit Agreement disclaims liability for any "failure to exercise" that discretion. Dkt. 17-2, Ex. Q § 5.02.

*Finally*, the implied covenant rests on the same conduct and seeks the same damages as the express contract claim (AC ¶¶ 199–205), so it should be dismissed as duplicative. *See, e.g.*, *Jordan v. Verizon Corp.*, 2008 WL 5209989, at *7 (S.D.N.Y. Dec. 10, 2008) (explaining how raising both breach of contract and implied covenant claims in a single complaint is "redundant"); *Benihana of Tokyo, LLC v. Angelo, Gordon & Co., L.P.*, 259 F. Supp. 3d 16, 37 (S.D.N.Y. 2017) (dismissing breach of implied covenant claim where it is based on the "same facts" and "seeking identical damages" as the breach of contract claim), *aff'd,* 712 F. App'x 85 (2d Cir. 2018).

**5. Unjust Enrichment (Count V)**

Plaintiff's unjust enrichment claim also fails. "The basic elements of an unjust enrichment claim in New York require proof that (1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004).

*First*, "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract [i.e., unjust enrichment] for events arising out of the same subject matter." *Clark-Fitzpatrick*, 70 N.Y.2d at 388. Here, the Deposit Agreement governs. Plaintiff seeks the "fees, charges, commissions, and other economic benefits" DBTCA obtained "through the Depositary relationship." AC ¶¶ 211–212. Plaintiff alleges no relationship outside the Deposit Agreement. *See Matana*, 957 F. Supp. 2d at 495 (dismissing unjust enrichment claim where a separate agreement governed).

*Second*, Count V duplicates Plaintiff's other claims. It seeks disgorgement of gains attributable to DBTCA's alleged "breaches of fiduciary duty, fraudulent misrepresentation and

concealment, gross negligence, [and] contractual breaches." AC ¶ 218. "To the extent that these claims succeed, the unjust enrichment claim is duplicative; if plaintiffs' other claims are defective, an unjust enrichment claim cannot remedy the defects." *Corsello v. Verizon New York, Inc.*, 18 N.Y.3d 777, 791 (2012). Pleading in the alternative does not save Plaintiff's claim. *See Bermudez v. Colgate-Palmolive Co.*, 667 F. Supp. 3d 24, 44 (S.D.N.Y. 2023) ("[A] plaintiff may plead unjust enrichment in the alternative, but where an unjust enrichment claim is duplicative of other causes of action, it should be dismissed." (alteration in the original, citation omitted)).

### C. The Amended Complaint Should Be Dismissed With Prejudice

The Amended Complaint should be dismissed with prejudice. The Court gave Plaintiff leave to amend, after warning him that it "will be his last opportunity to amend the complaint to cure any deficiency identified in the pre-motion letter." Dkt. 16 at 1. Plaintiff took that opportunity, yet the Amended Complaint does not cure those deficiencies. Further amendment would also be futile, because no new allegations can change when the alleged wrongs occurred or what the governing documents say. *See, e.g.*, *Ferring B.V.*, 932 F. Supp. 2d at 503–04 (collecting cases); *Thompson v. Mun. Credit Union*, 2022 WL 2717303, at *9 (S.D.N.Y. July 13, 2022) ("[W]hen the plain language of a contract unambiguously forecloses a plaintiff's claim, a district court may determine that re-pleading would be futile."); *Orchard Hill Master Fund Ltd. v. SBA Commc'ns Corp.*, 830 F.3d 152, 160 (2d Cir. 2016) (affirming denial of leave to amend because the plain language of the documents foreclosed plaintiffs' claims).

## IV. CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: October 29, 2026
New York, New York

Respectfully submitted,

LATHAM & WATKINS LLP

*/s/ Jason C. Hegt*

Jason C. Hegt
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Email: jason.hegt@lw.com

Rebecca Spendley
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5500
Email: rebecca.spendley@lw.com

*Attorneys for Deutsche Bank Trust Company Americas*

**CERTIFICATE OF COMPLIANCE**

I, Jason C. Hegt, an attorney duly admitted to practice before this Court, hereby certify that this motion complies with Local Rule 7.1(c) of the United States District Courts for the Southern and Eastern Districts of New York and the Individual Rules for Judge Mary Kay Vyskocil. The foregoing Memorandum of Law in Support of Defendant's Motion to Dismiss the Amended Complaint was prepared using Microsoft Word and contains 7,635 words and 25 pages. In making this calculation, I have relied on the word and page counts of the word-processing program used to prepare the document.

Dated: October 29, 2026
New York, New York

*/s/ Jason C. Hegt*
Jason C. Hegt